IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs and Counterclaim Defendants, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, | |
| Defendant and Counterclaim Plaintiff. | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TURNOVER
OF £327,944.09 ADMITTED TO BE OWED PLAINTIFFS
IN LIGHT OF DEFENDANT'S U.K. ADMINISTRATIVE RECEIVERSHIP**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, Plaintiffs, the debtors and debtors-in-possession in the above-captioned action, by their undersigned attorneys, hereby respectfully request that the Court grant Plaintiffs partial summary judgment and a turnover order against Defendant Jaeban (U.K.) Limited ("Jaeban") in the amount of **£327,944.09** – the amount that Jaeban admits that it owes Debtor Budget Rent-A-Car International, Inc ("BRACII"). The circumstances of this case fully support Plaintiffs' request for relief at this time.

In support of their motion, Plaintiffs state as follows:

## BACKGROUND

### A. The Business of Jaeban Under Its Agreements With BRACII

1. Jaeban is a private company incorporated under the laws of England and Wales with headquarters in Oldbury, West Midlands, U.K. At all relevant times, Jaeban operated a rental car business under the Budget® name in the English Midlands and out of certain locations in Scotland. For calendar year 2001 (the last year for which audited financial statements are available), Jaeban had turnover of £11,775,148 and an operating profit of £737,058.[1]

2. During the time period that is the subject of this adversary proceeding, Jaeban operated as a Budget licensee pursuant to two agreements with BRACII dated March 5, 2001: BRACII's standard International Prime License Agreement (the "IPLA") and an "Umbrella Agreement" that, in certain respects, supercedes the IPLA.[2]

3. The IPLA provides for payment by Jaeban to BRACII of a number of items, including royalty payments and payments for services rendered by BRACII to its licensee. These items are spelled out in the IPLA and the Budget Operating Manual, which Article III of the IPLA incorporates by reference. *See* Wile Aff., Ex. C at p.13.

### B. Commencement of the Adversary Proceeding

4. Since 2002, BRACII has demanded – and Jaeban has refused to pay – the substantial sums shown on BRACII's books as owed by Jaeban to BRACII. Affidavit of Patrick

---

[1] *Jaeban (UK) Limited Report and Financial Statements Year Ended 31 December 2001* at 149. A copy of the *Report* is attached as Exhibit A to the Affidavit of Kenneth E. Wile, counsel to Plaintiffs.

[2] Copies of the Umbrella Agreement and the IPLA are attached as Exhibits B and C to the Wile Affidavit. (The IPLA is Schedule 5 to the Umbrella Agreement, but attached separately for convenience.)

2

Corr, ¶ 4.[3] Negotiations over the sums owed continued into 2003. In this dispute, Jaeban has been represented in England by solicitors at Wragge & Co. ("Wragges"). Corr. Aff., ¶ 5.

5.  In light of the parties' failure to resolve their dispute, Plaintiffs filed this action on July 9, 2003 to recover at least £3,006,090 owed by Jaeban to BRACII. Complaint, ¶ 19 & Ex. C. Exhibit C to the Complaint lists, by category, the amounts Jaeban owes the BRACII estate and, for convenience, is attached *infra* as Exhibit A.

6.  On August 22, 2003, Jaeban voluntarily submitted to the jurisdiction of this Court by answering the Complaint and asserting counterclaims. Jaeban seeks £470,904.49 in damages for specific items, as well as an unspecified amount for less specific claims of breach of contract (*e.g.*, that BRACII failed adequately to market the Budget® brand).

7.  On September 23, 2003, BRACII and Plaintiff-Intervenor Official Committee of Unsecured Creditors filed an Answer denying Jaeban's counterclaims in all material respects.

C.  **The Jaeban U.K. Receivership and Jaeban's Subsequent Failures to Cooperate in Discovery**

8.  On October 20, 2003, Jaeban's then-Delaware counsel informed Plaintiffs that Jaeban had filed for receivership in England. Wile Aff., ¶ 7. John Whitfield and Gerald Smith (the "Jaeban Receivers") were appointed as administrative receivers on that date by Jaeban's secured creditor, Close Invoice Finance Limited. Corr Aff., ¶ 7 & Ex. PHMC 4.

