**FILED**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

DEC 1 4 2004

UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| BRAC GROUP, INC. (f/k/a BUDGET GROUP, INC., *et al.*, | ) ) ) | Case No. 02-12152 (CGC) Jointly Administered |
| Debtors. | ) ) ) | |
| BRAC GROUP, INC. (f/k/a BUDGET GROUP, INC., *et al.*, | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) | Adversary No. 03-54271 (CGC) |
| v. | ) ) ) | |
| JAEBAN (U.K.) LIMITED, | ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) | |

## MEMORANDUM OPINION

Robert S. Brady
Edmon L. Morton
Joseph A. Malfitano
Matthew B. Lunn
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Brian A. Sullivan
Amy D. Brown
Werb & Sullivan
300 Delaware Ave., 10th Floor
Wilmington, DE 19801

Attorneys for Ibrahiem Jaeban, Assignee
of Defendant Jaeban (U.K.) Limited

- and -

Larry J. Nyhan
Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603

Attorneys for Debtors and Debtors-in-Possession

December 14, 2004

CASE, J.

## I. INTRODUCTION

Before the Court are several discovery related motions brought by both Debtor, BRAC Rent-A-Car International, Inc. ("BRACII") and Defendant Ibrahiem Jaeban ("Defendant" and/or "Mr. Jaeban"):[1]

1. Defendant/Counterclaim Plaintiff Ibrahiem Jaeban's Motion to Extend Deadlines in Revised Pre-Trial Scheduling Order and Memorandum in Support;

2. BRACII's Motion for Further Sanctions and Other Relief Due to Mr. Jaeban's Multiple Failures to Comply with the Court's May 25, 2004 Order; and

3. Defendant/Counterplaintiff Ibrahiem Jaeban's Motion for Order Reopening Limited Discovery.

The Court took these matters under advisement after the presentation of oral argument on September 21, 2004.

## II. ANALYSIS

In its May 25, 2004, Memorandum Decision, this Court extended the discovery cutoff date from January 30, 2004, to June 18, 2004, and ordered Mr. Jaeban to respond to Plaintiff BRACII's Second Request for Production of Documents (served on November 26, 2003) and to respond to concerns raised by Plaintiffs in a letter dated December 12, 2003, regarding gaps in Mr. Jaeban's November production of documents. Further, the Decision stated that "[f]ailure to meet this deadline will result in an order prohibiting Mr. Jaeban from introducing into evidence (or using in any other way) any documents not so produced and prohibiting testimony from any

---

[1] In the interests of brevity, the Court refers to its May 25, 2004, Memorandum Decision for a somewhat detailed summary of the dispute between the parties and the prior proceedings in this case.

2

witnesses not produced for deposition. This is without prejudice to BRACII seeking other sanctions that may be appropriate under the circumstances after the discovery period has lapsed." Subsequently, the parties agreed to a revised pretrial scheduling order extending, *inter alia*, the date to complete depositions to August 23, 2004. To date, the depositions have not been completed and discovery remains outstanding.

For his part, Mr. Jaeban now seeks an extension of August 23, 2004, deposition deadline and the dispositive motion deadlines, stating summarily that a variety of "unanticipated discovery and logistical issues" have arisen preventing compliance with the pretrial scheduling order. BRACII does not object to a sixty day continuance to complete the depositions and to brief any dispositive motions. However, BRACII requests the Court not adopt paragraph 2 of Mr. Jaeban's form of order directing the parties to confer within twenty days of the order for the purpose of submitting a proposed revised scheduling order. Instead, BRACII believes the Court should first consider BRACII's motion for sanctions against Mr. Jaeban and Mr. Jaeban's motion to reopen limited discovery, as resolution of those motions may have a bearing on any potential revised scheduling order.

BRACII's renewed motion for sanctions stems from Mr. Jaeban's failure to comply with the Court's May 25, 2004, Memorandum Opinion ("May 25th Order"), quoted *supra*, requiring Mr. Jaeban to respond by June 18, 2004, to BRACII's second document request and explain various gaps in his November responses to BRACII's document request. According to BRACII, after the June 18 deadline and the August depositions in England, Mr. Jaeban disclosed "two large document collections – one at the offices of the Receivers of Jaeban (U.K.) Limited ('Jaeban UK') and the other at his former business headquarters, 'Welcome House' in Oldbury,

3

England." These documents were not then actually produced until late August to BRACII. BRACII represents that some of the documents received are highly relevant to the issues in this case and now necessitate further "third-party discovery that should have occurred months ago." BRACII complains that additional documents produced belatedly the night before Mr. Jaeban's deposition contain important information that should have been produced in November, 2003, pursuant to BRACII's first request for production.

Mr. Jaeban contends he did comply with the May 25th Order, producing what he had and could get by the June 18th deadline. In nearly the same breath, however, he acknowledges turning over previously undisclosed documents well past the deadline, explaining simply that he did not believe the documents were in fact responsive to the requests but that he felt compelled to do so to avoid further discovery disputes.[2] He further argues that with respect to some of the documents, the receiver was in control and refused to turn over the documents despite Mr. Jaeban's requests.

It is important to put this matter in context. The Defendant here faced the guillotine once previously for failing to follow Court orders on a number of issues. At that time, the Court considered whether the drastic sanction of dismissal requested by BRACII was appropriate under the Third Circuit's standards in *Poulis v. State Farm Fire & Cas. Co*, 747 F.2d 863 (3d Cir. 1984). Concluding in the negative, the Court then set out sanctions in the form of new deadlines

---

[2]This argument then raises the question, if Mr. Jaeban was truly acting with an abundance of caution by turning these materials over, why did he not also turn them over within the Court-ordered time line to avoid *any* potential discovery related dispute with respect to them? His argument seems hollow at best. The fact that some of the documents were in fact deemed relevant by BRACII, a contention not disputed by Mr. Jaeban, further undermines Mr. Jaeban's argument that they were not responsive or relevant.

