**Exhibit E**

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | **BANK ONE PLAZA** | LOS ANGELES |
| BRUSSELS | **10 S DEARBORN STREET** | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D C |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley com

December 12, 2003

**VIA FAX (302-658-3989)**

Thomas W. Briggs, Esq.
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
Wilmington, DE 19899-1347

> Re: <u>BRAC Group, Inc., et al., v. Jaeban (U.K.), Ltd.,</u>
> <u>Adv. No. 03-A-54271 (Bankr. D. Del.)</u>

Dear Tom:

Since Morris Nichols remains (and, we hope, will continue as) Jaeban's Delaware counsel of record, I am writing to raise two separate discovery topics.

      **1.**    **UK Depositions:**    We are likely to depose most or all of the following witnesses associated with Jaeban in addition to the two Receivers:

I. M. Jaeban
Paul Champken
Steve Downing
Anthony Guest
Simon Poyner
Andrew Rees
Trevor Sutherland

Please check on their availability during the weeks of January 12th and 19th. We would like these depositions to occur at our offices in London; there are likely to be London depositions as well.

      **2.**    **Jaeban Documents Produced To Date.**    While Wragges has already produced a moderate number of (mostly responsive) documents to date, we are concerned that the production is not complete. In particular, Wragges sent only a minimal number of e-mails

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

**BA97**

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Thomas W. Briggs, Esq.
December 12, 2003
Page 2

and internal memoranda related to the specifications in our document requests. Because Jaeban did not object to any of the requests in a timely manner, it has no grounds under the Federal Rules for withholding documents that we have sought. Please note that, consistent with the Federal Rules, we have sought documents within Jaeban's possession, custody, or control; these include documents in the possession of Wragges and PwC, who are agents of Jaeban (and, now, of the Receivers).

Turning to the specific requests, please note the following apparent deficiencies. This is not an exhaustive list, and it remains Jaeban's responsibility to comply in full.

No. 1:       The document production includes a set of the 2002 financial statements, but this request is broader in requiring documents and drafts of documents that reflect on the overall value of Jaeban, including current and prior financial statements dating back to January 1, 2000.

No. 2:       The Wragges production does not include any responsive documents (e.g., minutes and Board resolutions).

No. 3:       This request sought, *inter alia*, documents discussing Mr. Jaeban's views of the demands and counterdemands that have now been brought in the adversary proceeding. Experience suggests that there will usually be e-mails and internal memoranda that discuss these claims. Some documents might arguably be privileged; if so, we are entitled to a privilege list.

No. 4:       We expected to see more documents referring to the Orders of Administration. At the risk of understatement; the altered status of BRACII and BTI were not insignificant matters to Jaeban.

No. 5:       Wragges has produced some responsive documents, but we would have expected to have seen much more.

Nos. 7-8:    We do not seem to have any of the background documents (emails, memoranda, and the like) that Jaeban used in deciding to enter into the IPLA, the Umbrella Agreement, or other agreements.

Nos. 12-20:  These requests seek documents that relate to Jaeban's contentions. Needless to say, any documents that have not been produced are unlikely to be admitted at trial. We want to be certain, however, that Jaeban has produced all documents that relate to these claims, whether or not these are documents on which Jaeban intends to rely at trial.

Many thanks for your help. Please call with any questions.

BA98

SIDLEY AUSTIN BROWN & WOOD LLP                         CHICAGO

Thomas W. Briggs, Esq.
December 12, 2003
Page 3


                                              Sincerely yours,

                                              Kenneth E. Wile


cc:     Martin Siegel

        Patrick Corr
        Phillip Taylor

**Exhibit F**

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P. O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS W. BRIGGS, JR.
302 498 6631
302 498 6226 FAX
tbriggs@mnat.com

December 30, 2003

**VIA TELECOPY
AND FIRST CLASS MAIL**

Kenneth E. Wile, Esquire
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 S. Dearborn Street
Chicago, IL 60603

Re:    BRAC Group, Inc., *et al.* v. Jaeban (U.K.), Limited
Adv. Pro. No. 03-A-54271

Dear Ken:

Enclosed are Jaeban's responses to the Joint Second Request for Production of Documents and its Statement Pursuant to Rule 9.4. Jaeban will produce documents as identified in its responses next week.

