# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs and Counterclaim Defendants, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, | |
| Defendant and Counterclaim Plaintiff. | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

Plaintiffs, including Debtor Budget Rent-A-Car International, Inc. ("BRACII"), by their undersigned attorneys, hereby respectfully submit this Reply in support of their Motion to Strike Defendant's Answer, Affirmative Defenses and Counterclaims.[1]

Jaeban (U.K.) Limited ("Jaeban UK") has not responded to the Motion to Strike; its Answer and Affirmative Defenses should be stricken. Ibrahiem Jaeban has filed an Opposition to the Motion, but as an "assignee" of Jaeban UK. He has not intervened in this proceeding and, in any event, his assignment is invalid under three applicable anti-assignment provisions. His Opposition is therefore not properly before the Court. Even if his Opposition is

---

[1] The Motion was captioned Plaintiff's Motion to Strike Defendant's Counterclaims Due to Defendant's Refusal to Participate in this Proceeding but, on pages 1 and 12 of the Motion, requested that the Court strike Defendant's entire pleading.

considered, Mr. Jaeban is bound by his assignor's misconduct and his own conduct. Given the

prejudice that Plaintiffs have suffered and will continue to suffer, their Motion should be granted.

## ARGUMENT

**I.    THE JAEBAN RECEIVERS' INVALID ASSIGNMENT TO MR. JAEBAN PROVIDES FURTHER GROUNDS FOR STRIKING JAEBAN UK'S PLEADING.**

### A.    No Party to this Action Has Opposed the Motion.

Defendant Jaeban UK has not filed an Opposition to Plaintiffs' Motion. The

Opposition was filed only by "Ibrahiem Jaeban, assignee of Defendant Jaeban (U.K.) Limited."

Opp. 1; *see id.* at 11 n.3; 12-13. Mr. Jaeban claims that the assignment was limited to Jaeban

UK's counterclaims.[2] Jaeban Aff., ¶ 14; *see* Opp. 11 n.3. Accordingly, no opposition has been

filed on behalf of Jaeban UK as Defendant to Plaintiffs' £3,006,090.10 claim. Because Jaeban

UK failed to retain Delaware counsel and file a response by February 23, 2004 as the Court

directed (*see* Opp. 5), Jaeban UK's Answers and Affirmative Defenses should be stricken and a

default judgment entered in favor of Plaintiffs.

Mr. Jaeban, a citizen of the United Kingdom, has filed an Opposition, but is not a

party to this proceeding and has not moved to intervene. Because he has not done so, he has no

standing to participate.[3] *See SEC v. Heartland Group, Inc.*, 2003 U.S. Dist. LEXIS 461, at *7-*8

(N.D. Ill. 2003). Based on his non-party status alone, his Opposition must be disregarded and

Jaeban UK's counterclaims should be stricken as well.

---

[2] A copy of the February 20, 2004 Deed of Assignment is attached *infra* as Exhibit A. Under Clause 2.2 of the document, Mr. Jaeban in fact seems to have taken on responsibility for Jaeban UK's liability to Plaintiffs as well; Mr. Jaeban agreed to be "responsible for all costs . . . , claims and expenses and administrative issues arising in respect of the Claim." For purposes of this Motion only, Plaintiffs accept Mr. Jaeban's characterization, but reserve their right to hold Mr. Jaeban responsible for Jaeban UK's liabilities if the assignment is recognized

[3] Moreover, as the assignee of a disputed assignment, Mr. Jaeban is an indispensable party under Bankr. R. 7019 and Fed. R. Civ. P. 19. *See Tracfone Wireless, Inc v. US/Intellicom, Inc.*, 202 F.R.D. 321, 323-24 (S.D. Fla. 2001) (because assignment was disputed, defendant faced inconsistent judgments unless both assignor and assignee of patent claim were present).

BA152

**B.**     **The Assignment Is Invalid; Further Litigation on the Counterclaims Would be Pointless.**

Jaeban UK's purported assignment of its Counterclaims to Mr. Jaeban violates three different provisions of agreements with BRACII. On March 5, 2001, Mr. Jaeban, Jaeban UK, and BRACII entered into the Umbrella Agreement (Complaint, Ex. B) and International Prime License Agreement ("IPLA") (Umbrella Agreement, Schedule 5) that were the basis of Plaintiffs' Motion for Partial Summary Judgment.[4] Clause 4.3 of the Umbrella Agreement provides:

> The parties to this Agreement other than Budget [i.e., BRACII] shall not have the right to assign or otherwise dispose of this Agreement **or their interest in this Agreement** without the **prior written consent** of Budget.

Clause 2.6 of the Umbrella Agreement provides:

> Each party agrees to procure that, without prejudice to the provisions of Clause 4.3, its transferees and assignees, shall **as a condition precedent to any transfer or assignment to them execute a document is such form as Budget may reasonably require by which such transferee or assignee effectively assumes all its assignor's and transferor's obligations and undertakings hereunder in favour of the other Parties hereto with effect from the date of assignment or transfer.** The assigning or transferring party shall remain liable for his or its obligations hereunder prior to the date of such transfer or assignment. Transfer or assignment shall for the purposes of this Clause include sale, gift, contribution, assignment or other disposal.

