# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (CGC) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, et al , | |
| Defendants. | |

## BRACII'S MOTION FOR FURTHER SANCTIONS AND OTHER RELIEF DUE TO MR. JAEBAN'S MULTIPLE FAILURES TO COMPLY WITH THE COURT'S MAY 25, 2004 ORDER

Plaintiff Budget Rent-A-Car International, Inc. ("BRACII"), by its undersigned counsel, moves the Court for an Order imposing further sanctions on Mr. Jaeban for his multiple failures to comply with the sanctions provisions set forth in the Court's May 25, 2004 Memorandum Opinion (the "May 25th Order").

The May 25th Order required Mr. Jaeban both to fill in the gaps in the first document production and comply with Debtors' second document requests by June 18th and threatened further sanctions for noncompliance. Mr. Jaeban has failed, in at least three different respects, to comply with the June 18th deadline.

50.

After BRACII's U.S. counsel traveled to England for depositions in August, Mr. Jaeban disclosed the existence of two large document collections -- one at the offices of the Receivers of Jaeban (U.K.) Limited ("Jaeban UK") and the other at his former business headquarters, "Welcome House" in Oldbury, England. These documents have only now been produced to BRACII.

Among the new documents are two letters disclosing the advice of Jaeban UK's counsel to the effect that Jaeban UK did not have viable claims for breach of the Umbrella Agreement and IPLA. Mr. Jaeban's noncompliance and the various newly produced documents will lead to further motion practice and (with the Court's leave) necessary third-party discovery that should have occurred months ago.

Even more troubling, Mr. Jaeban has failed to clarify whether the initial production of documents last fall was subject to undisclosed restrictions that have resulted in additional prejudice to BRACII. Yet another set of belated documents, produced by Mr. Jaeban from the files of Wragge & Co. the night before Mr. Jaeban's deposition in Birmingham, contain an important document that should have been produced last November if the document production had been handled properly. Finally, although document discovery closed more than two months ago, Mr. Jaeban has now served a wide-ranging set of 25 document requests that will delay – and seem intended to delay -- even further the resolution of this proceeding.

Given Mr. Jaeban's multiple failures to comply with the May 25th Order and the necessity of bringing a second sanctions motion in this proceeding, BRACII seeks more severe sanctions. Lesser sanctions have proven ineffective with Mr. Jaeban and have failed to prevent further injury to BRACII and its creditors. In further support of its Motion, BRACII states as

BA186

follows:

## STATEMENT OF FACTS

1.      In ruling on BRACII's motion to strike the counterclaims of Jaeban U.K.,

this Court ordered that, by June 18, 2004, "Mr. Jaeban is to:

    a.      Provide documents in response to Plaintiffs' Second Requests for
        Production of Documents (served on November 18, 2003);

    b.      Respond to concerns raised by Plaintiffs in a letter dated December 12,
        2003 regarding apparent gaps in Jaeban's November production of
        documents."

May 25th Order, ¶ 3. The parties thereafter agreed to a Revised Pre-Trial Scheduling Order that

provided for completion of depositions by August 23, 2004, but did not alter the June 18, 2004

date set in the May 25, 2004 Order or otherwise extend Mr. Jaeban's time to complete his

document production and eliminate gaps in the production that took place in November 2003.

2.      Mr. Jaeban produced one lever arch file of additional documents in June

2004, but gave no indication that additional documents responsive to Debtors' document

requests existed. As a result, BRACII's U.S. counsel flew to England at the end of July 2004 to

begin depositions. Affidavit of Kenneth E. Wile, ¶ 2 (attached *infra* as Exhibit A).

3.      During the week of August 2, 2004, while the parties were preparing for

and taking the first two days of Mr. Jaeban's deposition in Birmingham, BRACII learned that

Mr. Jaeban had failed to comply with the Court's Order in multiple respects as detailed below.

### Failure to Produce the Receivers' Core Files Until August 2004

4.      In England, U.S. counsel for Mr. Jaeban informed BRACII's counsel that

the Jaeban U.K. Receivers still had numerous files at their offices containing documents

responsive to BRACII's two requests for production of documents (Exhibits B and C, *infra*) that

3

the Jaeban U.K. Receivers had never produced to BRACII. Wile Affidavit, ¶ 3.

     5.     Jaeban U.K. never filed objections to the Joint First Request for Production of Documents. *Id.*, ¶ 4.

     6.     The Jaeban UK Receivers initially refused to disclose these documents (Wile Aff., ¶ 5), even though Jaeban U.K. is the party-defendant, is the named counter-claim plaintiff, and retained a 10% interest in any recovery by Mr. Jaeban on those counterclaims.[1]

     7.     On August 9, 2004, BRACII's counsel repeated its demand for immediate production of these files in a letter to Mr. Jaeban's U.S. counsel.[2] Wile Aff., ¶ 6.

     8.     On August 13, 2004, BRACII's counsel was finally permitted to review the Receivers' documents in Birmingham, England. The production included a number of important documents, although it did not contain two important categories: correspondence with Jaeban UK's lenders regarding the financial condition of the company and minutes of company meetings. *See* Wile Aff., ¶ 7. Although indicating that they would deliver these documents to Sidley Austin's London office by August 18, 2004, the Receivers did not deliver the requested copies until August 25, 2004, which has delayed the filing of this Motion. Wile Aff., ¶ 8.

     9.     Among the most significant of these documents are two letters (Exhibits E and F, *infra*), produced to BRACII for the first time. Wile Aff., ¶ 9. These letters directly contradict the gravamen of the allegations of breach of the Umbrella Agreement and IPLA in the Counterclaims.

---

[1] The Receivers apparently required Mr. Jaeban to pay for a privilege review by Wragge & Co. even though, as BRACII's counsel wrote Mr. Jaeban's counsel, Jaeban UK had waived its privilege with respect to the Joint First Document Request by failing to file an objection or other written response. Under the May 25th Order, however, Mr. Jaeban was required to let BRACII know of the existence of these documents by June 18, 2004, and that did not occur.

[2] The extensive, sometimes heated letters between counsel are attached as Exhibit D. *See* Wile Aff., ¶ 6

BA188

a.    An October 15, 2003 letter from Ian Weatherall of Wragge & Co to Michael O'Connor of RSM Robson Rhodes LLP.[3]  Mr. Weatherall, acting for Jaeban UK concludes that, although BRACII is insolvent, Jaeban UK both is and has continued to act as if it is bound by its BRACII franchisee agreements.  This advice contradicts Mr. Jaeban's position in this adversary proceeding that Jaeban UK was no longer bound by those agreements as a result of BRACII's alleged breaches.  Mr. Weatherall accurately describes Mr. Jaeban as "seeking to argue that they can have all the benefit of the franchise agreement without any liabilities."

b.    A January 15, 2004 letter from Mr. Jaeban to the Receivers contesting Mr. Weatherall's apparent advice to the Receivers that the allegations of breach of the Umbrella Agreement and IPLA in the Counterclaims are without merit.  (BRACII will also be filing a Motion to Compel production of all documents reflecting Mr. Weatherall's advice given that (a) Jaeban UK never filed an objection to the Debtors' Joint First Request for Production and (b) both Mr. Weatherall's October 15, 2003 letter and Mr. Jaeban's letter reveals the substance of Mr. Weatherall's advice.)

These documents, among others produced by the Receivers, open up important areas of inquiry that should have been made known to BRACII months ago and certainly by the June 18, 2004 date set forth in the May 25th Order.

**Failure to Produce Mr. Jaeban's Welcome House Documents until August 11, 2004 – and the Subsequent Production of 84 Boxes**

10.    On August 5, 2004, BRACII also learned that Mr. Jaeban had failed to produce to BRACII responsive documents under his control at Welcome House, Jaeban UK's former headquarters in Oldbury, England.  Wile Aff., ¶ 10.

11.    Mr. Jaeban subsequently caused his counsel to deliver 84 boxes of documents (and a whiteboard bearing writing that discussed the contested BMS computer system) to Sidley's London office on August 11, 2004.  *Id.*, ¶ 11.

---

As the letters reflect, Steven Allen has left Wragge & Co. to join the firm of Mills & Reeve.
[3] Because Mr. Weatherall also affirmed the continuing effectiveness of the restrictive covenants in the Umbrella Agreement and IPLA, BRACII has also submitted this letter in support of its Motion for Partial Reconsideration.

5

BA189

12.     Most of these documents were routine business records of limited

relevance. Buried in the 84-box production, however, were Jaeban UK agreements with BRACII

and its former subsidiary, BTI, and other significant documents that should have been produced

in November 2003. *Id.*, ¶ 12. In fact, BRACII requested the additional agreements from Avis

Europe p.l.c. after U.S. counsel arrived in England and thereafter produced them *to Mr. Jaeban*

when the reverse should have occurred by June 18th. *Id.*, ¶ 13.

13.     This production did not include Jaeban UK's communications with HSBC

and other lenders regarding Jaeban UK's financial condition and relationship with BRACII. It

also lacked any records of Jaeban UK company meetings. *Id.*, ¶ 14.

14.     According to Mr. Jaeban's English counsel, Mr. Jaeban withheld certain

documents under the provisions of the Data Protection Act 1998. *See* Ex. D (August 10, 2004

letter from Steven Allen). Section 35 of the Data Protection Act, however, explicitly exempts

documents required in litigation from its protections.[4] BRACII has asked Mr. Jaeban to

reconsider his position with respect to these documents and will file a motion to compel if Mr.

Jaeban is withholding responsive documents. Wile Aff., ¶ 15.

**Possible Discovery Misconduct in Jaeban UK's Initial Document Production**

15.     During the week of August 2, 2004, Mr. Jaeban's U.S. and English

counsel also informed BRACII that Jaeban UK might not have made a proper initial document

production in November 2003. According to counsel, Jaeban UK retained

---

[4] "35. - (1) Personal data are exempt from the non-disclosure provisions where the disclosure is required by or under any enactment, by any rule of law or by the order of a court. (2) Personal data are exempt from the non-disclosure provisions where the disclosure is necessary- (a) for the purpose of, or in connection with, any legal proceedings (including prospective legal proceedings), or (b) for the purpose of obtaining legal advice, or is otherwise necessary for the purposes of establishing, exercising or defending legal rights."

6

BA190

PriceWaterhouseCoopers (PwC) to review documents. In making its review, PwC *may* have made its own determination of what it deemed "relevant" to the Complaint, instead of responding to the document request. Wile Aff., ¶ 16. As noted above, Jaeban UK never filed objections or any other written response to the Joint First Document Request and had no basis, in any event, for culling responsive documents based on its own (or PwC's) notions of "relevance".

