## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), *et al.*, | Case No. 02-12152 (CGC) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), *et al.*, | |
| Plaintiffs, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, *et al.*, | |
| Defendants. | |

## BRACII'S MEMORANDUM IN OPPOSITION TO
## MR. JAEBAN'S MOTION FOR RECONSIDERATION

Plaintiff Budget Rent-A-Car International, Inc ("BRACII"), by its undersigned counsel, respectfully submits this Memorandum in Opposition to Mr. Jaeban's Motion for Reconsideration (the "Motion"). In opposing Mr. Jaeban's motion, BRACII states as follows:

Mr. Jaeban's motion is improper in form and can be denied for this reason alone. It is a 19-page rehashing of all his prior arguments – precisely what reconsideration motions cannot be. Because the allegations in his new affidavits could have been submitted in opposing BRACII's Motion, they may not be considered now.

On substance, Mr. Jaeban's motion shows no error by the Court, let alone the clear error that would refute the Court's sensible conclusion that, since Mr. Jaeban thoroughly failed to comply with its first sanctions order, lesser sanctions are insufficient. Both the existing record and even his belated evidence show that he failed to produce Jaeban UK documents in the

custody of the Receiver, even though a single e-mail invoking the Deed of Assignment would have caused their production. He failed to produce documents from Welcome House, even though this was the largest repository of Jaeban UK documents. He has still not explained the delay in producing the "Credit Pack" document which, like the letters from the Receiver, contradicts his case. There is still no evidence that he directed any search of Jaeban UK's computer files until August 2004. As shown below, his conduct after oral argument of BRACII's Motion for Further Sanctions shows yet more willful delay. His motion is without merit and should be swiftly denied.

## ARGUMENT

## I.    MR. JAEBAN'S MOTION VIOLATES THE STANDARDS GOVERNING MOTIONS FOR RECONSIDERATION.

As this Court has recognized, "The standard a party must meet to succeed on a motion for reconsideration is quite high." September 14, 2004 Mem. Op. at 4. "A motion for reconsideration under Federal Rule of Bankruptcy Procedure 9023 is an extraordinary means of relief," *Callaway Community Hospital Ass'n v. First Northern Bank & Trust (In re Chama, Inc )*, 265 B.R. 662, 670 (Bankr. D. Del. 2000), that should only be granted "sparingly." *E.g , Drayer v. Attorney General*, 2004 U.S. Dist. LEXIS 4923, at *3-*4 (D. Del. 2004).

In demanding that the Court spend the time necessary to review his 19-page motion, Mr. Jaeban has violated four of the cardinal rules governing the form of reconsideration motions. First, to comply with D. Del. L.R. 7.1.5 (applicable pursuant to Del. Bankr. L.R. 1001-1(b)), the movant must "briefly and distinctly" state his grounds in his motion. Far from brief, Mr. Jaeban's 19-page motion adds almost six pages to his opposition of the underlying motion.

Mr. Jaeban's motion is overlong in part because it repeats virtually all of his prior arguments at greater length in the hope that the Court will simply like some of them better the second time around. He thereby violates a second rule that applies throughout the federal courts.

BA558

On countless occasions, the federal courts have denied reconsideration motions that were "used

to rehash arguments already briefed or allow a never-ending polemic between the litigants and

the Court." *E.g.*, *Corning Inc. v. SRU Biosystems, LLC*, 2004 U.S. Dist. LEXIS 20820, at *2 (D.

Del. 2004); *EBS Pension, L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*,

268 B.R. 409, 412 (Bankr. D. Del. 2001).

      Third, Mr. Jaeban's *four* new affidavits and Exhibit G are improper. They rely on

conduct that allegedly occurred in June-August 2004 and earlier – *before* the oral argument of

BRACII's motion on September 21, 2004. They are filled with hearsay (the alleged statements

of Mr. O'Connor of the Receivers' office and of Morris, Nichols, for example), and the impact of

the Court's December 14, 2004 Memorandum Opinion (the "Second Sanctions Order") casts an

inevitable shadow over their credibility.

      "Where evidence is not newly discovered, a party may not submit that evidence in

support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

1985). Because the affidavit at issue contained that was available prior to the district court's

decision of the underlying motion, "[t]he district court appropriately did not consider the

affidavit in its disposition" on reconsideration. *Id.*

      The District Court recently restated this rule. *See eSpeed, Inc. v. BrokerTec USA,

L.L.C.*, 2005 U.S. Dist. LEXIS 785, at *3 (D. Del. 2005) (court will only consider new evidence

"not available to the moving party at the time of judgment") and has repeatedly refused to

consider the moving party's evidence regarding events that occurred before argument or decision

of the prior motion. *See, e.g., Seawright v. Carroll*, 2004 U.S. Dist. LEXIS 3267, at *3-4 (D.

Del. 2004) (refusing to consider letters available to plaintiff before dismissal); *Garrison v. Town

of Bethany Beach*, 2001 U.S. Dist. LEXIS 8434, *7-*8 (D. Del. 2001) (movant failed to explain

"why the [attorney's] affidavit could not be procured earlier"); *Schering Corp. v. Amgen Inc.*, 25 F.

Supp. 2d 293, 295 (D. Del. 1999) (rejecting evidence known to movant two weeks prior to the previous

BA559

hearing). Even though Mr. Jaeban cites *Harsco* (Motion at 2), he fails to mention, let alone satisfy this requirement. Under *Harsco* and its progeny, the affidavits are not entitled to consideration.

Finally, Mr. Jaeban's Motion fails at the most fundamental level. He has not in any way shown "manifest errors of law or fact." Sep. 14, 2004 Mem. Op. at 4 (quoting *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).[1] Mr. Jaeban's 19-page rehash, purporting to show a multitude of errors by the Court, is an admission that he has not found the clear, compelling error necessary for the Court to reconsider its decision. Having failed to comply with these basic rules, Mr. Jaeban is not entitled to reconsideration.

## II. AS THE COURT HELD, MR. JAEBAN REPEATEDLY FAILED TO COMPLY WITH ITS FIRST SANCTIONS ORDER.

Because Mr. Jaeban has reviewed and often mischaracterized the entire history of discovery in this matter, BRACII is also compelled to revisit that history.

### A. The Discovery Served by BRACII

#### 1. The First Set of Document Requests.

On September 29, 2003, BRACII and the Unsecured Creditors Committee of BRAC Group, Inc. served their Joint First Request for Production of Documents (the "First Requests") on Jaeban UK, during Mr. Jaeban's final weeks in control of Jaeban UK. (A copy of the First Requests is attached *infra* as Exhibit A.) The 20 requests were comprehensive in seeking communications and financial information about Jaeban UK and its dispute with BRACII. Definition j explicitly sought e-mails. Jaeban UK never objected to these requests.

In November 2003, Wragge & Co. produced a set of lever arch files to BRACII's counsel. Despite the production, there were obvious gaps. As the Court noted in both of its sanctions decisions, Mr. Wile wrote Jaeban UK's Delaware counsel on December 12, 2003 to

---

[1] Under the circumstances of this motion, Mr. Jaeban cannot demonstrate "manifest injustice," *see* Sep. Mem. Op. at 4, unless he can first show clear error. The facts found by the Court show no injustice – except to BRACII.

BA560

request that Jaeban UK comply in full.[2]  All of the documents at issue in both of BRACII's

sanctions motions are responsive to BRACII's unobjected First Requests.  Even allowing for the

documents belatedly produced, Mr. Jaeban's noncompliance continues to this day.  *See infra.*

###      2.      The Second Set of Document Requests.

On November 26, 2003, after Jaeban UK went into receivership, BRACII and the

Committee served their Joint Second Request for Production (the "Second Requests") directed to

Jaeban UK – not its Administrative Receivers.[3]  Like the First Requests, the Second Requests

sought documents related to the appointment of the Receivers, but also sought to ensure that

BRACII had all of Jaeban UK's documents relating to Jaeban UK's financial condition and its

allegations in the adversary proceeding.  Under English law, as BRACII noted in its Reply in

Support of Further Sanctions (at 3, n.1), the Receivers are merely agents of Jaeban UK.

Insolvency Act 1986, §44(1)(a).  It is a fiction that the documents sought by BRACII regarding

Jaeban UK's business and its claims in this proceeding were somehow beyond the possession,

custody, and control of Jaeban UK – and thus of Mr. Jaeban.

As Mr. Jaeban notes (Motion, Ex. A), Jaeban UK objected to the Second

Requests.  These objections, however, do not function as objections to the First Requests.  As

fundamental, in relying heavily on this set of objections, Mr. Jaeban ignores their contents as

well as the text of the December 30, 2003 cover letter from Jaeban UK's counsel that Mr. Jaeban

has included in Exhibit A to his Motion.  In that letter, Thomas Briggs promised that, "Jaeban

[UK] will produce documents identified in its responses next week."  The Objections state with

respect to Requests 1 and 2 that, subject to its objections, "Jaeban *will* produce responsive, non-

privileged documents."  BRACII did not review these documents until August 12, 2004 and did

not receive copies until August 25th.

---

[2] A copy of Mr. Wile's letter to Thomas Briggs is attached as Exhibit B, *infra.*  The letter lists seven specific
categories of missing documents, but states that "[t]his is not an exhaustive list, and it remains Jaeban [UK]'s
responsibility to comply in full."
[3] A copy of the Second Requests is attached as Exhibit C, *infra*

**BA561**

**B.    Mr. Jaeban's Multiple Violations of the Court's May 25th Order**

   **1.    Mr. Jaeban's Treatment of the May 25th Order**

           Despite the unequivocal terms of the Court's May 25th Order, Mr. Jaeban argues

that the Order somehow permitted the multiple discovery failures that occurred. As a threshold

matter, he ignores the nature of the Court's Order. It is a sanctions order. Section IV of the

Order is entitled "Sanctions to be imposed." It is not a set of guidelines. As the Court stated in

its Section Sanctions Opinion, Mr. Jaeban "was, so to speak, under the microscope" for

discovery compliance with the clear provisions of the May 25th Order.

           The key sanction provisions were clear: "Mr. Jaeban is to:

   a.    Provide documents in response to Plaintiffs' Second Requests for
         Production of Documents (served on November 18, 2003);

   b.    Respond to concerns raised by Plaintiffs in a letter dated December 12,
         2003 regarding apparent gaps in Jaeban's November production of
         documents"

and to schedule depositions. May 25th Order at 16, Section IV, ¶ 3.

