# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

| | | |
|---|---|---|
| BRAC GROUP, INC. *et al.,* | : | Civil Action No. 05-259 (KAJ) |
| Debtors, | : | Bankruptcy Case No: 02-12152 |
| | : | Adversary No.: 03-54271 |
| Jaeban (U.K.) Limited, et al. | : | |
| Appellant, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| BRAC Group Inc., *et al.,* | : | |
| Appellee | : | |
| | : | |

## REPLY BRIEF OF APPELLANT IBRAHIEM JAEBAN

Dated: July 5, 2005

WERB & SULLIVAN

Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
300 Delaware Ave., 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

Attorneys for Appellant
Ibrahiem Jaeban, as Assignee of
Jaeban (U.K.) Limited

## TABLE OF CONTENTS

Page

FACTUAL MISSTATEMENTS IN THE  RESPONSE………………….………......2

THE BANKRUPTCY COURT'S ERRORS OF FACT……..……………….…..……..6

THE BODY OF LAW INTERPRETING THE POULIS DECISION…………...…11

BRACII'S DISCOVERY CONDUCT AND WHY IT MATTERS………….……16

THE MISSING RULE 37 ANALYSIS……………………………………………...17

CONCLUSION……………………………………………………………….......…18

## TABLE OF AUTHORITIES

Anchorage Associates v. Virgin Islands Bd. of Tax Review,
    922 F.2d 168 (3rd Cir. 1990)……………………………………………………...6

Curtis T. Bedwell & Sons, Inc., v. International Fid. Ins.Co., 843 F. 2d 683 (3d Cir.
    1988)…………………………………………………………………..…….13, 15, 17

Dopp v. Franklin National Bank, 461 F. 2d 873 (2d Cir. 1972)………………………...7

Emerson v. Thiel College, 296 F. 3d 184 (3d Cir. 2002)…………………………….11

Farnese v. Bagnasco, 687 F.2d 761 (3d Cir. 1982)……………………………………6

Flaks v. Koegel, 504 F.2d. 702 (2d. Cir. 1994)………………………………………...7

Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir. 1983)…………..18

Hicks v. Fenney, 850 F.2d 152 (3d Cir. 1998)…………………………….…………13

Manus v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116
    (3d Cir.1999)…………………………………………………………………….7

Mindek v. Rigatti, 964 F. 2d 1369 (3d Cir. 1992)………………………….…...… 10, 11

National Hockey League v. Metropolitan Hockey Club Inc., 427 U.S. 639 (1976)…..…16

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863
    (3d Cir. 1984)…..……………………………………….…………...7, 8, 9, 10, 11, 13, 17, 19

Scarborough v. Ubanks, 747 F.2d 871 (3d Cir. 1984)………………………………15, 18

Societe Internationale v. Rogers, 357 U.S. 197, 78 S. Ct. 1087,
    2 L.Ed. 2d 1255 (1958)...................................................................15, 17, 18

United States v. One Million Three Hundred Twenty-two Thousand Two Hundred
    Forty- two Dollars and Fifty-eight Cents ($1,322,242.58), 938 F. 2d 433
    (3d Cir. 1991).............................................................................. 13

U.S. v. Eight Million Two Hundred Twenty-one Thousand, Eight Hundred
    Seventy- seven Dollars and Sixteen Cents ($ 8,221,877.16), 330 F. 3d 141, 162
    (3d Cir. 1984)..........................................................................9, 18

Waterman, "An Appellate Judge's Approach when Reviewing District Court Sanctions
    Imposed for the Purpose of Insuring Compliance with Pretrial Orders",
    29 F.R.D. 420, 423 (1962).............................................................7

## STATUTES AND RULES

Fed. R. Civ. P. 34.............................................................................11

Fed. R. Civ. P. 37.............................................................................16, 17

Appellant Ibrahiem Jaeban submits this brief (a) in support of Appellant's Opening Brief and his appeal in this case and (b) in reply to the Brief of Appellee Budget Rent-A-Car International, Inc. (the "Response")[1].