9.  Following the appointment of the Jaeban Receivers, Plaintiffs agreed to allow Jaeban a two-week period until November 3, 2003 to consider its position in this proceeding without having to participate in discovery. Wile Aff., ¶ 6

---

[3] Mr. Corr is an English solicitor specializing in corporate reorganizations and a partner in the London office of Sidley Austin Brown & Wood, LLP.

3

10. After the expiration of this period, the parties agreed to request an extension of the deadline for fact discovery in this adversary proceeding until January 30, 2004. On December 12, 2003, this Court granted the discovery extension.

11. Since November 3, 2003 – and despite the imminent cutoff of fact discovery, Jaeban has failed to comply with Plaintiffs' repeated requests for deposition dates for the witnesses identified in Jaeban's Rule 26(a) disclosures and for the Jaeban Receivers. Jaeban has also failed to produce documents sought by Plaintiff's Second Set of Document Requests, despite a written promise to do so during the week of January 5, 2004. Although Jaeban did produce one tranche of documents in November 2003, it has failed to respond Plaintiffs' concern that requested documents are missing from this production. (Jaeban did not file a written response to Plaintiffs' first set of document requests.)

12. On January 7, 2004, a member of the Jaeban Receivers' staff informed Plaintiffs' counsel that nearly all of the assets of Jaeban had been realized. Corr Aff., ¶ 8.

E. **Withdrawal of Jaeban's Delaware Counsel**

13. On December 17, 2003, during a telephonic hearing, the Court admonished Jaeban's English solicitors from Wragge & Co. ("Wragges") and Delaware counsel from Morris Nichols Arsht & Tunnel to resolve promptly the question whether the Morris Nichols firm would continue to represent Jaeban.

14. More than three weeks later, on January 7, 2004, Morris Nichols moved to withdraw from its representation of Defendant due to Jaeban's non-payment of the firm's fees. At a status hearing on January 12, 2004, this Court granted the motion. Jaeban refused to pay its Delaware counsel's fees even though, on information and belief, Jaeban's English solicitors (not

4

Morris Nichols) were responsible for what little work Jaeban has been willing to undertake in this proceeding.

15. No replacement counsel for Jaeban appeared at the January 12, 2004 hearing. As of the date of this Motion, neither Jaeban nor Wragges has informed Plaintiffs that replacement Delaware counsel has been retained. Accordingly, Plaintiffs have served this motion on Mr. Weatherall, Jaeban's solicitor at Wragges in Birmingham, England.

### ARGUMEN

#### I. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT – JAEBAN HAS ADMITTED THAT IT OWES £327,944.09 TO BRACII.

16. In May 2003, Mr. Corr, solicitor for the Administrators of BRACII, received a letter, dated May 2, 2003, with lengthy attachments from Mr. Weatherall acting on behalf of Jaeban. Corr Aff., ¶ 6. Unlike certain other correspondence between counsel for BRACII and Wragges, Mr. Weatherall's letter and attachments are not marked "Without Prejudice," "For Settlement Purposes Only," or with similar language.

17. The first exhibit to the Weatherall letter is entitled "Summary of Agreed and Disputed Sums."[4] This chart tabulates, for each of 27 items, the amounts to which Jaeban agreed or disagreed. At the foot of page two of this chart, Mr. Weatherall identifies the "Amount Jaeban claim Budget [BRACII] is due." As noted above, this amount is £327,944.09 – the sum of the itemized amounts to which Jaeban agreed.

18. Neither Jaeban nor the Jaeban Receivers nor Wragges acting as their solicitors have retracted this admission (or ever maintained that, counterclaims apart, BRACII is owed no amount). While £327,944.09 represents only 11% of the amount that Jaeban in reality

---

[4] Exhibit PHMC3 to the Corr Affidavit is a copy of the Weatherall letter and all attachments. Mr. Weatherall's cover letter and the "Summary of Agreed and Disputed Sums" is attached *infra* as Exhibit B.