4

and requirements and specifically advised Mr. Jaeban that failure to comply would lead to certain explicit sanctions with the possibility of other sanctions in the appropriate circumstances.

The essence of BRACII's sanction's motion is enough is enough. The Court finds merit in this position, especially in light of the prior sanction proceedings leading up the May 25th Order. The June 18th deadline was established, for lack of a better term, as a "second chance" for Mr. Jaeban to comply with BRACII's discovery requests, actively participate in the case and respond to BRACII's motion for sanctions against Mr. Jaeban for "failing to obtain Delaware counsel, comply with the Court's scheduling order, or advance" the proceeding. The sanction BRACII sought in its original motion was dismissal of Mr. Jaeban's answer, affirmative defenses, and counterclaims. The Court declined to impose such a drastic sanction in light of its conclusion that Mr. Jaeban's failure to participate in the case up to that point, respond to discovery and comply with the Court's orders was a result of the Administrative Receiver in England, over which Mr. Jaeban and Jaeban UK had no control.

The failure to comply with the June 18th deadline, however, cannot now be similarly shrugged off on the receiver. Mr. Jaeban must take responsibility for his own actions, or lack of action as the case may be, to comply with the May 25th Order or, at minimum, properly inform BRACII and this Court of what he was doing in an attempt to comply with the Order. This is especially true in light of the fact that Mr. Jaeban was, post-May 25th Order, warned that his failure to comply with the deadline would result in sanctions and that he was therefore, so to speak, under the microscope. The Court also finds lacking Mr. Jaeban's record of what actions he took with respect to the Receiver and when. It appears, from the record Mr. Jaeban has provided, that he and his counsel did not contact the Receiver until after the June 18th deadline

5

had already passed. Paragraph 4 of Mr. Wilcox's affidavit indicates that he and Mr. Jaeban did not contact the receiver until August 4. And, once this contact was made, Mr. Jaeban had the documents produced nearly a week later to BRACII on August 12.

Further, the fact that the subsequently stipulated revised pre-trial scheduling order did not alter the June 18th discovery response deadline highlights Mr. Jaeban's failure to keep everyone, including the Court and BRACII, abreast of the alleged problems he was having. If Mr. Jaeban were having trouble getting responses to BRACII's discovery by the June 18th deadline, why was an extension of that deadline not included in the revised pre-trial scheduling order or, at a minimum, at least discussed while agreeing to the new schedule?

For sanctions, BRACII requests either the dismissal of Mr. Jaeban's counterclaims or termination of the escrow, either of which spell the death knell for Mr. Jaeban's case. BRACII also seeks a full, written explanation by Mr. Jaeban as to whether Price Waterhouse Coopers attempted to comply with BRACII's document requests and whether Mr. Jaeban can account for all of the documents that were available to, but not produced by, Price Waterhouse Coopers or Wragge & Co. to BRACII in November, 2003. Further, it seeks an order from this Court finding Mr. Jaeban's recent documents requests untimely. Last, BRACII seeks its fees in sending U.S. counsel to England in August to pursue the deposition schedule and for filing this motion.

To determine if dismissal is appropriate, the *Poulis* factors need to be re-examined in light of current facts..

1. "Extent of a party's personal responsibility." Mr. Jaeban argues that the delays are the fault of the receiver. That does not wash; in particular, the failure to take

6

any action prior to the deadline lies directly at Mr. Jaeban's feet. This factor is now clearly in BRACII's favor.

2. "Prejudice to BRACII." BRACII is a post-confirmation debtor seeking to wind up its affairs. Delay is necessarily undesirable. This issue has now been pending a year. While it is true that the sanctions awarded in the last Order were intended to ameliorate any prejudice to BRACII and that, perhaps, a new set of sanctions could be tailored to do the same in the current context, there is no basis to believe that Mr. Jaeban will abide by those rules any more than he has abided by the previous ones. Thus, this issue tilts in BRACII's favor.

3. "History of dilatoriness." While there previously was no such history, now there clearly is. This factor is in BRACII's favor.

4. "Whether the conduct of the party or the attorney was willful or in bad faith." The Court cannot conclude on this record that Mr. Jaeban's conduct was in bad faith but it is fair to conclude that it was willful. No reasonable explanation has been given why the Court-ordered deadlines were ignored, particularly in light of the prior motion. Mr. Jaeban clearly had knowledge of the consequences and failed to act. This factor is in BRACII's favor.

5. "The effectiveness of sanctions other than dismissal." Alternative sanctions have already been assessed, apparently without effect. There is little basis to conclude that the result would be different this time around. This factor is in BRACII's favor.

6.  "The meritoriousness of the claim or defense." There was no record prior to entry of the previous Order on this issue. Now, the record contains letters from English counsel questioning the underpinnings of Mr. Jaeban's claims. However, the Court has not looked in detail at the merits of either's side contentions. Therefore, this factor is at best neutral for Mr. Jaeban and at worst slightly in favor of BRAC II.

In sum, the record now supports dismissal of the counterclaim and release of the escrow as appropriate sanctions for non-compliance. First Jaeban UK and now Mr. Jaeban, as assignee of this claim, have been given a more than adequate opportunity to pursue it vigorously and consistent with the Court's directive and failed to do so. Therefore, sanctions of dismissal of the counterclaim and release of the escrow shall be imposed.

As a result of this ruling, the other pending motions are moot. A form of order is to be submitted under certification of counsel.

_____
Charles G. Case II
United States Bankruptcy Judge