Additionally, Jaeban is currently reviewing your letter of December 12, 2003 to determine whether any supplemental production is warranted. We hope to be in a position to respond to that letter by the middle of next week, as well as provide dates for depositions.

Sincerely,

Thomas W. Briggs, Jr.

Enclosure

cc:    Steven Allen (By Email w/ enc.)
Edmon Morton, Esquire (By Hand w/enc.)
William P. Bowden, Esquire (By Hand w/enc.)

**BA101**

**Exhibit G**

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D C |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

January 14, 2004

**By Facsimile (011-44-870-904-1099) and Overseas Mail**

Ian Weatherall, Esq.
Wragge & Co.
55 Colmore Row
Birmingham B3 2AS
United Kingdom

> Re:  **BRAC Group, Inc., et al., v. Jaeban (U.K.), Ltd. ("Jaeban"),
> Adv. No. 03-A-54271 (Bankr. D. Del.)**

Dear Mr. Weatherall:

I thought it appropriate to write to you regarding the hearing in the *Jaeban* adversary proceeding that took place in Wilmington on Monday before Judge Case. I note that your firm was invited to participate by telephone, but did not do so.

I'm confident that Tom Briggs of Morris Nichols has informed you that Judge Case granted that firm's motion to withdraw as Jaeban's counsel after Mr. Brigg's represented that Defendant "had not paid a dollar" of his firm's fees.[1] My concern, of course, is with the future direction of the proceeding and Jaeban's continuing failure to abide by its obligations as a (voluntary) litigant.

### Representation Regarding a Meeting Among Receivers

Mr. Briggs represented to me that the Jaeban Receiver(s) were going to meet with the BRACII Receivers tomorrow, January 15th. I reported this representation to the Court, as well as the Receiver's failure to meet with Gurpal Johal on Monday, January 12th, as promised.

As of this morning, the Jaeban Receivers had not contacted the BRACII Receivers regarding a meeting on Thursday or otherwise. I have no reason to believe that Mr.

---

[1] I encourage you to verify my rendition of the hearing with Mr. Briggs and urge you to retain Delaware counsel as soon as possible.

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

**BA103**

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Ian Weatherall, Esq.
January 14, 2004
Page 2

Briggs invented the idea of a Thursday meeting. If we have been misled, it is a serious matter
that I will report to the Court.

### Outstanding Discovery

**1.    Deposition Dates.**    We have been waiting since October 2003 for
deposition dates for the Jaeban Administrative Receivers and the witnesses identified in Jaeban's
Rule 26(a) disclosure statement. In his December 30, 2003 letter to me, Tom Briggs promised to
disclose dates to us last week. At the hearing, I raised with Judge Case Jaeban's continuing
failure to provide dates. We discussed a motion to compel Jaeban (and the Court raised the
possibility of sanctions for noncompliance), but it equally serves the purpose to remind you that
Jaeban agreed with us to a January 30, 2004 fact discovery deadline. If we are not provided
deposition dates in sufficient time to complete the depositions, we believe that sanctions for
Jaeban's willful noncompliance will be appropriate. I will leave it to your new Delaware counsel
to advise you on the availability and likely form of sanctions.

**2.    Documents.**    Mr. Briggs' December 30th letter promised that Jaeban
would produce documents responsive to our second set of document requests last week.
Consistent with Jaeban's conduct, these documents were not produced. If they are not produced
forthwith, we will proceed with appropriate motion practice to obtain sanctions.

In my prior correspondence, I noted that Jaeban's production of documents in
response to our first set of requests seemed to be incomplete. Jaeban did not file a set of
objections, and Debtors are therefore entitled to every document sought. Mr. Briggs' December
30th letter also promised that Jaeban would respond to this concern last week. The depositions in
this proceeding will fully explore Jaeban's compliance; any failure to comply may be a matter
for the Court.