Paragraph 12.2(a) of the IPLA provides (in relevant part):

> **None of this Agreement,** the Beneficial Ownership of Licensee or Licensee's BRAC business, or any company within the Group of which Licensee is a member may be voluntarily, involuntarily, directly or indirectly sold, actually or contingently, assigned or otherwise transferred by Licensee (including . . . by operation of law through a divorce or other legal proceeding), **without the prior written consent of Budget [i.e., BRACII] in accordance with this Agreement** . . . . Any such attempted or purported sale, assignment or transfer contrary to the

---

[4] The Umbrella Agreement and its schedules were authenticated by Mr. Wile's affidavit in support of Plaintiffs' Motion for Partial Summary Judgment.

BA153

terms and conditions of this Agreement or the Transfer Requirements shall constitute a breach hereof and be void.

(Emphasis added.)

Both the Opposition and the Deed of Trust fail to mention these provisions, but the provisions exist and are binding all the same.   Affidavit of Patrick Corr, ¶ 5.[5]  BRACII has not consented, in writing or otherwise, to this assignment, which therefore violates Clause 4.3 of the Umbrella Agreement and Paragraph 12.2(a) of the IPLA.  While the Deed of Assignment can be read otherwise (see n.2, supra), Mr. Jaeban asserts he has not assumed Jaeban UK's liabilities to BRACII – and thereby alleges a breach by Jaeban UK of Clause 2.6 of the Umbrella Agreement.

These anti-assignment provisions were not affected by the appointment of the Jaeban Receivers.  The Umbrella Agreement, the IPLA, and the Deed of Assignment are governed by English law.  English law does not permit the Jaeban Receivers or a future liquidator of Jaeban UK to disregard or override these provisions.  Corr Aff., ¶ 6.

Jaeban UK's three counterclaims either arise directly under the Umbrella Agreement and IPLA or (in the case of Count III) a purported BRACII guarantee given "[i]n consideration of Jaeban entering into the ILPA [sic]."  Counterclaims, ¶ 38.  The anti-assignment provisions apply with full force and have been breached.[6]  As a result, Mr. Jaeban lacks standing to proceed

---

[5] Mr. Corr's Affidavit is attached infra as Exhibit B.  Copies of English decisions cited by Mr. Corr or in this Reply are attached as Exhibit C.  As noted in Plaintiff's Motion for Partial Summary Judgment, Mr. Corr is an English solicitor specializing in corporate reorganizations and a partner in the London office of Sidley Austin Brown & Wood LLP.

[6] It is sufficient that they preclude assignment of Count I, which claims that BRACII "has breached the IPLA," Counterclaims, ¶ 44, and seeks unspecified damages.  Counts II and III, while no less subject to the anti-assignment provisions, identify a total of £470,905.29 in damages.  (Technically, Count III seeks "not less than £421,180.82 " Id., ¶ 58)  Jaeban UK has now failed to oppose sanctions in defending BRACII's claim for £3,006,090.10.  Because Plaintiffs should soon have a judgment for over £3,000,000, no purpose would be served by prolonging this action.

BA154

in this matter and oppose Plaintiffs' Motion. Jaeban UK's entire pleading should therefore be stricken.

## II.    MR. JAEBAN'S OPPOSITION AND AFFIDAVIT FURTHER DEMONSTRATE WHY JAEBAN UK'S PLEADING SHOULD BE STRICKEN.

Even assuming that Mr. Jaeban could be present before the Court to the limited extent he would like to be, Mr. Jaeban is bound by Jaeban UK's willful misconduct and his own hands are not entirely clean. His Opposition and Affidavit are persuasive only in further showing that Jaeban UK's pleading should be stricken.

### A.    <u>Mr. Jaeban Is Bound By the Jaeban Receivers' Conduct.</u>

Without citing any legal basis, Mr. Jaeban's Opposition assumes that he is somehow excused from the consequences of Jaeban UK's repudiation of its responsibilities to this Court. It is instead black-letter law in England and the United States that an assignee is bound by his assignor's conduct. "The ordinary rule is that an assignee of a chose in action under English law cannot be better off than the assignor and so takes the chose assigned to him together with any restrictions attaching to it []." *Glencore International A-G v. Metro Trading International Inc.*, [1999] 2 Lloyds Rep 632, 645 (Queen's Bench Division Commercial Court Nov. 3, 2000) (Ex. C, *infra*). *See, e.g., Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003) (defendant can assert defenses based on assignor's conduct against an assignee of a cause of action).

Here (were the assignment valid), Mr. Jaeban would stand in the shoes of Jaeban UK with respect to its misconduct in this Court. In an analogous context, Judge Posner observed:

> For example, in Illinois a duty of good faith is, as we noted earlier, read into every contract. Can an assignee nevertheless collect a debt based on his assignor's bad

5

> faith?  Surely not.  And if common law doctrines create implied terms that bind
> assignees, so, obviously, should statutory doctrines.

*In re Doctors Hospital of Hyde Park, Inc.*, 337 F.3d 951, 957 (7th Cir. 2003).  *Cf. National Union*

*Electric Corp. v. Matsushita Electric Industrial Co.*, 498 F. Supp. 991, 996 (E.D. Pa. 1980)

(Becker, J.) ("because shares are not negotiable paper, a seller cannot transfer any better litigious

rights than he himself possesses.  If the seller is estopped from maintaining a suit, so too is his

buyer").