16.     Despite repeated demands from BRACII, Mr. Jaeban has failed to tell BRACII whether the November 2003 document production was limited to what PwC deemed to be relevant. *Id.*, ¶ 17. Instead, his counsel has said principally that the document production took place "under the advice and guidance" of Jaeban UK's former Delaware counsel.[5] (Ex. D (August 12, 2004 letter of Steven Allen).) Given Jaeban UK's prior refusal to pay fees, it is unlikely that Delaware counsel flew to England to provide direct supervision of the document production.

17.     Mr. Jaeban's counsel have also been unable to assure BRACII that no documents (including e-mails) were lost or are now unavailable for production as a result of whatever process PwC undertook. Wile Aff., ¶ 18. Even if no responsive documents were lost (despite the absence of, for example, documents showing communications between Jaeban UK and its lenders regarding the financial condition of the company as Jaeban UK's business faltered), BRACII has had to wait nine unnecessary months for documents to be produced in

---

[5]  Mr. Jaeban's counsel also suggested that BRACII should call Mr. Weatherall at Wragge & Co. Wile Aff., ¶ 17; Ex. D, *infra* (August 10, 2004 letter from Steven Allen). Leaving aside the possible conflict between Wragge & Co.'s discontinued representation of Mr. Jaeban (following Mr. Allen's departure for Mills & Reeve) and its continuing representation of Jaeban UK, Paragraph 3(b) of the May 25th Order required *Mr. Jaeban* to answer BRACII's concerns regarding "apparent gaps in Jaeban [UK]'s November production of documents." Moreover, the Deed of Assignment required the Receivers (and, thus, their counsel) to assist Mr. Jaeban, who is fully able to learn the facts. BRACII respectfully requests an answer be provided by U.S. counsel familiar with the requirements of federal discovery practice. *See infra.*

BA191

August 2004.

**Late Production of Documents from the Files of Wragge & Co. – The Credit Pack**

18.    Finally, Mr. Jaeban made a supplemental production of a lever arch file of documents to BRACII at BRACII's U.S. counsel's hotel on August 3, 2004, the day before Mr. Jaeban's deposition began. (This file is in addition to *another* lever arch file produced in June.) BRACII understands that these documents came from the files of Wragge & Co. Wile Aff., ¶ 19.

19.    BRACII nonetheless proceeded with Mr. Jaeban's deposition and with scheduling other depositions until it became aware of the three issues discussed above. *See* Wile Aff., ¶ 20. Apart from one document discussed below, BRACII does not premise this Motion on the late Wragge & Co. production, both because BRACII believes that Mr. Jaeban's U.S. counsel acted in good faith in making the production and because, once BRACII's U.S. counsel arrived in the U.K., he reviewed BRACII's documents and made a production of similar size to Mr. Jaeban.[6] *See* Wile Aff., ¶ 22. BRACII undertook this review although, unlike Mr. Jaeban, it was not under Court order to address gaps in its production.

20.    As part of the Wragge & Co. supplemental production, Mr. Jaeban produced for the first time a document that undermines his entire case and highlights the importance of the communications between Jaeban UK and its creditors missing from the prior productions described above. *See* Wile Aff., ¶ 209. The document is a "Credit Pack" – a

---

[6] As noted above, BRACII's U.S. counsel also obtained from Avis Europe p.l.c. in August 2004 and thereafter produced to Mr. Jaeban the as-yet unproduced additional BRACII-Jaeban UK agreements. BRACII also obtained in August and produced to Mr. Jaeban a copy of the BRACII Operations Manual that BRACII obtained to compare with the manual previously produced by Jaeban UK. Wile Aff., ¶ 22.

BA192

presentation by Jaeban UK to lenders.[7]  The Credit Pack contradicts Mr. Jaeban's claims of material breaches of contract by BRACII in important respects, typified by its statement that Jaeban UK's "strengths" included a "partnership style relationship" with BRACII and the "New BMS system enabling real time management of the business." Ex. G at 16.  The BMS system is one of the items for which Jaeban UK has refused to pay.  *See* Amended Complaint, Ex. C.

   21. The last minute production of this document buttresses the concern that Jaeban UK or PwC made an improper document production in the first place to the apparent detriment of BRACII.  Moreover, given the near absence of lender correspondence discussing Jaeban UK's financial condition, BRACII is now left to seek documents from HSBC, Close Invoice Finance Limited (which caused the appointment of the Administrative Receivers), and possibly other lenders to obtain the correspondence that Mr. Jaeban has yet to identify and produce to BRACII.

### Mr. Jaeban's Belated Demand for Additional Wide-Scale Production from BRACII

   22. In possible retaliation for BRACII's demands to see the unproduced files and its serious concerns about the PwC production (*see* Ex. D (August 10, 2004 and August 12, 2004 letters of Steven Allen), Mr. Jaeban served a set of 25 new document requests on August 20, 2004.  (*See* Exhibit H, *infra*.)  Neither the May 25th Order nor the Agreed Scheduling Order provides for this discovery propounded after depositions were due to have been completed.  While BRACII and Mr. Jaeban's U.S. counsel agreed that neither party would assert the August 23, 2004 deposition deadline against the other, BRACII has not agreed to extend document discovery by Mr. Jaeban.  Wile Aff., ¶ 21.

---

[7] A copy of this document is attached as Exhibit G.  Mr. Jaeban claims that the document is a draft, but (a) the document is probative and (b) his assertion – and his credibility -- certainly need to be tested.

BA193

23.   Many of the requests are patently overbroad.  Request No. 2 demands:

"All documents that constitute, refer to or relate to communications among the Debtors relating to the marketing, business development, and business disposition and asset disposal strategies pursued, or intended to be pursued by BRACII and BTI [BRACII's former operating subsidiary] during the years 1999 through 2003, including any proposed or possible sale outside the ordinary course of business of all or part of BRACII or BTI."

Request No. 14 demands, "All documents [relating] to any decision to seek Administration of BRACII." (Request No. 13 seeks the same for BTI.) Request No. 17 demands all documents related to the collection of "amounts due or alleged to be due to BRACII from U. K. licensees, U. K. Franchisees, Republic of Ireland licensees and Republic of Ireland franchisees, other than Jaeban." Ex. H.

24.   Most of the documents sought are likely to be in the possession of Avis Europe, p.l.c., the purchaser of most of BRACII's operating and many other assets.  Attempting to obtain a large number of documents from a third party will add significantly to the delay and expense BRACII has already faced.  (Mr. Jaeban's ability to have demanded such documents earlier is discussed *infra*.)

## ARGUMENT

**I.   AS THE MAY 25TH ORDER PROVIDES, MR. JAEBAN SHOULD BE SANCTIONED FOR HIS FAILURE TO COMPLY WITH THE ORDER.**

In refusing to strike the Counterclaims, this Court premised the May 25th Order to a substantial degree on Mr. Jaeban's lack of culpability for Jaeban UK's failure to comply with its obligations in this proceeding.  Indeed, Mr. Jaeban's Opposition to Debtors' Motion to Strike promised that, "Jaeban was and is able to *fully* cooperate and move forward with his claims." Motion to Strike at 10 (emphasis added).  The Court nonetheless imposed a first set of limited

10

BA194

sanctions, and the May 25th Order (at 16) concludes with the warning that Mr. Jaeban's failure

> "to meet this deadline [June 18, 2004] will result in an order prohibiting Mr. Jaeban from introducing into evidence (or using in any other way) any documents not so produced and prohibiting testimony from any witnesses not produced for deposition. This is without prejudice to BRAC[II] seeking other sanctions that may be appropriate under the circumstances after the discovery period has elapsed."

Mr. Jaeban's culpability and indifference to the June 18, 2004 deadline is now a matter of record. In direct violation of the May 25th Order, Mr. Jaeban failed to make two critical document productions – or even alert BRACII to the existence of these documents – before the June 18, 2004 deadline or before counsel traveled to England for the August depositions. He has failed to clarify whether Jaeban UK engaged in further discovery misconduct which may have irrevocably prejudiced BRACII – prejudice that might have dramatically altered the analysis of BRACII's Motion to Strike.[8]

The issues engendered by the foregoing will lead to further delay as BRACII has only now been made of aware of the need to file a motion to compel production of Mr. Weatherall's advice that Jaeban UK that has no claim under the Umbrella Agreement and IPLA, seek additional discovery from HSBC and other lenders regarding the Credit Pack and similar communications, and obtain clarification whether PwC actually complied with Debtors' document requests. Mr. Jaeban has not only violated the Court's Order, but deprived BRACII (and BRACII creditors less privileged than Mr. Jaeban) of any possibility of a swift resolution.

Because BRACII has been forced to bring a second sanctions motion and Mr. Jaeban is now clearly at fault, more severe sanctions are now fully justified. The May 25th Order anticipated the more severe sanction of document and witness preclusion (May 25th Order at 16),

11

but it is BRACII, not Mr. Jaeban that needs to make use of the delayed documents and it is BRACII that has been prejudiced by the absence of any documents for which Mr. Jaeban is unable to account. In keeping with the Court's Order, BRACII respectfully requests that the Court order the following relief.

## I.    THE COUNTERCLAIMS SHOULD BE STRICKEN.

When the Court considered BRACII's Motion to Strike the Counterclaims, there was no evidence of culpable conduct by Mr. Jaeban and the Court concluded, in the absence of such evidence, that there were "other sanctions that will adequately protect the interests of BRAC[II]." May 25th Order at 14. Now BRACII is faced with Mr. Jaeban's violations of the May 25th Order – violations that occurred despite the sanctions in that Order. Moreover, BRACII cannot know whether it was prejudiced by the PwC document review, but does know that Mr. Jaeban has failed in his responsibility to determine whether serious discovery noncompliance and prejudice to BRACII occurred. We now have written evidence that Wragge & Co., previously counsel to both Jaeban UK and Mr. Jaeban, did not regard Jaeban UK's claims of breach of the Umbrella Agreement and the IPLA as meritorious. Given the foregoing additional factors, there are now ample grounds to justify the striking of the Counterclaims.

## II.    THE ESCROW SHOULD BE ELIMINATED.

In the alternative, BRACII respectfully requests that the Court eliminate the escrow by conditioning any further pursuit of the Counterclaims on the agreement of Mr. Jaeban to waive any rights to the escrow. This Court has ample authority under Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), to afford BRACII appropriate relief. *See, e.g., In re*

---

[8] BRACII informed Mr. Jaeban's counsel that a failure to clarify the PwC issue would be a matter for the Court. Ex. D (August 11, 2004 letter to Seven Allen).

BA196

*Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996); *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089-90 (10th Cir. 1994).