           Sanctions Paragraph 3(b) unmistakably refers to BRACII's First Requests, which

occasioned the November 2003 production. It is comprehensive; it does not identify any gaps he

was not required to fill. It does not permit Mr. Jaeban to produce as little as possible, to review

only a portion of the prior production, or to ignore the specific concerns in Mr. Wile's December

12th letter regarding, *inter alia*, "e-mails and internal memoranda" and "documents that relate to

Mr. Jaeban's contentions." And it remained in effect at least until the Court issued its Second

Sanctions Order.

           Section 3(a) is equally explicit in requiring a production of documents in response

to the Second Requests. It cannot be read, in good faith, as anything other than a mandate to

"Provide documents." If Mr. Jaeban had any confusion regarding the status of Jaeban UK's

objections (despite Jaeban UK's promise to produced documents), it was his responsibility, not

**BA562**

BRACII's, to seek prompt clarification. Equally to the point, he has made no effort to show that the documents responsive to the Second Requests that he failed to produce before June 18th were even covered by the objections. Finally, as noted above, the documents finally produced by the Receivers on August 25, 2004 were also responsive to the First Requests – as to which Jaeban UK never filed an objection.

In short, all of the documents that were produced to BRACII in August 2004 (and the still-outstanding production or explanation of Jaeban UK's e-mails, *see infra*) were required to be produced by June 18th. There is no "clear or manifest error" in the Court's decision that its May 25th Order meant what it said.

### C.    Mr. Jaeban's Excuses for his Non-compliance

Mr. Jaeban has failed to show that the Court misinterpreted the evidence with respect to the limited production he made by the Court's deadline or the multiple productions that he failed to make by the Court's deadline.

### 1.    Mr. Jaeban's Limited Compliance on June 18, 2004

This Court recognized that Mr. Jaeban made a limited production (of one lever arch file) by the June 18th deadline. Second Sanctions Order at 4. Without identifying "clear error," Mr. Jaeban argues that this limited production and the one-line e-mail that his Delaware counsel sent BRACII's counsel satisfied his obligations under Paragraph 3b of the Court's May 25th Order to fill in the "apparent gaps" in the prior document production.

BA563

The fact remains that counsel's one-line e-mail and the production omitted other categories of documents, including some documents critically damaging to his case, that the May 25th Order required him to produce. There is no evidence that Mr. Jaeban even disclosed these issues by June 18th and it was no error for the Court to notice his failure to move to adjust the discovery schedule to address them.[4] Non-compliance is not compliance.

### 2.     Jaeban UK Documents Held by the Administrative Receivers

In the Second Sanctions Order, with respect to the Receiver's documents, the Court found:

> "lacking Mr. Jaeban's record of what actions he took with respect to the Receiver and when. It appears from the record Mr. Jaeban has provided that he and his counsel did not contact the Receiver until after the June 18[th] deadline had already passed. Paragraph 4 of the Wilcox affidavit indicates that he and Mr. Jaeban did not contact the receiver until August 4. And, once this contact was made, Mr. Jaeban had the documents produced nearly a week letter to BRACII on August 12."

Second Sanctions Order at 12. The Court premised its decision on "Mr. Jaeban's failure to keep everyone, including the Court and BRACII, abreast of the alleged problems he was having" and on his failure to adjust the pre-trial scheduling order to reflect his supposed problems. *Id.* at 6. At oral argument, Mr. Jaeban's counsel admitted "as a matter of candor" that Mr. Jaeban had never informed BRACII's counsel that "the receiver said there were no responsive documents or that it would not produce documents until such time as the objection was resolved." Motion for Reconsideration, Ex. B, Tr. at 32.

Instead of showing that the Court has misconstrued the record, Mr. Jaeban now relies on the affidavits he could have submitted prior the Court's decision. Under the settled caselaw (including the Court's Reconsideration Opinion) cited above, these affidavits may not be considered as they hardly constitute "newly-discovered evidence." The Court need not wade through the inconsistent, belated allegations that Mr. Jaeban has now provided.

---

[4] It seems that nearly all of the alleged efforts identified in Mr. Jaeban's new evidence began on June 9, 2004, only nine days before the Court's deadline. *See, e g*, Motion at 10-11.

BA564

Even if the affidavits could be considered, they support the fundamental basis for the Court's decision. As the Court recognized, once Mr. Wilcox made contact with the Receivers, "Mr. Jaeban had the documents produced nearly a week later to BRACII on August 12." Second Sanctions Order at 6. Mr. Allen's affidavit (Reconsideration Motion, Ex. E) inadvertently shows Mr. Jaeban knew what was necessary to obtain the documents.

> 25. On the instructions of Mr. Jaeban, Mills & Reeve [Mr. Allen's new firm] sent an e-mail to Wragge & Co. on 6 August 2004 invoking paragraph 4 of the Deed of Assignment requiring the Assignor [Jaeban UK] to provide all reasonable assistance to enable the Assignee to obtain the full benefit of the assignment.

All it took was an e-mail. Following Mr. Jaeban's payment of fees, the documents were made available for inspection by BRACII's counsel six days later. There is no justification for Mr. Jaeban's failure to send this e-mail shortly after the Court awarded sanctions on May 25, 2004. Mr. Jaeban's own new evidence shows the absence of "clear error."

Mr. Jaeban's final point is that BRACII somehow acquiesced in the Receivers' refusal to produce. Far from acquiescing, when Mr. Jaeban's counsel finally disclosed the Receivers' basis for noncompliance in August, BRACII's counsel "made it immediately and unequivocally clear that the Plaintiffs would immediately seek relief from the Court if it did not receive the requested access." Jaeban's Response to BRACII's Motion for Further Sanctions, Ex. A, Wilcox Aff., ¶ 4.

### 3.    The Welcome House Documents

As with the Receivers' documents, Mr. Jaeban has not shown that the Court overlooked or misunderstood any part of the record with respect to the Welcome House documents. While Mr. Jaeban may disagree with BRACII over the importance of these documents, he still cannot bring himself to say that they are nonresponsive or irrelevant. *See* Motion at 11; Second Sanctions Order at 4, n.2. *Compare* Reply Memorandum in Support of BRACII's Motion for Further Sanctions at 4 (listing categories of documents in detail).

9

BA565

Ironically, his affidavit (at ¶¶ 9, 15) shows only his further willful misconduct. Although Welcome House contained the largest repository of Jaeban UK documents and the Court had explicitly ordered him to fill in the gaps in the prior production, he refused to have those documents re-reviewed until his U.S. counsel arrived in August (and discovered the noncompliance).

### 4.    The Credit Pack Document

Mr. Jaeban's fails even to mention the August 2nd production of documents, apparently from the files of Wragge & Co., that included the Credit Pack document. This critical document not only contradicts key aspects of Mr. Jaeban's case, but also would require BRACII to seek "third-party discovery that should have occurred months ago." Second Sanctions Order at 4. Had Mr. Jaeban conducted the "under the microscope" search that the May 25th Order required, this document (and the remainder of the production) should have been produced in a timely manner. Jaeban UK's failure to produce this damaging document in the initial document production in November 2003 remains disquieting in light of the continuing concerns about that production.

### 5.    Jaeban UK's E-Mails and Computer System

### Mr. Jaeban's Pre-June 18th Failure to Fill in Gaps in his E-Mail Production.

Mr. Wile's December 12, 2003 letter to Jaeban UK's counsel sought missing e-mails as a principal "gap" in the November 2003 production. Despite the May 25th Order, the record prior to the Court's Second Sanctions Order did not disclose as single act that Mr. Jaeban took to comply with the Court's order. Mr. Jaeban's four new, belated affidavits are equally silent. If the May 25th Order meant anything, it required Mr. Jaeban to make every effort to find those e-mails. He did not do so – despite the importance of e-mails discussing, for example, the impact of the September 11th attacks on the travel industry.

BA566

**Mr. Jaeban's Post-Argument Deliberate Delay.**    Further evidence of Mr. Jaeban willful misconduct – and that he will never "abide" by his discovery obligations -- comes from his post-argument actions. He has refused to report on whether he has found unproduced e-mails from the one personal computer he has admitted to finding. And he has refused to respond to BRACII's repeated requests to be told what became of the Jaeban UK's other computer servers and personal computers after November 2003 – even though he has never denied that the Court's May 25th Order remains in effect.

As explained in the briefing on BRACII's Motion and at oral argument, despite the clear mandate of the May 25th Order, Mr. Jaeban waited until August 2004 to commission a review of Jaeban UK's computer systems and only disclosed the search to BRACII in that month by accident. *See* BRACII Reply Mem. in Support of Further Sanctions at 9 & n.9. On October 20, 2004, after affording Mr. Jaeban a month after oral argument to report on his review, BRACII renewed its inquiries with a short e-mail inquiring about the "the status of the effort in England to track down and extract e-mails from Jaeban UK's former e-mail server."[5] On four additional occasions, BRACII inquired as to the status of the review -- October 28th (letter), November 11th (e-mail), and November 30th (letter), and December 3rd (e-mail). On November 11th, November 30th, December 3rd, and December 8th, pursuant to the Court's May 25th Order, BRACII also asked whether Mr. Jaeban had located all of Jaeban UK's computers that contained e-mails and, if not, would Mr. Jaeban would identify computers with e-mails or other documents that could no longer be found.

After thanking BRACII for its patience, Mr. Jaeban's counsel first promised that a computer review would occur on **November 22, 2004** and then (without explanation for the delay) on **December 9, 2004** – with no date given for sharing the results with BRACII. It was

---

[5] The chain of correspondence (without duplicative attachments and law firm confidentiality notices) is attached *infra* as Exhibit D. The entire correspondence, including attachments and disclaimers, is attached to Mr. Wile's affidavit (Exhibit E, *infra*).

BA567

only on December 7th that Mr. Allen identified the one computer to be reviewed, which belong to Jaeban UK's former accountant. They refused -- on (November 11th, November 30th, and December 7th) -- to answer whether any computers containing e-mails had been lost.[6] Mr. Sullivan ultimately responded (on December 10th) that the computer review had commenced on December 9th and that Mr. Allen would provide a "report of the review," i.e., not documents, by **December 17th**. Mr. Jaeban successfully outwaited the decision on BRACII's Motion for Further Sanctions, which was posted on December 16th before any "report" was provided.[7]

The failure to respond on the missing computers is inexcusable. The failure to produce the e-mails or report on the accountant's computer – it does not take even three weeks to review a single computer -- bears every appearance of a deliberate tactic. Neither BRACII nor the Court should be subjected to further misconduct by Mr. Jaeban.