In its Response, Appellee BRACII fails to address the fundamental errors in the Bankruptcy Court's decision to dismiss Mr. Jaeban's claims.  The Response offers no justification for the Bankruptcy Court's repeated and erroneous references in its December 14, 2004, *Sanctions Opinion* to a previous sanctions motion against "Mr. Jaeban" when the docket record shows that there was no such motion.  Jaeban's Appendix (hereinafter referred to as "JA") page JA6 and JA7. The Response makes no effort to rebut the obvious ramifications of the Bankruptcy Court's failure to properly differentiate between Mr. Jaeban and the Company, especially as that failure affected the Bankruptcy Court's finding of "a <u>history</u> of dilatoriness" with regard to Mr. Jaeban, when there is simply no such record. The Response fails to justify the Bankruptcy Court's cursory and improper application of the Poulis factors, including the lack of any factual inquiry relating to, or resultant finding of, litigation prejudice to BRACII resulting from Mr. Jaeban's alleged non-compliance with the May 25, 2004  Order.  The Response is unable to supply the missing analysis of the provisions of Federal Rule 37, or explain how any federal court considering discovery sanctions could not examine a governing rule of procedure entitled "Failure to Make or Cooperate in  Discovery; Sanctions".

## <u>FACTUAL MISSTATEMENTS IN THE RESPONSE</u>

Throughout this litigation, Mr. Jaeban has faced a hyper-aggressive opponent, one seeking procedural advantage at every turn and eager to knock out his claim on procedural grounds.  That effort to achieve victory regardless of the merits continues

---

[1] Appellant's defined terms are carried forward from Appellant's Opening Brief.

unabated in the Response, in the form of factual misstatements and a continuing series of ad hominum attacks on Mr. Jaeban and his claim. Those misstatements range from the relatively trivial to the issues most central to the underlying claims and the subject of this appeal.

Despite what BRACII incorrectly argues at page 6 in its Response, Zodiac Europe, plc ("Zodiac"), an affiliate of Avis Europe, plc, <u>did</u> assume the Company's franchise contract pursuant to the Sale Order approving Zodiac's purchase of assets from BRACII. The Company did not become dormant as a Budget franchisee after BRACII's insolvency administration was ordered on January 14, 2003. Once Zodiac controlled the Budget brand, the Company continued to operate under the Budget franchise agreements which Zodiac had assumed from February, 2003 through October 20, 2003, when it was ordered into administration.  See, JA 1587 and JA 1715.

In an allegation unsupported by any reference to the record, at page 5 of the Response BRACII tries to tie its demise stems from the events of September 11, 2001, when the facts will show that BRACII's financial difficulties and operational missteps were acknowledged by senior BRACII executives in 2000.

BRACII's Response also misstates the nature and amount of Mr. Jaeban's claims in this proceeding. Mr. Jaeban has never sought an amount greater than $4.5 million, the amount set aside by Judge Walrath pursuant to the Sale Order.  BRACII's suggestion at page 6 of its Response that Mr. Jaeban is seeking an amount in excess of $9 million is incorrect and irrelevant to the real issues before the Court.  BRACII arrogantly assumes that its claims would be regarded by a trier of fact as unimpeachable, even though it seeks to recover franchise royalties from Mr. Jaeban for a period when BRACII's management

3

agreed that no such royalties would be due, seeks reservation charges for reservations never made, seeks "reimbursement" of amounts it never paid, and fails to acknowledge its own admission of liability of over One Million English Pounds in the course of its bankruptcy. JA111-1112 , JA1689 and JA 1716.

More significantly, BRACII erroneously recites the consideration Mr. Jaeban gave to the Company's Administrative Receiver in exchange for the Deed of Assignment, in what can only be described as a blatant attempt to support the Bankruptcy Court's improper analysis of the "meritoriousness" of Mr. Jaeban's claim. BRACII minimizes the consideration as being "upfront money" of Five Thousand Pounds, and in doing so conveniently ignores Section 2.4 of the Deed of Assignment, which required Mr. Jaeban to waive substantial rent claims in excess of Thirty Thousand Pounds, and Section 2.2 which required Mr. Jaeban to completely indemnify the Company's Administrative Receiver against any loss. See JA945. In addition, as part of the consideration for the Deed of Assignment, Mr. Jaeban has borne the very substantial expenses of this litigation. This litigation would have ended in a trial well before now, were it not for BRACII's preference for motion practice over a trial on the merits.