5

owes BRACII, there is no reason to dispute that *at least* this amount is owed. As discussed below, even this amount is important to protecting BRACII's rights in light of Jaeban's administrative receivership in England.

## II. PARTIAL SUMMARY JUDGMENT IS NECESSARY TO PREVENT UNDUE PREJUDICE TO BRACII'S ESTATE.

19. At present, BRACII has no effective means in England to protect its rights to a share of Jaeban's assets. The Jaeban Receivers owe their primary duty to Close Invoice Finance Limited, the English secured creditor responsible for their appointment. Corr Aff., ¶ 11 & Ex. PHMC4. Jaeban's indifference to its obligations in this Court reflects a complete lack of concern for the interests of BRACII as an unsecured creditor.

20. Once BRACII has obtained a judgment in this Court, it can take the necessary steps to petition for the appointment of a liquidator and the winding up of Jaeban. Corr. Aff., ¶ 12. If a winding up order is made in respect of Jaeban, the liquidator of Jaeban will, among other powers, have the ability to review the conduct of Jaeban's directors and transactions entered into by the company prior to the commencement of the winding up, and, if appropriate, seek to recover a contribution from the directors or set aside antecedent transactions for the benefit of creditors generally. *Id.*

## III. RELIEF WILL NOT UNFAIRLY PREJUDICE DEFENDANT – DEBTORS HAVE SET ASIDE $4.5 MILLION TO COVER JAEBAN'S CLAIMS.

21. While Debtors will be prejudiced without a judgment from this Court, Jaeban and the Jaeban Receivers will suffer no prejudice whatsoever; Jaeban's setoff rights under Section 553 of the Code are fully protected.

22. In connection with the sale of Debtors' assets to Avis Europe, plc, Debtors set aside $4,500,000 as a cure amount to cover *all* of Jaeban's asserted claims against Debtors.[5] This amount remains in escrow (Wile Aff., ¶ 7), although Plaintiffs are considering a separate motion to strike Jaeban's counterclaims (which would eliminate the escrow) in light of Jaeban's failure to participate in this proceeding.

23. In reality, this amount dwarfs any likely recovery by Jaeban. BRACII has asserted specific claims of approximately $5,450,000 at the current exchange rates of £1 = $1.82. To exceed a setoff of this amount and recover the full cure amount of $4,500,000, Jaeban will have to show damages of $9,950,000, equaling more than seven times Jaeban's 2001 operating profit of approximately $1,343,000. *See* Wile Aff., Ex. 1 at p. 149. Jaeban's detailed claims, however, are denied by Debtors and amount to only $863,000 -- $4,587,000 less than the amount of BRACII's detailed claim for $5,450,000.

24. To obtain the remaining $9,000,000+ in damages it needs to reach the $4,500,000 cure amount, Jaeban relies primarily on a nebulous "failure to adequately market the Budget brand pursuant to the ILPA [sic]." *See* Answer, Affirmative Defenses and Counterclaims, ¶ 37. The IPLA, however, contains no such requirement. *See* Wile Aff., Ex. C.

25. Instead, the IPLA provides further grounds for the relief sought by Plaintiffs in this Motion. Section 13.23 of the IPLA, provides that "Licensee [i.e., Jaeban] shall pay when due all obligations to Budget [i.e., BRACII] . . . incurred by Licensee in the operation of its BRAC [i.e., Budget Rent-A-Car] business." Wile Aff., Ex. C at p.74. Section 13.12 granted Jaeban, as "Licensee", a right of deduction or setoff for "undisputed liquidated sums

---

[5] *See* Corr Aff., Ex. PHMC 2. On February 19, 2003, Jaeban's principal and director, I.M. Jaeban, faxed a notice stating that, "We wish to make clear that after setoff we do not consider that our claim amounts to more than US $4.5 million and we therefore seek to have it dealt with through the cure process." Complaint, Ex. A.