### Motion Practice

I explained to Judge Case that we plan to file, no later than Friday, a motion for
partial summary relief seeking a judgment in the amount of £327,944.09, the amount that Jaeban
has previously admitted is due and owing to BRACII. Judge Case inquired whether this was
"the only way to put the fear of God" into Jaeban so as to protect BRACII's interests in the
Jaeban assets. (I answered yes.) At my request, Judge Case agreed to set a prompt briefing
schedule. Jaeban's response is due on **January 30, 2004**. Our reply is due on February 3, 2004.
The hearing is scheduled for **February 4, 2004** at 10:00 am (Mountain Standard Time) in Judge
Case's regular courtroom in Phoenix, Arizona.

Please note that Judge Case stated he would *not* accept an opposition signed only
by English counsel. Under the circumstances, we will not agree to any extension of time due to
Jaeban' search for new Delaware counsel. If the Court grants the relief sought, BRACII will

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Ian Weatherall, Esq.
January 14, 2004
Page 3


(through my English colleagues) promptly assert its rights and remedies in the Jaeban
Administrative Receivership and any subsequent proceedings.

* * *

       Given the weakness of Jaeban's claims and the poor impression created by its
failure to make discovery and pay Delaware counsel, please carefully consider whether it is
appropriate to continue this proceeding.

Sincerely yours,

Kenneth E. Wile

cc:    Patrick Corr
      Gurpal Johal

**BA105**

**Exhibit H**

**BA106**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:   BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) ) |
| Debtors. | ) ) ) |
| IN RE:   BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| JAEBAN (U.K.) LIMITED, | ) ) ) |
| Defendant. | ) ) |

Chapter 11

Case No. 02-12152 (MFW)

(Jointly Administered)

Adversary No. A-03-54271

**STATEMENT PURSUANT TO RULE 9.4**

Pursuant to Rule 9.4 of the Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, defendant, Jaeban (U.K.) Limited hereby states that the amount of damages claimed under Count I of Defendant's Counterclaims shall not exceed $4.5 million.

MORRIS, NICHOLS, ARSHT & TUNNELL

R. Judson Scaggs, Jr. (#2676)
Thomas W. Briggs, Jr. (#4076)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    Attorneys for Jaeban (U.K.) Limited

December 30, 2003
386018

**Exhibit I**

**BA108**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BRAC GROUP, INC, f/k/a BUDGET GROUP, INC., et al.,[1] | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered)<br>RE: 2413 |

**ORDER, UNDER 11 U.S.C. §§ 105(a) 363, 365, AND FED. R. BANKR. P. 2002 AND 6004, (A) APPROVING ASSET PURCHASE AGREEMENT; (B) AUTHORIZING SALE OF ASSETS OF BRAC RENT-A-CAR CORPORATION AND BRAC RENT-A-CAR INTERNATIONAL, INC. TO AVIS EUROPE PLC AND (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO AVIS EUROPE PLC**

Upon the motion dated January 10, 2003 (the "Motion")[2] of BRAC Rent-A-Car

Corporation ("BRACC") and BRAC Rent-A-Car International, Inc. ("BRACII" and, together

with BRACC, the "Debtors"), debtors and debtors-in-possession in the above captioned cases

for, *inter alia*, entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United

States Code, 11 U.S.C. §§ 101 – 1330 (as amended, the "Bankruptcy Code") and Fed. R. Bankr.

P. 2002, 6004 and 6006 (A) approving the asset purchase agreement (including all exhibits,

schedules and agreements attached thereto) by and among, inter alia, the Debtors and Avis