There is no reason to treat the "statutory doctrines" of Section 105(a) of the Code

and the eight Federal and local court rules that Jaeban UK has violated any differently.  Plaintiffs

and their creditors have been working to wind up this bankruptcy, yet have spent unnecessary

legal fees and watched $4,500,000 remain in escrow while Jaeban UK repudiated its obligation

to move the case forward.  That injury did not disappear when the Jaeban Receivers purported to

assign the Counterclaims to Mr. Jaeban.

Applying the black-letter principle to Mr. Jaeban is hardly unfair.  He paid a mere

£5,000 upfront for the privilege of pursuing Plaintiffs and maintaining the $4,500,000 escrow.[7]

There is no reason under the Bankruptcy Code to reward him for taking a speculative risk that

Jaeban UK's repeated misconduct would be ignored.

Mr. Jaeban made that £5,000 payment rather than pursue his claim against the

Jaeban Receivers under English law for their negligent failure to preserve Jaeban UK's litigation

---

[7] Mr. Jaeban did agree to pay Jaeban UK 10% of any recovery and to waive a property claim.  The latter is certainly worthless given the lack of assets in the Jaeban UK estate.  *See* Opp. 3.

6

position in this Court.[8] In taking the assignment, Mr. Jaeban indemnified the Jaeban Receivers in full against any claims arising from this proceeding. *See* Ex. A, Cl. 2.2. In effect, Mr. Jaeban has sought to exonerate the Jaeban Receivers and shift the costs of their misconduct back to Plaintiffs, who have been prejudiced and would now have to spend considerable time and money on a case that would otherwise have been dismissed. Having indemnified the Jaeban Receivers for their misconduct, instead of proceeding against them, Mr. Jaeban cannot credibly complain when he is held responsible, as an assignee, for the consequences of their conduct.

**B.**    **Striking the Jaeban UK Pleading Is Fully Justified.**

Of necessity, Mr. Jaeban does not dispute the primary facts showing Jaeban UK's bad faith misconduct. Jaeban UK forced its Delaware counsel to resign for non-payment of fees and refused to retain new counsel. Jaeban UK refused to comply with the January 30, 2004 discovery deadline and apparently never intended to do so. *See* Jaeban Aff., ¶ 9 (Jaeban Receivers determined that Jaeban UK "did not want to agree a timetable for depositions"). Jaeban UK failed to produce documents in response to Plaintiffs' second document requests and failed to supplement its response to Plaintiffs' first document requests, despite its prior Delaware counsel's promise to do so. Any combination of these facts is more than sufficient to justify striking the entire pleading. *See, e.g., Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (failure to file interrogatory answers and pre-trial statement sufficient to justify dismissal of claim).

---

[8] The Opposition (at 3, ¶ 5) and Mr. Jaeban's affidavit (at ¶ 6) argue without any citation that "the Administrative Receivers owe a duty only to the [secured creditor] responsible for their appointment and not to other potential creditors." This is simply false. The Jaeban Receivers had a primary duty to the secured creditor, but they also have a duty to other creditors to use ordinary care to preserve Jaeban UK's assets, Corr. Aff., ¶ 8, and can be sued if they fail to do so. *See Medforth v. Blake*, [2000] Ch. 86 (C.A.) (Exhibit C, *infra*). Unlike Mr. Corr, Mr. Jaeban is not a lawyer, and his "evidence" should be given no weight.

Striking a pleading is, of course, a severe sanction, but not quite as rare in the Third Circuit as Mr. Jaeban might hope. "District court judges, confronted with litigants who flagrantly violate or ignore court orders, *often* have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) (affirming dismissal) (emphasis added). *See, e.g., Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002); *Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 921 (3d Cir. 1992); *Hicks v. Feeney*, 850 F.2d 152, 155 (3d Cir. 1988) (affirming dismissal due to plaintiff's failure to appear for deposition). If the balance of factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d at 868, favor dismissal, then dismissal becomes "a necessary tool to punish parties who fail to comply with the discovery process and deter future abuses." *Mindek*, 964 F.2d at 155 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)). We discuss each *Poulis* factor in turn:

1. **Extent of the Party's Personal Responsibility.** In the Third Circuit's decisions, this factor analyzes whether the party, rather than his counsel, is responsible for the litigation misconduct. *See, e.g., Emerson v. Thiel* College, 296 F.3d at 190; *Hoxworth v. Blinder Robinson & Co.*, 980 F.2d at 920. Mr. Jaeban asserts that Jaeban UK's misconduct occurred "simply because the Administrative Receivers of the Company were in control." Opp. 8. *See, e.g.*, Jaeban Aff., ¶ 11 (Jaeban Receivers decided not "to consider" payment of prior Delaware counsel's fees).

Instead of denying Jaeban UK's responsibility, Mr. Jaeban's sole argument is that his assignor's conduct should not be attributed to him. For the reasons stated above, Mr. Jaeban stands in the shoes of Jaeban UK and cannot purge Jaeban UK's sanctionable conduct with a £5,000 check and an indemnity.