Terminating the escrow will eliminate the injustice caused by Jaeban UK's and, now, Mr. Jaeban's cavalier approach to the cure process and the May 25th Order. It was Jaeban UK, while still under Mr. Jaeban's control as managing director, that insisted BRACII set aside $4,500,000 (to be reduced per the May 25th Order once the anti-assignment issue is determined) in escrow as a cure amount at the time of the Avis Europe p.l.c. sale order approval. Jaeban UK thereby transformed itself into a secured creditor despite its unliquidated claims. Jaeban UK did so without having to present evidence that its damages conceivably approached this amount; it is now apparent that Jaeban UK's counsel did not regard Jaeban UK's claims for breach of the Umbrella Agreement and IPLA to be meritorious. Jaeban UK (and Mr. Jaeban as purported assignee) thereby jumped ahead of the numerous other creditors of BRACII, many of which have far less speculative claims uncontradicted by their own counsel.

Accepting the escrow meant accepting an obligation to move forward in a reasonable manner, not obstruct, the resolution of BRACII's and Jaeban UK's competing claims. The May 25th Order embodied that obligation by setting strict deadlines for moving the case forward towards trial. Mr. Jaeban's violations of the Order leave BRACII to seek additional discovery and pursue additional motion practice as yet more months (if not a full year) are added until the case can be readied for trial. Mr. Jaeban's new and unreasonably burdensome document requests are further evidence that he has no interest in advancing this case. It is clear Mr. Jaeban fully appreciates the value of delay – delay that, given the escrow, increases his negotiating leverage over claims that Jaeban UK's solicitor did not consider meritorious.

BA197

Mr. Jaeban should not be allowed to benefit any longer from his and his assignor's violations of the Court's orders to the detriment of other, less privileged BRACII creditors. The escrow should be eliminated by the Court or Mr. Jaeban's further pursuit of the counterclaims should be conditioned on his agreement to the release of the escrow. BRACII recognizes that release of the escrow is not a minor sanction, but lesser sanctions have not worked and its other creditors have been unfairly disadvantaged.

## III.    ADDITIONAL RELIEF

### A.    Mr. Jaeban Should Be Required to Explain the PwC Document Review.

BRACII is entitled to a full, written explanation, provided by Mr. Jaeban's U.S. counsel familiar with federal discovery practice, that informs BRACII (a) whether PwC sought to comply with BRACII's document requests, instead of PwC's (or someone else's) notions or relevance or some other procedure in preparing the first document production and (b) whether Mr. Jaeban can account for all of the documents (including e-mails) that were available to, but not produced by PwC or Wragge & Co. to BRACII in November 2003.

### B.    Mr. Jaeban's 25 Document Requests Served on August 20, 2004 Should Be Treated as Untimely.

The May 25th Order and the agreed Scheduling Order did not provide for further discovery by Mr. Jaeban apart from depositions. Mr. Jaeban's 25 new document requests (Exhibit H, *infra*), served on August 20, 2004, are therefore untimely.[9]

---

[9]  Mr. Jaeban did not seek to file these requests until after BRACII challenged his compliance with the May 25th Order even though (a) he has acted as a party since filing in his own name his opposition to BRACII's Motion to Strike on March 1, 2004 and (b) he had ample opportunity to request additional discovery when the parties agreed to the Amended Scheduling Order. The parties' agreed filing of amended pleadings in July furnishes no basis either. Mr. Jaeban's August 20th document requests, to the

14

The new requests should be taken into consideration, but only as further evidence of Mr. Jaeban's refusal to obey the mandate of the Court's May 25th Order and advance this case to trial. As noted above, one of Mr. Jaeban's requests demands "[a]ll documents that constitute, refer to or relate to communications among the Debtors relating to the marketing, business development, and business disposition and asset disposal strategies," from 1999 to 2003. Ex. H (Request No. 2). Leaving the great overbreadth of subject matter to one side, Mr. Jaeban is seeking documents for a period that precedes the execution of the Umbrella Agreement and IPLA by more than two years. The requests that actually mention Jaeban UK are also drafted to be as broad as possible.

Moreover, as noted above, the vast majority of the new documents sought are in the possession of Avis Europe p.l.c., the purchaser of most of BRACII's assets. Mr. Jaeban could have demanded Avis Europe p.l.c. documents long before now. BRACII's timely objections to Jaeban UK's document request clearly objected to producing documents not in BRACII's possession on burden and overbreadth grounds. Those objections were served on January 12, 2004. To the extent Mr. Jaeban seeks to rely on BRACII's ability to request documents from Avis Europe p.l.c. under the Asset Purchase Agreement, BRACII notes that the Agreement was an exhibit to BRACII's February 3, 2004 Motion to Strike, to which Mr. Jaeban responded on March 1, 2004.

Mr. Jaeban should not be allowed to take discovery in this case back to the very beginning. Nor, given his violations of the May 25th Order, should he be rewarded for his noncompliance by being afforded further discovery. BRACII respectfully requests that the Court

---

extent they seek relevant documents at all, are directed at the same issues that have been the subject of discovery since the third quarter of 2003, not BRACII's personal guarantee claim.

BA199

decline to extend the Scheduling Order to permit belated any document discovery by Mr. Jaeban.

### C. BRACII Should Be Awarded Fees Incurred in Flying Counsel to England and Filing this Motion.

Plainly, Mr. Jaeban should not have set a deposition schedule in England when major, undisclosed document productions had yet to occur. BRACII should be compensated by Mr. Jaeban for its unnecessary costs in sending U.S. counsel to England. BRACII's fees in bringing this Motion should be awarded against Mr. Jaeban as well.

### CONCLUSION

WHEREFORE, in light of Mr. Jaeban's multiple violations of the May 25th Order, BRACII respectfully requests that the Court enter a second sanctions order striking the Counterclaims or, in the alternative, eliminating the escrow or conditioning Mr. Jaeban's further pursuit of the Counterclaims on his release of his rights with respect to the escrow account, and granting BRACII the additional relief identified above and such other and further relief as the Court deems just and proper.

Dated: August 27, 2004

Respectfully submitted,

**SIDLEY AUSTIN BROWN & WOOD** LLP

Kenneth E. Wile
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Robert S. Brady (Bar No. 2847)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Counsel for Budget Rent-A-Car International, Inc.

16

BA200

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (CGC) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, et al., | |
| Defendants. | |

### AFFIDAVIT OF KENNETH E. WILE

KENNETH E WILE, being duly sworn, deposes and says:

1.    I am a member of the Illinois and New York bars and a counsel in the Chicago office of Sidley Austin Brown & Wood LLP. I am one of the attorneys representing the Budget Rent-A-Car International, Inc. ("BRACII") and the other Debtors in the above-captioned adversary proceeding against Jaeban (UK) Limited ("Jaeban UK") and Mr. Ibrahiem Jaeban.

2.    On July 28, 2004, I flew to England to prepare for and take the deposition of Mr. Jaeban and other witnesses associated with Jaeban UK, as well as to arrange for the depositions of witnesses formerly employed by BRACII.

**BA202**

**The Jaeban UK Receivers' Documents Produced in August 2004**

3.    During the week of August 2, 2004, Mr. Jaeban's U.S. counsel, Robert Wilcox, informed me that the Jaeban U.K. Receivers still had numerous files at their offices containing documents responsive to BRACII's two requests for production of documents that the Jaeban U.K. Receivers had never produced to BRACII.

4.    Jaeban U.K. never filed objections to the Joint First Request for Production of Documents.

5.    The Jaeban UK Receivers initially refused to disclose these documents.

6    On August 9, 2004, I repeated BRACII's demand for immediate production of these files in a letter to Mr. Jaeban's U.S. counsel.  Exhibit D includes a true and correct copy of this letter and other correspondence between counsel regarding the issues surrounding Mr. Jaeban's and Jaeban UK's document productions.

7.    On August 13, 2004, I traveled from London to Birmingham, England to review the Receivers' documents at their offices.  I reviewed approximately 20 lever arch files of documents, the overwhelming majority of which had not been previously produced to BRACII. The production contained a number of documents significant to the case, but did not include correspondence with Jaeban UK's lenders regarding the financial condition of the company or minutes of company meetings.

8.    Although the Jaeban UK Receivers' staff promised to deliver these to documents to Sidley Austin's London office by August 18, 2004, the requested copies did not arrive until August 25, 2004, which has delayed the filing of this Motion.

2

BA203

9.    In the Birmingham production, the Jaeban UK Receivers produced for the first time the two documents attached, in true and accurate copies, as Exhibits E and F to BRACII's Motion for Further Sanctions and Other Relief.

### Mr. Jaeban's Welcome House Production in August 2004

10.    On August 5, 2004, I also learned from Mr. Jaeban's U.S. counsel that Mr. Jaeban had failed to produce to BRACII responsive documents under his control at Welcome House, Jaeban UK's former headquarters in Oldbury, England.

11.    Mr. Jaeban subsequently caused his counsel to deliver 84 boxes of documents (and a whiteboard bearing writing that discussed the BMS computer system) to Sidley's London office on August 11, 2004.

12.    Most of these documents were routine business records of limited relevance. The production made available for the first time agreements between Jaeban UK and BRACII and its former subsidiary, BTI, and other significant documents.

13.    Because certain BRACII-Jaeban UK agreements had not previously been produced to BRACII, I requested copies of these agreements (along with a copy of the BRACII operating manual) from Avis Europe p.l.c. after I arrived in England. I thereafter produced copies of these documents to Mr. Jaeban.

14.    The Welcome House production did not include Jaeban UK's communications with HSBC and other lenders regarding Jaeban UK's financial condition and relationship with BRACII. It also lacked any records of Jaeban UK company meetings.

15.    According to Mr. Jaeban's English counsel, Mr. Jaeban withheld certain documents under the provisions of the Data Protection Act 1998. *See* Exhibit D (August 10, 2004 letter from Steven Allen). On August 23, 2004, I called Mr. Jaeban's U.S. counsel to

3

BA204

explain that, under the explicit terms of Section 35 of the Act, its protections do not apply to documents needed in litigation. I asked him to confirm whether any of the documents that Mr. Jaeban withheld were responsive to Debtors' document requests and reconsider whether documents could be withheld under the Act.

**Concerns Raised by Jaeban UK's Initial Document Production**

16.     During the week of August 2, 2004, Mr. Jaeban's U.S. and English counsel informed my London colleague, Phillip Taylor, and me that (a) PriceWaterhouseCoopers (PwC) had conducted the initial document review of Jaeban UK's documents and (b) PwC may have made its own determination of what it deemed "relevant" to the Complaint, instead of responding to the document request.