## III.   MR. JAEBAN HAS NOT SHOWN ERROR IN THE COURT'S ANALYSIS OF THE *POULIS* FACTORS.

Mr. Jaeban's treatment of the *Poulis* factors merits limited response, since he has not shown "clear error" of either fact or in the Court's thoughtful weighing of those facts. Mr. Jaeban's most fundamental error is to ignore the context. This is a second award of sanctions, after Mr. Jaeban had been put on explicit notice that more severe sanctions might be awarded if he failed to comply with the May 25th Order.

In ruling on BRACII's Motion for Further Sanctions, this Court could have dismissed Mr. Jaeban's counterclaims based on a single, dispositive factor, the proven inadequacy of lesser sanctions. *See, e.g., Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) ("not all of the *Poulis* factors must be satisfied to dismiss a complaint"). Mr. Jaeban's multiple

---

[6] Instead of answering the question, Mr. Jaeban sought to change the subject (50 days later) on December 7th by (a) threatening BRACII with sanctions for, *inter alia*, the motion since granted by the Court and (b) demanding documents from BRACII even though document discovery had not been reopened. Exhibit D, *infra* (Sullivan and Allen e-mails).

[7] Having asked BRACII to await a report by December 17th, Mr. Jaeban is estopped from complaining that BRACII did not submit this post-oral argument evidence before December 16th. (*Harsco*, by its terms, only applies to the moving party on reconsideration in any event.)

BA568

delays (continuing to this day) must be added to those of his assignor, Jaeban UK, prior to the assignment. Mr. Jaeban's conduct was willful, as the Court found and as further detailed above. The improper affidavits, if considered, actually demonstrate that Mr. Jaeban was even more personally and directly involved in the failures to comply with the Court's May 25th Order than appeared from the record before the Court in September. His laundry list of actions (at 14) show that, while he was willing to take the steps to retain counsel and pursue his own case, he did not take the steps necessary to comply with the May 25th Order.[8]

As to "meritoriousness," Mr. Jaeban accurately quotes *Poulis* on looking to the allegations in the relevant pleading, but neither *Poulis* nor its progeny dealt with a second sanctions motion where documents show that the claimant's own counsel has called the basis for the claims into question. Both of the letters speak for themselves, as the Court found.[9] Second Sanctions Order at 8. Two final points require slightly more extended discussion. The prejudice to BRACII includes not only the continued segregation of $4.5 million, but the additional delay and massive expense that would result if discovery were belatedly now revived. That expense would be borne by BRACII creditors, none of whom have received a distribution to-date.[10] *See* Ex. E, *infra* (Wile Aff.), ¶¶ 2-3. As an example, BRACII would have to delay depositions while it pursued third-party discovery based on the Credit Pack, produced in August 2004, overseas. There is also the prejudice that arises from litigating with an adversary like Mr. Jaeban, where compliance is routinely delayed or denied.

Unfortunately for Mr. Jaeban, the prejudice factor is not a comparative test, but includes only "Prejudice to the adversary." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863,

---

[8] Given his active involvement and his knowledge of the location of Jaeban UK's documents, Mr. Jaeban is poorly positioned to blame his lawyers

[9] Mr. Weatherall's belated affidavit cannot alter the contents of those letters. His October 15, 2003 letter (which should have been in the November 2003 production) still shows ratification of the Umbrella Agreement and the IPLA  Mr. Jaeban's January 30, 2004 letter still responds to Mr. Weatherall's doubts about "the claim against Budget International" – BRACII and discusses the agreements at issue here.

[10] Mr. Jaeban's Motion (at 16) misstate the ownership of the funds, which belong to BRACII, not the "BRAC Administrators" in the U.S. ($3 5 million will be distributed to BRACII creditors; $1 million will be distributed to BRAC Group creditors)  Ex E, *infra*, Wile Aff., ¶¶ 2-3.

13

868 (3d Cir. 1984). Every party sanctioned by a dismissal of his claims is disadvantaged.

## IV.   THE GUARANTEE CLAIM AND BRACII'S JANUARY 2004 DOCUMENT PRODUCTION ARE IRRELEVANT TO RECONSIDERATION.

### A.   The Guarantee.

Nor is Mr. Jaeban's personal guarantee a justification for his conduct or for altering the Court's decision. Mr. Jaeban has always known that the defeat of Jaeban UK's counterclaims would lead to liability on his personal guaranty. At the oral argument of BRACII's first Motion to Strike, his counsel opposed sanctions *because* a decision to strike Jaeban UK's pleadings might render Mr. Jaeban liable on his guaranty:

> "It's a generalized guaranty, Your Honor. . . . There is clearly a general embracing obligation of Mr. Jaeban in respect to the debts of Jaeban (U.K.) Limited. There is an agreement in place, signed by Mr. Jaeban, which is annexed to the umbrella agreement and the international prime license agreement, which are the two contracts that Budget are relying on. *So it's not correct to say that Mr. Jaeban did not have a personal liability in relation to this case.*"

March 10, 2004 Tr. (Ex. F, *infra*) (emphasis added), at 36. *See* May 25th Order at 3 (noting the guarantee, which was attached to the original Complaint as Exhibit B, Schedule 6).[11]

Once again, in challenging the Second Sanctions Order, Mr. Jaeban has not shown any error in rehashing an argument he made in writing and in his concluding remarks at oral argument in September. *See* Reply in Support of Motion to Reopen "Limited Discovery" at 2; Ex. B, Tr. at 36. Mr. Jaeban consented to adding the guarantee claim without asking to reopen document discovery and has again failed to show that it requires *any* additional discovery. (His proposed broad new discovery makes no mention of the guarantee.) His affirmative defenses are, word-for-word, the same as the affirmative defenses to the original counterclaims, except for an affirmative defense based on whether BRACII made a proper demand. *See* Am. Answer and Counterclaims, ¶ 41 (failure of condition precedent). His guarantee is a further reason why he

---

[11] Both under the terms of his guarantee (as his counsel implicitly recognized) and as a matter of law, failure of Jaeban UK's affirmative defenses or its counterclaims will preclude Mr. Jaeban from asserting Jaeban UK's defenses to the guarantee  *See DVI Services, Inc v. Florida Heart, LLC,* 2002 U.S. Dist. LEXIS 16296 (E.D. Pa 2002) (assignee could not assert compulsory counterclaims after assignor defaulted on claims asserted against it)

BA570

should have complied with the May 25th Order, not a pretext for his failure to do so.

**B.    BRACII's Conduct**

Mr. Jaeban inexcusably repeats his complaints about BRACII's document production, when the Court could hardly have overlooked them. They were the basis for his Motion to Reopen "Limited Discovery" and were duplicated in his opposition to BRACII's Motion for Further Sanctions.

The striking feature, however, is his declaration that "Mr. Jaeban and his UK lawyers" – but apparently not his Delaware lawyers -- were "perplexed" that the Court did not sanction BRACII. Motion at 10. His Delaware lawyers, however, knew that Mr. Jaeban never filed a sanctions motion, having never filed a motion to compel, having never held a discovery conference. He did not seek to reopen document discovery until August 2004, seven months after BRACII filed its objections (yet produced documents), five months after Mr. Jaeban was assigned the counterclaims, and two months after the document discovery cutoff. The issue instead points to Mr. Jaeban's neglect of his case: as BRACII argued in August, there is no evidence that Mr. Jaeban or his counsel paid attention to BRACII's document production until after June 18th.

BA571

## CONCLUSION

BRACII respectfully requests that the Court deny Mr. Jaeban's motion forthwith.

Dated: February 4, 2005

Respectfully submitted,

**SIDLEY AUSTIN BROWN & WOOD** LLP

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Kenneth E. Wile
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Robert S. Brady (Bar No. 2847)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

BA572

**Exhibit A to Opposition**

BA573

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al.[1], | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, | |
| Defendants. | |

## JOINT FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO JAEBAN (UK) LIMITED

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Plaintiffs, the debtors and debtors-in-possession in the above-captioned action, and Plaintiff-Intervenor, the Official Committee of Unsecured Creditors, by their undersigned attorneys, hereby request that

---

[1] The Debtors are the following entities: BRAC Group, Inc., Auto Rental Systems, Inc., BGI Airport Parking, Inc., BGI Shared Services, Inc., BGI Shared Services, LLC, BRAC Credit Corporation, BRAC Car Sales, Inc., BRAC Fleet Finance Corporation, BRAC Rent A Car Asia-Pacific, Inc., BRAC Rent A Car Caribe Corporation, BRAC Rent A Car Corporation, BRAC Rent-A-Car International, Inc., BRAC Rent A Car of Japan, Inc., BRAC Rent-A-Car of St. Louis, Inc., BRAC Rent-A-Car of the Midwest, Inc., BRAC Rent-A-Car Systems, Inc., BRAC Sales Corporation, BRAC Storage Corporation, BRAT Move Management, Inc., BRAT Relocation Services, Inc., BRAT TRS, Inc., BVM, Inc., Carson Chrysler Plymouth Dodge Jeep Eagle, Inc., Control Risk Corporation, Dayton Auto Lease Company, Inc., Directors Row Management Company, LLC, IN Motors VI, LLC, Mastering The Move Realty, Inc., Mosiant Car Sales, Inc., NYRAC Inc., Paul West Ford, Inc., Philips Jacobs Insurance Agency, Inc., Premier Car Rental LLC, Reservation Services, Inc., TCS Properties, LLC, Team Car Sales of Charlotte, Inc., Team Car Sales of Dayton, Inc., Team Car Sales of Philadelphia, Inc., Team Car Sales of Richmond, Inc., Team Car Sales of San Diego, Inc., Team Car Sales of Southern California, Inc., Team Fleet Services Corporation, Team Holdings Corp., Team Realty Services, Inc., The Move Shop, Inc., Transportation and Storage Associates, ValCar Rental Car Sales, Inc., Vehicle Rental Access Company, LLC, and Warren Wooten Ford, Inc.