Significantly, BRACII misstates the facts surrounding Mr. Jaeban's compliance with the May 25, 2004 Order, suggesting falsely that Mr. Jaeban acknowledged his own non-compliance. To the extent that it is not already apparent, Mr. Jaeban has produced evidence of the concrete steps he took prior to the June 18, 2004 discovery deadline to comply with the Bankruptcy Court's May 25, 2004 Order, and he has uncategorically established that he neither ignored or willfully disregarded that Order. Appellant's Opening Brief, pp. 13-15 and 32, and JA1551. Additionally, the allegations of an

acknowledgement of non-compliance by Mr. Jaeban's U.S. and U.K. counsel are firmly rebutted by direct affidavits by such counsel concerning the nature of the statements at issue. JA 1439, JA1564 and JA1571. BRACII's counsel refused to view the Welcome House documents on site, and Mr. Jaeban hired a driver and delivered the multiple boxes of documents at Welcome House to BRACII in an attempt to keep the depositions on track. JA1452. Simply put, BRACII has tried to fit the facts to support its purpose -- to knock out Mr. Jaeban's claim.

Even more inaccurate is BRACII's failure to acknowledge that prior to the cutoff Mr. Jaeban made a supplemental production of documents and properly scheduled the depositions, both in compliance with the May 25, 2004 Order. JA1452 and JA1564. The Affidavit of Mr. Jaeban's lead Delaware counsel stands unchallenged in establishing both that production and his discussion with BRACII's counsel that accompanied it. JA1572-1573. BRACII's further allegation that Mr. Jaeban, through his counsel, somehow acquiesced in the cancellation of the depositions in England is pure sophistry, and is belied by both affidavits and his English counsel's correspondence, which unequivocally states Mr. Jaeban's extreme insistence upon the continuation of those depositions he had worked to schedule. JA1445 and JA1453. Finally, Mr. Jaeban has, by sworn affidavit, established that the Welcome House documents were the source of the documents produced to BRACII on November 19, 2003, and, therefore, cannot be considered a "new" or "undisclosed" source of documents. JA1445.[2]

---

[2] Mr. Jaeban has long asserted that BRACII's alleged surprise at the Company's Administrative Receiver's position that it would not disclose documents is disingenuous. His position is bolstered by the Affidavit of BRACII's counsel, which prior to describing the events in England, states "4. Jaeban U.K. never filed objections to the Joint First Request for Production of Documents. 5. The Jaeban UK Receivers initially refused to disclose these documents." Appendix of BRACII, BA203 and the comments of Mr. Jaeban's lead U.S. Counsel during the September 21, 2004 hearing, pages 33 and 34 to the effect that he kept BRACII's counsel fully informed of the lack of progress in obtaining documents from the Administrative

Mr. Jaeban suggests that it is in order to avoid the type of "indictment by innuendo" in which BRACII has engaged that the Court of Appeals has emphasized the importance of factual evidentiary findings if a Sanctions Opinion is to survive appellate review. See, <u>Farnese v. Bagnasco</u>, 687 F. 2d 761, 765 (3rd Cir. 1982) ("If we are to carry out our appellate function in this case, it is important that we know why the district court thought that failure to produce documents amounted to bad faith") [3]. Tellingly, the Bankruptcy Court never conducted an evidentiary hearing, and took no testimony from Mr. Jaeban before striking out his claims in this case despite his sworn affidavit that he had attempted in good faith to obtain documents from the Company's Administrative Receiver. Moreover, the Bankruptcy Court never had personal contact with Mr. Jaeban and had contact with Mr. Jaeban's counsel on just three occasions, one of which was the September 21, 2004 sanctions hearing.

## THE BANKRUPTCY COURT'S ERRORS OF FACT

Findings "that are not based on evidence of record do not provide a proper basis for the District Court to exercise its discretion". <u>Farnese v. Bagnasco</u>, <u>Id</u>. The party seeking sanctions has the burden of creating a record showing the appropriateness of the sanctions sought. See, <u>Anchorage Associates v. Virgin Islands Bd. of Tax Review</u>, 922 F. 2d 168, 177 (3rd Cir. 1990). The Bankruptcy Court's absence of factual findings makes it impossible to evaluate in a meaningful way how it weighed the information before it. The

---

Receiver. This is another issue that would have been resolved at an evidentiary hearing. Moreover, Mr. Jaeban reiterates his position that the "Credit Pack" is not inconsistent with his claims in the proceeding, as is discussed in the Opening Brief at page 35. The evidentiary weight to be given to the Credit Pack should be valuated by a trier of fact under the Federal Rules of Evidence.