7

owing by" BRACII. *Id.* at p.70-71. By implication, Jaeban had no right of deduction or setoff with respect to sums in dispute with BRACII. As set forth in Debtors' Answer and Affirmative Defenses to Jaeban's Counterclaims, BRACII and the other Debtors dispute that Jaeban is owed any amount.

26. Accordingly, the IPLA provides that BRACII will not have to endure the delay of litigation to obtain an amount that Jaeban admits is due and owing. Jaeban will not be unfairly prejudiced by a partial judgment that effectively enforces the IPLA according to its terms.

### IV. A TURNOVER ORDER IS APPROPRIATE.

27. Because Defendant has admitted that it owes the £327,944.09 amount, it is property of the BRACII estate and subject to turnover under Section 542(b) of the Code as a matured debt payable on demand under Section 13.23 of the IPLA.

28. Section 542(b) authorizes a turnover order here even though Jaeban has claimed an offset in excess of £327,944.09. Although Section 542(b) exempts from turnover amounts subject to offset claims, the offset claims are subject to and must arise "under section 553 of this title." Under Section 553, however, the Court has ample equitable discretion to delay or deny the assertion of Jaeban's offset rights to protect the interests of the Debtors and their estates.

29. Section 553 "is permissive, not mandatory. Its application, when properly invoked before a court, rests in the discretion of that court, which exercises that discretion under the general principles of equality [sic: equity]." *In re Cascade Roads, Inc.*, 34 F.3d 756, 763 (9th Cir. 1994) (*quoting United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983)). *See, e.g., In re Stienes*, 285 B.R. 360, 363 (Bankr. D.N.J. 2002) ("cases have continued to express the view that

the application of setoff [under Section 553] is permissive and can be modified through the exercise of the equitable powers of the court"). In *Cascade Roads*, for example, the Ninth Circuit disregarded the IRS's offset claim and affirmed a turnover order, due to the IRS's inequitable conduct.

30. Here, Debtors face irreparable injury through the continuing deterioration of BRACII's ability to protect its interests in the Jaeban administrative receivership in England. Far from facing any injury, Jaeban enjoys the adequate protection of an escrow account that covers 100% of its (far-fetched) offset claim.

31. Indeed, it is Jaeban that has further prejudiced Plaintiffs' rights by failing to maintain Delaware counsel and to participate fully in discovery in advance of the January 30, 2004 deadline to which it agreed. As a matter of equity under Section 553, Jaeban is not entitled to capitalize on its delaying tactics by insisting that its alleged offset rights be adjudicated first.

## **CONCLUSION**

Jaeban admits that it owes £327,944.09 to BRACII; this material fact is not in dispute for purposes of Rules 56 and 7056. If BRACII does not obtain a prompt judgment for this amount and a turnover order, it may lose its chance to recover from Jaeban – to the detriment of the creditors of the Debtors in this proceeding. Jaeban will suffer no prejudice whatsoever.

WHEREFORE, Plaintiffs and Plaintiff-Intervenor respectfully request that the Court enter an Order (a) granting BRACII judgment in the amount of £327,944.09, plus interest from May 2, 2003, and (b) requiring the immediately turnover of this sum to BRACII.

Dated: January 16, 2003

| | |
|---|---|
| **SIDLEY AUSTIN BROWN & WOOD** | **YOUNG CONAWAY STARGATT & TAYLOR, LLP** |
| Larry J. Nyhan<br>Kenneth E. Wile<br>Bank One Plaza<br>10 S. Dearborn<br>Chicago, IL 60603 | Robert S. Brady (Bar No. 2847)<br>Edmon L. Morton (No. 3856)<br>Joseph A. Malfitano (No. 4020)<br>Matthew B. Lunn (No. 4119)<br>The Brandywine Building, 17th Floor<br>1000 West Street, P.O. Box 391<br>Wilmington, Delaware 19899-0391<br>(302) 571-6600 |
| Counsel for Debtors and Debtors-in-Possession BRAC Group, Inc., et al. | |