---

[1] The Debtors are the following entities: BRAC Group, Inc., Auto Rental Systems, Inc., BGI Airport Parking, Inc., BGI Shared Services, LLC, BRAC Credit Corporation, BRAC Car Sales, Inc., BRAC Fleet Finance Corporation, BRAC Rent A Car Asia-Pacific, Inc., BRAC Rent A Car Caribe Corporation, BRAC Rent A Car Corporation, BRAC Rent-A-Car International, Inc., BRAC Rent A Car of Japan, Inc., BRAC Rent-A-Car of St. Louis, Inc., BRAC Rent-A-Car of the Midwest, Inc., BRAC Rent-A-Car Systems, Inc., BRAC Sales Corporation, BRAC Storage Corporation, BRAT Move Management, Inc., BRAT Relocation Services, Inc., BRAT TRS, Inc., BVM, Inc., Carson Chrysler Plymouth Dodge Jeep Eagle, Inc., Control Risk Corporation, Dayton Auto Lease Company, Inc., Directors Row Management Company, LLC, IN Motors VI, LLC, Mastering The Move Realty, Inc., Mossant Car Sales, Inc., NVRAC Inc., Paul West Ford, Inc., Philips Jacobs Insurance Agency, Inc., Premier Car Rental LLC, Reservation Services, Inc., TCS Properties, LLC, Team Car Sales of Charlotte, Inc., Team Car Sales of Dayton, Inc., Team Car Sales of Philadelphia, Inc., Team Car Sales of Richmond, Inc., Team Car Sales of San Diego, Inc., Team Car Sales of Southern California, Inc., Team Fleet Services Corporation, Team Holdings Corp., Team Realty Services, Inc., The Move Shop, Inc., Transportation and Storage Associates, ValCar Rental Car Sales, Inc., Vehicle Rental Access Company, LLC, and Warren Wooten Ford, Inc.
[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion or Agreement, as applicable.

NY2:# 4491060v2
WP3:861004.3

39519.1001

CERTIFIED: AS A TRUE COPY: ATTEST: 2/26/03
U.S. BANKRUPTCY COURT
Deputy Clerk
BY:

Europe plc (the "Purchaser"), dated as of January 21, 2003, as supplemented and modified by that certain Supplemental and Variation Agreement dated as of February 18, 2003 by and among, inter alia, the Debtors and the Purchaser (as so supplemented and modified, the "Agreement"); (B) authorizing the sale by the Debtors of the Acquired Assets to the Purchaser; and (C) authorizing the assumption and assignment of certain executory contracts by the Debtors to the Purchaser; this Court having determined that the relief requested in the Motion is in the best interests of the Debtors and their respective estates; and it further appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter constitutes a core proceeding within the meaning of 28 U.S.C. 157(b)(2)(A) and (N).  Venue of the Debtors' Chapter 11 cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

B.    The Debtors have soundly exercised their business judgment in determining to enter into the Agreement and to sell the Acquired Assets to Purchaser pursuant to sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code free and clear of all mortgages, pledges, security interests, liabilities, claims (as that term is defined in the Bankruptcy Code, "Claims"), liens, charges or other encumbrances or restrictions of any kind, other than the Assumed Liabilities (collectively, "Encumbrances"), outside of a plan of reorganization.  The relief

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

BA110

requested in the Motion is in the best interests of the Debtors' respective businesses and in the best interests of their respective estates.

C.     The Debtors have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby and have delivered or shall deliver at Closing proper evidence that the Agreement has been approved and authorized by the UK and French Administrators; no consents or approvals other than those expressly provided for in the Agreement are required for the Debtors to consummate the foregoing transactions.

D     The Debtors, through their investment banker, Lazard Frères & Co. LLC ("Lazard") diligently and in good faith marketed the Acquired Assets to secure the highest and best offer or offers therefor by, among other things, delivering offering materials to potential purchasers and inviting the potential purchasers to meet with management, Lazard, and other professionals of the Debtors, and providing them each with the opportunity to conduct extensive due diligence. In addition, the Debtors timely delivered the Sale Procedures Order and the Motion to each of the entities that had previously expressed an interest in the Acquired Assets. The terms and conditions set forth in the Agreement, and the transactions contemplated thereby, represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Acquired Assets.

E.     Proper, timely, adequate and sufficient notice of the Motion, Qualified Bid procedures and the hearing hereon and thereon has been provided in accordance with sections 102(a), 363, and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004, and 6006 and in accordance with the Sale Procedures Order and no other or further notice of the Motion, the hearing thereon or the entry of this Order is required.

BA111

F.    The Qualified Bid procedures described in the Sale Procedures Order afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets and no higher or otherwise better offer has been made.