8

2. **Prejudice to Plaintiffs.** Mr. Jaeban simply ignores Plaintiffs' showing of prejudice. *See* Opp. 9. He never mentions the $4,500,000 in funds that remain escrowed as a result of Jaeban UK's misconduct. Plaintiffs have been completely deprived of the benefit of the January 31, 2004 discovery cutoff to which Jaeban UK agreed. The many procedural and substantive issues raised by the invalid assignment will further postpone the outcome, as will all of the necessary discovery, including depositions of the principal witnesses in England that the Jaeban Receivers refused to allow.[9] Much of that discovery will now depend on the not especially plausible cooperation of Jaeban UK under the cooperation clause in the Deed of Assignment. *See* Ex. A, cl. 4.4.

Mr. Jaeban (like Jaeban UK) shows no awareness that this lawsuit is taking place as part of a large and expensive bankruptcy; this is *not* ordinary commercial litigation where both sides will continue in business for the foreseeable future. Time matters; the promise of a streamlined cure process in Paragraph 13 of the Avis Europe plc Sale Order is now a distant memory. *See* Motion at 11-12 & Ex. I. With respect to Jaeban UK, Plaintiffs have now been permanently deprived of the benefit of entering into that Order.

Finally, it is frivolous for Mr. Jaeban to assert that the granting of partial summary judgment to Plaintiffs was a "benefit" to Plaintiffs. *See* Opp. 9. Mr. Jaeban's and Jaeban UK's joint counsel at Wragge & Co. have written Plaintiffs' counsel to explain that Jaeban UK will not comply with the Court's February 4, 2004 immediate turnover order because "[i]t is unlikely that there will be any surplus" once the charge holder and the Jaeban Receivers are paid.[10]

---

[9] While Wragge & Co. produced 2,371 pages and a cd-rom (the "10 lever arch files"), many of them computer printouts, in November 2003, Jaeban UK has still not addressed Plaintiffs' concern that this first production was incomplete, despite its former Delaware counsel's promise to do so. *See* Motion 8 & Exs. F, G.

[10] A copy of a February 27, 2004 letter from Steven D. Allen of Wragge & Co. to Plaintiffs' Counsel, Kenneth E. Wile, is attached as Exhibit D.

BA159

3.    **A History of Dilatoriness.** Jaeban UK's dilatory conduct was spelled out in the Motion and has been recapitulated above.[11]  In one additional respect, both Jaeban UK and Mr. Jaeban were dilatory.  There is no good reason why, if the Jaeban Receivers were unwilling to proceed, Mr. Jaeban did not insist on purchasing the counterclaims before the discovery cutoff.  Instead, the assignment did not occur until after Plaintiffs filed this Motion – and had been unfairly prejudiced.

4.    **Jaeban UK's and Mr. Jaeban Bad Faith and Willful Misconduct.**  Mr. Jaeban does not deny that Jaeban UK acted in bad faith.  *See* Opp. 10 (distinguishing Jaeban UK from Mr. Jaeban).  Jaeban UK repudiated its obligation to participate in this adversary proceeding, yet transparently hoped that the delay in releasing the $4,500,000 escrow would cause Plaintiffs to make an unwarranted settlement.  The Third Circuit has held that failure to pay counsel so as to cause his withdrawal and deliberate failure to cooperate in discovery constitute bad faith under *Poulis. Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 921 (3d Cir. 1992).

It now appears that Jaeban UK's bad faith included deception as well.  On December 30, 2003, Jaeban UK's Delaware counsel, Thomas Briggs, wrote Mr. Wile that he hoped to provide plaintiffs with "dates for depositions" by the first full week of January.  Motion to Strike, Ex. F.  Wragge & Co. was copied on the letter.  *See id.*  We now learn from Mr. Jaeban that, at some point, Wragge & Co. had allegedly instructed Mr. Briggs not to provide Plaintiffs with a timetable for depositions.  Jaeban Aff., ¶ 9.  Wragge & Co. was copied on Mr. Briggs'

---

[11] Mr. Jaeban complains that Plaintiffs have not engaged in additional motion practice by filing motions to compel. But Jaeban UK was required by the once-extended discovery deadline to cooperate in depositions and document productions.  It is also evident that further motion practice would have been futile, given the Jaeban Receivers' lack of interest in maintaining Delaware counsel.

BA160

letter (*see* Motion to Strike, Ex. F), but never contacted Plaintiffs' counsel in London or Chicago to correct the false impression that Jaeban UK would cooperate.

Mr. Jaeban's own inappropriate conduct should also be considered. First, he controlled Jaeban UK when it failed to pay BRACII the £327,944.09 amount that his counsel at Wragge & Co. admitted in May 2003 to be due and owing, even though the IPLA did not entitle him to withhold unliquidated claims as a setoff. *See* Plaintiffs' Motion for Partial Summary Judgment. Now, according to the Jaeban Receivers, BRACII will never collect this amount. *See* Ex. D, *infra*. Second (depending on how the Court treats the invalid assignment issue), he has breached the Umbrella Agreement and IPLA by taking what he knows to be an invalid assignment.

Third, Mr. Jaeban has not disclosed to the Court the personal interest that led to the assignment. Schedule 6 to the Umbrella Agreement is Mr. Jaeban's £500,000 personal guarantee of Jaeban UK's obligations. Mr. Jaeban's token payment for the counterclaims strongly suggests that he has not bought *bona fide* claims, but negotiating leverage – a means of delaying BRACII's pursuit of him. This conduct should not be rewarded.