17.     Mr. Jaeban and his counsel have failed to tell BRACII whether the November 2003 document production was limited to what PwC deemed to be relevant. Although I made repeated demands for clarification, Mr. Jaeban's principal response through counsel has been that the document production took place "under the advice and guidance" of Jaeban UK's former Delaware counsel. (Motion for Further Sanctions, Ex. D.) Mr. Jaeban's counsel also suggested that I could call Jaeban UK's English solicitor, Ian Weatherall of Wragge & Co. *See id.*

18.     Mr. Jaeban's counsel has been unable to assure BRACII that no documents (including e-mails) were lost or are now unavailable for production as a result of whatever process PwC undertook.

**August 3, 2004 Production of Documents from the Files of Wragge & Co.**

19.     On August 3, 2004, Mr. Jaeban delivered a lever arch file of documents to my hotel in Birmingham, England on August 3, 2004, the day before Mr. Jaeban's deposition

4

began. I understand that these documents came from the files of Wragge & Co., continuing counsel for the Jaeban UK Receivers and counsel, until recently, for Mr. Jaeban as well.

20.    I proceeded with Mr. Jaeban's deposition the next day and in scheduling other depositions in the belief that this production completed the documents that were required by BRACII's document requests. Although some documents in the lever arch file were duplicates, the production included, for the first time, the "Credit Pack" discussed in BRACII's Motion, a true and correct copy of which is attached as Exhibit G.

21.    Although BRACII's U.S. counsel, Robert Wilcox, and I agreed in England that neither party would assert the August 23, 2004 deposition deadline set forth in the Revised Pre-Trial Scheduling Order against the other, BRACII has never agreed that Mr. Jaeban could serve new document requests.

22.    After I arrived in England, I reviewed BRACII's January 2004 document production and produced the equivalent of a lever arch file of additional documents (as well as a few duplicates) to Mr. Jaeban. These documents were in addition to the agreements and operating manual that I obtained for the first time in August from Avis Europe p.l.c. and produced to Mr. Jaeban.

_____
Kenneth E. Wile


Sworn to before me this
27th day of August 2004

_____
Notary Public

```
"OFFICIAL SEAL"
CYNTHIA A. DVORAK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/22/2007
```

5

# EXHIBIT B

**BA207**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al.[1], | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC (f/k/a Budget Group, Inc ), et al , | |
| Plaintiffs, | 03-A-54271 |
| v | |
| Jaeban (U.K.) Limited, | |
| Defendants. | |

## JOINT FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO JAEBAN (UK) LIMITED

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by

Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Plaintiffs, the debtors and

debtors-in-possession in the above-captioned action, and Plaintiff-Intervenor, the Official

Committee of Unsecured Creditors, by their undersigned attorneys, hereby request that

---

[1]  The Debtors are the following entities: BRAC Group, Inc , Auto Rental Systems, Inc , BGI Airport Parking, Inc , BGI Shared Services, Inc , BGI Shared Services, LLC, BRAC Credit Corporation, BRAC Car Sales, Inc , BRAC Fleet Finance Corporation, BRAC Rent A Car Asia-Pacific, Inc , BRAC Rent A Car Caribe Corporation, BRAC Rent A Car Corporation, BRAC Rent-A-Car International, Inc , BRAC Rent A Car of Japan, Inc , BRAC Rent-A-Car of St Louis, Inc , BRAC Rent-A-Car of the Midwest, Inc , BRAC Rent-A-Car Systems, Inc , BRAC Sales Corporation, BRAC Storage Corporation, BRAT Move Management, Inc , BRAT Relocation Services, Inc , BRAT TRS, Inc , BVM, Inc , Carson Chrysler Plymouth Dodge Jeep Eagle, Inc , Control Risk Corporation, Dayton Auto Lease Company, Inc , Directors Row Management Company, LLC, IN Motors VI, LLC, Mastering The Move Realty, Inc., Mosiant Car Sales, Inc , NYRAC Inc , Paul West Ford, Inc , Philips Jacobs Insurance Agency, Inc , Premier Car Rental LLC, Reservation Services, Inc , TCS Properties, LLC, Team Car Sales of Charlotte, Inc , Team Car Sales of Dayton, Inc , Team Car Sales of Philadelphia, Inc , Team Car Sales of Richmond, Inc , Team Car Sales of San Diego, Inc , Team Car Sales of Southern California, Inc , Team Fleet Services Corporation, Team Holdings Corp , Team Realty Services, Inc , The Move Shop, Inc , Transportation and Storage Associates, ValCar Rental Car Sales, Inc , Vehicle Rental Access Company, LLC, and Warren Wooten Ford, Inc

Defendant Jaeban (U.K.) Limited produce the following documents at the offices of Sidley Austin Brown & Wood, 10 South Dearborn Street, Chicago, Illinois, 60302, within twenty days of service:

## DEFINITIONS AND INSTRUCTIONS

a.    This Request covers all documents and tangible things in your possession, custody or control, including such documents and tangible things as are in the possession, custody or control of your agents, representatives, and, unless privileged, your attorneys

b    This Request is continuing in nature  If you discover additional documents called for by this Request, then you are obligated promptly to supplement your response

c.    Documents produced in response to this Request shall be organized and designated to correspond to the categories in this request or produced as they are kept in the usual course of business and identified as to the request and requests to which they are responsive.

d.    "BRACII" refers to Budget Rent a Car International, Inc

e    "BTI" refers to BTI (UK) plc, a wholly-owned subsidiary of BRACII that is the subject to an Order of Administration of the High Court of Justice, Chancery Division (BTI is identified in Jaeban's Counterclaims as BTI (UK) PK.)

f    "Debtors" refers to the debtors and the debtors in possession in the above-captioned action and specifically includes BRACII. **The term also includes BTI.** In addition, the term refers to the officers, directors, employees, attorneys and agents of the foregoing

g.    "Jaeban" refers to Jaeban (U.K.) Limited and its officers, directors, employees, shareholders, agents, and attorneys.

2

BA209

h.    "IPLA" refers to the March 5, 2001 International Prime License

Agreement among Budget Rent A Car International and Jaeban (referred to as the ILPA in

Jaeban's Counterclaims).

i.    "Exhibit C Charges" refer to the categories of charges listed in the first

column of Exhibit C of the Complaint in this adversary proceeding (a copy of which is attached

for convenience). These charges include U S. reservation charges, travel agent referrals,

customer relations refunds, frequent flyer and international programs, interoffice charges, Royal

Automobile Club subscriptions, BMS reservations and charges, airport concessions (for the

airports identified in Exhibit C), other location rent charges, miscellaneous utility charges,

telephone charges, royalty fees, yellow pages charges, miscellaneous charges, insurance, and

cont cover and low value refunds.

j.    The term "document" is used in the broadest sense and includes all written

or graphic matter of every kind and description however produced or reproduced, whether draft

or final, original or reproduction, all tangible things and any other data compilations from which

information can be obtained or on which information may be stored, including but not limited to

e-mails and other documents stored in tangible, electronic, mechanical or electric form or

representation of any kind, including materials on or in computer tapes, disks and memories,

back up copies and deleted files or files marked for overwriting on a computer or computer

storage device or media whether located on site or off site. It includes all matter that relates or

refers, in whole or in part, to the subject referred to in the Request, including, but not limited to,

letters, correspondence, reports, e-mail, agreements, interoffice correspondence, notes,

telegrams, minutes or records of meetings, notes of meetings, notes of telephone conversations,

reports and/or summaries of investigations, expressions or statements of policy, opinions or

reports of consultants, lists of persons attending meetings, drafts and revisions of drafts of any

3

BA210

documents, invoices, receipts, original preliminary notes, and electronic mail  If a document has been prepared in draft or in several copies, or several versions, even if only in electronic form, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), then each non-identical copy is a separate document

        k.     The words "and" and "or" shall be construed conjunctively or disjunctively so as to bring within the scope of the document request as much information as possible  The plural shall include the singular and the singular shall include the plural

        l.     If you withhold any documents because of a claim of privilege or immunity, then identify the documents withheld and the precise privilege or protection claimed with sufficient specificity to permit a full determination of whether the claim of privilege or immunity is valid. For each document that you decline to produce on grounds of privilege, provide the following information:  (a) the reason for withholding the document; (b) the date of the document; (c) the identity of its author(s), including the job title and description of each such person, and a current address and telephone number for each such person; (d) the identity of each person to whom the document was sent as well as the custodian of the document, the job title and description of each such person, and a current address and telephone number for each such person; and (e) the subject-matter of the document in sufficient detail to permit assessment of the asserted basis for withholding the document.

        m.    **Time Period:** These Requests seek only documents that were created or reviewed by Jaeban on or after January 1, 2000 through the date of Jaeban's response

BA211

## DOCUMENT REQUESTS

1    All documents, created or requested by any person or entity, that place a value on the business (or any portion thereof) or the shares of Jaeban including, without limitation, all financial statements of Jaeban, whether draft or final

2.   All documents that constitute minutes of meetings of the Jaeban Board of Directors or refer or relate to actions taken by the Jaeban Board of Directors including, without limitation, all resolutions, consents or other actions taken by the Jaeban Board of Directors.

3    All documents that refer to a claim or claims by any Debtor against Jaeban or Mr. I.M. Jaeban or Jaeban against any Debtor, regardless of whether that claim has yet been asserted in the above-captioned adversary proceeding or the bankruptcy case  Such documents include, without limitation, Jaeban internal documents and all documents that refer to, relate to, or constitute communications among Jaeban and any third party including, without limitation, its lender(s) or internal or external accountants or auditors with respect to such claims. Notwithstanding the foregoing, this request does not seek documents created by Jaeban solely for use by its English or U S  counsel and not shared with any other third party.

4.   All documents in Jaeban's possession, custody, or control that refer or relate to the granting or continuing existence of an Order of Administration by the High Court of Justice, Chancery Division with respect to BRACII or BTI.

5    All documents that refer to, relate to, or constitute communications between Jaeban and Cendant Corporation or any of its affiliated entities, including, without limitation, Avis Europe plc and any affiliates thereof.

6.   All agreements between or among Jaeban, Mr. I.M. Jaeban and any of the Debtors (which have been defined to include BTI) including, without limitation, each of the agreements referenced in Paragraph 39 of Jaeban's Counterclaims

5

BA212

7    All documents created or reviewed by Jaeban in considering or deciding to enter into the IPLA, the March 5, 2001 Umbrella Agreement among Jaeban, Mr. I.M. Jaeban, and BRACII, or the March 5, 2001 Business Sale Agreement to purchase BTI business assets from BRACII  Such documents include, without limitation, all documents that Jaeban created or reviewed in analyzing the business of any of the Debtors and all internal communications that refer or relate to such materials.