Defendant Jaeban (U.K.) Limited produce the following documents at the offices of Sidley Austin Brown & Wood, 10 South Dearborn Street, Chicago, Illinois, 60302, within twenty days of service:

### DEFINITIONS AND INSTRUCTIONS

    a.    This Request covers all documents and tangible things in your possession, custody or control, including such documents and tangible things as are in the possession, custody or control of your agents, representatives, and, unless privileged, your attorneys.

    b.    This Request is continuing in nature. If you discover additional documents called for by this Request, then you are obligated promptly to supplement your response.

    c.    Documents produced in response to this Request shall be organized and designated to correspond to the categories in this request or produced as they are kept in the usual course of business and identified as to the request and requests to which they are responsive.

    d.    "BRACII" refers to Budget Rent a Car International, Inc.

    e.    "BTI" refers to BTI (UK) plc, a wholly-owned subsidiary of BRACII that is the subject to an Order of Administration of the High Court of Justice, Chancery Division. (BTI is identified in Jaeban's Counterclaims as BTI (UK) PK.)

    f.    "Debtors" refers to the debtors and the debtors in possession in the above-captioned action and specifically includes BRACII. **The term also includes BTI.** In addition, the term refers to the officers, directors, employees, attorneys and agents of the foregoing.

    g.    "Jaeban" refers to Jaeban (U.K.) Limited and its officers, directors, employees, shareholders, agents, and attorneys.

2

BA575

     h.    "IPLA" refers to the March 5, 2001 International Prime License Agreement among Budget Rent A Car International and Jaeban (referred to as the ILPA in Jaeban's Counterclaims).

     i.    "Exhibit C Charges" refer to the categories of charges listed in the first column of Exhibit C of the Complaint in this adversary proceeding (a copy of which is attached for convenience). These charges include U.S. reservation charges, travel agent referrals, customer relations refunds, frequent flyer and international programs, interoffice charges, Royal Automobile Club subscriptions, BMS reservations and charges, airport concessions (for the airports identified in Exhibit C), other location rent charges, miscellaneous utility charges, telephone charges, royalty fees, yellow pages charges, miscellaneous charges, insurance, and cont cover and low value refunds.

     j.    The term "document" is used in the broadest sense and includes all written or graphic matter of every kind and description however produced or reproduced, whether draft or final, original or reproduction, all tangible things and any other data compilations from which information can be obtained or on which information may be stored, including but not limited to e-mails and other documents stored in tangible, electronic, mechanical or electric form or representation of any kind, including materials on or in computer tapes, disks and memories, back up copies and deleted files or files marked for overwriting on a computer or computer storage device or media whether located on site or off site. It includes all matter that relates or refers, in whole or in part, to the subject referred to in the Request, including, but not limited to, letters, correspondence, reports, e-mail, agreements, interoffice correspondence, notes, telegrams, minutes or records of meetings, notes of meetings, notes of telephone conversations, reports and/or summaries of investigations, expressions or statements of policy, opinions or reports of consultants, lists of persons attending meetings, drafts and revisions of drafts of any

3

BA576

documents, invoices, receipts, original preliminary notes, and electronic mail. If a document has been prepared in draft or in several copies, or several versions, even if only in electronic form, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), then each non-identical copy is a separate document.

  k. The words "and" and "or" shall be construed conjunctively or disjunctively so as to bring within the scope of the document request as much information as possible. The plural shall include the singular and the singular shall include the plural.

  l. If you withhold any documents because of a claim of privilege or immunity, then identify the documents withheld and the precise privilege or protection claimed with sufficient specificity to permit a full determination of whether the claim of privilege or immunity is valid. For each document that you decline to produce on grounds of privilege, provide the following information: (a) the reason for withholding the document; (b) the date of the document; (c) the identity of its author(s), including the job title and description of each such person, and a current address and telephone number for each such person; (d) the identity of each person to whom the document was sent as well as the custodian of the document, the job title and description of each such person, and a current address and telephone number for each such person; and (e) the subject-matter of the document in sufficient detail to permit assessment of the asserted basis for withholding the document.

  m. **Time Period:** These Requests seek only documents that were created or reviewed by Jaeban on or after January 1, 2000 through the date of Jaeban's response.

4

## DOCUMENT REQUESTS

1.    All documents, created or requested by any person or entity, that place a value on the business (or any portion thereof) or the shares of Jaeban including, without limitation, all financial statements of Jaeban, whether draft or final.

2.    All documents that constitute minutes of meetings of the Jaeban Board of Directors or refer or relate to actions taken by the Jaeban Board of Directors including, without limitation, all resolutions, consents or other actions taken by the Jaeban Board of Directors.

3.    All documents that refer to a claim or claims by any Debtor against Jaeban or Mr. I.M. Jaeban or Jaeban against any Debtor, regardless of whether that claim has yet been asserted in the above-captioned adversary proceeding or the bankruptcy case. Such documents include, without limitation, Jaeban internal documents and all documents that refer to, relate to, or constitute communications among Jaeban and any third party including, without limitation, its lender(s) or internal or external accountants or auditors with respect to such claims. Notwithstanding the foregoing, this request does not seek documents created by Jaeban solely for use by its English or U.S. counsel and not shared with any other third party.

4.    All documents in Jaeban's possession, custody, or control that refer or relate to the granting or continuing existence of an Order of Administration by the High Court of Justice, Chancery Division with respect to BRACII or BTI.

5.    All documents that refer to, relate to, or constitute communications between Jaeban and Cendant Corporation or any of its affiliated entities, including, without limitation, Avis Europe plc and any affiliates thereof.

6.    All agreements between or among Jaeban, Mr. I.M. Jaeban and any of the Debtors (which have been defined to include BTI) including, without limitation, each of the agreements referenced in Paragraph 39 of Jaeban's Counterclaims.

5

7.     All documents created or reviewed by Jaeban in considering or deciding to enter into the IPLA, the March 5, 2001 Umbrella Agreement among Jaeban, Mr. I.M. Jaeban, and BRACII, or the March 5, 2001 Business Sale Agreement to purchase BTI business assets from BRACII. Such documents include, without limitation, all documents that Jaeban created or reviewed in analyzing the business of any of the Debtors and all internal communications that refer or relate to such materials.

8.     All other documents that refer or relate to negotiations between Jaeban or Mr. I.M. Jaeban and any of the Debtors with respect to the drafting, execution, or performance of any proposed or executed agreement with any of the Debtors.

9.     All general ledgers, computer databases, or other documents containing, reflecting, tabulating, or summarizing entries for any of the Exhibit C Charges (as defined above).

10.    All other documents that refer or relate to any or all of the Exhibit C Charges.

11.    Documents identifying the size of Jaeban's fleet of cars during each month from January 2001 to the present.

12.    All documents that refer or relate to Jaeban's affirmative defenses of estoppel or waiver.

13.    All documents that refer or relate to the alleged failure by any Debtor adequately to market the Budget brand, as set forth in Paragraph 37 of the Counterclaim.

14.    All documents that refer or relate to Debtors' alleged "failure to provide certain administrative functions required by the ILPA" set forth in Paragraph 44 of the Counterclaim.

6

BA579

15. All documents that refer or relate to Debtors' alleged failure "to provide integrated service across critical territories as required by the ILPA" set forth in Paragraph 44 of the Counterclaim.

16. All documents that refer or relate to the "various charges associated with the leasing of vehicles to" BRACII alleged in Paragraph 40 of the Counterclaim.

17. All documents that refer or relate to BRACII's alleged failure to return vehicles in its possession to Jaeban.

18. All documents that refer or relate to payments by any Jaeban customer to any Debtor (as defined above, including, without limitation, Budget Group, Inc. BRACII, or BTI) as to which Jaeban alleges that such payment was owed to Jaeban.

19. All documents that refer or relate to payments by any party that were received by Jaeban but which relate to services rendered by any Debtor where all or any portion of such payment was not forwarded by Jaeban to the relevant Debtor.

20. All documents that refer or relate to Jaeban's alleged damages or right of setoff or right of recoupment against Debtors.

Dated: September 29, 2003

**SIDLEY AUSTIN BROWN & WOOD**

Larry J. Nyhan
Melville W. Washburn
Kenneth E. Wile
Bank One Plaza
10 S. Dearborn
Chicago, IL 60603

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____

Robert S. Brady (Bar No. 2847)
Edmon L. Morton (No. 3856)
Joseph A. Malfitano (No. 4020)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Counsel for Debtors and Debtors-in-Possession
BRAC Group, Inc., et al.

7

BA580

**BROWN RUDNICK BERLACK ISRAELS LLP**
Martin S. Siegel, Esq.
120 West 45th Street
New York, New York 10036
(212) 704-0100

Counsel for the Official Committee of Unsecured
Creditors

**ASHBY & GEDDES**

William Bowden (No. 2553)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

8

BA581

**EXHIBIT C**

**SUMMARY OF GROSS AMOUNTS OWED BY
JAEBAN TO BRACII**

| Description | Figure per BRACII - 2001 | Figure per BRACII - 2002 | Figure per BRACII - 2003 | Totals |
|---|---|---|---|---|
| US Reservation Charges | £41,954.46 | £77,519.60 | £4,870.59 | £124,344.65 |
| Travel Agents Referral Programme | £62,267.59 | £98,886.45 | £23,798.37 | £184,952.41 |
| Customer Relations Refunds | | £4,703.37 | £65.76 | £4,769.13 |
| Frequent Flyer & International Programmes etc | | £10,568.00 | £1,030.13 | £11,598.13 |
| Inter Office Charges General | £190,876.53 | £57,805.06 | | £248,681.59 |
| Inter Office Charges Oldbury / Corporate | See above | See above | See above | £0.00 |
| RAC - Subscriptions | £35,272.26 | £56,437.32 | | £91,709.58 |
| RAC - Other | | | | £0.00 |
| BMS - Reservations | £67,779.88 | £101,426.98 | £9,366.35 | £178,573.21 |
| BMS - Charges | | £76,793.62 | | £76,793.62 |
| Money paid to Jaeban | | £12,631.61 | | £12,631.61 |
| 2001 concessions | | | | £0.00 |
| Manchester Airport Concessions | £80,633.19 | £93,658.61 | | £174,291.80 |
| Birmingham Airport Concessions | | £108,198.77 | | £108,198.77 |
| Edinburgh Airport Concessions | | £80,613.56 | | £80,613.56 |
| Glasgow Airport Concessions | | £152,552.62 | | £152,552.62 |
| East Midlands Airport Concessions | | £7,196.85 | | £7,196.85 |
| Other Location Rent Charges | £72,080.78 | £141,254.54 | | £213,335.32 |
| Miscellaneous Utilities Charges | | £19,914.72 | | £19,914.72 |
| Telephone Charges | | £134,052.88 | | £134,052.88 |
| Royalty Fees (2003 estimated) | £210,640.22 | £638,301.48 | £94,007.00 | £942,948.70 |
| Yellow Pages 2001 | £22,224.07 | | | £22,224.07 |
| Yellow Pages 2002/3 | | £128,059.47 | £25,900.54 | £153,960.01 |
| Dun & Bradstreet Reports | | | | £0.00 |
| Miscellaneous Charges | £28,755.93 | £28,560.04 | £111.64 | £57,427.61 |
| Miscellaneous Adjustments | | | | £0.00 |
| 1st Quarter Fleet/Ford Bonus | | | | £0.00 |
| Insurance | | £1,267.16 | | £1,267.16 |
| Cont Cover and low value refunds | | £4,052.10 | | £4,052.10 |
| Totals | £812,484.91 | £2,034,454.81 | £159,150.38 | £3,006,090.10 |

9

**Exhibit B to Opposition**

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D C |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwille@sidley com

December 12, 2003

**VIA FAX (302-658-3989)**

Thomas W. Briggs, Esq.
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Centre, 18th Floor
1201 North Market Street
Wilmington, DE 19899-1347

      Re:   <u>BRAC Group, Inc., et al., v. Jaeban (U.K.), Ltd.,</u>
              **Adv. No. 03-A-54271 (Bankr. D. Del.)**

Dear Tom:

        Since Morris Nichols remains (and, we hope, will continue as) Jaeban's Delaware counsel of record, I am writing to raise two separate discovery topics.