[3] In the case at bar, of course, the Bankruptcy Court, not the District Court, acted as the trial court.

6

Court of Appeals for the Second Circuit has held that it is an abuse of discretion for a trial

court to <u>not</u> hold an evidentiary hearing in the sanctions dismissal context where, as here,

there are competing affidavits raising

> "material issues of fact which could not have been properly
> resolved without an evidentiary hearing....generally a
> judge should not resolve factual disputes on affidavits or
> depositions, for then he is merely showing a preference for
> 'one piece of paper over another'. This is especially true
> here where the motion sought to be vacated under Rule 27
> involved  the dismissal of an answer and the entry of a
> default in a large sum...
> <u>Flaks v. Koegel</u>, 504 F. 2d. 702, 712 (citing <u>Dopp v.</u>
> <u>Franklin National Bank</u>, 461 F. 2d 873, 879 (2d Cir. 1972).

Mr. Jaeban submits that the practice of failing to hold such a hearing leads to the kind of

factual errors reflected in the *Sanctions Opinion.*[4]

The Bankruptcy Court's failure to make factual findings, while permeating its

*Sanctions Opinion,* is most evident in connection with the "prejudice to the adversary"

and "history of dilatory conduct" factors under <u>Poulis v. State Farm Fire & Cas. Co.</u>, 747

F. 2d 863 (3rd Cir. 1984).  As expressed at page 33 of its Response, BRACII's position

that the prejudice to it was "obvious" and therefore somehow immune from examination

is without merit. Such "obvious" but unidentified prejudice is exactly the type of

"hypothetical harm" that the Court of Appeals has said is insufficient.  <u>Manus Corp. v.</u>

<u>NRG Energy Corp., Inc.</u>, 188 F.3d 166, 126-128 (3d. Cir 1999) ("prejudice is not an

imagined or hypothetical harm; a finding of prejudice should be a conclusion based on

facts in evidence"). The Bankruptcy Court's failure to even inquire, in any context, as to

---

[4] The <u>Flaks</u> opinion is also noteworthy in its quote from a federal appellate judge concerning the relative
severity of a dismissal sanction as opposed to a contempt citation. "The contempt citation, though wicked-
sounding is not nearly as drastic a sanction as dismissal. It only leads to a fine or a possible jail sentence—
its use does not terminate a litigant's cause of action." <u>Waterman,</u> "An Appellate Judge's Approach when
Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pretrial Orders",
29 F.R.D. 420, 423 (1962), cited in <u>Flaks</u>, at 708.

the facts of litigation prejudice is all the more telling given its earlier comments on

BRACII's alleged prejudice in BRACII's *Motion to Strike* against the Company.

> Debtor's argument that it has been "prejudiced by the continuing
> segregation of $4,500,000 of their funds in escrow" is underwhelming.
> As Debtors acknowledge, the funds are in escrow and not diminished
> in any way. Beyond having to wait for these funds and suffer delay in
> this case, no other prejudice has been alleged.

> *May 25, 2004 Order*, p. 11

Nevertheless, BRACII now asserts that prejudice was "obvious" was ninety days later,

when for the first time BRACII directed its sanctions guns against Mr. Jaeban, even

though the funds were still in escrow and were not being diminished, and no trial date

had been set.

Nothing BRACII has said, or indeed can say, can alter the fact of the Bankruptcy

Court's misinterpretation of its own docket and its erroneous references to a non-existent

previous motion

> for sanctions against Mr. Jaeban for "failing to obtain
> Delaware counsel, comply with the Court's scheduling order,
> or advance" the proceeding. The sanction BRACII sought in its
> original motion was dismissal of Mr. Jaeban's answer, affirmative
> defenses, and counterclaims.
> *Sanctions Opinion*, page 5, (See JA8)

If there had been a previous Motion for sanctions against Mr. Jaeban, the Response

would be more convincing in its support of the Bankruptcy Court's actions. It is indeed

unfortunate that the Bankruptcy Court's recitation of the procedural history of the

litigation is verifiably and fundamentally inaccurate. The judicially noticeable fact is

there was <u>no previous motion for sanctions against Mr. Jaeban</u>. The Bankruptcy Court

was without question referring to the *Motion to Strike*, not against Mr. Jaeban but against

the Company. The Bankruptcy Court recites that BRACII sought sanctions for "failing to

8

obtain Delaware counsel, comply with the Court's scheduling order, or advance" the proceeding, but that quoted language appears in the opening paragraph of BRACII's *Motion to Strike* the <u>Company's</u> claim, filed on February 3, 2004. JA739. It is a matter of docket record that Mr. Jaeban did not appear as a party until March 1, 2004. JA926.