G.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Acquired Assets, has been afforded to all interested persons and entities including, without limitation, the following: (i) Purchaser; (ii) all entities known by the Debtors to claim an Encumbrance on the Acquired Assets, (iii) the Office of the United States Trustee; (iv) the Committee; (v) all entities known by the Debtors to have expressed an interest in a transaction with respect to the purchase of the Acquired Assets; (vi) all counterparties to the Assumed Contracts, (vii) all governmental taxing authorities who have, or as a result of the sale and transfer of the Acquired Assets may have, claims, contingent or otherwise, against BRACC or BRACII in connection with their ownership of the Acquired Assets; (viii) the UK Administrator; (ix) the French Administrator; and (x) all entities that requested notice pursuant to Fed. R. Bankr. P. 2002 as of January 10, 2003.

H.    With respect to any and all entities asserting an Encumbrance on the Acquired Assets, either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, or license and assignment, as applicable, in the same order of priority, force and effect as existed prior to such sale, transfer, license or assignment or (ii) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Encumbrance, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

WP3:861004.3                                                          59519.1001

BA112

I.    The Qualified Bid procedures allowed the Debtors to obtain the maximum value for the Acquired Assets for their respective estates.

J.    Upon the Closing, or a Partial Closing as applicable, the sale of the Acquired Assets shall be legal, valid and effective transfers of the Acquired Assets to Purchaser, and shall vest in Purchaser all right, title and interest in the Acquired Assets and in accordance with the terms and conditions of the Agreement, free and clear of all Encumbrances, under sections 105(a), 363(f), and 365 of the Bankruptcy Code.

K.    The Agreement was negotiated, proposed and entered into by the Debtors and Purchaser without collusion, in good faith, and from arm's-length bargaining positions. None of the Debtors or the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Purchaser is not an "insider" or "affiliate" of the Debtors (as such terms are defined in the Bankruptcy Code). Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in consummating the transactions contemplated by the Agreement.

L.    The consideration to be provided by Purchaser for the Acquired Assets (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

M.    The Debtors may assume and assign the Assumed Contracts to Purchaser pursuant to section 365 of the Bankruptcy Code. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the

BA113

best interests of the Debtors and their respective estates, and represents the exercise of sound and prudent business judgment by the Debtors.

N.     Except with respect to the objections listed in the chart attached hereto as <u>Exhibit B</u> (the "<u>Cure Objections</u>"), the amounts on the column titled "Net Cure Amounts" on the schedule filed with the Court on January 24, 2003, as an exhibit to the Assumption/Assignment Notice (the "<u>Cure Amounts Schedule</u>") reflect net cure amounts (after the Debtors have exercised any rights of set off or recoupment they may possess) necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code (each, a "<u>Cure Amount</u>") to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts. The Cure Amounts Schedule was properly served on the counterparties to the Assumed Contracts.

O.     As of the Closing or a Partial Closing, the Debtors who are assuming and assigning the Assumed Contracts have provided adequate assurance that they will pay or otherwise satisfy (including by exercise of any rights of set off or recoupment) the Cure Amounts for the Assumed Contracts within a reasonable period of time after Closing as set forth in this Order as required by section 365 of the Bankruptcy Code and Purchaser has provided the non-debtor counterparties to the Assumed Contracts with adequate assurance of future performance. As of Closing or a Partial Closing, each Assumed Contract shall constitute a valid and existing interest in the property subject to such Assumed Contract and no default exists under any Assumed Contract, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute a default under any Assumed Contract prior to Closing or a Partial Closing not satisfied or otherwise addressed pursuant to this Order.

Therefore, it is ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted in its entirety.

BA114

2.    Except the Cure Objections, which are addressed in this Order, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3.    The Agreement, including all of the terms and conditions thereof, is hereby approved in all respects.

4.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized to consummate the transactions contemplated by, pursuant to and in accordance with the terms and conditions of the Agreement.

5.    The Debtors are authorized to execute and deliver, and empowered to fully perform under, consummate and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be reasonably requested by Purchaser for the purpose of transferring the Acquired Assets to Purchaser, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement including, without limitation, the establishment of one or more escrow accounts or reserves (in addition to any escrow accounts or reserves specifically contemplated by the Agreement) from the Sale Proceeds (x) to satisfy any liabilities, (y) to fulfill any conditions, and/or (z) as the Purchaser may reasonably require in return for waiving any conditions, in each case for with the Debtors are responsible.