5.   **Ineffectiveness of Other Remedies.** As noted, it is frivolous for Mr. Jaeban to suggest that the partial summary judgment and turnover order (to which BRACII was entitled on the merits) is a lesser sanction, given his and Jaeban UK's admissions that the turnover order will be ignored for lack of funds.[12] *See* Ex. D, *infra*. Given that lack of funds, there is no sanction short of dismissal that would afford Plaintiffs any relief or deter future misconduct. *See Emerson v. Thiel College*, 296 F.3d 184 at 191 (monetary sanctions ineffective

---

[12]  Equally odd is the assertion that "[t]here is no evidence *in the record*" that Plaintiff "contacted the Receivers." Opp. 11. It's not clear why "without prejudice" settlement discussions should be in the record, but a BRACII Administrator in England had multiple discussions with the Jaeban Receivers  To keep this Reply to a reasonable length, Plaintiffs have not responded to other assertions in the Opposition that are, at best, inaccurate.

11

under *Poulis* where plaintiff proceeding *in forma pauperis*); *Subar, Inc. v. Precision Plastics, Inc.*, 1997 US Dist. LEXIS 12352 (E.D. Pa. 1997) (litigant that issued bad checks unlikely to be deterred by monetary sanctions; dismissal granted).

      6.    **Meritoriousness of the Claim.**  While Jaeban UK's counterclaims set forth the elements of breach of contract (as *Poulis* requires), they do not present a reason for prolonging this litigation. Unlike the absence of a *prima facie* case, the existence of a *prima facie* claim is only a "neutral" factor under *Poulis. See Hoxworth v. Blinder Robinson & Co.*, 980 F.2d at 922; *Subar, Inc. v. Precision Plastics, Inc.*, 1997 U.S. Dist. LEXIS 12352 at *8 (factor is of limited practical utility) .

      Mr. Jaeban, however, faces a separate issue because the assignment is *prima facie* invalid. Given the confusion and delay that the assignment issue will entail and the strong likelihood he will not prevail, this factor counsels heavily in favor of dismissal, rather than subjecting Plaintiffs and their creditors to protracted, but pointless proceedings.

      7.    **The Need for Deterrence.**  There is an additional factor not listed in *Poulis* but now raised by the purported assignment and Mr. Jaeban's disclosures regarding the conduct of the Jaeban Receivers. In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) (cited by Mr. Jaeban, Opp. 7-8), the Supreme Court affirmed the importance of dismissal as an available discovery sanction not only to punish a current litigant's misconduct, but to deter future misconduct.[13]  *See Subar, Inc. v. Precision Plastics, Inc.*, 1997 US Dist. LEXIS 12352, at *7-*8 (E.D. Pa. 1997) (for litigants unaffected by monetary sanctions,

---

[13] *See* 427 U.S. at 639: "If the decision of the Court of Appeals [to reverse the dismissal of respondent's antitrust complaint] remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all the future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts."

BA162

dismissal of pleading "will also serve to deter others from engaging in similar conduct" under *National Hockey League).* Here, an effective sanction is necessary to (a) deter other foreign litigants from deciding that compliance with court rules and orders is for them to determine, *see* Opp. 5 (appointment of Delaware counsel was "an issue for the Receiver" to decide) and (b) persuade litigants that they cannot commit sanctionable conduct and then profit to any degree from a last-minute assignment and an indemnity.

**CONCLUSION**

For the foregoing reasons and the reasons stated in its Motion, Plaintiffs respectfully request that the Court enter an Order striking Jaeban's Answer, Affirmative Defenses and Counterclaims and granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: March 5, 2004

Respectfully submitted,

**SIDLEY AUSTIN BROWN & WOOD LLP**

Larry J. Nyhan
Kenneth E. Wile
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Robert S. Brady (Bar No. 2847)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Counsel for Debtors and Debtors-in-Possession
BRAC Group, Inc., et al.

13

**Exhibit A**

BA164

DATED 20 FEBRUARY 2004

JAEBAN (UK) LIMITED
(in administrative receivership)                    (1)

IBRAHIEM JAEBAN                                     (2)

DEED OF ASSIGNMENT

OF CLAIM AGAINST

BRAC GROUP INC et al



Wragge&Co

Wragge & Co LLP is a Limited Liability Partnership

**Birmingham London Brussels**

Tel +44 (0)870 903 1000   Fax +44 (0)870 904 1099   mail@wragge.com   www.wragge.com

WRAGGE2 #4341277 v2 (JQW)

BA165

THIS DEED OF ASSIGNMENT is made on ..20 FEBRUARY...., 2004 and made

**BETWEEN:**

(1)     **JAEBAN (UK) LIMITED** (in administrative receivership) (company registered number 01984294) c/o RSM Robson Rhodes, Centre City House, 7 Hill Street, Birmingham B5 4UU (the "**Assignor**") acting by its administrative receivers **John Neville Whitfield** and **Gerald Clifford Smith** of **RSM Robson Rhodes LLP**, Centre City Tower, 7 Hill Street, Birmingham, B5 4UU (the "**Receivers**");

(2)     **IBRAHIEM JAEBAN** of Forth House Farm, Isel, Near Cockermouth, Cumbria, CA13 9SA (the "**Assignee**")

**WHEREAS:**

(A)     The Receivers were appointed administrative receivers of the Assignor by an appointment dated 20 October 2003 pursuant to a debenture dated 6 August 2003 made between the Assignor and Close Invoice Finance Limited.