8    All other documents that refer or relate to negotiations between Jaeban or Mr I.M. Jaeban and any of the Debtors with respect to the drafting, execution, or performance of any proposed or executed agreement with any of the Debtors

9    All general ledgers, computer databases, or other documents containing, reflecting, tabulating, or summarizing entries for any of the Exhibit C Charges (as defined above)

10.    All other documents that refer or relate to any or all of the Exhibit C Charges.

11.    Documents identifying the size of Jaeban's fleet of cars during each month from January 2001 to the present.

12.    All documents that refer or relate to Jaeban's affirmative defenses of estoppel or waiver.

13    All documents that refer or relate to the alleged failure by any Debtor adequately to market the Budget brand, as set forth in Paragraph 37 of the Counterclaim

14    All documents that refer or relate to Debtors' alleged "failure to provide certain administrative functions required by the ILPA" set forth in Paragraph 44 of the Counterclaim

6

BA213

15.    All documents that refer or relate to Debtors' alleged failure "to provide integrated service across critical territories as required by the ILPA" set forth in Paragraph 44 of the Counterclaim

16    All documents that refer or relate to the "various charges associated with the leasing of vehicles to" BRACII alleged in Paragraph 40 of the Counterclaim

17    All documents that refer or relate to BRACII's alleged failure to return vehicles in its possession to Jaeban

18.    All documents that refer or relate to payments by any Jaeban customer to any Debtor (as defined above, including, without limitation, Budget Group, Inc. BRACII, or BTI) as to which Jaeban alleges that such payment was owed to Jaeban

19.    All documents that refer or relate to payments by any party that were received by Jaeban but which relate to services rendered by any Debtor where all or any portion of such payment was not forwarded by Jaeban to the relevant Debtor.

20.    All documents that refer or relate to Jaeban's alleged damages or right of setoff or right of recoupment against Debtors.

Dated:  September 29, 2003

SIDLEY AUSTIN BROWN & WOOD

Larry J. Nyhan
Melville W  Washburn
Kenneth E  Wile
Bank One Plaza
10 S. Dearborn
Chicago, IL 60603

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Robert S. Brady (Bar No. 2847)
Edmon L  Morton (No. 3856)
Joseph A. Malfitano (No. 4020)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P O  Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600

Counsel for Debtors and Debtors-in-Possession
BRAC Group, Inc., et al

7

BA214

**BROWN RUDNICK BERLACK ISRAELS LLP**
Martin S. Siegel, Esq.
120 West 45th Street
New York, New York 10036
(212) 704-0100

Counsel for the Official Committee of Unsecured
Creditors

**ASHBY & GEDDES**

William Bowden (No. 2553)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

8

BA215

**EXHIBIT C**

SUMMARY OF GROSS AMOUNTS OWED BY
JAEBAN TO BRACII

| Description | Figure per BRACII - 2001 | Figure per BRACII - 2002 | Figure per BRACII - 2003 | Totals |
|---|---|---|---|---|
| US Reservation Charges | £41,954.46 | £77,519.60 | £4,870.59 | £124,344.65 |
| Travel Agents Referral Programme | £62,267.59 | £98,886.45 | £23,798.37 | £184,952.41 |
| Customer Relations Refunds | | £4,703.37 | £65.76 | £4,769.13 |
| Frequent Flyer & International Programmes etc | | £10,568.00 | £1,030.13 | £11,598.13 |
| Inter Office Charges General | £190,876.53 | £57,805.06 | | £248,681.59 |
| Inter Office Charges Oldbury / Corporate | See above | See above | See above | £0.00 |
| RAC - Subscriptions | £35,272.26 | £56,437.32 | | £91,709.58 |
| RAC - Other | | | | £0.00 |
| BMS - Reservations | £67,779.88 | £101,426.98 | £9,366.35 | £178,573.21 |
| BMS - Charges | | £76,793.62 | | £76,793.62 |
| Money paid to Jaeban | | £12,631.61 | | £12,631.61 |
| 2001 concessions | | | | £0.00 |
| Manchester Airport Concessions | £80,633.19 | £93,658.61 | | £174,291.80 |
| Birmingham Airport Concessions | | £108,198.77 | | £108,198.77 |
| Edinburgh Airport Concessions | | £80,613.56 | | £80,613.56 |
| Glasgow Airport Concessions | | £152,552.62 | | £152,552.62 |
| East Midlands Airport Concessions | | £7,196.85 | | £7,196.85 |
| Other Location Rent Charges | £72,080.78 | £141,254.54 | | £213,335.32 |
| Miscellaneous Utilities Charges | | £19,914.72 | | £19,914.72 |
| Telephone Charges | | £134,052.88 | | £134,052.88 |
| Royalty Fees (2003 estimated) | £210,640.22 | £638,301.48 | £94,007.00 | £942,948.70 |
| Yellow Pages 2001 | £22,224.07 | | | £22,224.07 |
| Yellow Pages 2002/3 | | £128,059.47 | £25,900.54 | £153,960.01 |
| Dun & Bradstreet Reports | | | | £0.00 |
| Miscellaneous Charges | £28,755.93 | £28,560.04 | £111.64 | £57,427.61 |
| Miscellaneous Adjustments | | | | £0.00 |
| 1st Quarter Fleet/Ford Bonus | | | | £0.00 |
| Insurance | | £1,267.16 | | £1,267.16 |
| Cont Cover and low value refunds | | £4,052.10 | | £4,052.10 |
| **Totals** | **£812,484.91** | **£2,034,454.81** | **£159,150.38** | **£3,006,090.10** |

BA216

# EXHIBIT C

BA217

ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, | |
| Defendants. | |

### JOINT SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO JAEBAN (UK) LIMITED

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Plaintiffs, the debtors and debtors-in-possession in the above-captioned action, and Plaintiff-Intervenor, the Official Committee of Unsecured Creditors, by their undersigned attorneys, hereby request that Defendant Jaeban (U K ) Limited produce the following documents at the offices of Sidley Austin Brown & Wood, 10 South Dearborn Street, Chicago, Illinois, 60302, within twenty days of service:

### DEFINITIONS AND INSTRUCTIONS

a.  Plaintiffs incorporate by reference the Definitions and Instructions set forth in their First Request for Production of Documents.

BA218

b The "Jaeban Receivers" refer to the Joint Administrative Receivers of Jaeban (UK) Limited appointed on October 20, 2003.

c. "Robson Rhodes" refers to RSM Robson Rhodes LLP and its directors, partners, officers, and employees.

d "CIF" refers to Close Invoice Finance Limited and its parents, subsidiaries, affiliates, and all officers, directors, employees, attorneys and agents of the foregoing

e. "HSBC" refers to HSBC Bank plc and its parents, subsidiaries, affiliates, and all officers, directors, employees, attorneys and agents of the foregoing.

f. The "Adversary Proceeding" refers to the above-captioned adversary proceeding *BRAC Group, Inc., et al., v Jaeban (U.K.) Limited*, No. 03-A-54271 (Bankr. D Del.).

## DOCUMENT REQUESTS

1. All correspondence (including e-mails) and all other documents exchanged at any time between or among Jaeban, the Jaeban Receivers, or Robson Rhodes and any secured creditor of Jaeban (including, without limitation, CIF or HSBC) that refer or relate to (a) the appointment of an Administrative Receiver or Receivers; (b) the Adversary Proceeding or any claim or allegation made in the Adversary Proceeding; or (c) the financial condition of Jaeban.

2. All other documents not produced in response to the Joint First Request for Production of Document to Jaeban (or withheld on grounds of privilege in response to that Request) that refer or relate to any claim or allegation made in the Adversary Proceeding including, without limitation, all evaluations or other references to the allegations in the Adversary Proceeding by the Jaeban Receivers or any director or officer of Jaeban.

2

BA219

3.    All documents that refer or relate to completed or proposed sales of Jaeban

assets by the Jaeban Receivers.

Dated:  November 26, 2003

**SIDLEY AUSTIN BROWN & WOOD**

Larry J. Nyhan
Melville W. Washburn
Kenneth E. Wile
Bank One Plaza
10 S. Dearborn
Chicago, IL 60603

Counsel for Debtors and Debtors-in-Possession
BRAC Group, Inc., et al.

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Robert S. Brady (Bar No. 2847)
Edmon L. Morton (No. 3856)
Joseph A. Malfitano (No. 4020)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600

**BROWN RUDNICK BERLACK ISRAELS LLP**
Martin S. Siegel, Esq.
120 West 45th Street
New York, New York 10036
(212) 704-0100

Counsel for the Official Committee of Unsecured
Creditors

**ASHBY & GEDDES**
William Bowden (No. 2553)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

3

# EXHIBIT D

BA221

SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

August 9, 2004

**Via E-Mail and Fax**

Robert D. Wilcox, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899

Re:    In re BRAC Group, Inc.; BRAC Group, Inc., et al., v. Jaeban (U.K.),
Ltd., Adv. No. 03-A-54271 (Bankr. D. Del.)

Dear Rob:

I am writing to discuss how we should proceed in light of the obvious misconduct of the Jaeban (U.K.), Ltd. Receivers and the *possible* misconduct of Wragge & Co. with respect to documents that should have been disclosed to BRACII last November. As matters stand, the Receivers have not produced Jaeban U.K.'s core documents to BRACII and we do not know whether Wragges' apparent approach to document production has further prejudiced BRACII. It is against this background that I also note the production of additional documents from Wragges' files, the night before the start of Mr. Jaeban's deposition last Wednesday and the promised production this week of additional documents within Mr. Jaeban's control from Jaeban U.K.'s former headquarters, Welcome House. While the purpose of this letter is to lay out where matters stand, I very much hope that we can have a productive discussion about how to move the case forward later this afternoon.

**The Receivers' Misconduct:** You have told me that the Jaeban U.K. Receivers have numerous files of responsive documents and that you have reviewed only some of these files. My U.K. insolvency colleagues believe that the Receivers should have critical files, such as minutes of board meetings and correspondence with lenders, for which Mr. Jaeban was unable to account at his first two days of deposition. As I further understand it, the Receivers were willing to allow you access to these files, but are nonetheless unwilling to produce them — at least one reason for which is that they are insisting that someone pay for their counsel at Wragges to conduct a privilege review. They have taken this position even though, to facilitate

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

BA222

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Robert D. Wilcox, Esq.
August 9, 2004
Page 2

disclosure, I agreed last week that your review of these files would not be deemed a waiver of
any privilege by BRACII.