        1.    **UK Depositions:**    We are likely to depose most or all of the following witnesses associated with Jaeban in addition to the two Receivers:

I. M. Jaeban
Paul Champken
Steve Downing
Anthony Guest
Simon Poyner
Andrew Rees
Trevor Sutherland

Please check on their availability during the weeks of January 12th and 19th. We would like these depositions to occur at our offices in London; there are likely to be London depositions as well

        2.    **Jaeban Documents Produced To Date.**    While Wragges has already produced a moderate number of (mostly responsive) documents to date, we are concerned that the production is not complete. In particular, Wragges sent only a minimal number of e-mails

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

BA584

**SIDLEY AUSTIN BROWN & WOOD LLP**                         CHICAGO

Thomas W. Briggs, Esq.
December 12, 2003
Page 2

and internal memoranda related to the specifications in our document requests. Because Jaeban did not object to any of the requests in a timely manner, it has no grounds under the Federal Rules for withholding documents that we have sought. Please note that, consistent with the Federal Rules, we have sought documents within Jaeban's possession, custody, or control; these include documents in the possession of Wragges and PwC, who are agents of Jaeban (and, now, of the Receivers).

Turning to the specific requests, please note the following apparent deficiencies. This is not an exhaustive list, and it remains Jaeban's responsibility to comply in full.

No. 1:     The document production includes a set of the 2002 financial statements, but this request is broader in requiring documents and drafts of documents that reflect on the overall value of Jaeban, including current and prior financial statements dating back to January 1, 2000.

No. 2:     The Wragges production does not include any responsive documents (e.g., minutes and Board resolutions).

No. 3:     This request sought, *inter alia*, documents discussing Mr. Jaeban's views of the demands and counterdemands that have now been brought in the adversary proceeding. Experience suggests that there will usually be e-mails and internal memoranda that discuss these claims. Some documents might arguably be privileged; if so, we are entitled to a privilege list.

No. 4:     We expected to see more documents referring to the Orders of Administration. At the risk of understatement, the altered status of BRACII and BTI were not insignificant matters to Jaeban.

No. 5:     Wragges has produced some responsive documents, but we would have expected to have seen much more.

Nos. 7-8:     We do not seem to have any of the background documents (emails, memoranda, and the like) that Jaeban used in deciding to enter into the IPLA, the Umbrella Agreement, or other agreements.

Nos. 12-20:     These requests seek documents that relate to Jaeban's contentions. Needless to say, any documents that have not been produced are unlikely to be admitted at trial. We want to be certain, however, that Jaeban has produced all documents that relate to these claims, whether or not these are documents on which Jaeban intends to rely at trial.

Many thanks for your help. Please call with any questions.

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Thomas W. Briggs, Esq
December 12, 2003
Page 3


                                      Sincerely yours,

                                      Kenneth E. Wile

cc:    Martin Siegel

       Patrick Corr
       Phillip Taylor

BA586

<u>**Exhibit C to Opposition**</u>

ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs, | 03-A-54271 |
| v | |
| Jaeban (U.K.) Limited, | |
| Defendants. | |

## JOINT SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO JAEBAN (UK) LIMITED

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Plaintiffs, the debtors and debtors-in-possession in the above-captioned action, and Plaintiff-Intervenor, the Official Committee of Unsecured Creditors, by their undersigned attorneys, hereby request that Defendant Jaeban (U.K.) Limited produce the following documents at the offices of Sidley Austin Brown & Wood, 10 South Dearborn Street, Chicago, Illinois, 60302, within twenty days of service:

### DEFINITIONS AND INSTRUCTIONS

a.    Plaintiffs incorporate by reference the Definitions and Instructions set forth in their First Request for Production of Documents.

BA588

      b      The "Jaeban Receivers" refer to the Joint Administrative Receivers of Jaeban (UK) Limited appointed on October 20, 2003.

      c.     "Robson Rhodes" refers to RSM Robson Rhodes LLP and its directors, partners, officers, and employees.

      d.     "CIF" refers to Close Invoice Finance Limited and its parents, subsidiaries, affiliates, and all officers, directors, employees, attorneys and agents of the foregoing.

      e.     "HSBC" refers to HSBC Bank plc and its parents, subsidiaries, affiliates, and all officers, directors, employees, attorneys and agents of the foregoing.

      f.     The "Adversary Proceeding" refers to the above-captioned adversary proceeding *BRAC Group, Inc., et al., v Jaeban (U.K.) Limited*, No. 03-A-54271 (Bankr. D Del.).

### DOCUMENT REQUESTS

      1.     All correspondence (including e-mails) and all other documents exchanged at any time between or among Jaeban, the Jaeban Receivers, or Robson Rhodes and any secured creditor of Jaeban (including, without limitation, CIF or HSBC) that refer or relate to (a) the appointment of an Administrative Receiver or Receivers; (b) the Adversary Proceeding or any claim or allegation made in the Adversary Proceeding; or (c) the financial condition of Jaeban.

      2.     All other documents not produced in response to the Joint First Request for Production of Document to Jaeban (or withheld on grounds of privilege in response to that Request) that refer or relate to any claim or allegation made in the Adversary Proceeding including, without limitation, all evaluations or other references to the allegations in the Adversary Proceeding by the Jaeban Receivers or any director or officer of Jaeban.

BA589

3.    All documents that refer or relate to completed or proposed sales of Jaeban

assets by the Jaeban Receivers.

Dated: November 26, 2003

**SIDLEY AUSTIN BROWN & WOOD**

Larry J. Nyhan
Melville W. Washburn
Kenneth E. Wile
Bank One Plaza
10 S. Dearborn
Chicago, IL 60603

Counsel for Debtors and Debtors-in-Possession
BRAC Group, Inc., et al

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

Robert S. Brady (Bar No. 2847)
Edmon L. Morton (No. 3856)
Joseph A. Malfitano (No. 4020)
Matthew B. Lunn (No. 4119)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

**BROWN RUDNICK BERLACK ISRAELS LLP**
Martin S. Siegel, Esq.
120 West 45th Street
New York, New York 10036
(212) 704-0100

Counsel for the Official Committee of Unsecured
Creditors

**ASHBY & GEDDES**
William Bowden (No. 2553)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

3

BA590

**Exhibit D to Opposition**

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Wednesday, October 20, 2004 11:37 AM |
| **To:** | Brian Sullivan (E-mail); Rob Wilcox (E-mail) |
| **Cc:** | Edmon L. Morton (E-mail); Taylor, Phillip D.; Corr, Patrick |
| **Subject:** | Jaeban UK Adversary Proceeding |

As it has now been almost a month since oral argument in Phoenix, please let me know the status of the effort in England to track down and extract e-mails from Jaeban UK's former e-mail server.

Many thanks.

Ken

Kenneth E Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley com

1

BA592

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

October 28, 2004

**VIA FAX (302-652-1111) AND E-MAIL**

Brian A. Sullivan, Esq.
Robert D. Wilcox, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899

Re:  <u>BRAC Group, Inc. v. Jaeban (U.K.), Ltd.</u>, Adv. No. 03-A-54271
(Bankr. D. Del.)

Gentlemen:

On October 20, 2004, eight days ago, I sent you an e-mail asking for an update on your progress in tracking down and extracting e-mail from Jaeban UK's e-mail server. (A printout of my e-mail is attached.) As you know, the e-mails sought by the Joint First Document Request should have been produced by Jaeban UK in November 2003 and by Mr. Jaeban by June 18, 2004.

To date, I have not had a response. I would very much appreciate a response by Monday, November 1st.

Sincerely yours,

Kenneth E. Wile

Attachment

cc:  Edmon Morton, Esq. (w/attach.)
    Phillip Taylor (London Office) (w/attach.)

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

BA593

**Wile, Kenneth E.**

| | |
|---|---|
| From: | Brian Sullivan [bsullivan@werbsullivan.com] |
| Sent: | Friday, October 29, 2004 11:05 AM |
| To: | kwile@sidley.com |
| Subject: | Jaeban/BRAC |

Ken,

We are working and communicating abroad in an attempt to respond as soon as possible, which we hope will be by next week. Thanks for your patience.

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 10th Floor
P.O. Box 25046
Wilmington, Delaware 19899
For Courier: 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-Mail: bsullivan@werbsullivan.com

CONFIDENTIALITY NOTICE
UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic
Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]
This message is being sent by Werb & Sullivan, a law firm. It is
intended exclusively for the individuals and entities to which it is
addressed. This communication, including any attachments, may contain
information that is proprietary, privileged, confidential or otherwise
legally exempt from disclosure. If you are not the named addressee, you
are not authorized to read, print, retain, copy or disseminate this
message or any part of it. If you have received this message in error,
please notify the sender immediately by email and delete all copies of
this message.