The description of the procedural history in the *Sanctions Opinion* is in direct conflict with the Bankruptcy Court's recitation in the *May 25, 2004 Order*, wherein it properly noted that that in the *Motion to Strike* BRACII "makes no argument that Mr. Jaeban failed to comply with the Court's orders of actively sought to delay these proceedings." *May 25, 2004 Order*, page 12.

The Bankruptcy Court's error is just as clear in stating "Mr. Jaeban was, post-May 25 Order, warned that his failure to comply with the deadline would result in sanctions...". Quite simply, that supposed "warning" never happened, and the record on appeal reflects no recorded contact between the Bankruptcy Court and Mr. Jaeban between March 10, 2004 (the date of the hearing on the Motion to Strike) and the September 21, 2004 hearing on BRACII's Motion for Sanctions against Mr. Jaeban.[5]

These pure errors of fact are not matters of judicial "discretion" or "interpretation", and compel reversal.

The further impact of these errors is profound, since the Bankruptcy Court's erroneous perception of the procedural history undoubtedly formed the foundation of its analysis of the <u>Poulis</u> factors. Each of the six <u>Poulis</u> factors must be analyzed. <u>U.S. v.</u> <u>Eight Million Two Hundred Twenty-one Thousand, Eight Hundred Seventy-seven</u> <u>Dollars and Sixteen Cents ($ 8,221,877.16)</u>, 330 F. 3d 141, 162 (3d Cir. 1984).The

---

[5] The May 25, 2004 Order scheduled a conference on June 21, 2004. The conference does not appear as an entry on the docket, and there is apparently no available transcript of the short conference. Mr. Jaeban was not present.

Bankruptcy Court's brief discussion of the "history of dilatoriness", in which it found such a history with regard to Mr. Jaeban is clearly erroneous, given the Court's failure to distinguish between Mr. Jaeban and the Company. Moreover, the Court of Appeals has instructed that this crucial analysis "must be made in the context of the District Court's extended contact with the litigant". Mindek v. Rizatti, 964 F. 2d 1369, 1373 (3d Cir. 1992). This trial court had no such "extended contact" with Mr. Jaeban, a resident of the United Kingdom, since he never personally appeared before the Court, and appeared through counsel on sanctions and discovery matters on only three occasions. [6]

BRACII argues raises on appeal that the Bankruptcy Court's Poulis analysis was informed by the Bankruptcy Court's belief that Mr. Jaeban stepped into the shoes of the Company, and therefore properly inherited the Company's "history of dilatoriness". The argument at page 32 that Mr. Jaeban is subject to "the consequences of the misconduct" of the Company is exceedingly disingenuous given that the Bankruptcy Court explicitly told Mr. Jaeban that it was not holding him responsible for the Receiver's failure to properly participate. In its *May 25, 2004 Order*, the Bankruptcy Court wrote that "...because of the unusual circumstances of the receivership, attributing any bad acts to the assignee here [Mr. Jaeban] would be manifestly unfair" Id. page.11 (bracketing added), JA949.

Nor was the Bankruptcy Court free to ignore the record concerning Mr. Jaeban's compliance with the *May 25, 2004 Order*. The appellate record is uncontroverted that Mr. Jaeban did not ignore that order and made extensive efforts to obtain disclosure of the documents in the hands of the Company's Administrative Receiver, but faced stiff

---

[6] While Mr. Jaeban believes the Bankruptcy Court erred in several ways, he has nothing but the highest regard for the Bankruptcy Court and Judge Case.

opposition from the Receiver in those attempts.  Mr. Jaeban believes these efforts, explained in detail in the Opening Brief at pages 19-21 and pages 32-33, establish Mr. Jaeban's good faith.  Despite his specific position that the documents were not within his "control" because of the Receiver's positions, the Bankruptcy Court summarily interpreted the Deed of Assignment as requiring Mr. Jaeban to compel their disclosure. The Bankruptcy Court's failure to properly consider those efforts, and whether Mr. Jaeban had "control" over those documents under Fed. R. Civ. P 34 and the effect of the pending  but never ruled-upon Objection to disclosure, were erroneous.