6.    The Debtors' respective obligations under the Agreement shall constitute administrative expenses of their respective estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code.

WP3:841004.3                                                                    59519.1001

**BA115**

7.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to Purchaser in accordance with the terms of this Order.

8.     All persons and entities are hereby enjoined from asserting, prosecuting or otherwise pursuing any claim against Purchaser to recover any claim such person or entity had, has or may have against Purchaser in connection with the negotiation of the Agreement.

9.     Except as provided in the Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing or a Partial Closing, as applicable, the Acquired Assets shall be transferred, licensed and assigned to Purchaser, free and clear of all Encumbrances, arising prior to the Closing Date or the Closing Date related to a Partial Closing, as applicable, with all such Encumbrances, if any, to attach to the net proceeds of the transactions contemplated by the Agreement in the same order of priority and with the same validity, force and effect, if any, which they now have as against the Acquired Assets, subject to the rights, claims, defenses and objections, if any, of the Debtors and all interested parties with respect to such Encumbrances.

10.     Effective upon the Closing or a Partial Closing, as applicable, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any act on or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding, against Purchaser and its successors and assigns with respect to any Encumbrance. Without limiting the generality of the foregoing, Purchaser shall have no liability for any Claim against the Debtors except to the extent such Claim is an Assumed Liability.

11.     If any person or entity that has filed a financing statement or other documents or agreements evidencing Encumbrances on the Acquired Assets shall not have delivered to the

WP3:861004.3                           8                                    59519.1001

Debtors prior to the applicable Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances which the person or entity has with respect to such Acquired Assets, Purchaser hereby is authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets. The foregoing notwithstanding, the provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Encumbrances shall be self-executing, and notwithstanding the failure of Purchaser, the Debtors, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or the Agreements with respect to the sale and assignment of the Acquired Assets, all Encumbrances on the Acquired Assets shall be deemed divested.

12.    The Debtors are hereby authorized and directed, in accordance with section 365 of the Bankruptcy Code, at the Closing or a Partial Closing, as applicable, to assume and assign to Purchaser each of the Assumed Contracts free and clear of all Encumbrances as provided in the Agreement.

13.    With respect to each Assumed Contract (a) for which no Assumption/Assignment Objection was received, or for which a Cure Objection was received but was resolved prior to the Closing, each Assumed Contract shall be assigned to the Purchaser subject to and in accordance with the Agreement and this Order effective as of the Closing or Partial Closing, as applicable, and the Debtors shall, within three (3) Business Days from Closing or Partial Closing, as applicable, pay to the non-Debtor party to each such Assumed Contract the Cure Amount (such amount, the "Cure Amount Payable"); and (b) for which a Cure Objection relating to an executory contract not removed from the list of Assumed Contracts upon agreement by the

WP3:861004.3                                                           59519.1001

BA117

Purchaser, the Debtors and the Committee remains unresolved as of the Closing or Partial Closing, as applicable, (an "Unresolved Cure Objection"), such Assumed Contract shall be assigned to the Purchaser subject to and in accordance with the Agreement and this Order effective as of the Closing or Partial Closing, as applicable and the Debtors, the Committee and each party to such Assumption/Assignment Objection shall negotiate in good faith for a period of thirty (30) days after the Closing or Partial Closing, as applicable, in an attempt to resolve such objection, provided, however, that upon the expiration of such thirty (30) day period, the Debtors, the Committee or the non-debtor objecting party may request that the Court establish a schedule to resolve such objection. Except to the extent that an executory contract that is the subject of an Unresolved Cure Objection has been removed from the list of Assumed Contracts prior to Closing or Partial Closing, as applicable, consistent with paragraph 15 below, the Debtors shall place Sale Proceeds equal to the Cure Amount Payable and the maximum amounts asserted in each Unresolved Cure Objection in a segregated interest bearing bank account from which account the Cure Amounts shall be payable consistent with the terms of this Order, provided however, in the case of the Hold-Over Contracts, the Debtors shall establish the Hold-Over Escrow Amounts in accordance with the Second Supplemental and Variation Agreement. For avoidance of doubt, exercise of any rights of set off or recoupment by the Debtors shall constitute satisfaction of the Debtors' cure obligations to the extent of any such right of set off or recoupment. Other than the Cure Amount relating to each Assumed Contract, there are no other amounts due on any of the Assumed Contracts required to be paid and no other action needs to be taken with respect to any of the Assumed Contracts in order to assume the Assumed Contracts under sections 365(b) and 365(f)(2) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the Debtors shall have no obligation to pay any Cure Amount unless a Closing