(B)     The parties to this Deed have agreed, in light of the administrative receivership of the Assignor, that the Assignor will, subject to the terms of this Deed, assign to the Assignee its claim against BRAC Group Inc, et al (formerly known as Budget Group Inc) and the benefits and proceeds arising from such claim.

**NOW THIS DEED WITNESSES as follows:**

**1       Interpretation**

1.1     Clause headings are inserted for convenience of reference only and shall be ignored in the interpretation of this Deed.

1.2     In this Deed, unless the context otherwise requires:

(a)     references to clauses and the schedule are to be construed as references to the clauses of this Deed of Assignment;

(b)     references to (or to any specified provision of) this Deed or any other document shall be construed as references to this Deed, that provision or that document as in force for the time being and as amended in accordance with the terms thereof or, as the case may be, with the agreement of the relevant parties;

(c)     words importing the plural shall include the singular and vice versa.

1.3     "**Claim**" means such right, title and interest (if any) as the Assignor may have to a claim against BRAC Group Inc (formerly known as Budget Group Inc) and other companies as specifically described in United States Bankruptcy Court District of Delaware case number 02-12152 (CGC);

1.4     "**Purchaser Price**" means the sum of £5,000 plus VAT.

WRAGGE2 #4341277 v2 [JQW]

**BA166**

**2**    **Assignment**

2.1    In consideration of the Assignee agreeing to the conditions described in clauses 2.2, 2.3 and 2.4 and of the Assignee paying the Purchase Price in accordance with clause 3.4 and the amount described in clause 2.3, the Assignor hereby agrees to assign to the Assignee absolutely, unconditionally and irrevocably such right, legal and beneficial title and interest as it has (if any) in the Claim.

2.2    The Assignee acknowledges that it shall be responsible for all costs (other than the Receivers' legal costs and the costs of the Receivers' other agents incurred prior to the date hereof), claims and expenses and administration issues arising in respect of the Claim including those which may have arisen prior to the date of this Deed of Assignment. In relation to legal costs, the Assignee shall be responsible for its own legal costs incurred in pursuing the Claim and also for any costs (whether adverse costs or otherwise) awarded against it or any third party as a consequence of pursuing the Claim. Without prejudice to the generality of the foregoing the Assignee agrees fully and effectually to indemnify and keep indemnified the Assignor and each of the Receivers from and against all claims losses proceedings damages sums and expenses from time to time paid or payable incurred or suffered by the Assignor and/or each of the Receivers or any of them in respect of any claims in relation to the Claim whether arising directly or indirectly from it.

2.3    The Assignee agrees that in respect of any sums payable to it (or to any successors in title of the Assignee or to any third party to whom the Assignee subsequently assigns its interest in the Claim) by any other party to the Claim (whether such sums are payable following judgment by the court or settlement by the parties involved) (the **"Settlement Sum"**) the Assignee will pay to the Assignor within 7 days of receipt an amount equal to 10% of the amount representing the total Settlement Sum less costs and expenses necessarily incurred by the Assignee in pursuing the Claim (to the extent that such costs and expenses are payable by the Assignee). Pending such payment to the Assignor such amounts shall be held on trust by the Assignee for the benefit of the Assignor.

2.4    The Assignee agrees to waive any claim or right to payment it might have under, or in connection with, a licence granted by it in the Assignor's favour in relation to property at 999 Wolverhampton New Road, Oldbury, Warley, West Midlands.

2.5    In default of payment on its due date of any sum payable hereunder to the Assignor or the Receivers or either of them the Assignee shall pay interest to the Assignor or the Receivers as the case may be on the amount outstanding for the time being at the rate of 6% per annum above the base rate of Barclays Bank PLC for the time being in force from the date on which such sum became due until payment of such sum in full.

2.6    This Assignment takes effect on and from the date hereof.

**3**    **Completion**

3.1    Completion of the assignment hereby agreed shall take place on the date hereof at the offices of the Receivers' solicitors or such other place as the parties shall agree whereupon:

3.2    The Assignee shall deliver to the Receivers who shall receive the same on behalf of the Assignor a duplicate of this Agreement duly executed by the Assignee.

3.3    The Assignor shall deliver to the Assignee a duplicate of this Agreement executed by the Assignor.

3.4    The Purchase Price shall be paid by the Assignee to the Receivers who shall receive the same on behalf of the Assignor on or before 31 March 2004.

**4       Further Assurance**

4.1    The Assignor agrees to provide the Assignee with all reasonable assistance to enable the Assignee to obtain full benefit of the assignment contained herein. In particular, the Assignor agrees that at any time and from time to time up to the earlier of: three months from the date hereof; and the Receivers or either of them ceasing to act as administrative receivers of the Assignor, upon the written request of the Assignee and at the Assignee's cost, it will promptly and duly execute and deliver to the Assignee any and all such further instruments and documents and promptly take all such further action as the Assignee may reasonably deem desirable for it to obtain the full benefit of the assignment contained herein.

4.2    Within 21 days of the date of this agreement, the Receivers and the Assignor agree to deliver up to the Assignee all relevant and necessary documentation to enable the Assignee to obtain the full benefit of the assignment contained herein.