It is simple discovery misconduct for the Receivers to refuse to make this
production of documents responsive to document requests that were served in 2003. It is worth
remembering that, despite its non-participation in this case since January, Jaeban U.K. remains
the defendant and nominal counter-claim plaintiff in this action. Moreover, while we are aware
that the Receivers regard the counterclaims as essentially valueless (hence, for example, the
purported assignment of the counterclaims for £5,000 in upfront money to the estate), they
retained a 10% stake in any recovery by Mr. Jaeban. Moreover, since Jaeban U.K. never
responded in any way to Debtors' First Request of Production of Documents, Jaeban U.K. has
waived any privilege with respect to those documents.

Because Mr. Jaeban claims (despite our strenuous disagreement) to be the valid
assignee of Jaeban U.K., it is his responsibility to insist on the cooperation clause in the
purported Deed of Assignment and obtain disclosure of these critical files promptly. Please let
me know whether BRACII can look forward to prompt disclosure of these files. Otherwise,
BRACII will promptly seek relief from the Court. We believe that this misconduct bears directly
on multiple grounds raised by Debtors' Motion to Strike.

**Wragges' Conduct:**  Based on what we were told last week, it appears that
Wragges *may* also have flouted the discovery rules last fall. It appears that Wragges directed
Price Waterhouse Coopers (PwC) to review Jaeban U.K.'s documents to determine what
documents should be produced without reviewing, let alone complying, with the Joint First
Request for Production of Documents to Jaeban (UK) Limited. Instead, PwC and/or Wragges
made their own determination from the Complaint as to what was relevant. Apart from the
complete disregard for the Federal Rules of Bankruptcy Procedure, this course of conduct raises
disturbing questions whether documents we have demanded from the outset have disappeared as
a result – as well as whether documents damaging to Mr. Jaeban's case, like the "Credit Pack"
produced only last week, were deliberately withheld. As noted above, because Jaeban U.K. did
not file an objection to the First Request, Wragges should have produced *all* responsive
documents that are due and owing, regardless of any assertion of privilege, as noted above.

I would like clarification as to whether I understand correctly what happened.
Please let me know, as soon as you can obtain the information, whether (a) Wragges made its
document production without regard to the Joint First Request and (b) whether Wragge & Co.
can account for all documents (including e-mail messages) following that production.

**The Late Production of Documents:**  As you know, Mr. Jaeban produced a
lever file of documents at my hotel the night before his deposition began last Wednesday. I
understand that there will be a further, substantial production of documents from Welcome

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Robert D. Wilcox, Esq.
August 9, 2004
Page 3

House by Wednesday of this week. All of these documents should have been produced months ago.

      To be sure, BRACII has also made a smaller production of documents since I have arrived in England and, like you, I continue to make inquiries. Our clients are in different positions, however. BRACII has complained about non-compliance since last November, filed a Motion to Strike, and obtained a court order requiring discovery. Neither Jaeban U.K. nor Mr. Jaeban (now a defendant) have ever convened a discovery conference to discuss our objections on file, and BRACII is not the subject of an existing order. As I have told you, I am available to discuss any concerns that Mr. Jaeban may have. I point out the noncompliance in the preceding paragraph only so that there is a full record of what BRACII has had to face.

      **The Way Forward:** As we discussed on Friday, BRACII is unwilling to proceed further with depositions, in the U.K. and elsewhere, until we have obtained *both* the Receivers' files and the additional files that Mr. Jaeban is now willing to produce from Welcome House.[1]

      If both sets of long-overdue documents are produced to me at Sidley's London office by Wednesday morning, I am willing to resume depositions in London on Thursday. With respect to Mr. Clark and any other witness, I am willing to urge that they make themselves available promptly after production before we return to the U.S. Regardless, I expect BRACII to take at least two more depositions in the U.K. in September, and would expect to add Mr. Clark (whom we also would like to question) at that time. This scheduling is in keeping with your request (to which I agreed) that we schedule depositions for Frank Cortez and Sandy Miller for September – although BRACII reserves the right to object to the Miller deposition on relevance grounds. I have also told you that we will assist in attempting to reach and schedule Jack Frazee.

      If the Jaeban U.K. Receivers continue to ignore their obligations then, in addition to whatever written submissions BRACII makes, it will be necessary to seek further assistance from the Court regarding scheduling. I hope that this eventuality does not occur, but we should discuss how best to proceed once you are able to update me on (a) the availability of the documents within the Receivers' control; (b) precisely what happened when Wragges directed PwC to review responsive documents; and (c) when I can expect to see your client's additional documents.

---

[1] With respect to the Terry Clark deposition previously scheduled for Monday in Bedfordshire, the promised delivery of the Welcome House documents on Saturday (even assuming this could have occurred; you now propose to deliver them by Wednesday) would have deprived me of any real chance to discuss them with my colleagues and my clients prior to setting off for Bedfordshire on Monday morning. I have been give no remotely acceptable excuse why these documents were not produced months earlier. I further note that you have described Mr. Clark, a former BRACII employee, as a critical witness for Mr. Jaeban, and it is unfair to insist that I take his deposition with inadequate preparation and without critical documents

SIDLEY AUSTIN BROWN & WOOD LLP                                CHICAGO

Robert D. Wilcox, Esq.
August 9, 2004
Page 4

       Please give me a call today to discuss. (My direct line in London is 020-7360-2019.) BRACII reserves all of its rights under the Federal Rules of Bankruptcy Procedure and the Court's May 25th Order.

Sincerely yours,

Kenneth E. Wile

cc:    Patrick Corr (w/o encl.)
      Phillip Taylor (w/o encl.)

BA225

Your reference: PHMC/4006615-001-0
Our reference: BSZA/4008615-0001-0
Document number: bsza15lbsza.doc

Direct line: +44(0)121 456 8343
Direct fax: +44(0)121 456 8476
steven.allen@mills-reeve.com



MILLS
— & —
REEVE

Sidley Austin Brown & Wood
DX 580
LONDON CITY

10 August 2004

For the attention of Ken Wile/Phil Taylor/Patrick Corr

Fax no: 020 7626 7937
        001 312 853 7036

Dear Mr Wile

**Re: BRAC Group, Inc: Case No. 02-12152 (MFW) (Jointly Administered): Adversary 03-A-54271**

Thank you for your letter of 9 August 2004 addressed to Rob Wilcox to which I respond on behalf of Mr Jaeban.

**The allegation of misconduct by Wragge & Co**

Your letter makes very serious allegations against the lawyers at Wragge & Co who were instructed by Jaeban (UK) Limited in relation to the disclosure process undertaken on behalf of that company. I am under no illusion that given that at the material time I was employed by Wragge & Co LLP that such allegations equally apply to myself. For the avoidance of doubt I regard the allegation that either myself or any solicitor from Wragge & Co *"deliberately withheld"* documentation as scurrilous. I do not expect to see such a serious allegation repeated in correspondence. Save to say the disclosure process conducted by Wragge & Co in September/October 2003 was undertaken under the advice and guidance of Morris Nicholls Arsht & Tunnell. I have nothing further to add and you must take up your alleged complaint directly with Ian Weatherall at Wragge & Co who, I might add, as a matter of courtesy should have received a copy of your letter given the extraordinary allegations contained therein.

**The alleged "Late production of documents"**

Your letter is misleading particularly given your admission to me in our telephone conversation of yesterday that you were fully aware that the lever arch file of documentation made available to you the night before the commencement of my client's deposition did not entirely consist of new documentation. In fact a significant proportion of the documents in that file had been sent to your offices by DHL on 18 June 2004 in response to the Joint Second Request for Production of Documents. Of the additional documents produced you

Mills & Reeve
54 Hagley Road
Edgbaston
Birmingham
B16 8PE

Tel: +44(0)121 454 4000
Fax: +44(0)121 456 3631
DX: 707290 Edgbaston 9
info@mills-reeve.com

Birmingham Cambridge London Norwich
Mills & Reeve is regulated by the Law Society
A list of partners may be inspected at any
of our offices

www.mills-reeve.com

**BA226**

have only managed to highlight one of those documents as prima facie responsive to your request.

With regard to the documents held at Welcome House, you omit to mention the fact that it is our client's contention that many of these documents are likely to have already been disclosed in Jaeban (UK) Limited's first disclosure on 3 October 2003. Irrespective of this Mr Jaeban has been able to make arrangements for these documents to be boxed up and sent to you in order that the deposition process may proceed. We understand that the documents are to be delivered to your offices in London tomorrow 11 August 2004. As these documents are original documents we require an undertaking from your London office that all such documents will be preserved as delivered, that they will not be destroyed or marked in any way and that they are to be returned to ourselves on demand. You may of course take copies of any documents during your inspection.

I note that this contrasts with the Debtors' disclosure on 2 August 2004 of a lever arch file of documents <u>none</u> of which had previously been disclosed to Jaeban (UK) Limited or my client.

Please advise when these documents came into your possession and what specific attempts have been made by the Debtors' in complying with their disclosure obligations as stated in the Federal Rules of Bankruptcy Procedure. Perhaps you would also care to advise whether any other such documents are in your possession.

<u>Debtors' conduct on disclosure</u>

Given the inadequacies of the Debtors' disclosure to date it is plainly inappropriate of you to seek to criticise the disclosure process undertaken by either Jaeban (UK) Limited or Mr Jaeban.

Disclosure of documents was given by Jaeban (UK) Limited at an early stage in this dispute in the hope of a resolution prior to the issue of proceedings. I refer in particular to the disclosure given to Patrick Corr as early as 2 May 2003. I note that further documents were also disclosed on 17 June 2003. These attempts to resolve the dispute by the company prior to your direct involvement were voluntary acts of disclosure undertaken before either the First and Second Joint Requests for disclosure were served.

In contrast the Debtor appears to have avoided all attempts to comply with its disclosure obligations. Jaeban (UK) Limited has since (a letter dated) 4 June 2003 through Wragge & Co been seeking disclosure of specific documents which we understand to be in the possession of your client. In fact no response was received to that letter. Further we enclose a copy of Wragge & Co's letter to your London office of 8 July 2003 together with their reply of 9 July 2003 which you will note wholly ignores the request made. The request for these documents was repeated at a meeting with Patrick Corr on 26 June 2003 and additionally repeated in the Defendant/Counterclaim Plaintiff's First Request for Production of Documents.

As you are aware the entirety of the Debtors' disclosures consist of three lever arch files which consist of documents of little or no assistance in answering the detailed Requests submitted by Jaeban (UK) Limited. In fact of the 25 requests made by Jaeban (UK) Limited the Debtors have taken objection to 24 of them. We regard that as wholly insufficient given the breadth and extent of the Jaeban (UK) Limited document request.

It is on this basis that our client would welcome a discovery conference to deal with discovery going forward particularly your clients' conduct to date in relation thereto.