BA594

**Wile, Kenneth E.**

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan.com] |
| **Sent:** | Friday, November 05, 2004 12:53 PM |
| **To:** | kwile@sidley.com |
| **Cc:** | rdwilcox@mindspring.com; steven.allen@mills-reeve.com |
| **Subject:** | Jaeban/BRAC |

Hi Ken,

We have been working on the computer issue diligently from this office and with England.  We hope to have a response to you by the beginning of the week, and again I do not anticipate any surprises.  Thanks again for your patience which we appreciate.  Regards

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
For Courier: 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-Mail: bsullivan@werbsullivan.com

CONFIDENTIALITY NOTICE
UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic
Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]
This message is being sent by Werb & Sullivan, a law firm. It is
intended exclusively for the individuals and entities to which it is
addressed. This communication, including any attachments, may contain
information that is proprietary, privileged, confidential or otherwise
legally exempt from disclosure. If you are not the named addressee, you
are not authorized to read, print, retain, copy or disseminate this
message or any part of it. If you have received this message in error,
please notify the sender immediately by email and delete all copies of
this message.

BA595

**Wile, Kenneth E.**

| | |
|---|---|
| From: | Brian Sullivan [bsullivan@werbsullivan.com] |
| Sent: | Thursday, November 11, 2004 12:35 PM |
| To: | kwile@sidley.com |
| Cc: | steven.allen@mills-reeve.com; rdwilcox@mindspring.com |
| Subject: | Jaeban/Budget Group |

Ken:


Regarding the computer discovery, after diligent inquiry, we are not
aware of any responsive documents that have not yet been produced.  In
order to confirm that all responsive documents have been provided, Mr.
Jaeban has agreed that Mills & Reeve should re-review the computer
files.  This review is scheduled to take place on Monday, November 22,
2004, being the earliest available date.  Mills & Reeve will also write
to the Receiver in order to determine whether the Receiver is aware of
any additional computer documentation which would be responsive to the
request.  Regards.


Brian


Brian A. Sullivan, Esquire

WERB & SULLIVAN

300 Delaware Avenue, 13th Floor

P. O. Box 25046

Wilmington, Delaware  19899

For Courier:   19801

Telephone:  (302) 652-1100

Facsimile:   (302) 652-1111

E-Mail: bsullivan@werbsullivan.com

1

**BA596**

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Thursday, November 11, 2004 1:19 PM |
| **To:** | 'Brian Sullivan' |
| **Cc:** | Rob Wilcox (E-mail); 'steven.allen@mills-reeve.com'; Corr, Patrick; Taylor, Phillip D.; Edmon L. Morton (E-mail) |
| **Subject:** | RE: Jaeban/Budget Group |

Brian:

Thank you for your e-mail.

Please explain whether your client and his English counsel have located all of Jaeban UK's computer servers (or other files) and reviewed them. If they have been unable to do so (and I can't tell from your e-mail), please identify the servers or other files that they have been unable to locate. Finally, please let me know which Jaeban UK employees and/or employees of the Administrative Receivers are most knowledgeable about the location of Jaeban UK's computer files and other documents

Thanks

Ken

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

BA597

SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

November 30, 2004

**VIA FAX (302-652-1111) AND FIRST-CLASS MAIL**

Brian A. Sullivan, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, Delaware  19899

Re:     In re BRAC Group, Inc.; BRAC Group, Inc., et al., v. Jaeban (U.K.),
Ltd., et al., Adv. No. 03-A-54271 (Bankr. D. Del.)

Dear Brian:

Please respond to the questions set forth in my November 11th e-mail. (Our post-sanctions argument correspondence, dating back to October 20th, is enclosed.) More than five months have passed since the June deadline for Mr. Jaeban's compliance -- and two months have passed since the sanctions argument before Judge Case in Phoenix.

In addition to any e-mails that were retrieved (apparently on November 22nd), please provide us with (a) an explanation whether any of Jaeban UK's e-mail servers are no longer available for searching and, if so, which ones, and (b) the names of Jaeban UK or Administrative Receiver personnel who are most knowledgeable about the location of Jaeban UK's computer files and other documents -- as I requested nearly three weeks ago.

Sincerely yours,

Kenneth E. Wile

Enclosures

cc:     Robert Wilcox (via .pdf/e-mail) (w/encl.)

Patrick Corr (w/encl.)
Phillip Taylor (w/encl.)
Edmon Morton (w/encl.)

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan com] |
| **Sent:** | Tuesday, November 30, 2004 1:52 PM |
| **To:** | kwile@sidley.com |
| **Cc:** | steven allen@mills-reeve com; rdwilcox@mindspring com; anthony minnis@mills-reeve com; Morton, Edmon |
| **Subject:** | Jaeban |

Ken,

I have received and glanced at your letter.  I am busy preparing for an oral argument in our State Supreme Court in Dover tomorrow, which will usurp all of my time for the next two days.  I am also committed again on Thursday.  I had intended sending an email to you on Friday, after Steve Allen returns to the office.  He and I have missed each other due to our schedules and not communicated much since the week before Thanksgiving.

Nevertheless, I understand that Mills-Reeve now has possession of the Jaeban U.K. computer and is able now to finally access the files.  Steve Allen intends to review these files with Mr. Jaeban on Thursday, December 9, 2004 in order to determine whether there are any documents which have not be previously produced.  I will also ask Steve to address your more specific questions early next week to the extent they can be answered prior to the review on the 9th.  If necessary we can address this further on Friday when Steve and I are both available, but I wanted to reply as soon as possible and again acknowledge your patience. Regards.

Brian

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, Delaware  19899
For Courier:   19801
Telephone:   (302) 652-1100
Facsimile:    (302) 652-1111
E-Mail: bsullivan@werbsullivan.com <mailto:bsullivan@werbsullivan.com>

1

**BA599**

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Friday, December 03, 2004 3:33 PM |
| **To:** | 'Brian Sullivan' |
| **Cc:** | Rob Wilcox (E-mail); 'steven.allen@mills-reeve.com'; 'anthony.minnis@mills-reeve.com'; Corr, Patrick; Taylor, Phillip D ; Edmon L. Morton (E-mail) |
| **Subject:** | RE: Jaeban |

Brian:

As you requested, I have waited until today to respond to your e-mail.

**1.  Persistent Failure to Answer Whether All E-Mail Servers Have Been Found and to Identify Witnesses.** I first asked Rob Wilcox, while we were both in England in August, whether Mr. Jaeban or his counsel have had access to all of Jaeban UK's e-mailer servers (or other sources of e-mails) in light of the small number of e-mails produced to BRACII by Mr. Allen's predecessor firm. I've now had to ask in writing three times, as I have also had to ask who has material knowledge about the whereabouts of Jaeban UK's e-mail servers and files. Please provide a response in writing by Tuesday, December 7th, or we will assume that Mr. Jaeban declines to respond.

**2.  Failure to Produce Documents Promptly after November 22nd.** Mr. Allen was to have reviewed newly-retrieved documents on November 22nd, yet we are not to see them until an unidentified date after December 9th, 2½ weeks later. Since Mills & Reeve has the prior document production (and since Thanksgiving is not a British holiday), it's not clear why there has been this further delay. Above all, it is your responsibility as Delaware counsel, not your client's or Mr. Allen's, to ensure that *all* responsive documents are produced to us promptly.

I would like to know by Tuesday:

   a)  the volume of e-mails and the type and volume of other documents that have been reviewed by Mills & Reeve since the September 21st argument on BRACII's second motion for sanctions; and

   b)  when I can expect to have the documents in-hand in Chicago. (We'll gladly pay the postage.)

By the time the documents are produced, BRACII will also require your assurance that there has been full compliance with the Joint First Request for Production and the unobjected portions of the Joint Second Request.

I recognize that the foregoing will require you to contact Mills & Reeve on Monday or Tuesday. (For that reason, Messrs. Allen and Minnis are copied on this e-mail ) Since the second sanctions argument (in which Rob Wilcox assured the Court that Mr. Jaeban was working diligently on these issues) took place almost 2½ months ago, we have certainly been patient, as your last e-mail recognized. Absent real compliance now, however, we will apprise the Court of the lack of it.

Regards.

Ken

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois  60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

1

**BA600**

**Wile, Kenneth E.**

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan.com] |
| **Sent:** | Tuesday, December 07, 2004 12:00 PM |
| **To:** | KWile@sidley.com |
| **Cc:** | steven.allen@mills-reeve.com; anthony.minnis@mills-reeve.com; EMorton@ycst.com |
| **Subject:** | Jaeban/BRAC |

Dear Ken,

Not for the first time in this case, we take great exception to your e-mail of Friday, December 3, 2004. Perhaps most importantly, you have again attempted to instruct me on my "responsibility as Delaware Counsel." We are well aware of our responsibilities as Delaware Counsel. You have done this on numerous occasions in this case, not only in writing, but during some of our conversations over the months. Please do not let it happen again.

Next, simply because you send an e-mail with bolded statements such as "persistent failure to answer" and "persistent failure to produce", does not make it so. We strenuously disagree with your allegations.

We echo the points raises in Mr. Allen's response. Further, we note that your recent barrage of correspondence ignores the information provided to you that the computer is scheduled to be re-reviewed by Mills-Reeve on December 9, 2004.

Further, it seems to me that you continue to ignore Judge Case's comment at the last Hearing that the parties in this case hear and see only what they want to hear and see. Your recent e-mail is a further example of that phenomenon. Your correspondence also ignores your client's failure to do anything more than baldly assert that the relevant information is outside its control, notwithstanding its own clear ability to request and compel production of that information.

Further, when Rob Wilcox was in England, he asked you to confirm whether you have any objection to our contacting Terry Clark, potential witness. To date, you persist in ignoring this request. Accordingly, we intend to pursue such contact.

Further, if Judge Cases's decision comes down as we anticipate it will, we intend to move for fees in defense of the second unwarranted Motion. We also will be very aggressive in defending any third such unwarranted Motion and would seek fees. Please govern yourself accordingly.


Brian A. Sullivan, Esquire
Robert W. Wilcox, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
For Courier: 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-Mail: bsullivan@werbsullivan.com

Re: Jaeban

Page 1 of 2

**From:** Steve Allen [steve.allen@mills-reeve.com]
**Sent:** Tuesday, December 07, 2004 11:39 AM
**To:** 'Wile, Kenneth E.'
**Cc:** 'Brian Sullivan'; 'rdwilcox@mindspring.com'; 'emorton@wcst.com'; 'pcorr@sidley.com'
**Subject:** Re: Jaeban

Mr Wile:

As you very kindly copied me into your e-mail to Brian Sullivan I am sure that you would not object to my responding on Mr Jaeban's behalf.

First, having been at the receiving end of a succession of applications by your firm aimed at disposing of Mr Jaeban's claim without addressing its merits, your e-mail was received here with little surprise but with some disappointment. We had hoped that following the comments of Judge Case at the September 21st hearing that such tactics on the part of your firm would cease. Yet it is quite apparent based on our previous experience that your e-mail has been written as a precursor to yet another application.