## THE BODY OF LAW INTERPRETING THE POULIS DECISION

Appellee BRACII cites five appellate decisions for its proposition that dismissals for violation of discovery rules "are readily upheld or imposed".  Response, page 30.  An examination of those decisions reflects the extreme reluctance of most courts to impose dismissal as a sanction, and reflect how far out of the mainstream of Poulis jurisprudence the Bankruptcy Court strayed.

In Emerson v. Thiel College, 296 F. 3d 184 (3d Cir. 2002), the Court of Appeals upheld the dismissal pursuant to Federal Rule of Civil Procedure 41(b) of a complaint for "failure to prosecute or to comply with its orders" Id., at 190.  The District Court dismissed the complaint for failure to prosecute after the plaintiff failed to properly plead multiple times despite significant extensions, ignored at least two court orders and his opponent's summary judgment motion, and failed to advance the litigation after a sixteen-month delay. Id.

In Mindek v. Rigatti, 964 F. 2d 1369, (3d Cir. 1992), the Court of Appeals upheld the trial court's dismissal sanction and opened its opinion as follows "For the second time

11

in four years and after the labors of a federal magistrate judge, two district court judges, and four panels of this Court, we must once again consider the case of two plaintiffs who, virtually from the commencement of their suit four years ago, have continually flouted court orders and denigrated the authority of the magistrate judge to whom their case was assigned". Id., at 1370.   The plaintiffs being sanctioned had failed to comply with multiple court orders, were explicitly warned of an impending dismissal for failure to comply and, created a record that, in the words of the Court of Appeals, "exemplifies the very kind of situation that warrants dismissal". Id., at 1373.

In United States v. One Million Three Hundred Twenty-two Thousand Two Hundred Forty-two Dollars and Fifty-eight Cents ($1,322,242.58), 938 F. 2d 433 (3d Cir. 1991) the Court of Appeals held that the District Court for the District of Delaware was justified in dismissing two related claimant's suit to recover funds seized under a federal asset forfeiture statute. The record showed "both claimants simply ignored all discovery requests [and] ignored the Court's Order compelling discovery" Id., at 439.   The claimants "did not provide discovery within the period prescribed...did not comply with the extended deadlines to which government counsel agreed... did not respond to subsequent entreaties to provide discovery prior to the filing of the motion to compel... flagrantly disobeyed the court's order compelling discovery... flatly ignored the motion for dismissal", Id., at 440. Further, the District Court had made a specific finding that "the claimants' failure to provide discovery impaired the government's ability to establish the source of the seized money". Id. Finally, as the Appellate Court opined "there can be no doubt that the claimants conduct was willful.  Moreover, we believe that the claimants exhibited bad faith by essentially ignoring all discovery requests and  the

court's order compelling discovery". Id. The Court of Appeals cited the trial court's prior use of alternative sanctions to coerce discovery compliance before resorting to the subsequent dismissal sanction. Id.

Appellee also cites with approval Hicks v. Fenney, 850 F. 2d 152 (3d Cir. 1998), cert. denied, 488 U.S. 1005 (1998), in which the Court of Appeals  again upheld a District Court's dismissal, noting that the plaintiff in a section 1983 civil rights action (a) refused to answer questions during the opening session of his deposition, (b) failed to return to the deposition after recess, (c) failed to appear at two subsequently scheduled depositions, and (d) failed to appear again at his own deposition scheduled pursuant to court order. Id., at 154.  In addition, the claimant acknowledged "substantial  prejudice" to his opponent, and the record reflected that the District Court had  previously imposed a sanction of attorneys' fees prior to the dismissal sanction.   Most importantly, the sanctioned party made it clear that he had no intention of obeying any future order that would require him to appearing at any further depositions, thus making the defendant completely unable to proceed with discovery. Id., at 156.