or a Partial Closing and assumption and assignment pursuant to the terms of the Agreement and this Order have occurred.

14    The consideration provided by Purchaser for the Acquired Assets, all as negotiated by Purchaser for its benefit under the Agreement, is fair and reasonable, and the result of open and competitive bidding, and may not be avoided under section 363(n) of the Bankruptcy Code.

15.    The Debtors, upon agreement with the Committee and the UK Administrator, shall invest the Sale Proceeds in the United States pursuant to the Debtors' investment and cash management guidelines to be approved by the Court by separate order. The Court shall retain jurisdiction to determine the allocation of the Sale Proceeds among the Debtors and the UK Administrator shall have the right to participate fully in any and all such allocation proceedings.

16.    The transactions contemplated by the Agreement are undertaken by Purchaser in good faith as that term is used in section 363(m) of the Bankruptcy Code and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Purchaser, unless such authorization is duly stayed pending such appeal. Purchaser is a purchaser in good faith, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

17.    The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their affiliates, their respective estates, Purchaser and its affiliates, and the successors and assigns of each of the foregoing, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any Chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

BA119

18.     The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety. To the extent any terms of this Order are in conflict with any provisions of the Agreement, the terms of the Order shall control.

19.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties; and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' respective estates.

20.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order. The Debtors irrevocably waive any right to seek any modification of this Order without the prior written consent of the Purchaser, and no such consent shall be implied by any other action, inaction or acquiescence by the Purchaser.

21.     As provided by Fed. R. Bankr. P. 7062, this Order shall be effective and enforceable immediately upon entry. The provisions of Fed. R. Bankr. P. 6004(d) and 6004(g) staying the effectiveness of this Order for 10 days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Agreement, immediately upon entry. Time is of the essence in closing the transaction and parties to the Agreement shall be authorized to close the sale as soon as possible consistent with the terms of the Agreement. Any parties objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk their appeal being foreclosed as moot.

WP3:861004.3                                                                 59519.1001

BA120

22.    This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

23.    This Court retains jurisdiction to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (b) interpret, implement, and enforce the provisions of this Order, and (c) consistent with paragraph 15 of this Order, determine the allocation of Sale Proceeds among the Debtors.

24.    Nothing contained in any plan of reorganization without regard to whether it is a liquidating plan of reorganization confirmed in these cases or the order of confirmation confirming any plan of reorganization without regard to whether it is a liquidating plan of reorganization shall conflict with or derogate from the provisions of this Order. Further, the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of an

WP3:861004.3                                                                59519.1001

BA121

order confirming any plan of reorganization of the Debtors or converting the Debtors' cases from

Chapter 11 to cases under Chapter 7 of the Bankruptcy Code.

Dated: Wilmington, Delaware
        February 24, 2003

                                        _____
                                        United States Bankruptcy Judge

14

BA122

# EXHIBIT A

ASSET PURCHASE AGREEMENT

[OMITTED]