**5       Limitation on Liability**

5.1    The parties hereto hereby agree that neither the Receivers nor either of them nor their firm nor their staff employees agents or advisors shall incur any personal liability under this Assignment or under or in relation to any associated arrangements whether such liability would arise under statute or otherwise howsoever.

5.2    No claim may be brought against the Assignor under or in connection with this Assignment unless such claim is formulated and made within one year of the date hereof and either the amount payable in respect of such claim are instituted by the Assignee and served on the Assignor within such period.

5.3    The Assignee shall not be entitled to set off any claims it might have against the Assignor or the Receivers against any moneys payable to the Assignor or the Receivers pursuant to the provisions of this Assignment but such moneys shall be paid forthwith in full to the Assignor or the Receivers upon the same being due without set off counterclaim or any other deduction of any nature.

**6       Counterparts**

6.1    This Assignment may be executed in any number of counterparts and by the different parties to this Deed on separate counterparts, each of which when executed and delivered shall be an original, but all the counterparts shall together constitute one and the same instrument.

**7**   <u>Governing Law and Jurisdiction</u>

7.1   This Deed shall be governed by and construed in accordance with English law and any disputes arising hereunder shall be subject to the exclusive jurisdiction of the English Courts.

IN WITNESS whereof the parties hereto have caused this Assignment to be duly executed as a Deed the day and year first above written.

**EXECUTED** as a **DEED**                                          )
By JOHN NEVILLE WHITFIELD                   )
as Joint Administrative Receiver (without        )
personal liability) for and on behalf of          )
**JAEBAN (UK) LIMITED**                            )
in the presence of:

Witness Signature: V Whitfield

Witness Name: VICTORIA WHITFIELD

Witness Address: 24 HARTNELL CLOSE

Witness Occupation: CUSTOMER SERVICE PROFESSIONAL


**EXECUTED** as a **DEED** by                    )
**IBRAHIEM JAEBAN**                                )
In the presence of:

Witness Signature: ....................................

Witness Name: ....................................

Witness Address: ....................................

Witness Occupation: ....................................

WRAG/0/0 34341277 v2 [UQW]

**BA169**

**7**    **Governing Law and Jurisdiction**

7.1    This Deed shall be governed by and construed in accordance with English law and any disputes arising hereunder shall be subject to the exclusive jurisdiction of the English Courts.

**IN WITNESS** whereof the parties hereto have caused this Assignment to be duly executed as a Deed the day and year first above written.

**EXECUTED as a DEED**                    )
**By**                                             )
as Joint Administrative Receiver (without    )
personal liability) for and on behalf of      )
**JAEBAN (UK) LIMITED**                    )
in the presence of:

Witness Signature: …………………………..

Witness Name: ………………………………

Witness Address: ……………………………..

Witness Occupation: ………………………….


**EXECUTED as a DEED** by                )
**IBRAHIEM JAEBAN**                        )
In the presence of:

Witness Signature: ……*Rebecca*……………..

Witness Name: ….Rebecca…Jaeban…

Witness Address: ..Faith. House. Farm. Isel

Witness Occupation: …Accounts…Clerk.

**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs and Counterclaim Defendants, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, | |
| Defendant and Counterclaim Plaintiff. | |

## AFFIDAVIT OF PATRICK CORR

I, Patrick Corr of One Threadneedle Street, London EC2R 8AW Make Oath and Say as follows:

1.       I am a Partner in the London office of Sidley Austin Brown & Wood LLP and am
         qualified as a solicitor in England and Wales.  I practice in the Firm's International
         Corporate Reorganisation Group and am familiar with the laws and rules that govern
         receiverships, liquidations and administrations under English law, including the
         provisions of the Insolvency Act 1986.

1

BA172

2.    The facts and matters deposed to herein are either within my own knowledge and are
      true or are derived from the documents, books and records of Budget Rent-A-Car
      International, Inc. ("BRACII") and I believe the same to be true.

3.    My firm and I act on behalf of Simon Vincent Freakley and Gurpal Singh Johal (the
      "Administrators") in their capacity as joint administrators of BRACII. My colleagues
      and I have advised the administrators on various matters relating to the English
      administration and the Delaware bankruptcy, including BRACII's rights in this
      adversary proceeding against Jaeban (U.K.) Limited ("Jaeban UK").

4.    In connection with this adversary proceeding, I have reviewed the Umbrella
      Agreement among BRACII, Jaeban UK and Mr. I.M. Jaeban, including Schedule 5
      (the International Prime License Agreement (the "IPLA") and Schedule 6 (Mr.
      Jaeban's Personal Guarantee to BRACII).

5.    Clauses 2.6 and 4.3 of the Umbrella Agreement and Paragraph 12.2(a) of the IPLA
      are anti-assignment provisions. In my opinion, an English court would enforce these
      provisions so as to invalidate an assignment of any chose in action of Jaeban UK
      against BRACII arising out of the Umbrella Agreement or IPLA if Jaeban UK had
      not obtained the prior consent of BRACII (see the decision of the House of Lords in
      *Linden Gardens Trust Ltd v. Lenesta Sludge Disposals Ltd and Others* [1994] AC
      85).

6.    Jaeban UK remains bound by these provisions. The Administrative Receivers of
      Jaeban UK (the "Jaeban Receivers") have no power to override these provisions.