BA227

Please confirm that the documents requested will now be made available forthwith and in any event not later than **4pm Friday 13 August 2004.** For the avoidance of doubt they should be delivered to these offices marked for my attention.

This is without prejudice to our position regarding the disclosure of additional documents. In this respect you should be aware that a Request is being prepared seeking disclosure of documents both from the BRACII and BTI Receivers and other debtors in this case. Additionally our client shall be seeking disclosure from various third parties including but not limited to other franchisees, AVIS and it's affiliated companies. A motion to extend the discovery process will be filed unless you indicate that you are prepared to consent to such an application.

### The Receivers' position on disclosure

The Receiver's papers are not within the custody or control of my client. Irrespective of this Mr Jaeban instructed Mr Wilcox to do all he can to persuade the Receiver's to accede to your request for disclosure of their files of papers. Mr Wilcox attended at the offices of the Receiver's on 6 August 2004 with your agreement that such attendance would not be taken as a waiver of privilege by BRACII. The purpose of that inspection was to ascertain whether the documents held by the Receiver were responsive documents that would be required to be disclosed under the Federal Rules of Bankruptcy procedure. It was our understanding that you had agreed that this determination could be made by Mr Wilcox. However during the inspection Mr Wilcox spoke to you by telephone and you informed him that you would not be happy with a determination of which particular documents might be responsive being made by him. This in effect made the process a wasted exercise.

Mr Jaeban had previously requested that the Receivers make available their papers for inspection providing that all privileged documents were removed. On behalf of the Receivers Wragge & Co informed my client that they were prepared to make the papers available for inspection providing that their legal costs were paid in conducting such a review. On the instructions of Mr Jaeban I was instructed to submit a formal request for the release of the papers for inspection relying on the *"Further Assurance"* provisions of the Deed of Assignment. This request was made on Friday to which Wragge & Co replied that their costs of the privilege review would be £4000 plus VAT. Whilst our client regards such a sum as excessive given the task involved he has agreed to be responsible for such costs simply in order that the deposition process can proceed. On our client's instructions we have written to Wragge & Co confirming this and have asked that the review be undertaken as a matter of urgency in order that the papers can be made available to you by the Wednesday morning deadline stated in you letter.

In the meantime I await hearing from you with a full and proper response to the inadequacies of your clients' disclosure and the undertaking from your London office as requested.

Yours sincerely

Steven Allen
Partner

encl

3

BA228

Your reference    FHMC/10047-32270
Our reference    152853BNJM/SDA

8 July 2003

Sidley Austin Brown & Wood
Solicitors
1 Threadneedle Street
London
EC2R 8AW
DXC: 580
London City



Dear Sirs

## Dispute between BRAC Rent-a-Car International Inc (In Administration) ("Budget") and Jaeban UK Limited ("Jaeban")

We write further to our letter of 4 June 2003 and our subsequent discussions and note that we still await disclosure of the following documentation:-

1    A copy of the papers submitted by Trevor Sutherland and Paul Mitchell in 2001 to Jack Frazee with regard to the three London Airport sites.

2    A copy of the year-end accounts for the period immediately prior to March 2001 in respect of the sites listed in pages 2 and 3 of our 4 June letter ("the sites")

3    A copy of all budget forecasts for the sites immediately prior to March 2001.

4    Any Management or Quarterly Accounts for the three years prior to March 2001 for the sites.

5    A copy of the alleged waiver signed by Jaeban UK Limited referred to at the 24 June 2003 meeting.

Your failure to respond is disappointing given your clients expressed determination to commence the process in the US.

We look forward to hearing from you with a copy of the documents by return

WRAGGE53 8400310 v1 (SDA)

Graf von Westphalen Bappert & Modest    www.westphalen-law.com
Berlin  Brussels  Dresden  Freiburg  Hamburg  Cologne  Leipzig  Munich  Vienna

| LETTER TO | SHEET NO | DATE |
| --- | --- | --- |
| Sidley Austin Brown & Wood | 2 | 8 July 2003 |
| Solicitors | | |

Yours faithfully

☎ Enquiries please contact: Steven D Allen
DDI Number: (0121) 629-1870
steven_allen@wragge.com

F
I
L
E

C
O
P
Y

BA230

# SIDLEY AUSTIN BROWN & WOOD

| | | |
|---|---|---|
| BEIJING | 1 THREADNEEDLE STREET | LOS ANGELES |
| CHICAGO | LONDON EC2R 8AW | NEW YORK |
| DALLAS | TELEPHONE 020 7360 3600 | SAN FRANCISCO |
| GENEVA | FACSIMILE 020 7626 7937 | SHANGHAI |
| HONG KONG | DX NUMBER 580 LONDON CITY | SINGAPORE |
| LONDON | www.sidley.com | TOKYO |
| | | WASHINGTON, D.C. |

Your Ref: 1829535/NJM/SDA                                   Our Ref: PHMC/PDT/19947/30270

Wragge & Co
Solicitors
55 Colmore Row
Birmingham
B3 2AS



9 July, 2003

BY POST AND EMAIL

Dear Sirs,

### Dispute between BRAC Rent-a-Car International, Inc. (in administration) and Jacban UK Limited

We refer to your letter of 8 July 2003 in relation to the above matter.

During our recent meeting we made it clear and you acknowledged that the onus is on your client to prove its claim in relation to the above matter. Your client has been given ample opportunity to prove its claim but has failed to do so.

Again, as we have made clear on various occasions, the Administrators are keen to resolve the matter amicably, but your clients have shown little or no interest in achieving this. By way of example, you recently agreed to restate your claim to take into account the various issues which we raised, but we have heard nothing from you in this regard. In the circumstances, the Administrators are left with no alternative but to have the matter determined by the US court.

In this regard, we should be grateful if you would let us know by return whether your client has nominated or intends to nominate US counsel to accept service of proceedings in relation

A LIST OF PARTNERS' NAMES AND THEIR PROFESSIONAL QUALIFICATIONS IS OPEN FOR INSPECTION AT 1 THREADNEEDLE STREET, LONDON, EC2R 8AW, WHICH IS ALSO THE PRINCIPAL PLACE OF BUSINESS OF THE PARTNERSHIP. ALL PARTNERS ARE EITHER SOLICITORS OR REGISTERED FOREIGN LAWYERS.

THE OFFICES LISTED ABOVE (OTHER THAN LONDON) ARE OFFICES OF ASSOCIATED SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

BA231

## SIDLEY AUSTIN BROWN & WOOD

Wragge & Co
9 July, 2003

to this matter. It would also assist if you would let us know whether you have been instructed
to act for Mr. Jaeban in relation to his personal guarantee.

Yours faithfully,

*Sidley Austin Brown & Wood*

**Sidley Austin Brown & Wood**

2

LJK1 615406v1

BA232

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

August 11, 2004

**Via E-Mail and Fax (0121-454-4000)**

Steven Allen, Esq.
Mills & Reeve
54 Hagley Road
Edgbaston
Birmingham
B16 8PE

Re:     In re BRAC Group, Inc.; BRAC Group, Inc., et al., v. Jaeban (U.K.),
Ltd., Adv. No. 03-A-54271 (Bankr. D. Del.)

Dear Steve:

Your August 10th letter is both intemperate and defensive. It is inconsistent with my conversations with Rob Wilcox. Moreover, it (a) fails to answer the critical questions as to whether Debtors' First Document Request was ignored in PwC's review of Jaeban UK's documents last fall and (b) fails to obscure the large-scale lack of discovery compliance, in violation of the Court's May 25, 2004 Order, that is only now being cured after we began Mr. Jaeban deposition in England last week.

**The Unanswered Questions:** While I was in Birmingham, both you and Rob Wilcox told us that PwC (presumably acting at the directions of counsel) *may* have made a determination of what documents to produce to Debtors in response to our First Joint Document Request based on its own notions of relevance, not in response to our First Joint Document Request – as to which no objection was filed. BRACII is entitled to know (a) whether PwC ignored or otherwise made no attempt to comply with the First Request and (b) if so, whether documents were lost as a result.

Your letter fails to answer these questions. Paragraph 3(b) of the Court's May 25, 2004 Order required *Mr. Jaeban* to respond to our concerns about gaps in the first production by June 18th. It is no answer that I should direct my questions to your former firm, Wragge & Co.

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Steven Allen, Esq.
August 11, 2004
Page 2

It is Mr. Jaeban, pursuing Jaeban UK's counterclaims as a purported assignee, who has the
obligation to provide this information under the Court's Order.

A failure to respond to these questions is a clear violation of that Order. I would
greatly appreciate an answer to these important questions by the end of the London business day
tomorrow. We will consider a failure to respond as a matter for the Court.

**Other Failures to Comply with the Court's May 25, 2004 Order:** Mr.
Jaeban's failure to produce a **van full of documents** (some 44 boxes according to your driver)
under his control at Welcome House until after my departure for England on July 29th is equally
a violation of Paragraph 3(b). The failure to apprise us prior to July 29th that the Jaeban UK
Receivers had large quantities of core documents not previously produced is also a violation.
While I appreciate the efforts to cure these violations after we have postponed further depositions
in England by agreement, they are belated efforts.

**The Credit Pack Document:** It seems that you have either misunderstood or
have unfairly dramatized my concern about the failure to produce the Credit Pack document until
the night before the start of Mr. Jaeban's deposition in Birmingham on August 4th. My letter
was explicit: our concern was and is that this critical document, which contradicts portions of
Mr. Jaeban's case, may not have been produced to us because PwC did not comply with the
Federal Rules of Bankruptcy Procedure and ignored our discovery request. Although you never
exactly explain how this document came to be withheld, I am happy to assume that the failure to
produce this document was inadvertent. (It is irrelevant, of course, that Mr. Jaeban also
produced duplicative documents the night before the deposition.) An additional concern is that,
given Mr. Jaeban's testimony, we must now experience further delay while we seek documents
from Jaeban UK's lenders. This delay could have been avoided if the document had been
produced in a timely manner last November.

**BRACII Documents and Belated Additional Discovery from BRACII:** As I
informed Rob before receipt of your letter, we continue to look for responsive documents and
have a few more to produce. The number of documents appears to be small and none are likely
to have remotely the impact of the Credit Pack document. None were withheld deliberately. It is
one thing to acknowledge, as Rob and I have to each other, that it is difficult to coordinate cross-
border document productions. It is another to violate the Court's May 25, 2004 Order by failing
to disclose a van full of documents from Welcome House and belatedly disclosing the existence
of the Receiver's core files. Nor has Mr. Wilcox previously taken the position outlined in your
letter.