Second, it is clearly inappropriate for you to criticise my client for lack of discovery in circumstances where the entirety of your client's discovery production consists of three lever arch files containing documents of little or no assistance in answering the detailed requests submitted by Jaeban UK Limited. I note that you have consistently failed to address this issue in correspondence even though my predecessor firm first raised it with your firm in June 2003. We note in particular that the computer records of BRACII remain unavailable to our client and that you refused my 12 August 2004 request to schedule a telephone deposition with the Records Custodian at BRACII in order that we might gain a better understanding of your efforts to respond to Mr Jaeban's document production request.

On the issue of my client's alleged "failure to produce documents", you have of course now had the opportunity of perusing all responsive documents held by my client. Indeed, I recall that part of your complaint at the September 21st hearing was the volume of documentation received by your firm. Having exhausted this argument I note that you now turn your attention to alleged failings on the part of my client to produce e-mails from the Jaeban computer.

I can confirm that the person who has most knowledge about the location of the Jaeban computer files is Mr Jaeban.

I can confirm that Wragge & Co assisted by PWC extracted computer files from the Jaeban server and that these have already been disclosed to you as part of an extensive document production. In view however of your request, my firm has obtained the computer of Paul Champken who was the Accountant at Jaeban UK for the material period. As Brian Sullivan informed you on Friday I intend to review the contents of this computer with Mr Jaeban on Thursday in order to identify whether it contains any relevant documents responsive to your request. If it does and these documents were not previously disclosed in Jaeban UK Limited's disclosure they will be promptly sent to you. In the meantime I would remind you that most of the material and responsive documents sought by you will be held on the Hemel computer in the possession of your client. Perhaps you would care to advise me of what steps have been taken by your firm to provide this server for inspection. I would also remind you that it is both your and your client's responsibility to make certain that all non-privileged requested documents have been provided.

Yours sincerely

**Steve Allen**
Partner
Mills & Reeve
Tel: +44(0)121 456 8343
mailto:steve.allen@mills-reeve.com
http://www.mills-reeve.com

**BA602**

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Wednesday, December 08, 2004 2:29 PM |
| **To:** | Brian Sullivan (E-mail) |
| **Cc:** | Rob Wilcox (E-mail); 'steve.allen@mills-reeve.com'; Corr, Patrick; Taylor, Phillip D.; Edmon L. Morton (E-mail) |
| **Subject:** | Jaeban UK Adversary Proceeding |

Brian:

Thank you for that portion of Steve Allen's e-mail of yesterday (a) disclosing that it is Mr. Champken's computer that is being reviewed and (b) stating that Ibrahiem Jaeban is the witness most knowledgeable about Jaeban UK's computers.

Unfortunately, neither your e-mail of yesterday nor Steve's addressed the question I now must ask for a fifth time: are there Jaeban UK computers or e-mail servers that are no longer available to be searched (and, if so, what became of them)?  Please respond

With respect to the accusations and threats in the two e-mails, I note that your prior e-mails thanked me for my patience on three separate occasions   I waited a full month after the second sanctions argument even to raise these issues on October 20, 2004   It is now 2½ months after the argument and 3½ months after Rob Wilcox and I began discussing the question of missing computers and e-mails -- which was first raised with Wragge & Co  in December 2003

Finally, BRACII has not impeded your access to Terry Clark, a long-time friend of Mr  Jaeban's, and does not seek to do so now.

Regards

Ken

Kenneth E  Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois  60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

BA603

**From:** Steve Allen [steve.allen@mills-reeve.com]
**Sent:** Thursday, December 09, 2004 3:07 AM
**To:** 'Wile, Kenneth E.'; Brian Sullivan (E-mail)
**Cc:** Rob Wilcox (E-mail); Corr, Patrick; Taylor, Phillip D.; Edmon L. Morton (E-mail)
**Subject:** RE: Jaeban UK Adversary Proceeding

Mr Wile:

Please have the courtesy to respond to the issues raised in my e-mail to you of Tuesday.

Yours sincerely

**Steve Allen**
Partner
Mills & Reeve
Tel: +44(0)121 456 8343
steve.allen@mills-reeve.com
http://www.mills-reeve.com

**Wile, Kenneth E.**

| | |
|---|---|
| From: | Brian Sullivan [bsullivan@werbsullivan.com] |
| Sent: | Friday, December 10, 2004 8:49 AM |
| To: | kwile@sidley.com |
| Cc: | steven allen@mills-reeve com; anthony minnis@mills-reeve com; Robert D Wilcox |
| Subject: | Jaeban/BRAC |

Ken,

I understand and am informed that the review of the primary Jaeban computer commenced yesterday at Mills-Reeve. Steve Allen has indicated that he should be able to provide a report of the review by the end of next week and maybe sooner. I send this as a matter of courtesy and to keep you informed and do not anticipate the necessity of a response. It would be helpful if you would please respond to the information requested by Steve. Thanks for your consideration. Regards.

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
For Courier: 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-Mail: bsullivan@werbsullivan.com

CONFIDENTIALITY NOTICE
UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)] This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

1

BA605

**Exhibit E to Opposition**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (CGC) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, et al., | |
| Defendants. | |

## AFFIDAVIT OF KENNETH E. WILE

KENNETH E WILE, being duly sworn, deposes and says:

1.      I am a member of the Illinois and New York bars and a counsel in the Chicago office of Sidley Austin Brown & Wood LLP.  I am one of the attorneys representing the Budget Rent-A-Car International, Inc. ("BRACII") and the other Debtors in the above-captioned adversary proceeding against Jaeban (UK) Limited ("Jaeban UK") and Mr. Ibrahiem Jaeban.

2.      The $4,500,000 cure amount belongs to BRACII, not to BRAC Group, Inc. or any other U.S. entity, although BRAC Group creditors will receive $1 million upon distribution.

3.      The creditors of BRACII have not received a distribution from the BRACII estate.

BA607

4.     Exhibit A to this affidavit consists of true and correct copies of a series of e-mails and letters that I exchanged with Mr. Jaeban's counsel in October, November, and December, 2004 regarding e-mail and other documents on Jaeban UK's computers.

5.     On June 18, 2004, I spoke to Mr. Jaeban's Delaware counsel, Brian Sullivan, by telephone from Chicago.  While we discussed the merits of the case and BRACII's receipt of certain documents by June 21st, I have no recollection of discussing the Administrative Receivers of Jaeban UK.

_____
Kenneth E. Wile

Sworn to before me this
3rd day of February, 2005

_____
Notary Public

"OFFICIAL   SEAL"
LISA T LeTOURNEAU
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/24/2005

2

BA608

# EXHIBIT A

BA609

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Wednesday, October 20, 2004 11:37 AM |
| **To:** | Brian Sullivan (E-mail); Rob Wilcox (E-mail) |
| **Cc:** | Edmon L. Morton (E-mail); Taylor, Phillip D.; Corr, Patrick |
| **Subject:** | Jaeban UK Adversary Proceeding |

As it has now been almost a month since oral argument in Phoenix, please let me know the status of the effort in England to track down and extract e-mails from Jaeban UK's former e-mail server.

Many thanks.

Ken

Kenneth E Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

BA610

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | **BANK ONE PLAZA** | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

October 28, 2004

**VIA FAX (302-652-1111) AND E-MAIL**

Brian A. Sullivan, Esq.
Robert D. Wilcox, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899

    Re:    <u>BRAC Group, Inc. v. Jaeban (U.K.), Ltd.</u>, Adv. No. 03-A-54271
            **(Bankr. D. Del.)**

Gentlemen:

    On October 20, 2004, eight days ago, I sent you an e-mail asking for an update on your progress in tracking down and extracting e-mail from Jaeban UK's e-mail server. (A printout of my e-mail is attached.) As you know, the e-mails sought by the Joint First Document Request should have been produced by Jaeban UK in November 2003 and by Mr. Jaeban by June 18, 2004.

    To date, I have not had a response. I would very much appreciate a response by Monday, November 1st.

                                Sincerely yours,

                                Kenneth E. Wile

Attachment

cc:    Edmon Morton, Esq. (w/attach.)
        Phillip Taylor (London Office) (w/attach.)

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

**Wile, Kenneth E.**

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Wednesday, October 20, 2004 11:37 AM |
| **To:** | Brian Sullivan (E-mail); Rob Wilcox (E-mail) |
| **Cc:** | Edmon L Morton (E-mail); Taylor, Phillip D ; Corr, Patrick |
| **Subject:** | Jaeban UK Adversary Proceeding |

As it has now been almost a month since oral argument in Phoenix, please let me know the status of the effort in England to track down and extract e-mails from Jaeban UK's former e-mail server.

Many thanks.

Ken

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois  60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

1

BA612

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan.com] |
| **Sent:** | Friday, October 29, 2004 11:05 AM |
| **To:** | kwile@sidley.com |
| **Subject:** | Jaeban/BRAC |

Ken,

We are working and communicating abroad in an attempt to respond as soon as possible, which we hope will be by next week.  Thanks for your patience.

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 10th Floor
P.O. Box 25046
Wilmington, Delaware 19899
For Courier: 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-Mail: bsullivan@werbsullivan.com

CONFIDENTIALITY NOTICE
UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)] This message is being sent by Werb & Sullivan, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

BA613

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan.com] |
| **Sent:** | Friday, November 05, 2004 12:53 PM |
| **To:** | kwile@sidley.com |
| **Cc:** | rdwilcox@mindspring.com; steven.allen@mills-reeve.com |
| **Subject:** | Jaeban/BRAC |

Hi Ken,

We have been working on the computer issue diligently from this office
and with England. We hope to have a response to you by the beginning of
the week, and again I do not anticipate any surprises. Thanks again for
your patience which we appreciate. Regards

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
For Courier: 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-Mail: bsullivan@werbsullivan.com

CONFIDENTIALITY NOTICE
UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic
Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]
This message is being sent by Werb & Sullivan, a law firm. It is
intended exclusively for the individuals and entities to which it is
addressed. This communication, including any attachments, may contain
information that is proprietary, privileged, confidential or otherwise
legally exempt from disclosure. If you are not the named addressee, you
are not authorized to read, print, retain, copy or disseminate this
message or any part of it. If you have received this message in error,
please notify the sender immediately by email and delete all copies of
this message.