More illustrative and relevant to the appeal before this Court, in that illustrates the type of extreme behavior usually associated with a severe discovery sanction, is Curtis T. Bedwell & Sons, Inc.,  v. International Fid. Ins.Co., 843 F. 2d 683 (3d Cir. 1988).  In Bedwell, the trial court was faced with a litigant who totally refused to cooperate in the discovery process and who had three previous court orders compelling discovery. The Court of Appeals noted that the dismissal had been entered only after a evidence of a "pattern of abuse" by Bedwell that included lying about an illness in order to avoid his own deposition, convincing other potential witnesses not to appear for deposition

13

withholding documents solely on the basis that they were "personal". The record on appeal showed "[the] district's court's detailed findings of Thomas Bedwell's personal responsibility for repeated deposition abuses and failure to produce documents" that required his opponents to file six discovery motions. Id, at 692. The District Court had determined his actions "severely prejudiced" his opponents "by depriving them of important information and by forcing [them] to force Bedwell to comply with discovery requests." Id. at 693. The Court of Appeals approved "the District Court's careful weighing of the Poulis factors" and described Bedwell's abuses as "far more extensive lapses over an extended period of time" and than had been present in Poulis. Id. at 685. Significantly, both the Court of Appeals and District Court conducted their analysis under the framework of Federal Rule of Civil Procedure 37. Id. at 690 ,691.

Mr. Jaeban's situation stands starkly different. Mr. Jaeban is accused of delayed production of documents in partial compliance with the *May 25, 2004 Order*. There was no allegation below that that Mr. Jaeban ignored the Bankruptcy Court's directive. Even BRACII acknowledges that Mr. Jaeban scheduled his own and other depositions, and properly attended and participated in his own deposition. In contrast to those of the litigants in several of the cited decisions, the Bankruptcy Court did not determine Mr. Jaeban's actions demonstrated bad faith. With regard to the documents in the hands of the Company's Administrative Receiver, Mr. Jaeban faced a unique set of circumstances which he did not control. As the lower court noted, "an administrator receivership under English law is, to the U.S. lawyer's eye, an odd proceeding because it materially affects the debtor's rights and interests without any judicial oversight or due process". *May 25, 2004 Order Order*, p. 11. In response to the specific inquiries from Mr. Jaeban, the

14

Receiver took the position that (1) he had no documents responsive to the document request; (2) he had filed previously a valid objection to the document request; (3) he had no obligation to allow Mr. Jaeban to review the documents or have any access to them; (4) he had no funds to conduct a privilege review and would, therefore, not release the documents. JA1552-1555. In that he was effectively stymied by the Receiver, the situation is not analogous to the bad faith withholding of documents in <u>Bedwell</u>, but is more analogous to a situation in which a party is unable to provide documents because of the actions of a third party. In such a circumstance, to the extent that a litigant is unable to comply with the discovery order because of lack of "control" under Rule 34, as opposed to bearing the responsibility for noncompliance, dismissal is clearly not an appropriate remedy. See, <u>Societe Internationale v. Rogers</u>, 357 U.S. 197, 210, 78 S. Ct. 1087, 1095, 2 L.Ed. 2d 1255, 1266 (1958).

While BRACII is correct that not all of the six <u>Poulis</u> factors must be present in each case to warrant a dismissal, it is equally clear that the appellate court will look to the record to examine the manner in which the trial court evaluated those factors. See, <u>Scarborough v. Eubanks</u>, 747 F. 2d 871 (3d Cir. 1984). In <u>Scarborough</u>, the appellate court vacated the dismissal imposed because of the failure to file a pre-trial statement after repeated warnings. The Court of Appeals noted that the party "filed both of the required pre-trial statements, albeit somewhat tardily" and noted there was no evidence of the type of willful or contentious behavior which was characterized as "flagrant bad faith" in <u>National Hockey League v. Metropolitan Hockey Club Inc.</u>, 427 U.S. 639, 643, (1976). <u>Id.</u>, at 875. Similarly, this Bankruptcy Court made no finding that Mr. Jaeban

had not ultimately produced the documents requested, rather that he failed to timely comply with its *May 25, 2004 Order*.