# EXHIBIT B

BA124

## Objections to Assumption and Assignment and Cure Amounts

| Objecting Party | Nature of Objection | Cure Amount | Resolution |
|---|---|---|---|
| Budget Rent A Car (Blackpool)<br>Mr. Paul Ellis<br>434 Waterloo Road<br>Blackpool<br>Lancashire<br>United Kingdom | Cure Amount;<br>Reservation of Rights | £ 27,267.00 | Resolved: £ 27,267.00 Net Cure Amount balance due from BRACII |
| Budget Rent A Car (Cambridge)<br>Buttress & Buttress<br>Mr. Martin Buttress<br>303-305 Newmarket Road<br>Cambridge CB5 87E<br>United Kingdom | Cure Amount | £ 3,332.78 | Unresolved |
| Budget Rent A Car<br>(Exeter/Plymouth Totnes)<br>Informled Limited<br>Mr. D Dart<br>Marsh Green Road West<br>Marsh Barton Trading Estate<br>Exeter<br>Devon EX2 8PY<br>United Kingdom | Cure Amount;<br>Assumption and Assignment-<br>Unresolved Breaches under<br>IPLA | Net Cure Amount of<br>£ 12,727.91 | Unresolved |
| Budget Rent A Car (Maidenhead)<br>Shamboss Limited<br>Parmod Sharma<br>18 Forlease Road<br>Maidenhead SL6 1RU<br>United Kingdom | Cure Amount | Net Cure Amount of<br>£ 35,671.49 | Unresolved |

BA125

| Contract Party | Nature of Objection | Net Cure Amount | Resolution |
|---|---|---|---|
| Budget Rent A Car (Milton Keynes)<br>Yareliest Limited<br>Mr. Richard Jeeves<br>Bradbourne House,<br>Bradbourne Drive<br>Tilbrook,<br>Milton Keynes MK7 8AT<br>United Kingdom | Cure Amount;<br>Assumption and Assignment-<br>(i) Unresolved Breaches under<br>License Agreement;<br>(ii) Recognition of Royalty<br>Free Holiday by Avis Europe<br>plc and (iii) Avis Europe plc<br>Competition Issues | Net Cure Amount of<br>£ 37,687.64 | Unresolved |
| Budget Rent A Car (Putney)<br>Boulogys Limited<br>Mr. Joe Cocy<br>152 Upper Richmond Road<br>Putney<br>London SW 15 2SW<br>United Kingdom | Cure Amount;<br>Assumption and Assignment-<br>(i) Recognition of Royalty<br>Free Holiday by Avis Europe<br>plc (ii) and Avis Europe plc<br>Competition Issues | Net Cure Amount of<br>£ 8,739.30 | Unresolved |
| Budget Rent a Car Belux<br>Holland Car Leasing Belgium NV<br>Frank Van Gool<br>Avenue Louise 327<br>1050 Brussels<br>Belgium | Cure Amount<br>Currency of Cure Amount | £ 33,879.55,<br>US $55,540.25 | Resolved: £ 32,711.10 Net<br>Cure Amount balance due from<br>BRACII |
| Budget Rent a Car Denmark<br>H.C.L. Denmark ApS<br>Claus Hansen<br>Helgolandsgade 2<br>1653 Kobenhavn V<br>Denmark | Cure Amount | DKK 277,054.36 | Resolved: £17,488.29 Net Cure<br>Amount balance due from<br>BRACII |

2

| CONTRACT PARTY | Cure Amount; Currency of Cure Amount | Cure Amount; Currency of Cure Amount | Net Cure Amount | Resolution |
| --- | --- | --- | --- | --- |
| Budget Rent a Car Finland Holland Car Leasing Finland Oy Leonard von Knorring Malminkatu 24 00100 Helsinki Finland | | Currency of Cure Amount | Net Cure Amount of US $6,799.05, € 24,839/24 | Resolved: £ 6,281.65 Net Cure Amount balance due from BRACII |
| Budget Rent A Car Norway Ernst-Harald Hjelseth S.H. Lundis vei 17 0287 Oslo Norway | | Currency of Cure Amount | Not Applicable | Resolved: £ 68,292.42 Net Cure Amount balance due from BRACII |
| Jacban Limited Mr. Andrew Rees Welcome House 999 Wolverhampton Road Oldbury West Midlands B69 4RJ United Kingdom | | Cure Amount; Assumption and Assignment-Unresolved Breaches under International Prime License Agreements ("IPLAs") | Net Cure Amount not to exceed US $ 4,500,000 | Unresolved |

3

CO 36:192643