2

BA173

7.   I have reviewed Mr. Jaeban's affidavit attached to his Opposition to Plaintiffs'
     Motion to Strike.  Mr. Jaeban is in error when he states (in Paragraph 6 of his
     affidavit) that, "Under English Law, the Administrative Receivers owe a duty *only* to
     the charge holder responsible for their appointment and not to other potential
     creditors."

8.   While the Jaeban Receivers (like other administrative receivers) owe their primary
     duty to the chargeholder responsible for their appointment, they have duties to Jaeban
     UK's other creditors.  These duties include the duty to act in good faith and a general
     duty to use reasonable care in preserving the assets of Jaeban UK (*Medforth v. Blake*
     [2000] Ch 86).

9.   Under English law an assignee of a chose in action cannot be better off than the
     assignor, and so takes the chose in action subject to and together with any restrictions
     attaching to it (*Glencore International A-G v. Metro Trading International, Inc.*
     [1999] 2 Lloyds Rep 632).

SWORN at Buckenham Hue 83 Corner de Corder Ref
this 5th day of March 2004
Before me
Solicitor

CHRISTOPHER LINNOTT
Parnington,

3

**BA174**

## Exhibit C

*Glencore International A-G v. Metro Trading International Inc.*, [1999] 2 Lloyds Rep 632, 645 (Queen's Bench Division Commercial Court Nov. 3, 2000)

*Linden Gardens Trust Ltd. v. Lenesta Sludge Disposals Ltd.*, [1994] 1 A.C. 85 (H.L. 1993)

*Medforth v. Blake*, [2000] Ch. 86 (C.A.)

[These decisions have been submitted separately with the unpublished opinions cited in BRACII's brief.]

## Exhibit C

*Glencore International A-G v. Metro Trading International Inc.*, [1999] 2 Lloyds Rep 632, 645 (Queen's Bench Division Commercial Court Nov. 3, 2000)

*Linden Gardens Trust Ltd. v. Lenesta Sludge Disposals Ltd.*, [1994] 1 A.C. 85 (H.L. 1993)

*Medforth v. Blake*, [2000] Ch. 86 (C.A.)

[These decisions have been submitted separately with the unpublished opinions cited in BRACII's brief.]

**Exhibit D**

# Wragge&Co

**27 February 2004**

Your reference:
Our reference:    ICW/SDA/1868889
Page(s) transmitted (including this page): 2

## Fax Message

| | |
|---|---|
| **To** | **Kenneth E. Wile** |
| **Tel** | **001 312 853 2081** |
| **Fax** | **001 312 853 7036** |
| **From** | **Steven D Allen** |

Reply to:
55 Colmore Row
Birmingham  B3 2AS
DX 13036 Birmingham 1

Dear Mr Wile

## BRAC Group, Inc., et al., v. Jaeban (UK) Limited ("Jaeban") Adv. No. 03-A-54271 (Bankr. D. Del)

3 Waterhouse Square
142 Holborn
London EC1N 2SW
DX 282 LDE

Thank you for your letter of 6 February 2004.

I write to advise that in accordance with my undertaking given to the court on the 4th February 2004, I immediately notified a representative of the Administrative Receivers of the Order of HHJ Case, which granted BRAC11 partial summary judgment in the sum of £327,944.09 plus prejudgment interest.

Rond Point Schuman 9, bte 4
B-1040 Brussels
Belgium

I am advised that the Joint Administrative Receivers have now dealt with the charged assets in order to satisfy the outstanding monies due to the charge holder. It is unlikely that there will be any surplus and there is a prospect that Jaeban will be placed into liquidation when the Joint Administrative Receivers resign their office. Accordingly, Jaeban will probably not be in a position to comply with the Turnover Order. If your require anything further in this regard, I suggest that you contact the Receivers directly. Their address is GC Smith and JN Whitfield, RSM Robson LLP, Centre City Tower, 7 Hill Street, Birmingham, B5 4UU.

T +44 (0) 870 903 1000
F +44 (0) 870 904 1099
mail@wragge.com
www.wragge.com

Wragge & Co LLP
is registered in
England and Wales as a
Limited Liability Partnership
Registered no  OC304378

Finally, I would advise that by virtue of a Deed of Assignment dated 20th February 2004, Jaeban's claim against BRAC Group Inc., et al., has been assigned to Ibrahiem Jaeban. Mr Jaeban has retained Delaware Counsel, namely Mr Brian A. Sullivan of Werb & Sullivan to act on his behalf and we have been re-retained by Mr Jaeban to assist in the action.

Registered office:
55 Colmore Row
Birmingham  B3 2AS

Yours sincerely

Steven D Allen

Wragge & Co LLP
is regulated by
the Law Society
of England and Wales

A list of members of
Wragge & Co LLP
is open to inspection at
the registered office



in association with
Graf von Westphalen Bappert & Modest    www.westphalen-law.com
Berlin  Brussels  Cologne  Dresden  Freiburg  Hamburg  Munich  Vienna

WRAGGE2 #4352096 v1 [SDA]

Wragge & Co        2/27/04 9:35  PAGE  2/2    Wragge & Co

# Wragge&Co                              **FAX MESSAGE**

**DDI Number: (0121) 629-1870**
**E-mail: steven_allen@wragge.com**

cc Brian A Sullivan Esq – Werb & Sullivan
   Mr M O'Conner - RSM Robson Rhodes

WRAGGE2 #4352096 v1 [SDA]

**BA179**