As far as additional document requests are concerned, document discovery is
closed. BRACII served objections six months ago in January 2004 and those requests have
never been pursued, although I have been available for a discovery conference since that time.

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Steven Allen, Esq.
August 11, 2004
Page 3

Given Mr. Jaeban's violations of the May 25, 2004 Order, the demands in your letter are simply
inappropriate.

      Prior to receipt of your letter, as laid out in my August 9, 2004 letter to Rob
Wilcox, Rob Wilcox and I had discussed, as a matter of comity and cooperation, BRACII's
willingness to seek limited and *reasonable* additional disclosure from Avis. I made this offer
even though any formal request by Mr. Jaeban is untimely both in response to BRACII's
objections and in non-compliance with the existing schedule. Your letter seems to repudiate any
interest in such an approach.

      To summarize: we need an explanation of whether PwC's document review on
behalf of Jaeban UK complied with the Joint First Request for Production and whether
documents were lost due to a failure to do so, as soon as possible. On other matters, due to Rob
Wilcox's familiarity with the Federal Rules of Bankruptcy Procedure, I will be discussing with
him whether a cooperative approach remains possible.

      Per your request, I am sending a copy of this letter to Ian Weatherall at Wragge &
Co.

                                 Sincerely yours,

                                 Kenneth E. Wile

cc:    Robert D. Wilcox, Esq. (via e-mail)

       Ian Weatherall, Esq. (via fax)
       Wragge & Co.

       Patrick Corr
       Phillip Taylor

BA235

Your reference:
Our reference: BSZA/4006615-0001-0
Document number: bsza19ibsza.doc

Direct line: +44(0)121 456 8943
Direct fax: +44(0)121 456 3631
steven.allen@mills-reeve.com

# MILLS
# REEVE

Sidley Austin Brown & Wood
DX 580
London City

12 August 2004

For the attention of Ken Wile/Phil Taylor/Patrick Corr

Dear Mr Wile

## Re: BRAC Group, Inc: Case No. 02-12152 (MFW) (Jointly Administered): Adversary 03-A-54271

Thank you for your letter of 11 August 2004.

### BRACII's Discovery Non-compliance

I am greatly disappointed that you have failed to address in any substantive form my client's concerns with regard to the BRACII documents and belated additional discovery from BRACII.

It is in our view inconceivable that the entirety of BRACII's disclosure in these proceedings consist of the three lever arch files sent to Wragge & Co on 20 January 2004 and the one lever arch file of documentation belatedly disclosed on 2 August 2004. Your continuing pre-occupation in correspondence with issues concerning my client's discovery and your admission that you only have a *"few more"* documents to produce only reinforces my client's concerns that you are intent on following your own agenda on discovery rather than properly addressing the serious inadequacies of your own clients' position.

I am also disappointed that you have in your letter adopted a heading *"The unanswered questions"* whilst ignoring the questions that we properly raised in my letter of 10 August 2004. By way of reminder these were as follows:

1. Please advise when the documents produced on 2 August 2004 came into your possession;

2. Please advise what other documents are in your possession;

3. Please advise what <u>specific</u> attempts have been made by the Debtors in complying with their disclosure obligations as stated in the Federal Rules of Bankruptcy Procedure. I note that the Debtors' Initial Disclosures refer to the fact that *"additional documents in those categories may be in the possession of BRACII's counsel, its US affiliates, or other parties but have not been located to date. Investigation continues"*;

Mills & Reeve
54 Hagley Road
Edgbaston
Birmingham
B16 8PE

Tel: +44(0)121 454 4000
Fax: +44(0)121 456 3631
DX: 707280 Edgbaston 9
info@mills-reeve.com

Birmingham Cambridge London Norwich
Mills & Reeve is regulated by the Law Society
A list of partners may be inspected at any
of our offices

www.mills-reeve.com

BA236

4. Please confirm that the documents first requested by Jaeban UK Limited in June 2003 will be disclosed by the date specified in my letter.

There are further questions that we wish to raise with you regarding the Debtors' discovery, however, please respond to the above questions as a matter of urgency. Additionally please confirm that the Records Custodian at BRACII shall be available for a telephone deposition next week. We believe that this will assist us in understanding better the efforts of BRACII to respond to our client's documents production request.

### My client's alleged "unanswered questions"

I repeat that the disclosure process conducted in September/October 2003 by Wragge & Co and PriceWaterhouseCoopers was undertaken under the advice and guidance of Morris Nicholls Arsht & Tunnell. I fail to see the relevance of your continuing concerns with regard to this process given the delivery to you yesterday of 79 boxes of documents and whiteboard. I am instructed that you now have all the documents from Welcome House with the exception of documents that my client is satisfied come within the ambit of the Data Protection Act 1998. Irrespective of this I understand that you were invited to attend at Welcome House on a "without prejudice" basis to satisfy yourself as to the responsiveness or otherwise of the balance of documents held there.

The only outstanding point that needs to be addressed is the issue of the Jaeban UK Limited computers which as I mentioned to you in my e-mail of yesterday is being investigated and I will revert back to you shortly on this issue. This is of course "without prejudice" to our contention that CD's containing responsive documents have already been disclosed.

Transcending all of this however is your assumption which, with the utmost respect, must be a self-serving one, that all of the documents recently disclosed to you are responsive documents. Both you and Phil Taylor have been told on numerous occasions throughout the past week that the documents recently sent to you, have been sent not on the basis that they are responsive, but on the basis that so much time was being spent by you during the deposition process on this issue that to disclose practically the entirety of the contents of Welcome House would be the only basis that the parties might move on to discuss the material issues in this case. It has not escaped our attention that your correspondence (which includes e-mail) appears intent on suggesting otherwise, concentrating as it does on the number of boxes and documents sent to you.

One can be forgiven for thinking that your tactics here are to create the impression of your receiving an unreasonably large amount of responsive documents such that the deposition process could not proceed. I hope that I am wrong in this respect, however, you should be aware that we are alive to that possibility and in this context we reserve the right to produce this and our previous correspondence to Judge Case in response to any motion you choose to file.

Further, I believe that it is somewhat of a "leap" in the interpretation of the Order of 25 May 2004 to allege that the production of documents by my client in good faith and in the spirit of co-operation that we have tried to engender between the parties is somehow in breach of the order that my client respond to your letter of 12 December 2003. My client has of course fully complied with that order his US Attorneys' having responded to your letter within the time imposed by Judge Case.

### The Credit Pack Document

2

**BA237**

I do not share your view of the importance of a document which our preliminary investigation suggests was an uncirculated draft. I do, however, welcome and appreciate your retraction of the very serious allegation contained in your letter of 9 August 2004 and am happy to consider this particular aspect of the matter as closed.

Finally, I would very much welcome a cooperative approach to the issue of discovery going forward and I would certainly encourage you to contact Rob Wilcox or Brian Sullivan in this regard. I would hope that you would agree that this case needs to move forward from overbearing and expensive discovery disputes and motion practice to the merits of the case.

Yours sincerely

Steven Allen
Partner

BA238

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

August 13, 2004

**Via E-Mail and Fax (0121-454-4000)**

Steven Allen, Esq.
Mills & Reeve
54 Hagley Road
Edgbaston
Birmingham
B16 8PE

Re:    **In re BRAC Group, Inc.; BRAC Group, Inc., et al., v. Jaeban (U.K.),
Ltd., Adv. No. 03-A-54271 (Bankr. D. Del.)**

Dear Steve:

In response to your August 12th letter, I am pleased that you and I have laid to rest any concern or misunderstanding that I was challenging your integrity in expressing other serious concerns about how discovery has proceeded to date. In that spirit and in the belief that our time is better spent on other facets of the case, I will not respond to the *ad hominem* aspects of your letter.

With respect to the rest of your letter, please take advantage of having first-rate U.S. counsel, admitted to the U.S. Bankruptcy Court for the District of Delaware, at your disposal. Your "demands" are generally inappropriate, for reasons that Mr. Wilcox can explain. Equally to the point, you are not admitted to practice in the U.S.

Indeed, Rob Wilcox and I have had and continue to have a cooperative relationship. Given what has transpired so far, I will continue to deal directly with Mr. Jaeban's U.S. lawyers, Messrs. Wilcox and Sullivan, as I believe that a full understanding of our rules and practices is essential to moving this case forward.

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Steven Allen, Esq.
August 13, 2004
Page 2


      As to your demand for an immediate custodial deposition of BRACII, leaving aside procedural deficiencies (including, but not limited to, your inability to make such a demand), please note that Rob Wilcox and I agreed, after the current state of discovery became apparent to both of us, to postpone all further depositions in the U.K. BRACII's general position on discovery was laid out in my August 9th and 11th letters.

Sincerely yours,

Kenneth E. Wile


cc:    Robert D. Wilcox, Esq. (via e-mail)
       Brian Sullivan, Esq. (via e-mail)

       Patrick Corr
       Phillip Taylor

BA240

# MILLS
# REEVE

| To: | Sidley Austin Brown & Wood | Fax Number<br>001 312 853 7036 | Reference<br>Mr Ken Wile |
|---|---|---|---|
| cc: | Patrick Corr, Phillip Taylor | 020 7626 7937 | PHMC/4006615-001-0 |
| From: | Steven Allen<br>steven.allen@mills-reeve.com | +44(0)121 456 3631<br>Tel:+44(0)121 456 6343 | BSZA/4006615-0001-0 |
| Date:<br>Pages: | 17 August 2004<br>1 | Document number: bsza29fbsza.doc | |

Dear Mr Wile

Re: BRAC Group, Inc: Case No. 02-12152 (MFW) (Jointly Administered) : Adversary 03-A-54271

Thank you for your letter of 13 August 2004.

I apologise that I have not had time to respond until now.

For the avoidance of doubt, my letter of 12 August 2004 was read and approved by both of the U.S Counsel referred to in your letter before it was sent to you. I am however happy that you continue to correspond with them and no doubt they will be pointing out to you that your letter once again fails to address our serious concerns with regard to your clients' document disclosure.

Yours sincerely

Steven Allen

The information contained in this facsimile message is confidential and may be legally privileged. It is intended only for the person named above. If you receive this message in error, please immediately notify us by telephone and return the original message to us by post at the address below. We will reimburse the cost you incur in doing so.

Mills & Reeve
54 Hagley Road
Edgbaston
Birmingham
B16 8PE

Telephone: +44(0)121 454 4000
Fax: +44(0)121 456 3631
DX: 707290 Edgbaston 3

info@mills-reeve.com

Birmingham Cambridge London Norwich
Mills & Reeve is regulated by the Law Society
A list of partners may be inspected in any of our offices.

www.mills-reeve.com

BA241