BA614

**Wile, Kenneth E.**

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan.com] |
| **Sent:** | Thursday, November 11, 2004 12:35 PM |
| **To:** | kwile@sidley.com |
| **Cc:** | steven.allen@mills-reeve.com; rdwilcox@mindspring.com |
| **Subject:** | Jaeban/Budget Group |

Ken:


Regarding the computer discovery, after diligent inquiry, we are not
aware of any responsive documents that have not yet been produced.  In
order to confirm that all responsive documents have been provided, Mr.
Jaeban has agreed that Mills & Reeve should re-review the computer
files.  This review is scheduled to take place on Monday, November 22,
2004, being the earliest available date.  Mills & Reeve will also write
to the Receiver in order to determine whether the Receiver is aware of
any additional computer documentation which would be responsive to the
request.   Regards.


Brian


Brian A. Sullivan, Esquire

WERB & SULLIVAN

300 Delaware Avenue, 13th Floor

P. O. Box 25046

Wilmington, Delaware  19899

For Courier:   19801

Telephone:   (302) 652-1100

Facsimile:    (302) 652-1111

E-Mail: bsullivan@werbsullivan.com

1

BA615

## Wile, Kenneth E.

**From:** Wile, Kenneth E.
**Sent:** Thursday, November 11, 2004 1:19 PM
**To:** 'Brian Sullivan'
**Cc:** Rob Wilcox (E-mail); 'steven.allen@mills-reeve.com'; Corr, Patrick; Taylor, Phillip D.; Edmon L. Morton (E-mail)
**Subject:** RE: Jaeban/Budget Group

Brian:

Thank you for your e-mail.

Please explain whether your client and his English counsel have located all of Jaeban UK's computer servers (or other files) and reviewed them. If they have been unable to do so (and I can't tell from your e-mail), please identify the servers or other files that they have been unable to locate. Finally, please let me know which Jaeban UK employees and/or employees of the Administrative Receivers are most knowledgeable about the location of Jaeban UK's computer files and other documents.

Thanks.

Ken

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

-----Original Message-----
From: Brian Sullivan [mailto:bsullivan@werbsullivan.com]
Sent: Thursday, November 11, 2004 12:35 PM
To: kwile@sidley.com
Cc: steven.allen@mills-reeve.com; rdwilcox@mindspring.com
Subject: Jaeban/Budget Group

Ken:

Regarding the computer discovery, after diligent inquiry, we are not aware of any responsive documents that have not yet been produced. In order to confirm that all responsive documents have been provided, Mr. Jaeban has agreed that Mills & Reeve should re-review the computer files. This review is scheduled to take place on Monday, November 22, 2004, being the earliest available date. Mills & Reeve will also write to the Receiver in order to determine whether the Receiver is aware of any additional computer documentation which would be responsive to the request. Regards.

Brian

Brian A. Sullivan, Esquire

1

BA616

WERB & SULLIVAN

300 Delaware Avenue, 13th Floor

P. O. Box 25046

Wilmington, Delaware  19899

For Courier:   19801

Telephone:  (302) 652-1100

Facsimile:   (302) 652-1111

E-Mail: bsullivan@werbsullivan.com

BA617

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Tuesday, November 30, 2004 12:00 PM |
| **To:** | Rob Wilcox (E-mail) |
| **Cc:** | Brian Sullivan (E-mail); Corr, Patrick; Taylor, Phillip D.; Edmon L. Morton (E-mail) |
| **Subject:** | Jaeban UK Adversary Proceeding |

Please review the attached

Regards.

Ken Wile

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com



113004sullivan.pdf

1

**BA618**

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

November 30, 2004

**VIA FAX (302-652-1111) AND FIRST-CLASS MAIL**

Brian A. Sullivan, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899

        Re:    In re BRAC Group, Inc.; BRAC Group, Inc., et al., v. Jaeban (U.K.),
               Ltd., et al., Adv. No. 03-A-54271 (Bankr. D. Del.)

Dear Brian:

        Please respond to the questions set forth in my November 11th e-mail. (Our post-sanctions argument correspondence, dating back to October 20th, is enclosed.) More than five months have passed since the June deadline for Mr. Jaeban's compliance -- and two months have passed since the sanctions argument before Judge Case in Phoenix.

        In addition to any e-mails that were retrieved (apparently on November 22nd), please provide us with (a) an explanation whether any of Jaeban UK's e-mail servers are no longer available for searching and, if so, which ones, and (b) the names of Jaeban UK or Administrative Receiver personnel who are most knowledgeable about the location of Jaeban UK's computer files and other documents -- as I requested nearly three weeks ago.

                                                Sincerely yours,

                                                Kenneth E. Wile

Enclosures

cc:    Robert Wilcox (via .pdf/e-mail) (w/encl.)

       Patrick Corr (w/encl.)
       Phillip Taylor (w/encl.)
       Edmon Morton (w/encl.)

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

## Wile, Kenneth E.

| | |
|---|---|
| From: | Wile, Kenneth E. |
| Sent: | Wednesday, October 20, 2004 11:37 AM |
| To: | Brian Sullivan (E-mail); Rob Wilcox (E-mail) |
| Cc: | Edmon L. Morton (E-mail); Taylor, Phillip D.; Corr, Patrick |
| Subject: | Jaeban UK Adversary Proceeding |

As it has now been almost a month since oral argument in Phoenix, please let me know the status of the effort in England to track down and extract e-mails from Jaeban UK's former e-mail server.

Many thanks.

Ken

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

BA620

## Wile, Kenneth E.

**From:**      Wile, Kenneth E.
**Sent:**      Thursday, October 28, 2004 3:39 PM
**To:**        Brian Sullivan (E-mail); Rob Wilcox (E-mail)
**Cc:**        Edmon L. Morton (E-mail); Taylor, Phillip D.
**Subject:**   Jaeban UK Adversary Proceeding

Please review and respond to the attached.



102804.pdf

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

1

**BA621**

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | **BANK ONE PLAZA** | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D C. |

WRITER'S DIRECT NUMBER
(312) 853-2081

WRITER'S E-MAIL ADDRESS
kwile@sidley.com

October 28, 2004

**VIA FAX (302-652-1111) AND E-MAIL**

Brian A. Sullivan, Esq.
Robert D. Wilcox, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899

> Re: **BRAC Group, Inc. v. Jaeban (U.K.), Ltd., Adv. No. 03-A-54271
> (Bankr. D. Del.)**

Gentlemen:

On October 20, 2004, eight days ago, I sent you an e-mail asking for an update on your progress in tracking down and extracting e-mail from Jaeban UK's e-mail server. (A printout of my e-mail is attached.) As you know, the e-mails sought by the Joint First Document Request should have been produced by Jaeban UK in November 2003 and by Mr. Jaeban by June 18, 2004.

To date, I have not had a response. I would very much appreciate a response by Monday, November 1st.

Sincerely yours,

Kenneth E. Wile

Attachment

cc:  Edmon Morton, Esq. (w/attach.)
     Phillip Taylor (London Office) (w/attach.)

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Wile, Kenneth E. |
| **Sent:** | Thursday, November 11, 2004 1:19 PM |
| **To:** | 'Brian Sullivan' |
| **Cc:** | Rob Wilcox (E-mail); 'steven.allen@mills-reeve.com'; Corr, Patrick; Taylor, Phillip D.; Edmon L. Morton (E-mail) |
| **Subject:** | RE: Jaeban/Budget Group |

Brian:

Thank you for your e-mail.

Please explain whether your client and his English counsel have located all of Jaeban UK's computer servers (or other files) and reviewed them. If they have been unable to do so (and I can't tell from your e-mail), please identify the servers or other files that they have been unable to locate. Finally, please let me know which Jaeban UK employees and/or employees of the Administrative Receivers are most knowledgeable about the location of Jaeban UK's computer files and other documents.

Thanks.

Ken

Kenneth E. Wile
Sidley Austin Brown & Wood LLP
Bank One Plaza
Chicago, Illinois 60603
312-853-2081
312-853-7036 (fax)
kwile@sidley.com

-----Original Message-----
From: Brian Sullivan [mailto:bsullivan@werbsullivan.com]
Sent: Thursday, November 11, 2004 12:35 PM
To: kwile@sidley.com
Cc: steven.allen@mills-reeve.com; rdwilcox@mindspring.com
Subject: Jaeban/Budget Group

Ken:

Regarding the computer discovery, after diligent inquiry, we are not aware of any responsive documents that have not yet been produced. In order to confirm that all responsive documents have been provided, Mr. Jaeban has agreed that Mills & Reeve should re-review the computer files. This review is scheduled to take place on Monday, November 22, 2004, being the earliest available date. Mills & Reeve will also write to the Receiver in order to determine whether the Receiver is aware of any additional computer documentation which would be responsive to the request. Regards.

Brian

Brian A. Sullivan, Esquire

1

BA623

WERB & SULLIVAN

300 Delaware Avenue, 13th Floor

P. O. Box 25046

Wilmington, Delaware 19899

For Courier: 19801

Telephone: (302) 652-1100

Facsimile: (302) 652-1111

E-Mail: bsullivan@werbsullivan.com

2

BA624

CRITICAL

## Wile, Kenneth E.

| | |
|---|---|
| **From:** | Brian Sullivan [bsullivan@werbsullivan.com] |
| **Sent:** | Tuesday, November 30, 2004 1:52 PM |
| **To:** | kwile@sidley.com |
| **Cc:** | steven.allen@mills-reeve.com; rdwilcox@mindspring.com; anthony.minnis@mills-reeve.com; Morton, Edmon |
| **Subject:** | Jaeban |

Ken,

I have received and glanced at your letter. I am busy preparing for an oral argument in our State Supreme Court in Dover tomorrow, which will usurp all of my time for the next two days. I am also committed again on Thursday. I had intended sending an email to you on Friday, after Steve Allen returns to the office. He and I have missed each other due to our schedules and not communicated much since the week before Thanksgiving.

Nevertheless, I understand that Mills-Reeve now has possession of the Jaeban U.K. computer and is able now to finally access the files. Steve Allen intends to review these files with Mr. Jaeban on Thursday, December 9, 2004 in order to determine whether there are any documents which have not be previously produced. I will also ask Steve to address your more specific questions early next week to the extent they can be answered prior to the review on the 9th. If necessary we can address this further on Friday when Steve and I are both available, but I wanted to reply as soon as possible and again acknowledge your patience. Regards.

Brian

Brian A. Sullivan, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, Delaware  19899
For Courier:    19801
Telephone:   (302) 652-1100
Facsimile:    (302) 652-1111
E-Mail: bsullivan@werbsullivan.com <mailto:bsullivan@werbsullivan.com>

BA625