## BRACII'S DISCOVERY CONDUCT AND WHY IT MATTERS

BRACII has admitted its own non-compliance with the discovery cutoff in the *May 25, 2004 Order* in producing documents to Mr. Jaeban on August 2, 2004. Response, p. 18.Yet, it argues that such acts are "non-factors" before both the trial court and this court. BRACII's argument fails for two reasons, firstly because the August 2nd production by BRACII's American lawyers demonstrates the genuine practical difficulties of cross-border, and cross-system, discovery. Secondly, such production highlights the fundamental unfairness of holding only one party, Mr. Jaeban, responsible for all discovery disputes. After all BRACII's hyperbole, it has only identified two documents that it can assert Mr. Jaeban should have produced prior to August, when they were produced. BRACII's own August production is therefore substantially relevant.[7]

## THE MISSING RULE 37 ANALYSIS

BRACII offers no plausible explanation as to how the Bankruptcy Court could properly ignore Rule 37, the starting point for analysis of virtually every decision interpreting Poulis. See, Bedwell, supra. In its Response, Appellant argues that "[b]ecause the Court has the inherent power to enforce an existing Sanctions Opinion, BRACII was not required to file a superfluous Rule 37 motion." Response, fn. 26, p. 30.

Appellant completely misses the salient point: the issue is whether it was an abuse of discretion for the Bankruptcy Court to enter a dismissal sanction for alleged discovery violations without acknowledging or considering Rule 37. Mr. Jaeban submits that

---

[7] BRACII's point that the Bankruptcy Court's opinion will have a deterrent effect is without merit. What it will encourage is "scorched earth" litigation. who will try to "win."

Justice Harlan answered that question over 40 years ago in Societe Internationale Pour Participations Industrielles et Commerciales, S. A., v. Rogers, 357 U.S. 197 (1958).

> In our opinion, whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery by listing a variety of remedies which a court may employ as well as by authorizing any order which is "just."
> Id., p 207.

Given that the Supreme Court has held that a federal court's authority to dismiss a complaint "depends exclusively" on the provisions of Rule 37, the answer must be "Yes", and the dismissal order must be reversed.

## CONCLUSION

In overturning the lower court's dismissal in Rogers, Justice Harlan emphasized the due process issues associated with the sanction of dismissal, negating as it does any consideration of the merits of the claims. As the Court of Appeals has noted:

> Because such an order deprives a party of its day in court, our precedent requires that we carefully review each such case to ascertain whether the district court abused its discretion in applying such an extreme sanction
> Scarborough, supra, at 875.

Without doubt, the process used in reaching a decision must be fair and free of "clear error". Rule 37 empowers a court to enter a sanction, but imposes the requirement that the finding must be "just", and identifies the types of sanctions that may be "just" under a particular set of facts. Fed R. Civ. P. 37(b)(2). The sanction of dismissal is disfavored absent the most egregious circumstances. U.S. v. Eight Million Two Hundred Twenty-one Thousand, Eight Hundred Seventy-seven Dollars and Sixteen Cents ($ 8,221,877.16), supra at 161. Doubts should be resolved in favor of reaching a decision on the merits. See, Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir. 1983).

17

In the case at bar, and in addition to the points raised in the Opening Brief, the Bankruptcy Court erred, by

    A.  Failing to hold an evidentiary hearing;

    B.  Failing to recognize the authority or applicability of Rule 37;

    C.  Failing to consider the clear evidence of Mr. Jaeban's compliance; and,

    D.  Failing to make a factual inquiry into "litigation prejudice" and using an improper standard in evaluating "meritoriousness".

Instead, it misidentified the parties to a previous motion, misstated the entire procedural history of the litigation, and analyzed the Poulis factors in light of that error. The Bankruptcy Court's abuse of its discretion is unquestionable and must be reversed.

For the reasons stated above and in his Opening Brief, Mr. Jaeban requests that the Court reverse the decision of the Bankruptcy Court and remand the case for further proceedings consistent with that reversal.

July 5, 2005

WERB & SULLIVAN

/s/ Robert D. Wilcox
Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
300 Delaware Ave., 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2005, I caused one copy of the foregoing

document to be served upon the persons listed below in the manner indicated:

**FIRST CLASS MAIL AND E-MAIL:**

Kenneth E. Wile, Esq.
Sidley, Austin, Brown, & Wood, LLP
10 South Dearborn Street
Chicago, IL 60603

**VIA HAND DELIVERY AND E-MAIL:**

Edmon L. Morton, Esq.
Robert S. Brady, Esq.
Matthew B. Lunn, Esq.
Young, Conaway, Stargatt & Taylor, LLC
The Brandwyine Building, 17th Floor
1000 West Street, P. O. Box 391
Wilmington, DE 19899-0391

Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
300 Delaware Ave., 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

Attorneys for Appellant
Ibrahiem Jaeban, as Assignee of
Jaeban (U.K.) Limited