IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:  BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 02-12152 (MFW) |
| IN RE:  BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | (Jointly Administered) |
| Plaintiffs and Counterclaim Defendants, | ) ) | |
| v. | ) ) | Adversary No. A-03-54271 |
| JAEBAN (U.K.) LIMITED, | ) ) | |
| and IBRAHIEM JAEBAN | ) ) ) | |
| Defendants and Counterclaimants. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS OF IBRAHIEM JAEBAN

Defendant, Ibrahiem Jaeban ("Mr. Jaeban"), individually and as Assignee of Jaeban (U.K.) Limited ("Jaeban U.K."), by and through his undersigned attorneys, hereby responds to the Amended Complaint of the Debtors and Debtors-in-possession BRAC Group, Inc. (f/k/a Budget Group, Inc.), et al. (collectively, "BRAC")[1], as follows:

1.     Mr. Jaeban denies the allegations in paragraph 1 to the extent they assert that any amounts are due BRAC.

---

[1] In the Amended Complaint, the Plaintiffs include all of the debtors and debtors-in-possession, include BRAC Rent-A-Car International, Inc. For the purposes of this pleading, Mr. Jaeban includes all Plaintiffs in the definition of BRAC.

**JA18**

2.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies same.

3.    Admitted.

4.    It is admitted that Mr. Jaeban is a citizen and resident of the United Kingdom. Mr. Jaeban is the assignee of all claims of Jaeban U.K. relating to BRAC.

5.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

6.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

7.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

8.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

9.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

10.    It is admitted that an action to resolve a dispute relating to a cure amount objection is a core proceeding. It is denied that an action for collection of an account receivable is a core proceeding. It is denied that an action to collect on alleged guaranty is a core proceeding.

11.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies same.

12.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore denies same.

2

13.     Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies same.

14.     Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and therefore denies same.

15.     Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies same.

16.     Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies same.

17.     It is admitted that Mr. Jaeban and certain other parties signed an Umbrella Agreement, the terms of which speak for themselves.

18.     It is admitted that the terms of the IPLA speak for themselves.

## COUNT I

19.     Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BRAC's efforts attempts to reconcile amounts under the ILPA.  The remaining allegations of paragraph 19 are denied, except it is admitted that BRAC and Jaeban U.K. have been unable to agree on a reconciliation of Jaeban U.K.'s account under the ILPA.

20.     Admitted.

21.     Denied, except it is admitted that the parties have been unable to agree on any set off amounts to which Jaeban U.K. is entitled.

22.     Denied.

23.     Denied.

3

24.    This paragraph states a legal conclusion as to which no responsive pleading is required.  To the extent it asserts other than a legal conclusion, it is denied.

## COUNT II

25.    Mr. Jaeban incorporates and realleges his responses set forth in paragraphs 1 through 24, as if fully set forth herein.

26.    Denied.

27.    It is admitted that the Umbrella Agreement speaks for itself.  The remaining allegations of paragraph 27 are denied.

28.    Denied.

29.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore denies same.

30.    Denied.

31.    Denied.

### AFFIRMATIVE DEFENSES

#### First Affirmative Defense

32.    BRAC's claims are barred by waiver.

#### Second Affirmative Defense

33.    BRAC's claims are barred by estoppel.

#### Third Affirmative Defense

34.    BRAC's claims are barred by the applicable statute of limitations.

#### Fourth Affirmative Defense

35.    BRAC may not recover on the claims asserted in the Complaint to the extent that Mr. Jaeban, as assignee of Jaeban U.K, has a right of set off or off set against BRAC.

4

JA21

### Fifth Affirmative Defense

36.    BRAC may not recover on the claims asserted in the Complaint to the extent that Mr. Jaeban, as assignee of Jaeban U.K., has a right of recoupment against BRAC.

### Sixth Affirmative Defense

37.    BRAC may not recover on the claims asserted in the Complaint to the extent that the amount alleged to be owed to BRAC has been paid and/or satisfied by Jaeban U.K. or Mr. Jaeban.

### Seventh Affirmative Defense

38.    BRAC may not recover on the claims asserted in the Complaint to the extent that Jaeban U.K. was required to cover for BRAC's breaches.

### Eighth Affirmative Defense

39.    BRAC may not recover on the claims asserted in the Complaint to the extent that Jaeban U.K. has suffered, inter alia, consequential and incidental damages and lost profits resulting from BRAC's conduct.

### Ninth Affirmative Defense

40.    BRAC's claims are barred by laches.

### Tenth Affirmative Defense

41.    BRAC may not recover on the claims asserted in Count II of the Complaint because of the failure of a condition precedent.

## COUNTERCLAIMS

Counterclaim plaintiff Ibrahiem Jaeban ("Mr. Jaeban") in accordance with section 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7013 of the Federal Rules of Bankruptcy procedure, by and through its undersigned attorneys, hereby counterclaims

5

**JA22**

against counterclaim defendant BRAC for claims that arose after the entry of an order for relief as follows:

Parties

42.    Counterclaim plaintiff Mr. Jaeban is a resident of United Kingdom. Mr. Jaeban is the assignee of Jaeban U.K.

43.    Jaeban U.K. has or had a place of business for self-drive, contract hire and direct auto sales services located at Welcome House, 999 Wolverhampton Road, Oldbury, West Midlands, United Kingdom, B69 4RJ.

44.    On information and belief, counterclaim defendant BRAC is a Delaware corporation with a place of business at Hemel Hempstead, England.

Jurisdiction and Venue

45.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Background

46.    On or about March 5, 2001, BRAC and Jaeban U.K. entered into an International Prime License Agreement (the "ILPA") and an Umbrella Agreement. A true and correct copy of the ILPA is attached hereto as Exhibit A.

47.    Pursuant to the ILPA, BRAC licensed the Budget trademark to Jaeban U.K..

48.    Jaeban U.K. has performed or substantially performed its obligations under the ILPA and all conditions precedent to BRAC's obligations, if any, have been satisfied.

6

JA23

49.    BRAC has breached the ILPA by failing to adequately market the Budget brand pursuant to the ILPA, failing to adequately provide certain administrative functions required by the ILPA, and/or failing to provide integrated service across critical territories as required by the ILPA.

50.    In consideration of Jaeban U.K. entering into the ILPA, BRAC provided a written guaranty to Jaeban U.K., whereby BRAC guaranteed as the primary obligor the obligation of BRAC's subsidiary, BTI (UK) pk ("BTI") for the leasing of vehicles.

51.    Jaeban U.K. leased vehicles to BTI pursuant to various agreements between Jaeban U.K. and BTI.

52.    BTI owes Mr. Jaeban, as assignee of Jaeban U.K., an amount not less than £351,180.82 for various charges associated with the leasing of vehicles to BTI, including for charges related to damage to the vehicles and mileage.

53.    In August, 2002, Jaeban U.K. requested that BTI return certain vehicles in its possession that it had leased from Jaeban U.K.  To date, BTI has failed to return those vehicles.  As a result of BTI's failure to return those vehicles, Jaeban U.K. has been damaged in an amount not less than £70,000.

54.    Additionally, during the course of 2002, certain customers of Jaeban U.K. paid certain sums, owed by them to Jaeban U.K., to BRAC.  BRAC has failed to remit payment of those monies to Jaeban U.K.  As a result, Jaeban U.K. has been damaged in the amount of £49,724.47.

55.    Furthermore, BRAC is indebted and owes to Jaeban U.K. the sum of £1,231,678.66. This amount is the result of reconciling the Accounts Payable and the Accounts Receivable between the parties, including amounts customers paid to BRAC for services

JA24

provided by Jaeban U.K. BRAC has acknowledged in correspondence these sums are due and owing to Jaeban U.K., but has failed to remit those monies to Jaeban U.K. or to Mr. Jaeban. As a result, Jaeban U.K. has been damaged in an amount not less than £1,231,678.66.

## COUNT I
### BREACH OF CONTRACT/DEBT

56.     Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 55 as if fully set forth herein.

57.     BRAC has breached the ILPA by failing to adequately market the Budget brand as required by the ILPA, failing to adequately provide certain administrative functions required by the ILPA, and/or failing to provide integrated service across critical territories as required by the ILPA. Such failures constituted material breaches of the ILP and the Umbrella Agreement.

58.     Jaeban U.K. has suffered consequential and incidental damages and lost profits resulting as a result of such breaches by BRAC in an amount to be determined at trial.

59.     Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such breaches by BRAC.

## COUNT II
### CONVERSION OF MONIES OWED TO JAEBAN U.K. AND MR. JAEBAN

60.     Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 59 as if fully set forth herein.

61.     Jaeban U.K. has a property interest in the monies mistakenly paid by Jaeban's customers to BRAC.

62.     Jaeban U.K. has a right to possession and use of these monies.

8

63.    BRAC has improperly and unlawfully exercised dominion and control over these monies, and has wrongly converted these monies to its own use, and has failed to remit payment of these monies to Jaeban U.K. or Mr. Jaeban.

64.    As a result of BRAC's wrongful conversion of these monies, Jaeban U.K. has suffered damages in the amount of £49,724.47.

65.    Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such conversion by BRAC.

## COUNT III
## BREACH OF CONTRACT/GUARANTY

66.    Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 65 as if fully set forth herein.

67.    There exists a valid and enforceable agreement between Jaeban U.K. and BRAC whereby BRAC, absolutely and unconditionally, guaranteed as the primary obligor the obligations of BTI to Jaeban U.K. for the leasing of vehicles.

68.    Jaeban U.K.has performed or substantially performed its obligations under the agreements with BTI and all conditions precedent to BTI's obligations and, hence, BRAC's obligations, have been satisfied.

69.    BTI owes Jaeban U.K. an amount of not less than £351,180.82 for various charges associated with its leasing of vehicles from Jaeban U.K.

70.    BTI owes Jaeban U.K. an amount of not less than £70,000 for its failure to return to Jaeban certain vehicles that it had leased from Jaeban U.K.

71.    As the primary obligor and/or guarantor of BTI's obligations to Jaeban U.K., BRAC is absolutely and unconditionally obligated to pay to Jaeban U.K. those sums owed to Jaeban U.K. by BTI.

JA26

72.     BRAC has breached its guaranty to Jaeban U.K. by failing to remit payment to Jaeban U.K. of amounts owed by BTI to Jaeban U.K.

73.     Jaeban U.K. has suffered damages as a result of such breaches in an amount of not less than £421,180.82.

74.     Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such breaches by BRAC.

## COUNT IV
## BREACH OF CONTRACT/DEBT

75.     Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 74 as if fully set forth herein.

76.     BRAC has breached the ILPA by failing to remit and pay to Jaeban U.K. all sums and amounts owed by BRAC to Jaeban U.K. pursuant to the provisions of the ILPA, including but not limited to amounts customers paid to BRAC for services actually provided by Jaeban U.K.

77.     Jaeban U.K. is owed an amount of not less than £1,231,678.66 as its Accounts Receivable from BRAC for amounts due Jaeban U.K. pursuant to the provisions of the ILPA.

78.     As a result of BRAC's breach in failing to pay to Jaeban the amounts owed, Jaeban U.K. has suffered damages in an amount of not less than £1,231,678.66.

79.     Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such breaches by BRAC.

WHEREFORE, Mr. Jaeban respectfully requests that this Court:

(a)     enter a full and final judgment in his favor and against BRAC for compensatory damages and for all amounts owed to Jaeban U.K.;

(b)  order the release of the escrowed funds to Mr. Jaeban in the amount of that

judgment;

(c)  award pre- and post-judgment interest at the maximum rate allowable;

(d)  award Mr. Jaeban his attorneys' fees and costs; and

(e)  award such other and further relief as the Court deems just and proper.


Dated: July 23, 2004

Respectfully submitted,

WERB & SULLIVAN

s/ Robert D. Wilcox
Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
300 Delaware Ave., 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

Attorneys for Ibrahiem Jaeban

11

**JA28**

# EXHIBIT A

BUDGET RENT A CAR SYSTEM

INTERNATIONAL PRIME LICENSE AGREEMENT

This Agreement is made and entered into this __th day of _____ 2001, by and between Budget Rent a Car International, Inc., a Delaware USA Corporation ("Budget") and _____ d/b/a Budget Rent a Car of _____ ("Licensee")

## PREAMBLES

Budget Rent a Car Corporation (hereinafter referred to as "BRACC") has developed and franchises a system which utilises BRACC's confidential information trade secrets know-how and methods (the "Budget Rent a Car System" or "System") for conducting the business of renting automobiles, trucks and such other vehicles without drivers as may be approved by BRACC in writing from time to time (collectively, the "Vehicles"), which is commonly known as a Budget Rent a Car business (a "BRAC business"). BRAC businesses are conducted under certain trade names, trademarks and service marks and logos, including, "Budget", "Budget Rent a Car", "Budget Rent a Truck", "Budget Rent a Van", and their associated logos, colour schemes and other existing or future trademarks, service marks, logos and indicia as designated by Budget from time to time (collectively the "Budget Trademarks"). The System has been extensively promoted and has acquired substantial Goodwill and business value through the efforts of BRACC and its international network of mutually interdependent licensees and

affiliate owned operations (the "Network"). The System is a format for operating a business of renting vehicles through the use of standards prescribed by BRACC in its operating manual (the "Operating Manual") and otherwise from time to time in writing, which are designed to assure a high uniform quality of service to each customer and to maintain and enhance the value of the Budget Trademarks (collectively, the "Standards"). The System including the Standards may be improved, further developed or otherwise modified from time to time by BRACC.

Budget and BRACC have developed essential services which are provided as part of this Agreement and which are an integral part of the System. These services may include pre-opening training; conventions, seminars and meetings at which licensees can learn about sales and marketing techniques and business techniques; updates of the Operating Manual and the Standards; advertising; reservation processing; charge card and voucher processing and access to purchasing programs.

. Budget has by way of an agreement with BRACC been authorised to operate and grant licenses to others to operate BRAC businesses. Licensee has applied to be exclusively licensed by Budget to use the System and the Budget Trademarks to conduct a BRAC business using the services described above or others offered by Budget and BRACC from time to time offering for rental the types of Vehicles identified in Schedule 1 subject as herein provided. In executing this Agreement, Licensee acknowledges the importance of Budget's high standards of quality and service and agrees to operate its BRAC business in conformity with the Standards, to strictly comply with the provisions of this Agreement and to conduct its BRAC business ethically, honestly and fairly. Licensee shall not conduct its BRAC business in a manner which may

2

**JA31**

discredit or impair the value of the BRAC business, the System or the Budget Trademarks. As an inducement to Budget entering into this Agreement, Licensee represents and warrants to Budget that all information set forth in any and all applications, financial statements and submissions to Budget is true, complete and accurate in all respects and that there have been no misrepresentations or omissions in any application, statement or submission to Budget.

## AGREEMENT

## ARTICLE I

## EXCLUSIVE LICENSE

**1.1      Exclusive License.**

Subject to the provisions hereof and the continuing performance by Licensee of its obligations under this Agreement and the Standards, Budget hereby grants to Licensee the exclusive right and license to conduct a BRAC business under the Budget Trademarks and the System together with the benefit of the Goodwill (hereinafter defined) within the geographical territory and for the term hereinafter set forth. Licensee accepts such license, agrees to use its best efforts to develop and continuously operate its BRAC business in accordance with the provisions of this Agreement and the Standards.

**1.2      Reservation of Rights.** Licensee will not operate its BRAC business or any part thereof outside the Licensed Territory. In particular, and without derogating from the

3

JA32

foregoing, Licensee shall not establish any location outside the Licensed Territory. Licensee may serve any customer without regard to the customer's address from more than one location within the Licensed Territory, provided Licensee shall not pick up customers outside the Licensed Territory or deliver vehicles outside the Licensed Territory. Licensee agrees that the term "BRAC business" refers exclusively to the business of renting Vehicles, as identified in Schedule 1, without drivers under the Budget Trademarks and the System and does not include or refer to the rental of any other vehicle or product or to any other business or commercial activity, including any business engaged in the sale of new or used vehicles. Licensee agrees that Budget exclusively reserves all rights not expressly granted to Licensee in this Agreement, including, the rights to: (a) operate and grant others the right to operate a BRAC business outside the Licensed Territory, and under certain circumstances pursuant to Paragraph 11.5, inside the Licensed Territory, on such terms and conditions as Budget deems appropriate; (b) hire and/or appoint sales persons and general sales agents and negotiate and enter into local, regional, national and international sales and marketing agreements with persons or entities located within the Licensed Territory; (c) use the Budget Trademarks for any purpose within the Licensed Territory other than for operating a BRAC business offering for rental the types of Vehicles identified in Schedule 1 at a location within the Licensed Territory except as provided in Paragraph 8.6; and (d) operate and grant others the right to operate businesses, other than a BRAC business offering for rental the types of Vehicles identified in Schedule 1, outside and within the Licensed Territory, including without limitation, businesses that offer for rent or sale vehicles and other motorised and non-motorised equipment under trademarks other than the Budget Trademarks. Licensee acknowledges and agrees that nothing in this Agreement shall prohibit Budget or its parent company, subsidiaries or affiliates (the "Related Entities") from

4

**JA33**

operating, or granting others the right to operate a BRAC business in the Licensed Territory where such BRAC business offers for rental vehicles other than the Vehicles authorised to be rented by Licensee under Schedule 1. Licensee acknowledges and agrees that Budget gives no undertakings beyond those expressly given in this Agreement and no undertaking on the part of Budget or BRACC shall be implied for any reason including any practice or course of conduct embarked upon by Budget, BRACC and/or any of the parties hereto. Licensee further acknowledges and agrees that nothing in this Agreement shall prevent Budget or the Related Entities from selling their assets, engaging in a public offering or private placement, from merging with or acquiring other corporations or entities or from being acquired by another corporation or entity including corporations or entities which may own or operate systems or chains which may be competitive with or similar to the System.

1.3    **Prohibition Against Sublicensing/Agencies.** Licensee agrees that it has no right or authority to grant a sublicense to any person to perform any part of Licensee's rights or obligations licensed hereunder nor to grant any person the right to act as Licensee's agent to perform any part of the Licensee's rights or obligations licensed hereunder save with Budget's prior written consent and subject to such conditions as Budget may in its absolute discretion impose and provided always that the Licensee shall not have the right to sublicense any territory which can be utilised to service any airport concessions and shall remain the operator of all major locations including all airport locations within the Licensed Territory.

1.4    **Licensed Territory.** This license shall only grant the exclusive right only to establish locations throughout the territory which is set forth in the map and description in

5

Schedule 2 (hereinafter referred to as the "Licensed Territory"). It is expressly agreed that the map is for identification only and is not conclusive as to the extent of the Licensed Territory. If, in any circumstances, the Licensed Territory description, as understood in the future, defines a territory larger than that contemplated by the map and description in Schedule 1 attached to this Agreement or any amendment as of the date of execution of same, Licensee agrees that it has no right to operate its BRAC business in the additional territory and that, Budget shall have the right to operate, or to license, a third party the right to operate a BRAC business within that additional territory.

1.5     BRACC and the Related Entities (but no other parties not parties to this Agreement) shall have the right pursuant to the Contracts (Rights of Third Parties) Act 1999 to enforce the terms and conditions of this Agreement but shall not have any obligation to observe and perform any of the terms and conditions which Budget is required to observe and perform under this Agreement.

## ARTICLE II

## BUDGET TRADEMARKS AND SYSTEM

2.1     **BRACC's Exclusive Ownership.**  Licensee acknowledges and agrees that BRACC has exclusive ownership of and right to the Budget Trademarks, the System (including the proprietary method of conducting the BRAC business using the services referred to in the Preambles and all practices, procedures, methods, devices, manuals, slogans, and other materials

6

JA35

constituting an element of the System and that Licensee's use of the Budget Trademarks, or any variation thereof, and the Goodwill inures to the exclusive benefit of BRACC. To avoid any doubt Licensee acknowledges that the Goodwill shall at all times belong to and be vested in BRACC and that Licensee only has the right to benefit from the Goodwill to the extent and upon the terms provided by this Agreement. Licensee agrees not to register or attempt to register any of the Budget Trademarks anywhere in the world.

2.2    **Notification of Infringement/Claim.** Licensee agrees to notify Budget and BRACC immediately in writing of any apparent infringement of or challenge to Licensee's use of any Budget Trademark or claim by any person other than BRACC to any rights in any Budget Trademarks or any similar trade name, trademark or service mark or other proprietary right (collectively **"Budget Proprietary Rights"**) of which Licensee becomes aware. Licensee agrees to not communicate with any person other than BRACC, Budget and their counsel in connection with any such infringement, challenge or claim. Licensee agrees that BRACC shall have sole discretion to take such action as it deems appropriate and the right to control exclusively any litigation, or administrative proceeding arising out of any such infringement, challenge or claim or otherwise relating to any Budget Proprietary Rights. Licensee agrees to execute any and all documents, render such assistance and do such acts and things including providing or giving evidence as may, in the opinion of counsel for BRACC, be necessary or advisable to protect and maintain the interest of BRACC in any such litigation or proceeding or to otherwise protect and maintain the interest of BRACC in the Budget Proprietary Rights.

7

**JA36**

2.3    Limitation On Use. Licensee acknowledges and agrees that the right to use the Budget Trademarks and the System is derived solely from this Agreement and is limited to the conduct of a BRAC business pursuant to and in compliance with this Agreement and the Standards. Licensee agrees that it will not use the Budget Trademarks or the System or any variation thereof, other than in conformity with this Agreement, and that it will not use or incorporate any of the Budget Trademarks in or as part of its corporate name or with any prefix, suffix or symbols, or in any modified form (including any local or special adaptations or artistic variations of any of the Budget Trademarks), nor may Licensee use any of the Budget Trademarks in connection with the sale of any unauthorised product or service or in any other manner not expressly authorised in writing by BRACC. Licensee further agrees that it will not use any existing or future Budget Trademark or any variation thereof as part of a domain name or electronic address of a website or internet or e-mail address, nor will it establish a website in connection with or relating to its conduct of the BRAC business except in accordance with the Operating Manual. For purposes of this Agreement, a "website" is an electronic document contained in or available to a network of computers linked by communications software or successor or similar and/or alternative communications technology. Licensee agrees to display the Budget Trademarks prominently and in the manner prescribed by BRACC on signs, forms, and other materials and articles. Licensee agrees to give such notices of trademark, service mark, registration and copyright ownerships as Budget specifies and to obtain such fictitious, assumed name or business name registrations as may be required under applicable law. If it becomes advisable or desirable at any time in the absolute judgement of BRACC for Licensee to modify or discontinue use of any Budget Trademark, and/or use one or more additional or substitute Budget Trademarks, Licensee agrees to do so promptly at its sole cost and expense.

8

—JA37

2.4     Nondisclosure.

2.4.1  Licensee acknowledges, warrants and agrees that save pursuant to an agreement with Budget entered into prior to the execution of this Agreement or as disclosed in writing and annexed to this Agreement and signed by the parties hereto it has no prior knowledge of, no part in the creation or development of, and no proprietary or other rights or claims in or to any element of the BRAC business, the System or the Budget Trademarks, and had no prior knowledge of the System or how to operate a business similar to the BRAC business or how to conduct the BRAC business and that all materials loaned or otherwise made available to Licensee and all disclosures made to Licensee by or at the direction of Budget, and not to the general public at any time before or during the term of this Agreement including the contents of the Operating Manual and the Standards, current and prior research, development test programs and any marketing, advertising and promotional programs, are communicated and made available confidentially and as trade secrets and that the copyright in the Operating Manual and all other documents and materials relating to the System vest solely in BRACC and/or Budget. The System results from experience and testing by Budget and/or BRACC, is not generally known or easily accessible and is important to Licensee, the Network, Budget and BRACC for the sale of goods and services to customers of BRAC businesses.  Licensee shall make all reasonable efforts to maintain the confidentiality of the above described documents and information, including, during the term of this Agreement and thereafter, Licensee shall not reproduce, exhibit, remove from its place of business or disclose to any person (other than its partners, shareholders, officers and employees on a need to know basis and after ensuring their commitment to confidentiality), and shall not use or disclose for any purpose other than

9

operation of the BRAC business authorised hereunder, the Operating Manual, the System or any other confidential element of, or information relating to the System. Licensee acknowledges and agrees that the foregoing are trade secrets of significant commercial value to BRACC and Budget, in which BRACC and Budget have made a substantial investment and have a legitimate right to protect against unlawful disclosure.

2.4.2    Exclusive Relationship. Licensee agrees that BRACC and Budget would be unable to protect confidential information against unauthorised use or disclosure or use by a competitor of Budget, BRACC and any BRAC business and would be unable to encourage a free exchange of ideas and information among BRAC businesses and between Licensee and Budget if Licensee, its Beneficial Owners or persons related to Licensee or its Beneficial Owners were permitted to be engaged, concerned or interested (whether directly or indirectly) as an owner, partner, financier, director, officer, employee, consultant, agent or in other capacity in any other vehicle rental business or system in the Licensed Territory. Accordingly, unless Budget provides prior written consent to the contrary, Licensee agrees that it and that it will procure that each of the companies in the Group of which Licensee is a member and their Beneficial Owners, and the Licensee's principal officers and directors will not, during the term of this Agreement, be engaged, concerned or interested, (whether directly or indirectly), as an owner, partner, financier, director, officer, employee, consultant, agent or in any other capacity in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others.

10

**JA39**

2.4.3    **Covenants on Termination.**  Licensee agrees as follows:

2.4.3.1    Licensee undertakes not directly or indirectly to solicit or tout for business from any person who was during the period of two years prior to termination of this Agreement a regular customer of or in the habit of dealing with the BRAC business of Licensee.

2.4.3.2    Licensee acknowledges that its failure to adhere to the provisions of this Paragraph 2 will constitute unfair competition to Budget, BRACC and the Network and Licensee further acknowledges the difficulty of accurately determining the tangible and intangible damages which Budget, BRACC and the Network will suffer if Licensee fails or refuses to adhere to the provisions of this Paragraph 2.4 and accordingly, Licensee and Budget agree:

2.4.3.3    To entry without prior notice, to the extent that applicable notice requirements may be waived, of temporary and permanent injunctions against Licensee's breach of such provisions.  Licensee agrees to pay to Budget an amount equal to the aggregate of Budget's costs of obtaining any such temporary and permanent injunctive relief, including all costs of investigation and proof of facts, court costs and attorney's fees.

2.4.3.4    In any proceeding either at law or in equity between the parties, Licensee hereby agrees that it has waived and shall not be entitled to raise as a defence either that: (1) the period of time or geographical area within which Licensee

11.

**JA40**

is prohibited from competition is unfair, unnecessary or unreasonable; or (2) that such provisions are an unlawful restraint of trade.

2.5     **System Ideas.**  If Licensee develops any idea, method of operation, formula, design, invention, or marketing technique which could be useful to the operation of the System, then Licensee agrees to make available to Budget and the Related Entities, and their respective successors and assigns, and the Network, such idea, method of operation, formula, design, invention, or marketing technique free of charge for their use for so long as Budget shall wish them to be able to do so.  Licensee shall not introduce or use any such or any other idea, method of operation, formula, design, invention or marketing technique into its BRAC business without BRACC's and/or Budget's prior written approval.  Whether or not such approval is given shall be entirely at BRACC's and/or Budget's absolute discretion.

2.6     **Modifications to System.**  Licensee acknowledges that Budget may have to change the System including the Standards from time to time to preserve and enhance the image of the System or the Network, to accommodate consumer tastes and to maintain or enhance the efficiency and profitability of the Network.  Accordingly, Budget may change any of the elements of the System (including by introducing new Budget Trademarks, products, services, and Standards) and, on notice from Budget, Licensee shall promptly accept and implement all such changes at Licensee's expense.

12

JA41

ARTICLE III

OPERATING MANUAL

Budget agrees to loan to Licensee the Operating Manual, which may consist of several component parts and materials Budget may issue, including bulletins, handbooks, newsletters and computer-based and -transmitted information. Licensee agrees that Budget will have the right to modify the Operating Manual at any time and from time to time by the addition, deletion or other modification to the provisions thereof. Licensee agrees that modifications in the Operating Manual will become effective thirty (30) days after written notice thereof to Licensee unless a longer period is specified in such written notice. Licensee agrees that it will at all times conduct the BRAC business in accordance with the Operating Manual, as modified from time to time as hereinbefore provided, and reference made in this Agreement, or in any amendments, exhibits or schedules thereto, to the Operating Manual will be deemed to mean the Operating Manual as current from time to time. Licensee agrees to keep its copy of the Operating Manual current by immediately inserting all modified and additional pages furnished by Budget for the Operating Manual. In the event of a dispute relative to the contents of the Operating Manual, Licensee agrees that the master copy maintained by Budget at its principal office will be controlling.

If necessary, Licensee shall at its own expense cause the Operating Manual to be translated into one or more of the languages of the Licensed Territory. Licensee acknowledges and shall ensure that the Operating Manual and any translation and the copyrights therein shall be the property of and vested in Budget. Licensee agrees to execute any and all instruments and

13

**JA42**

documents, render such assistance and take such action as may, in the opinion of Budget's counsel, be necessary or advisable to establish, protect and maintain the interests of Budget in the Operating Manual, any translations thereof and the copyrights therein. Budget will reimburse Licensee for the reasonable expenses incurred and paid by Licensee in complying with the foregoing sentence. Licensee agrees that it will not copy or disclose any part of the Operating Manual to any person other than its employees who have a need to know the contents of the Operating Manual after ensuring their commitment to confidentiality.

## ARTICLE IV

## INSTRUCTION AND OPERATING ASSISTANCE

4.1     Pre-opening Instruction. Prior to the opening of Licensee's BRAC business, Budget shall furnish, and the General Manager and such other employees of Licensee as are approved by Budget shall attend and successfully complete, instruction on the operation of a BRAC business as Budget deems appropriate. The instruction shall be furnished at such time and place as shall be designated by Budget. In addition to monthly Royalty Fees and Service Fees, Licensee shall pay the then current instruction fee and all travel and living expenses incurred by the General Manager and any other employees receiving the instruction. A person who has failed to satisfactorily complete the relevant instruction course shall not be employed as General Manager of the Licensee's BRAC business.

14

JA43

4.2    Post-opening Instruction.   Following the opening of Licensee's BRAC business, Budget will furnish a field representative to train and assist Licensee's General Manager and employees in the operation of Licensee's BRAC business to such extent (if at all) as in Budget's judgement is from time to time reasonably necessary.  If Licensee's designated General Manager fails to complete such instruction to Budget's satisfaction Licensee shall select another person as General Manager who shall be required to complete the instruction to Budget's satisfaction.

4.3    Operating Assistance and Training.   Budget shall furnish to Licensee such operating training and assistance on a continuing basis through field representatives or training programs requiring Licensee attendance, as in Budget's judgement is from time to time reasonably necessary.   Licensee shall co-operate with Budget and its representatives in connection with all training and assistance provided by Budget and will promptly undertake to correct any deficiencies brought to Licensee's attention in connection therewith.  Licensee will reimburse Budget for the reasonable costs and expenses it incurs in correcting, or causing the correction of, deficiencies that Licensee, after notice, fails to correct.

4.4    Attendance at Conventions/Seminars/Meetings.  Budget may hold periodic conventions, seminars or meetings for portions or all of the Network, which may include programs on sales and marketing techniques, Standards, advertising programs, and training suggestions.  Licensee's attendance at each convention, seminar or similar meeting is mandatory and Licensee shall bear all expenses of attending, including travel, lodging, meals and entertainment.

15

**JA44**

ARTICLE V

MARKETING AND IDENTIFICATION

5.1    Centralised Marketing Fund.  Budget agrees to expend the monies in the Fund (as defined in Paragraph 7.2) for sales and marketing efforts on behalf of the Network. Licensee agrees that these efforts may include national and international account business; public relations; marketing; marketing research; preparing and producing videos; audio and written advertising materials; administering advertising programs; purchasing direct mail and other media advertising, and employing advertising agencies to assist in these activities.  Licensee agrees that the Fund may also be used for salaries, administrative costs and overhead expenses Budget may incur in activities reasonably related to Budget's activities with respect to sales and marketing, including the costs of accounting for advertising and promotional expenditures and activities.

5.2    Budget Direction of Funds.  Licensee agrees that it has no right, claim or interest of any kind in or to the monies paid by Licensee under Paragraph 7.2 and that Budget will have sole discretion over the Fund and the related sales and marketing activities including over the creative concepts, materials and endorsements used and the geographic, market and media placement and allocation of the programs.  Licensee agrees that Budget's expenditures will be devoted to promoting the recognition of the Budget Trademarks and patronage of the Network.  Budget undertakes no obligation to ensure that its expenditures in or affecting any

16

JA45

geographic area will be proportionate or equivalent to Service Fees, Marketing Fund Fees or other fees paid by BRAC businesses operating in that geographic area, or that any BRAC business will benefit directly from Budget's sales and marketing expenditures.

5.3    **Local Advertising and Promotion.**  Licensee may formulate and effect local sales and marketing activities both within and outside the Licensed Territory, subject to such requirements with respect to format, representations and media as are prescribed by Budget in the Operating Manual or otherwise from time to time.  Licensee agrees to at all times adhere to all rental charges which it advertises or which Budget advertises on Licensee's behalf and at Licensee's request, and Licensee will not advertise (i.e., make any oral, written, graphic or pictorial statement in the course of soliciting business) in any deceptive or misleading manner.  Licensee understands and agrees that Budget or the Related Entities may hire and/or appoint sales persons and general sales agents to act on their behalf in the Licensed Territory.  In such event, Licensee agrees to fully co-operate with the sales persons and general sales agents in their efforts to promote the Network and any specific destination locations.

5.4    **Required Local Expenditures.**  Licensee agrees to advertise its BRAC business in each of the primary general and business telephone directories distributed within its Licensed Territory and shall expend annually for sales and marketing within the Licensed Territory, exclusive of its classified telephone directory listing and advertising, the amount not less than that set forth in Schedule 1 ("the **Required Local Expenditure**") for the year (in addition to the centralised Marketing Fund Fees referred to in **Paragraph 7.2**).  Licensee agrees that all sales and marketing materials and all other materials (including, Licensee's stationery,

17

JA46

business cards, telephone listings, and advertising) will be in accordance with the image standards prescribed by Budget in the Operating Manual or otherwise from time to time. Licensee agrees to furnish Budget within ninety (90) days after the close of its fiscal year a statement certified by Licensee containing the computation of the amount that it was required to expend hereunder for advertising and promotion and the amount actually expended. Licensee agrees that excess expenditures in any calendar year will not reduce the amount required to be expended in any subsequent year. Budget agrees that the Licensee will satisfy its obligations in relation to the Required Local Expenditure if it expends such sums on activities reasonably related to the Licensee's activities with respect to sales and marketing including the costs of accounting for advertising and promotional expenditure and activities.

## ARTICLE VI

## PROGRAMS

6.1      Key Account Programs. Budget and BRACC shall have the right as agent for Licensee to enter into service contracts throughout the term of this Agreement with agencies and departments of the national, state/provincial, local and other governmental subdivisions; national and international industries and institutions; and other local, regional, national and international accounts (herein collectively referred to as "Key Accounts"). Licensee agrees to maintain the availability of Vehicles for rent to such Key Accounts and to accept all such rentals and otherwise service such Key Accounts in the same manner as is required in this Agreement for other customers of Licensee or to provide such higher level of service for the Key Account

18

**JA47**

customers as required by the Standards, including by maintaining and sharing with Budget and the Network information about the Key Account and Key Account customers. Licensee agrees to comply with all of the terms and conditions of all Key Account programs. Licensee must provide service to the Key Accounts in accordance with Budget's requirements. If Licensee fails to do so, in addition to other remedies available to Budget under this Agreement, Budget shall have the right, without notice to Licensee, to provide  (or license a third party, including a Related Entity, to provide) service to Key Accounts in the Licensed Territory.

6.2    International Reservation System. Licensee agrees to participate exclusively in the Budget International Reservation System (the "Reservation System") which is now in effect and as it may be modified by Budget from time to time or which may hereafter be instituted by Budget; to comply with all of the terms and conditions of the Reservation System including to accept and service all reservations received through the Reservation System; to participate and pay fees and commissions due under the centralised Travel Agent Reservation Program and other travel agent programs and to pay Budget, the Related Entities, BRACC, airlines, and other sources of reservations, the fees and other charges due for the reservations generated on behalf of Licensee through the Reservation System or otherwise on the respective dates for payment or if no such dates are fixed, upon demand. In addition, Licensee agrees to accept and service all reservations received from the Network and to transmit all reservations which it is requested to place by any customer exclusively to the appropriate BRAC business, without charge to the customer, and without fee to the receiving operator other than as required by the Standards. Licensee agrees to adhere to the rental prices which it places in, or has another place in, any reservation system or program on its behalf. Budget and any assignee agrees not to

19

JA48

divert from the Licensee to a third party any reservations which require servicing in the Licensed Territory or in any way to seek to diminish such reservations except in accordance with any Key Account program and provided that Licensee is capable and willing to service such reservations.

6.3     **Customer Complaint Programs.**  Licensee agrees at all times to comply with all of the terms and conditions of all customer complaint programs as required by the Standards. Budget shall have the sole and exclusive right to resolve all customer complaints and Licensee agrees to abide by all decisions rendered by Budget in connection with any such complaints.

6.4     **Payment Programs.**  Licensee agrees to accept such credit cards, vouchers, and other forms of payment from its customers, and otherwise to participate in and comply with all of the terms and conditions of payment programs as required by the Standards.

6.5     **Marketing/Customer Service Programs.**  Licensee acknowledges that it is essential to maintain a strong positive public image of the identity and reputation of the Budget Trademarks and a uniform and high level of service to each customer and therefore, agrees to participate in and comply with, in addition to the programs mentioned above, and the programs listed on Schedule 3 attached hereto and incorporated herein by reference, any other sales, reservation, computer, marketing, Key Account, test, advertising, operating, customer service or other similar program (hereinafter collectively referred to for convenience as "Marketing/Customer Service Programs") which are now in effect and as they be modified or hereinafter instituted by Budget through the Operating Manual or otherwise from time to time. Licensee agrees to contribute to the expense of these Marketing/Customer Service Programs on

20

the same basis as other similarly situated System licensees. Licensee understands and agrees that it may be required to enter into participation or other agreements to evidence its participation in such programs.

## ARTICLE VII

## FEES AND OTHER PAYMENTS

7.1     **License Purchase Fee.**  Licensee shall pay to Budget as a License Purchase Fee for the right to become the System licensee in the Licensed Territory the amount set forth in Schedule 1. The License Purchase Fee shall be payable to Budget in the manner set forth in Schedule 1, fully earned by Budget at the time of execution of this Agreement and not refundable, in whole or in part, under any circumstances.

7.2     **Centralised Marketing Fund Fees.**  Licensee agrees to pay to Budget monthly at the same time the Royalty Fees and Service Fees are to be paid the amount set forth in Schedule 1 ("Marketing Fund Fees") for a centralised marketing fund ("Fund").

7.3     **Service Fees and Royalty Fees .**

(a) Service Fees. Licensee agrees to pay to Budget monthly Service Fees, within fifteen (15) days of the end of the month to which they relate, in an amount equal to the amounts set forth in Schedule 1 for each of (a) Short Term Car Rental; (b) Short Term Van Rental; (c) Short Term Truck Rental; and (d) Long Term Rental. Licensee agrees that it will pay the Service Fee

21

JA50

for the Long Term Rentals if at the time it submits its payment it reports all Long Term Rentals on a separate Long Term Rental monthly vehicle report and otherwise satisfies Budget's requirements for Long Term Rentals as prescribed in the Operating Manual or otherwise from time to time. All costs and charges, including bank charges, incurred in the payment of Service Fees or other fees or charges under this Agreement will be borne by Licensee.

For the purposes of this Paragraph 7.3:

"**Short Term Car Rental**" means the rental of a car, which at the start of the rental is not contracted for less than ninety (90) days closed during the immediately preceding calendar month;

"**Short Term Van Rental** " means the rental of a van which at the start of the rental is not contracted for less than ninety (90) days closed during the immediately preceding calendar month;

"**Short Term Truck Rental**" means the rental of a truck which at the start of the rental is not contracted for less than ninety (90) days closed during the immediately preceding calendar month;

"**Long Term Rental**" means the rental of a car, van, or truck which at the start of the rental is contracted for ninety (90) days or more closed during the immediately preceding calendar month.

(b) Royalty Fees. Licensee agrees to pay to Budget monthly Royalty Fees within fifteen (15) days of the end of the month to which they relate, in an amount equal to the amounts set forth in Schedule 1 for each of (a) Short Term Car Rental; (b) Short Term Van Rental; (c) Short

22

JA51

Term Truck Rental; and (d) Long Term Rental. Licensee agrees that it will pay the Royalty Fee for the Long Term Rentals if at the time it submits its payment it reports all Long Term Rentals on a separate Long Term Rental monthly vehicle report and otherwise satisfies Budget's requirements for Long Term Rentals as prescribed in the Operating Manual or otherwise from time to time. All costs and charges, including bank charges, incurred in the payment of Service Fees or other fees or charges under this Agreement will be borne by Licensee.

7.4     **Minimum Service Fees and Royalty Fees .** Licensee agrees to pay to Budget not less than a certain minimum amount of Service Fees and Royalty Fees each year of this Agreement which in each of the first five years of this Agreement will be the amounts referred to in **Schedule 4.** After the fifth anniversary of the date of this Agreement, the minimum Service Fees and Royalty Fees amounts will be determined by Budget in its discretion based on then current market surveys conducted by Budget, but Licensee agrees that the minimum annual Service Fees and Royalty Fees after the first five (5) years of this Agreement, will not be less than the immediately preceding year's minimum plus a percentage increase based on the potential growth in vehicle rental industry revenue in the Licensed Territory as determined by Budget. Licensee agrees to pay to Budget each month the greater of one-twelfth (1/12) of the annual minimum Service Fees and Royalty Fees or Licensee's actual monthly Service Fees and Royalty Fees.

7.5     **Withholding Taxes.** In the event that payments by Licensee to Budget hereunder are subject to withholding or other taxes that Licensee is required to deduct from such

23

payments, Licensee agrees to obtain any consents from the appropriate governmental authority to give effect to any double taxation treaty which may exist between the country in which the Licensed Territory is situated and the United States and to promptly deliver to Budget evidence issued by the applicable governmental authorities in a form satisfactory to Budget, that all such taxes withheld have been paid. Licensee shall be responsible for and shall indemnify and hold Budget and the Related Entities harmless against any penalties, interest and expenses incurred by or assessed against Budget or the Related Entities as a result of Licensee's failure to withhold such taxes or to timely remit them to the appropriate taxing authority. Licensee agrees to fully and promptly co-operate with Budget to provide such information and records as Budget may request in connection with any application by Budget to any taxing authority with respect to tax credits, exemptions or refunds available for any withholding or other taxes paid or payable by Licensee. In the event Budget is required to refund to Licensee any amounts paid hereunder pursuant to the terms and conditions of this Agreement, Budget shall not be required to refund that portion of those amounts which were withheld by Licensee in order to comply with any applicable tax law unless and until Budget receives a refund of such amounts from the applicable government and/or agency thereof or utilises a foreign tax credit which is directly attributable to such amounts on its United States federal income tax return which is accepted by the United States Treasury or with respect to which the period within which such credit may be reduced or disallowed has expired.

      7.6      **Definition of "Gross Revenue".** Licensee agrees that the term "Gross Revenue" will, for purposes of this Agreement, mean any and all sums of every nature and character payable, for cash or credit, under closed rental agreements or otherwise in Licensee's

24

operation of its BRAC business, including time, mileage, damage or loss waiver, and any other charges for any ancillary goods or services provided directly or indirectly in connection with Licensee's BRAC business including baby seats, ski racks, moving supplies and tow dollies, and specifically excluding only the following: (a) any national, state/province or local sales or other similar taxes separately stated, collected from customers and paid by Licensee to the applicable governmental authority; (b) any amounts received as insurance proceeds or otherwise for damage to vehicles or other property of Licensee, or for loss, conversion or abandonment of such vehicles; (c) revenue derived from the sale of fuel furnished at the time of rental or at the end of rental; and (d) revenue derived from the appropriate driver costs in relation to the delivery of vehicles.

7.7     **Electronic Funds Transfer.** Budget shall have the right to require Licensee to participate in an electronic funds transfer program under which Services Fees, Royalty Fees, Marketing Fund Fees and any other payments due Budget or the Related Entities under this Agreement or any other agreement between the parties are transferred electronically from Licensee's bank account to the bank or other financial institution specified by Budget, all of which shall be in accordance with the Standards. Licensee agrees to make the funds available in its bank account for withdrawal by electronic transfer no later than each due date for payment.

7.8     **Currency of Payment and Rate Of Exchange.** All payments by Licensee to Budget under this Agreement shall be made in Pounds Sterling unless otherwise specified by Budget. All payments hereunder to be calculated in the currency of the Licensed Territory and converted into Pounds Sterling for payment to Budget shall be converted at the rate most

25

JA54

favourable to Budget offered in London by National Westminster Bank or such other bank as may be specified by Budget from time to time on the business day immediately preceding the date payment is transmitted provided, however, that, in the event a payment is transmitted after the date payment is due, the currency exchange rate used shall be the rate as of the date payment was due or the rate as of the date the payment is transmitted, whichever rate produces the larger amount in Pounds sterling or such other currency of payment as may be designated by Budget. All payments made hereunder shall be made in full net of any bank charges or other fees incurred by Licensee to a bank of Budget's choosing located in the United Kingdom or elsewhere.

    7.9    **Exchange Controls.** Licensee shall use its best efforts to obtain any consents or authorisations which may be necessary in order to permit timely payments in Pounds Sterling of all amounts payable hereunder. If at any time, any legal restriction is imposed upon the purchase of Pounds Sterling or the transfer to or credit of a non-resident party with payments in Pounds Sterling, Licensee shall notify Budget immediately. While such restrictions are in effect, Budget may require payment in any currency designated by Budget that is available to Licensee or, at Budget's option, may require Licensee to deposit all amounts due but unpaid as a result of such a restriction, in any bank or institution in the Licensed Territory designated by Budget, or to provide payment in the form of products or services available to Licensee or its affiliate at the actual bona fide arms length cost of such products or services to Licensee or its affiliate. Budget shall be entitled to all interest earned on such deposits. If payment is made in products or services, Licensee agrees to deliver such products or services to Budget or its designated agent or shipper within the Licensed Territory. In the event that such currency exchange restrictions

26

remain in effect for longer than ninety (90) days, Budget shall have the option to terminate this Agreement.

7.10     **Interest on Monies Past Due.** If any sum payable under this Agreement is not paid when due then the defaulting party shall pay interest to the other in the manner set out in this Paragraph 7.10.  Licensee shall in addition pay to the Related Entities (unless any such entity has a separate agreement for the payment of interest on amounts owed) interest on any monies which in any manner relate to Licensee's BRAC business not received by the Related Entities when due.  Such interest shall accrue, commencing with the day after any monies are due, at five percent (5%) over the highest of the United Kingdom's clearing banks' base rates as published in The Financial Times in London (or if lower the highest rate permitted by law in the Licensed Territory) and will be calculated on a daily basis at such rate until the total amounts due, including interest, are received.  Any monies received by Budget or the Related Entities shall first be applied against any outstanding interest balance and then against any other monies due from Licensee to Budget or the Related Entities. · Interest shall not become payable under this Paragraph 7.10 until it exceeds £1,000.

7.11     **Prohibition Against Using License as Security.**  Licensee agrees that it will not, at any time, pledge this Agreement, or any of its rights hereunder, to any person as security for any purpose, or otherwise allow or grant any charge, lien or encumbrance to be placed by any person on this Agreement or any rights granted hereunder for any purpose, or permit this Agreement, or any rights hereunder, to become subject to an actual or contingent transfer, sale or assignment to any person.

27

JA56

7.12     Application of Payments. Subject to Paragraph 7.10 Budget and the Related Entities shall have the sole discretion to apply any payments made by Licensee to any past due indebtedness of Licensee.  Licensee acknowledges and agrees that Budget and the Related Entities shall have the right to set off any and all amounts Licensee owes Budget or the Related Entities against any undisputed and liquidated amounts owed to Licensee by Budget, the Related Entities or any third party for which Budget acts as an intermediary or performs services whether due under this Agreement or otherwise or to establish a protocol or procedure for the deduction from payments owed Licensee any amounts which Licensee owes Budget, the Related Entities, or any third party for which Budget acts as an intermediary or has performed services.

7.13     Security Interest.  Licensee agrees that upon Budget's request it will enter into a perfected security interest with Budget in Licensee's franchise, its accounts receivable and other receivables and all of Licensee's assets (excluding Vehicles).  Licensee shall charge by way of fixed or floating charge or other appropriate form of security and/or assign all accounts receivable and other receivables to which it may be entitled to Budget as security for Licensee's performance of all of its obligations pursuant to this Agreement and all related agreements. Licensee shall execute a separate security agreement with Budget in the form prescribed by Budget and shall do all acts reasonably required by Budget to perfect Budget's security interest in all such assets.

28

## ARTICLE VIII

## DEVELOPMENT OF LICENSED TERRITORY

8.1    Minimum Number of Locations and Vehicles.  Licensee agrees to develop the Licensed Territory to achieve and maintain the maximum possible market penetration for its BRAC business within the Licensed Territory by opening rental office locations by the dates and in the local markets and commercial airports listed on Schedule 5, and to actively and continuously operate the BRAC business at all of those locations throughout the term of this Agreement; provided, however, that Licensee agrees to not commence any such operations unless its General Manager has satisfactorily completed the required instruction as provided in Paragraph 4.1 hereof.  To further achieve and maintain the maximum possible market penetration within the Licensed Territory, Licensee agrees to maintain at least the number of Vehicles available for rent within the Licensed Territory by the dates listed in Schedule 6 ("Market Penetration Quotas").  For purposes of determining the Market Penetration Quotas, the yearly average of Vehicles actually maintained available for rental by Licensee for each twelve (12) month period shall be computed by adding the monthly average of Vehicles reported as available for rental in the Monthly Vehicle Report and Invoice which Licensee is required to submit pursuant to Paragraph 9.7 for the applicable twelve (12) month period and dividing the total obtained by twelve (12), provided any such computations shall be subject to adjustment in accordance with the result of any audit by Budget of the records of Licensee.  The location and Vehicle requirements identified in Schedules 5 and 6 reflect the minimum market penetration acceptable to Budget.  Notwithstanding Schedule 5, Licensee agrees to use best efforts to

29

JA58

actively and continuously operate at a minimum, one rental location at each commercial airport and in all city centres and other centres of business activity within the Licensed Territory.

    8.2    Licenses, Concession Agreements, Leases, Permits. Licensee shall use its best efforts to obtain provisions in its licenses, concession agreements, leases and permits providing that: (i) Budget shall receive written notice of any default by Licensee under such license, concession agreement, lease or permit and an opportunity to cure such default for a period of (30) days after receipt of such notice; (ii) upon termination of this Agreement for any reason, such licenses, concession agreements and permits shall where permitted by law be deemed assigned or otherwise shall be assigned to Budget or its nominee subject to acceptance of said assignment by Budget. Licensee shall execute any document required by Budget which may be necessary to give effect in law to any such assignment; (iii) the lessor or other party to such license, concession agreement, lease or permit is authorised to deliver to Budget information regarding Licensee's BRAC business; and (iv) Budget shall be authorised to enter the premises upon termination of this Agreement to remove materials and signage containing the Budget Trademarks. At Budget's option, Licensee agrees that whenever it seeks to operate from an airport, it will obtain the entry by the applicable airport authority into the Contingent Assignment of Airport Concession Agreement attached as **Schedule 7** or such other similar agreement previously approved by Budget in writing. Budget reserves the right to negotiate with the airport authorities directly to obtain its own airport concession agreements which it will sublease to Licensee. Licensee agrees to co-operate fully with Budget in its efforts, and to honour all of Budget's and its obligations under said Airport Concession Agreement.

30

8.3     **Prior Approval of Rental Offices.** Each rental office operated by Licensee shall be subject to the prior written approval of Budget and shall be managed by an employee of Licensee who has completed the instruction specified in **Paragraph 4.1.** Licensee agrees that such approval will not constitute a representation by Budget regarding the profitability or the potential for profit of a particular rental location.

8.4     **Commencement of Operations.** Licensee agrees to commence the operation of its BRAC business not later than the date specified in **Schedule 1** attached hereto. Licensee shall be deemed to have commenced operations hereunder upon the opening of its first BRAC business office in the Licensed Territory.

8.5     **Additional Licensed Territory Development.** Budget reserves the right to conduct or to cause to be conducted market surveys of the Licensed Territory at any time during the term of this Agreement. If such survey indicates, in Budget's determination, that the Licensed Territory could support an additional rental office location with a certain minimum number of Vehicles, or that an existing rental office location could support more Vehicles, Budget will so notify Licensee in writing setting forth the bounds of the portion of the Licensed Territory to be developed and/or the number and type of Vehicles to be added ("Development Requirement"). Licensee agrees that it will have one hundred and eighty (180) days from the date of the receipt of Budget's notice to open the additional rental office location with the minimum number and type of Vehicles, or to increase the number or modify the type of Vehicles at the designated existing office rental location in accordance with Budget's Development Requirements.

31

JA60

8.6    Development of the BRAC Business Premises.

(a)    Location of BRAC Business.  Licensee's BRAC business may be operated only from the location within the Licensed Territory pre-approved by Budget in writing. Such location may be used only for a BRAC business and no other purpose without Budget's prior written consent.

(b)    Layout and Appearance of BRAC Business.  Licensee shall submit to Budget for Budget's written approval plans and specifications for the layout of Licensee's BRAC business.  Upon Budget's approval, Licensee shall promptly proceed to develop Licensee's BRAC business premises in accordance with the Standards and approved layout.  No material changes shall be made to the layout of Licensee's BRAC business during the term of this Agreement without Budget's prior written approval.

(c)    Appearance of BRAC Business.  The premises of Licensee's BRAC business shall be kept and maintained at all times in a clean condition, in good order and repair and in accordance with the Standards.

(d)    Refurbishing and Upgrading.  Licensee agrees to refurbish and upgrade the condition of its BRAC business premises from time to time as shall be reasonably required by Budget to maintain or improve the appearance, identity and reputation of the

32

**JA61**

Licensee's BRAC business, to increase its sales potential and/or to comply with the Standards.

### 8.7    Governmental Approvals

Licensee agrees to execute any and all instruments and documents, render such assistance, and otherwise co-operate with Budget, in order to obtain all governmental and other approvals necessary at any time during the Agreement, in the opinion of Budget's counsel, to comply with the applicable legal requirements. Licensee shall bear all costs and expenses (including translation costs and attorneys fees of Licensee, Budget and Related Entities) in obtaining any and all such registrations and approvals and shall reimburse Budget and or the Related Entities on demand for all such costs and expenses which Budget and the Related Entities may incur. At its option, Budget shall have the right to submit, or to require Licensee to submit, this Agreement to any governmental entity or agency (the "Agency") for registration or approval in the event Budget determines such registrations or approvals are necessary in order to comply with such legal requirements. If the Agency requires that any amendments be made to this Agreement as a condition of such approval or registration and such amendments are acceptable to Budget, Budget will deliver to Licensee for execution and Licensee shall execute an addendum to this Agreement or other appropriate documents, to reflect such amendments. If Budget determines in good faith that the effect of any amendment required by the Agency as a condition to registration or approval will be materially detrimental to its interests, Budget may forthwith terminate this Agreement by delivering written notice thereof to Licensee. If any governmental registration or approval is required before the parties may implement this Agreement, and if the Agency has not

33

JA62

registered or approved this Agreement within ninety (90) days of the date of its submission to the Agency for such approval or registration, Budget may forthwith terminate this Agreement by delivering written notice thereof to Licensee. In such event Budget terminates this Agreement for any of the reasons set forth in the immediately preceding sentence, and provided that Licensee has theretofore fully co-operated with Budget in the registration or approval process and Licensee and its Owners have executed general releases, in a form acceptable to Budget, releasing Budget and the Related Entities and their respective officers, directors, shareholders, employees, agents, successors and assigns from any and all liability, Budget shall refund any License Purchase Fee paid by Licensee hereunder, less any expenses incurred by Budget in connection with the execution of this Agreement and the attempts to obtain governmental approval thereof.

## ARTICLE IX

## OPERATIONAL REQUIREMENTS

9.1　*General Manager.*　Licensee shall, at all times during the term of this Agreement, employ on a full-time basis at least one (1) General Manager who has satisfactorily completed the instruction furnished by Budget and who has been previously approved in writing by Budget and who shall devote his or her entire time during normal business hours to the management, operation and development of Licensee's BRAC business. The person designated by Licensee as General Manager at the date of execution of this Agreement is set forth in Schedule 1. Licensee shall notify Budget of any proposed change in its General Manager.

34

9.2    **Telephone Number.**  Licensee agrees to maintain separately not less than one (1) telephone, facsimile and electronic communication line for each BRAC business location which will be listed as, and identified exclusively with the BRAC business separate and distinct from all other telephone numbers maintained by Licensee, in all primary general and business telephone directories distributed within the Licensed Territory, in such other telephone directories and in all advertising in which such number or numbers appear as shall be prescribed by Budget in the Standards.  Licensee agrees that all telephone, facsimile and electronic communication lines and other commercial numbers, whether installed by or at the cost of Licensee or not, which are from time to time advertised in connection with the BRAC business (including listings in the white and yellow pages and any other telephone or business directory) are held by Licensee solely for the purpose of performing under this Agreement and that Budget may suffer losses and damages if Licensee diverts or transfers such telephone numbers or any facsimile/electronic communication line service (or permits their diversion or transfer) or uses them or permits their use for, or in connection with, any business other than the BRAC business. Licensee agrees that its commitment not to divert or misuse the telephone numbers or any facsimile service/electronic communication line will survive termination of this Agreement for any reason, for the enduring benefit of the Network as a whole.  Licensee acknowledges that the public association of such telephone, facsimile and electronic communications lines with the BRAC business is part of the Goodwill.

9.3    **Insurance.**    Licensee shall maintain such insurance, in such minimum amounts, and with such approved carriers, as are prescribed in the Standards.  Licensee shall

35

JA64

each year provide a then current certificate of insurance to Budget naming Budget and such others as additional insureds as are prescribed by Budget in the Standards and shall procure that the insurer shall waive any subrogation rights it may have against Budget. Each insurance policy shall provide for thirty (30) days' prior written notice to Budget of any material modification, cancellation or expiration of such policy. Licensee acknowledges that Budget may increase the amounts of insurance to be carried by Licensee and require different or additional kinds of insurance to reflect inflation, changes in standards of liability, high damages awards or other relevant circumstances.

9.4     **Collision Damage Waiver.**  Licensee shall make readily available to each customer the option to effect the waiver of any claim against such customer for collision damage to the rented vehicle, notwithstanding any collision insurance deductible amount, subject to such conditions and limitations as are prescribed in the Standards and contained in the Standard Rental Agreement and the requirements of applicable law. Licensee may charge a reasonable, additional fee for such waiver.

9.5     **Standard Rental Agreement.**  Licensee shall use Budget's standard rental agreement in connection with all rental of vehicles, or such other rental agreement which has been previously approved in writing by Budget.

9.6     **Standard Chart of Accounts.**  Licensee shall establish bookkeeping and financial reporting system using Budget's standard chart of accounts as prescribed in the Standards or as previously approved in writing by Budget. All such bookkeeping and

36

JA65

accounting records and all financial statements shall be retained by Licensee for a period of not less than five (5) years or longer if required by law.

9.7    **Control Reports and Financial Information.**    Licensee shall submit to Budget monthly, on forms specified and/or supplied without charge, on or before the tenth (10th) day of each month during the term hereof, the Monthly Vehicle Report and Invoice and such other control reports and financial and other business information as prescribed by Budget from time to time, including reports and information relating to the Programs listed in Schedule 3.

9.8    **Certification by Licensee.**    All reports and financial information to be submitted by Licensee in accordance with the provisions of this Agreement and the Standards shall be certified and warranted to be true and correct by Licensee with respect to all data contained therein.

9.9    **Annual Financial Statements.**    Licensee shall submit to Budget on or before the one-hundred twentieth (120th) day following the end of Licensee's fiscal year, annual financial statements for Licensee conforming to Budget's current standard chart of accounts and certified and warranted as accurate by: (1) an independent certified public accountant if said statements are prepared by an independent chartered accountant or registered auditor in the normal course of Licensee's business; or (2) an officer of the Licensee if said statements are not prepared by an independent chartered accountant or registered auditor as aforesaid. If Budget suspects that any report, financial statement or other information provided to Budget understates

37

the Gross Revenue of Licensee's BRAC business or is unclear or is misleading, Budget shall

have the right to require Licensee to furnish audited financials statements thereafter.

9.10    Standards of Performance.  Licensee acknowledges its responsibilities as one

of an international system of Budget licensees and operators, the interrelationship and

interdependence of the Network and operators and the importance of maintaining a uniformly

high standard of performance to protect the Budget Trademarks and maintain the identity and

reputation of the Network, the Budget Trademarks and the System (including the services

provided thereunder).  Accordingly, Licensee agrees that it will operate its BRAC business in

conformance with the provisions of this Agreement and the Standards of Performance prescribed

in the Standards.  The Standards of Performance may govern various aspects of the operations of

Licensee's BRAC business including:  (a) general appearance and maintenance of Licensee's

rental locations and Vehicles; (b) standardisation of signs, letterheads, business cards and other

similar promotional materials; (c) use of the Budget Trademarks and protection of confidential

information; (d) types, models and brands of authorised Vehicles, equipment, supplies, and

approved suppliers; (e) use of required or standardised forms; (f) use of computer hardware and

software; (g) adoption of technological developments or advancements; and (h) the addition of

new services and products and modification to existing services and products.

9.11    Quality Standards.  In order to maintain the identity and reputation of the

BRAC businesses, the Budget Trademarks and the System, Licensee agrees that its BRAC

business will purchase only types, brands and/or models of vehicles, equipment, signs, materials

and supplies and certain complementary products and accessories that meet the Standards.

38

Budget reserves the right to require Licensee to purchase any of the above products from suppliers designated by Budget. Such suppliers may include Budget or the Related Entities if they elect to supply such products to BRAC businesses.

9.12    **Acceptance of Vehicles.** Licensee must accept and process all disabled Vehicles and other vehicles originating with other Licensees and dropped off to Licensee as prescribed in the Standards or otherwise from time to time in writing.

9.13    **Rental Charges.** Budget may, from time to time, advertise rental prices, include rental prices as part of the sales, promotion or other programs which it sponsors or otherwise suggest rental prices; provided, however, Licensee shall not, by the execution of this Agreement or the acceptance of the license granted hereby, be obligated to comply with, or adhere to, any such rental prices unless Budget is permitted to require Licensee to adhere to such rental prices under applicable law, including requiring Licensee to abide by maximum prices established by Budget. Notwithstanding the foregoing, Licensee agrees that if Licensee communicates to Budget or others by execution of a voluntary participation agreement or otherwise in writing, that it has decided in its own discretion to comply with the suggested rental prices of any Key Account or any Budget program, Licensee agrees to honour the agreed-to rental prices, for the period to which they relate in addition to the other terms of such programs, and acknowledges that Budget and others (including customers) will rely on such communications.

JA68

9.14    Computer Systems and Other Standards.  Licensee agrees to install and implement all accounting, inventory control, sales register and other computer hardware and software systems according to the Standards.  Licensee understands and acknowledges that any such systems (and any modifications or additions thereto) may require the purchase, lease and/or license of equipment, including computer hardware, and software programs and the payment of licensing or access fees to Budget or others for the use of such systems.  Licensee shall be required to install any new or modified systems within the time period specified by Budget.  All computer hardware and software used by Licensee shall be totally compatible with and shall strictly conform to the Standards.   Licensee shall at its own expense provide and maintain technology to allow Budget full access at all times to all of Licensee's computer data, equipment and systems and Licensee shall take all such steps as are necessary to ensure that Budget can obtain such access at all times including; ensuring compliance with any Data Protection laws which may be applicable; the ability of Licensee to provide the Customer List to Budget at any time; pursuant to Paragraph 11.6(g) hereof.  Licensee shall comply with Standards Budget may develop with regard to use of websites in connection with the operation and/or promotion of BRAC businesses.

9.15    Inspection.  Budget shall have the right, from time to time, upon reasonable notice and during normal office hours and, including but not limited to where Budget has reasonable cause to believe that Licensee is not keeping proper books of account or records in accordance with this Agreement or is otherwise concerned that the BRAC business is not being operated properly or otherwise in accordance with this Agreement without prior notice to Licensee, to send representatives to inspect the BRAC business, and to audit the books and

40

JA69

records thereof, to determine the quality thereof and the faithfulness of Licensee's compliance with the provisions of this Agreement and the Standards. Budget shall bear the cost of all such inspections, provided that if any such inspection discloses that Licensee has failed to comply with any provision of this Agreement or the Standards in a manner that would permit Budget to terminate this Agreement pursuant to **Paragraphs 11.3** and **11.4**, the cost of such inspection, including normal daily compensation, travelling expenses, room and board, shall be paid by Licensee.

9.16    **Authorised Products and Services.**  Licensee agrees that it will offer all products and services that Budget from time to time authorises for a BRAC business and that it will not offer at a rental office location or otherwise any other products or services or engage in any other business activities without Budget's prior written consent and subject to any conditions which Budget may consider appropriate.

9.17    **Customer Surveys.**  Licensee agrees to participate in and provide its full co-operation to facilitate all customer service surveys conducted by on or on behalf of Budget for the Licensed Territory.  Licensee agrees to pay for the cost of up to two (2) such surveys in any calendar year.

9.18    **Customer List.** Licensee agrees at all times to maintain in trust for and for the benefit of Budget and BRACC a list (including names, addresses and telephone numbers of all customers and Prospective Customers) (the "Customer List").  In this Agreement "**Prospective**

41

JA70

Customers" are potential or prospective customers from whom Licensee has during relevant preceding year directly solicited custom.

9.19    Foreign Corrupt Practices Act.  Licensee agrees that it shall not use any payment or other benefit derived from Budget, BRACC or any Related Entity to offer, promise or pay any money, gift or other thing of value to any person for the purpose of influencing official actions or a decision affecting this Agreement while knowing or having reason to know that any portion of this money, gift or thing will, directly or indirectly, be given, offered or promised to an employee, officer or other person acting in an official capacity for any government or its instrumentalities, or any person acting in a judicial, quasi-judicial capacity, or as an arbitrator or as a witness providing evidence to any forum of any nature which is adjudicating any dispute or alleged commission of an offence, or any political party, party official, or candidate for political office.

ARTICLE X

LICENSEE ADVERTISING, PROMOTION, AND IDENTIFICATION

10.1    Licensee Advertising and Promotion.  Licensee may formulate and effect local advertising and promotion both within and outside the Licensed Territory, subject to such provisions with respect to format, representations and media as are prescribed in the Standards. Licensee shall at all times adhere to all rental prices advertised by it or by Budget upon Licensee's behalf and shall not advertise in any deceptive or misleading manner.

42

JA71

10.2    **Grand Opening Advertising.**  Licensee agrees to conduct at its expense grand opening advertising and promotional programs for each rental location opened in the Licensed Territory as prescribed in the Standards and to spend thereon not less than the sum specified in Schedule 1.

10.3    **Signs and Uniforms.**  Licensee agrees to prominently display at all times at the locations and premises in which it conducts its BRAC business such advertising signs, posters, uniforms and other materials required by Budget to be displayed at each BRAC rental location and premises as prescribed in the Standards.

10.4    **Licensee Identification.**  Licensee agrees that it will at all times identify itself only as a Budget Licensee; that it will not identify itself as being Budget, BRACC, a Related Entity, or a subsidiary, division, partner, joint venturer, agent or employee of any of them or as being associated with Budget, BRACC or a Related Entity in any manner other than as a Budget Licensee; and that it will in all advertising and promotional materials (including Licensee stationery, business cards, telephone listings, advertising, purchase orders and rentals agreements), use the word "Budget" and the Budget Trademarks only in obvious conjunction with the words "An Independent Budget System Licensee" or with such other words and with such other phrases as may be prescribed in the Standards.

43

JA72

ARTICLE XI

TERM, RENEWAL AND TERMINATION

11.1    **Term.**  Licensee agrees that this Agreement will, unless sooner terminated as hereinafter provided, remain in force for a period of ten (10) years from the date hereof (the "Term").

11.2    **Renewal.** Budget agrees that the Licensee will have the right, without payment of any additional License Purchase Fee, to continue the operation of its BRAC business for three successive five (5) year renewal terms, subject to the following conditions for each five (5) year renewal term:

(a)    Licensee has, as determined by Budget, conducted its BRAC business in accordance with the provisions of this Agreement and the Standards, and other requirements prescribed by Budget from time to time, including by the timely satisfaction of all monetary obligations owed by Licensee to Budget and the Related Entities throughout the then current term;

(b)    Prior to the termination of the then current term, Licensee and its Beneficial Owners shall:

44

(1)       Execute and agree to be bound by Budget's then current standard license agreement, and ancillary documents thereto, including personal guarantees;

(2)       Pay for any additional products and/or services (including any new marketing, sales and computer services) provided by Budget thereunder which Budget is not obligated to provide pursuant to this Agreement; provided however, that during any renewal term, Licensee's Royalty Fees and Service Fees will be calculated in accordance with **Paragraph 7.3** of this Agreement;

(3)       Provide Budget with updated financial statements and other financial, customer and business information reasonably requested by Budget;

(4)       Sign any participation agreements if required by Budget for any then-current Budget programs;

(5)       Update the BRAC office rental locations, advertising and other materials to conform to the then current Standards;

(6)       Execute a general release, in a form prescribed by Budget, of any claims against Budget and the Related Entities and their respective officers, directors, employees, agents, successors, and assigns;

45

(7)        Agree to new office rental location, Market Penetration Quotas and

minimum Royalty Fees, Service Fees and Marketing Fund Fees, pursuant to then

current surveys or otherwise; and

(c)        Not less than three hundred and sixty five (365) days prior to expiration of this

Agreement but not more than five hundred and forty (540) days, Licensee provides

Budget with written notice of its intention to exercise its rights to continue the operation

of its BRAC business in accordance with the above.

11.3        **Termination By Budget With Prior Notice.**  Licensee agrees that Budget will

have the right to terminate this Agreement for cause.  In addition to the grounds described in

Paragraph 11.4, Licensee agrees that cause for termination shall be Licensee's failure materially

to adhere to any provision of this Agreement, including the Standards, and to cure any such

failure within the notice period hereinafter prescribed.  Budget agrees to notify Licensee in

writing of any failure of Licensee to adhere to the provisions of this Agreement, including the

Standards, provided, however, that Licensee agrees that Budget will not be limited to the reasons

set forth in any such notice in any judicial proceeding in which the validity of the termination of

this Agreement is at issue.  This written notice will specify the time period within which such

failure or failures must be cured by Licensee, which Licensee agrees will be fifteen (15) days

from the date of delivery of notice to Licensee in the case of all other failures by Licensee to pay

any sums owed to Budget and thirty (30) days or such other reasonable period being not less

than thirty (30) days as Budget shall specify which is appropriate to the cure to be provided,

from delivery in the case of all failures by Licensee materially to adhere to any other provision

46

of this Agreement including the Standards. If Licensee fails to cure any such failure within the prescribed time period, Licensee agrees that this Agreement will terminate without further notice or action by Budget upon expiration of the prescribed time period.

     11.4     **Termination By Budget Without Prior Notice.** Licensee agrees that Budget will also, upon written notice to Licensee, have the right at any time to terminate this Agreement immediately and without other cause, or prior action or notice by Budget to Licensee in the event that:

     (a)     Licensee makes an assignment for the benefit of creditors;

     (b)     Licensee is unable to pay its debts or obligations as they become due;

     (c)     Licensee or any person who enters into a personal guarantee with Budget files, or has filed against it, any petition in bankruptcy or other petition or pleading seeking any reorganisation, liquidation, dissolution or other similar relief;

     (d)     Licensee seeks, consents to or acquiesces in the appointment of any trustee, receiver, or liquidator of Licensee, its BRAC business or all or a substantial part of its assets or fails to vacate the appointment of any trustee, receiver or liquidator for any such purposes within thirty (30) days of such appointment;

47

JA76

(e)     Licensee fails, within thirty (30) days of the entry of a final judgement against Licensee, to discharge, vacate or reverse such judgement or to stay execution thereon pending appeal or to discharge any such judgement which is not vacated or reversed within thirty (30) days after the expiration of such stay of execution;

(f)     Licensee fails to operate its BRAC business for a period of more than seven (7) consecutive days;

(g)     Licensee submits any report required hereunder which understates Gross Revenue or a monthly Vehicle average by more than five percent (5%) for a second time within a period of 12 months after notification from Budget that a previous report contravenes this provision;

(h)     Licensee fails to maintain the insurance coverage required by **Paragraph 9.3** hereof;

(i)     Licensee makes unauthorised use of the Budget Trademarks, including on a website or as part of an electronic address;

48

JA77

(j)     Licensee or any of its Beneficial Owners is convicted of or pleads no contest to a crime involving moral turpitude, a crime for which the penalty may be a term of imprisonment or a crime relating specifically to the operation of the BRAC business or to safety or motoring-related offences and that is likely to adversely affect the reputation of the Budget Trademarks, Licensee's BRAC business, the Network or the Goodwill;

(k)     Licensee operates its BRAC business in a manner which presents a safety hazard to its customers, employees or the public and permits the same to go uncorrected after notification thereof or if the breach occurs twice more in a period of 12 months after the first notification thereof;

(l)     Licensee commits any violation of any law, ordinance, rule or regulation of a governmental agency in connection with the operation of its BRAC business, and permits the violation to go uncorrected after notification thereof, unless there is a bona fide dispute as to the violation, constitutionality, or legality of such law, ordinance, rule or regulation, and Licensee promptly resorts to courts or forums of appropriate jurisdiction to contest such violation or legality;

49

JA78

(m)     Licensee defaults in the performance of any term or provision hereof after having received two (2) notices of default for the same or any other term or provision hereof within the previous twenty four (24) month period;

(n)     Licensee or any of its Beneficial Owners makes a purported unauthorised assignment or transfer of this Agreement, Licensee's BRAC business or an interest in Licensee;

(o)     Any other license agreement between Licensee and Budget or the Related Entities for the operation of a BRAC business or any other agreement between Licensee and Budget or the Related Entities is terminated or cancelled for any reason save where an agreement is terminated by mutual agreement or expires by effluxion of time.

(p)     Licensee contests, or assists someone else in contesting in any manner, the validity of BRACC's exclusive ownership of and rights to the Budget Trademarks or any element of the System, whether now existing or hereafter created or obtained or Licensee registers or attempts to register any of the Budget Trademarks anywhere in the world.

50

**JA79**

(q)    Licensee provides to any of its customers on more than one occasion in any period of 12 months after notification of a breach of this provision by Budget vehicles which are not in good mechanical order in accordance with legal requirements.

11.5    **Loss of Territorial Exclusivity.** In addition to Budget's other rights under this Article 11, upon Licensee's failure to: (a) open and continue operating the rental locations in accordance with Schedule 5; (b) meet the Market Penetration Quotas required in accordance with Schedule 6; (c) open the additional locations and achieve and maintain the minimum number of additional Vehicles required in accordance with Budget's Development Requirements; and/or (d) participate and comply with required Programs including, if Licensee is authorised to offer trucks or vans (for the purposes of this paragraph "**Truck**") for rental and is requested by Budget to do so, failure to participate in and comply with the One-Way Truck Program as prescribed by Budget in the Operating Manual, Licensee agrees that Budget will have the option, upon thirty (30) days' prior written notice to Licensee, to: (i) terminate this Agreement to the extent of the affected market(s) and thus exclude from the Licensed Territory the territory determined by Budget to be undeveloped, such termination to be treated as a termination for cause; or (ii) convert Licensee's exclusive rights in the affected market(s) determined by Budget to be undeveloped to become non-exclusive in nature (for example and not as a limitation, if Licensee is authorised to offer trucks for rental and declines to participate in the One-Way Truck Program as requested, Budget or the Related Entities may provide or license other parties to provide one way truck rental services in the Licensed Territory. Upon such conversion, Licensee shall not add new locations in the converted territory or offer vehicle rental services in the

JA80

converted market(s), and Budget or the Related Entities may own and operate, or license others to establish new locations and/or offer such services, including through BRAC businesses in the converted territory or converted market.

11.6　*Obligation of Licensee on Termination.* Upon termination of this Agreement and license (which for all purposes of this Agreement shall mean termination or non-renewal by either party for any reason), Licensee shall: (a) pay to Budget, on or before noon on the effective date of termination, such monthly Service Fees, Royalty Fees, Marketing Fund Fees, the unpaid balance of the License Purchase Fee and all other fees or monies Licensee owes to Budget and the Related Entities whether or not then due for payment; (b) pay all fees or monies Licensee owes to other Network members or any other person or entity if non-payment will affect the ongoing operation of Licensee's terminated BRAC business, (e.g., phone bills, rent or airport concession fees), whether incurred under this Agreement or otherwise in the conduct of Licensee's BRAC business; (c) not thereafter, directly or indirectly, identify itself in any manner as a Budget licensee or use the System, or any part thereof, the name "Budget" or any variation thereof, or any of the Budget Trademarks, forms, slogans, signs, symbols, devices, or materials constituting part of the System; (d) return to Budget all Operating Manuals, Standard Rental Agreements, advertising materials, and all other materials bearing the "Budget" name or containing the Standards; (e) take all steps necessary to transfer to Budget, or to such person as Budget may direct, the telephone, facsimile and electronic communication line(s) used by it in the conduct of its BRAC business and upon Budget's request, to advise the telephone company and other relevant companies serving the Licensed Territory that it has no further interest in such telephone, facsimile and electronic communication line(s) and to approve their transfer to

52

JA81

Budget or to such other person as Budget may direct; (f) take all steps necessary to effectuate the sale, transfer or assignment to Budget of the airport licenses, concession agreements and permits as specified in **Paragraph 8.2** and, at Budget's sole election, any other agreements pertaining to the use of real estate which was used in conjunction with Licensee's terminated BRAC business including all rental locations; (g) transfer to Budget all copies and records of the Customer List and provide Budget with a list (including names addresses and telephone numbers (so far as Licensee is aware) of all Prospective Customers; and (h) take such action as shall be necessary to cancel any assumed name, business name or equivalent registration which contains the "Budget" name, and Licensee will furnish Budget within thirty (30) days after termination of this Agreement evidence satisfactory to Budget of its compliance with all of these obligations.

   **11.7    Budget's Right to Re-License.**    In addition to Budget's rights under **Paragraph 11.5** hereof, Licensee agrees that upon the service of a notice under **Paragraph 11.3** hereof or expiration of a cure period under **Paragraph 11.4**, Budget will be entitled to operate, or to enter into a new license with another person granting the person the right to operate a BRAC business in the Licensed Territory.

   **11.8    Budget's Option to Purchase.**    Upon termination of this Agreement, Budget shall have the option (but not the obligation), to be exercised by written notice thereof to Licensee within thirty (30) days of termination, to purchase the assets of Licensee's BRAC business itself or through a nominee at fair market value.    If the parties cannot agree on fair market value or other terms within a reasonable period of time (not to exceed 15 business days), an independent appraiser shall be appointed by the President for the time being of the Institute of

53

Chartered Accountants in England and Wales and its determination on the price and other terms shall be as an expert and shall be binding. If Budget elects to exercise its option to purchase, Budget shall have the right to set-off all amounts due Budget and the Related Entities, and the cost of any appraisal, against payment of the purchase price.

     11.9     **Post-term Non-competition.** In order to prevent the System from directly or indirectly benefiting competitors the Licensee, all Companies within the Group of which Licensee is a member and their Beneficial Owners and persons related to Licensee and its Beneficial Owners shall not, for a period of twelve (12) months after the termination of this Agreement for any reason whatsoever, either directly or indirectly be engaged concerned or interested in as an owner, financier, partner, director, officer, employer, consultant, agent or in any other capacity, in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others. Licensee acknowledges that its failure to adhere to this provision will constitute unfair competition to Budget and the Network. Licensee further acknowledges the impossibility of accurately determining the tangible and intangible damages which BRACC, Budget and the Network will suffer if Licensee fails or refuses to adhere to this provision or the provisions of **Paragraph 2.4** hereof and accordingly agrees to entry without prior notice, to the extent that applicable notice requirements may be waived, of temporary and permanent injunctions and other available governmental or administrative remedies against Licensee's breach of such provisions and Licensee further agrees to pay to Budget an amount equal to the aggregate of

54

Budget's costs of obtaining any such temporary and permanent injunctive relief or governmental or administrative remedies, including all costs of investigation and proof of facts, court costs and attorney's fees. If any proceeding either at law or in equity between the parties, Licensee hereby agrees that it has waived and shall not be entitled to raise as a defense either that: (1) the period of time or geographical area within which Licensee is prohibited from competition is unfair or unnecessary or unreasonable; or (2) that such provisions are an unlawful restraint of trade.

      **11.10**    **Temporary Operation of Business.** If, during any period in which Licensee is in material default of its obligation under this Agreement provided that Licensee shall have been given an opportunity to cure such default in accordance with **Paragraph 11.3** and shall have failed to cure such default within the period specified, Budget determines, in its sole discretion, that Licensee's BRAC business is being operated in a manner that threatens to impair the Goodwill or to jeopardise customer goodwill, Budget shall have the right, at its option, to assume management of Licensee's BRAC business and/or elect to service Budget customers including Key Accounts within the Licensed Territory from one or more locations determined by Budget. Budget shall thereafter have the right to continue such management or service as agent for Licensee until it determines, in its sole discretion, that the circumstances under which Budget has assumed such management or service shall have been corrected by Licensee and Licensee is otherwise in good standing under this Agreement. Licensee agrees to indemnify and hold Budget and its representatives harmless for any acts or omissions of Budget during any such period except those arising from the gross negligence or wilful misconduct of Budget or its representatives.

55

11.11  Termination by Licensee with Prior Notice. Licensee shall have the right to terminate this Agreement if:

    (a)    Budget fails to pay any sums due to Licensee within thirty (30) days from the date of delivery to Budget of notice of such failure provided that such sums are undisputed and are not subject to Budget's right of set-off; or

    (b)    if Budget is in material breach of this Agreement and Budget fails to remedy the same within sixty (60) days from the date of delivery to Budget of notice of such failure or breach provided that such termination shall only take effect upon service of a further notice served at the end of the sixty day period specifying a termination date not less than thirty (30) days thereafter.

11.12  Consequences of Termination By Licensee. If Licensee terminates this Agreement pursuant to Paragraph 11.11 the provisions of Paragraphs 8.2, 11.6(f) and 11.9 (Post-Term Non-competition) shall not apply. The Licensee's obligations under Paragraph 11.6(e) shall be satisfied if the Licensee complies with that obligation within six (6) months of the date of termination.

ARTICLE XII

SALE, ASSIGNMENT, AND TRANSFER

12.1    By Budget.  Budget may assign (or otherwise deal with) the rights and obligations of this Agreement without any consent from Licensee.

56

JA85

**12.2    By Licensee.**

(a)    Licensee agrees that Budget would not have entered into this Agreement except on the basis that it is personal to Licensee and because, as Licensee hereby acknowledges, of the personal confidence Budget has in Licensee and/or the Beneficial Owners as defined and identified in **Paragraph 12.5**. None of this Agreement, the Beneficial Ownership of Licensee or Licensee's BRAC business, or any company within the Group of which Licensee is a member, may be voluntarily, involuntarily, directly or indirectly sold, actually or contingently, assigned or otherwise transferred by Licensee (including by will, declaration of or transfer in trust or the laws of intestate succession or by operation of law through a divorce or other legal proceeding), without the prior written consent of Budget in accordance with this Agreement and the Transfer Requirements prescribed by Budget from time to time, including payment of a transfer fee in an amount equal to the amount then being charged to licensees generally for such transfers and which is currently not more than US$10,000, together with costs and expenses incurred by Budget in relation to the transfer, including but not limited to lawyers' fees. Any such attempted or purported sale, assignment or transfer contrary to the terms and conditions of this Agreement or the Transfer Requirements shall constitute a breach hereof and be void. For the avoidance of doubt, neither Licensee nor any company which is a member of the Group of which Licensee is a member shall during or after the term hereof, contingently or otherwise, assign or otherwise dispose of any interest in, or make available to third parties, licenses, concession agreements, Customer Lists and/or permits which are required by, or related to the conduct of its or their BRAC business.

Budget may require any authorised and approved assignee or transferee to

57

JA86

execute a new Budget Rent a Car System International Prime License Agreement with Budget in the then current form save that the Basic Terms shall be the same as set forth in Schedule 1.

(b)     Sale, assignment or transfer of Licensee, or the beneficial ownership of Licensee or any company which is a member of the Group of which Licensee is a member requiring the consent of Budget shall, except to the extent provided below, include but not be limited to: (i) a sale, assignment or transfer or cumulative sales, assignments or transfers, lifetime and testamentary, at any time during the term of this Agreement, of any interest in the equity ownership or voting control of Licensee or its BRAC business, or any company which is a member of the Group of which Licensee is a member, whether in the form of common or preferred stock or any security convertible thereto or partnership or proprietorship interest or otherwise; and (ii) any private offering of shares or other securities in Licensee or any Group Company regardless of the percentage of equity ownership or voting control being transferred thereunder, and in relation to such private offering of shares or other securities the provisions of Schedule 10 shall apply. In the event that any such transaction consented to by Budget shall take place, an addendum recording the new persons or entity involved shall be signed by the parties and annexed to Schedule 1.  Such person or entity shall also enter into covenants with Budget in such form as is specified by Budget to agree to be bound by the provisions of this Agreement to the same extent and on the same basis as the persons or entities whom they are replacing.

(c)     Notwithstanding the foregoing, the disposal of interests in the equity of Licensee to its operating personnel aggregating in total not more than ten percent (10%) of the equity ownership of Licensee shall not require Budget's prior consent, provided:  (i)  prior to

58

such disposal(s) Licensee shall require such operating personnel to enter into such form of Confidentiality and Non-competition Agreement as Budget shall require, and (ii) Licensee shall provide Budget with such details and copies of the aforementioned arrangements as Budget shall request.

(d).    In no event shall any public stock offering be made of the securities of any nature of Licensee or any company which is a member of the Group of which Licensee is a member whatsoever nor shall a public company have any beneficial interest whatsoever in or right to influence the management or control of Licensee or any company in the Group of which Licensee is a member by purchase, merger or any other means whatsoever. The occurrence of any of the foregoing, or any attempt to do so, shall be a breach of this Agreement for which Budget shall be entitled to terminate this Agreement forthwith.

(e)    Notwithstanding the foregoing, Licensee shall provide to Budget prior written notice of any proposed sales, assignments or transfers intended to constitute any change in the Beneficial Owners' ownership or control of Licensee or any company in the Group of which Licensee is a member.

12.3    **Budget's Right of First Refusal.** If Licensee or its Beneficial Owners or any company in the Group of which Licensee is a member propose to sell, assign or transfer (i) during the term of this Agreement, the Beneficial Ownership of Licensee or its BRAC business or any company in the Group of which Licensee is a member; or, (ii) during the term of this Agreement or for a period of six months after the termination or expiration of this Agreement,

59

any licenses, concession agreements, Customer Lists and/or permits which are required by, or related to, its BRAC business, then in either such event, a copy of the agreed heads of terms in the form prescribed by Budget from time to time shall be submitted to Budget along with any information concerning the proposed buyer. Budget shall, for a period of sixty (60) days from the date of its receipt thereof, have the option to purchase same for the price and on the terms and conditions contained in such heads of terms, provided that Budget may nominate a third party to whom the BRAC business shall be transferred in exercise of its option rights under this paragraph and substitute cash or, subject to agreement by the Licensee and the Beneficial Owners, publicly traded stock of Budget or a Related Entity for any other consideration proposed in such heads of terms and shall in all cases be entitled to customary representations, indemnities (including tax indemnities) and warranties in connection with any such purchase. If the proposed sale, assignment or transfer includes assets of Licensee (or any Group Company) not related to Licensee's BRAC business, Budget may purchase only the assets related to the operation of Licensee's BRAC business, or may also purchase all or some of the other assets, with an equitable purchase price to be allocated to each asset, which is not a part of Licensee's BRAC business. If Budget does not exercise this option, the Licensee and/or its Beneficial Owners or the Beneficial Owners of any company in the Group of which Licensee is a member, subject to approval by Budget as provided in **Paragraph 12.2(a)**, may proceed with the sale, assignment or transfer.

12.4     **Death or Incapacity of Licensee.**  Upon the death or permanent incapacity of Licensee, or a beneficial owner of Licensee, the executor, administrator, conservator or other personal representative of such person shall transfer his or her interest to a third party approved

60

JA89

by Budget within six (6) months thereof. Such transfers, including transfers by devise or inheritance, shall be subject to the same conditions as any lifetime transfer. In respect of such devise or inheritance provided that this is made or left to the children or issue of the Beneficial Owners Budget's right of first refusal set out in **Paragraph 12.3** shall not apply. Failure to so dispose of such interest within said period of time shall constitute a breach of this Agreement. If after the death or permanent incapacity of Licensee or a Beneficial Owner of Licensee, Licensee's BRAC business is not being managed by a competent and trained General Manager (as determined by Budget in its sole discretion), Budget is authorised to immediately appoint a manager to maintain the operation of the BRAC business as agent for Licensee until an approved assignee shall be able to assume the management and operation of the BRAC business. All funds from the operation of the BRAC business during the period of management by Budget's appointed manager shall be kept in a separate fund and all expenses of the BRAC business, including compensation, other costs and travel and living expenses of Budget's appointed manager, shall be charged to such fund. As compensation for the management services provided, in addition to all other fees due hereunder, Budget shall have the right to charge such fund a reasonable management fee during the period of management by Budget's appointed manager. Licensee agrees to indemnify and hold Budget harmless and any representatives of Budget who may act hereunder harmless from any and all claims arising out of the acts or omissions to act of Budget and/or its representatives in connection with the management of Licensee's BRAC business except those involving gross negligence or wilful misconduct of Budget or its representative.

61

**JA90**

12.5    **Beneficial Owners of Licensee.**  Licensee represents and Budget enters into this Agreement in reliance upon the representation that the individuals identified in Schedule 1 are the sole Beneficial Owners (in the stated proportions) of Licensee.

12.6    *Nondisclosure and Non-competition Agreement.*  Licensee shall ensure that all persons who are from time to time the Beneficial Owners, directors and principal officers of Licensee shall execute and comply with Budget's then current Standard Nondisclosure and Non-competition Agreement.  The current form of Nondisclosure and Non-competition Agreement is set forth in Schedule 8 attached hereto.  Licensee agrees that if Budget so instructs, it shall at its own expense prosecute an action to enforce the terms of such Agreement and shall comply in all respects with Budget's instructions from time to time with regard to the prosecution of such action.

12.7    **Personal Guarantee.**  Licensee shall ensure that all persons who are from time to time the Beneficial Owners of Licensee (other than persons referred to in 12.2 (c) above) shall execute and comply with Budget's then current standard Personal Guarantee.  The current form of Personal Guarantee is set forth in **Schedule 9.**

62

**JA91**

## ARTICLE XIII

## GENERAL CONDITION AND PROVISIONS

13.1     Titles and Preambles.

(a)     Titles.  Section and paragraph titles are used for convenience only and are not a part of the text hereof.

(b)     Preambles.  The preamble recitals are incorporated in and made a part of this Agreement.

13.2     Entire Agreement; Failure To Exercise Rights Not To Be A Waiver

(a)     In this clause the expression "Pre-Contractual Statements" includes written or oral pre-contractual statements or agreements, financial statements, profit projections, representations, warranties, inducements or promises made innocently or negligently.

(b)     Licensee's waiver contained in this clause shall be irrevocable and unconditional but it is expressly provided that such waiver shall not exclude any liability of Budget for Pre-Contractual Statements made by it fraudulently.

(c)     Licensee acknowledges that it has been

(i)     Told that if there are any Pre-Contractual Statements which it considers have been made to it which would have induced it to enter into this

63

JA92

Agreement it is obliged to submit particulars thereof to Budget so that any misconceptions or misunderstandings can be resolved after which an agreed form of Pre-Contractual Statements on which Licensee has relied may be annexed to and form part of this Agreement

(ii)     Given the opportunity to provide to Budget particulars of such Pre-Contractual Statements which it considers have been made to it which would induce it to enter into this Agreement and agrees that it shall be deemed not to have relied upon any Pre-Contractual Statements made or given or purportedly made or given by Budget unless such a written statement is annexed hereto.

(d)     This Agreement and its schedules, the Umbrella Agreement of even date entered into between the parties the airport concession agreement annexed to this Agreement and any other correspondence relating to the subject matter of this Agreement executed by the parties, therefore contains the entire agreement between the parties and accordingly no Pre-Contractual Statements shall add to or vary this Agreement or be of any force or effect unless such Pre-Contractual Statements are either contained in this Agreement or in an annexure.  Licensee waives any right it may have to sue for damages and/or rescind this Agreement.

(e)     No failure of Budget to exercise any power given to it under this Agreement or to insist upon strict compliance by Licensee with any obligation and no custom or

64

practice of the parties at variance with the terms of this Agreement shall constitute waiver of any of Budget's rights under this Agreement. A waiver of Budget's rights hereunder will only be valid if expressly stated in a writing executed by a duly authorised representative of Budget.

(f)     Waiver by Budget of any particular default by Licensee shall not affect or impair Budget's rights in respect of any subsequent default of any kind by Licensee nor shall any delay or omission of Budget to exercise any rights arising from any default of Licensee affect or impair Budget's rights in respect of the said default or any other default of any kind

### 13.3    Licensee an Independent Contractor; Budget Does Not Control Licensee

(a)     Licensee an Independent Contractor. Licensee is an independent contractor and is not the agent, joint venturer, partner or employee of Budget and, except as expressly provided herein, Budget shall not be obligated by any agreements, representations or warranties made by Licensee to any person, nor with respect to any other action of Licensee, nor shall Budget be obligated for any damages to any person, whether caused by Licensee's action, failure to act, negligence, or wilful conduct.

(b)     Budget Does Not Control Licensee. Budget does not reserve control over Licensee or any of its owners, officers or employees, nor shall Budget have any control over the employment, discharge, compensation or working conditions of any owner, director or employee of Licensee.

65

**JA94**

13.4    **Power of Attorney.** In order to secure the performance of Licensee's obligations under this Agreement, Licensee hereby irrevocably appoints Budget as its attorney for the purposes of executing, signing, perfecting, doing and (if required) registering every such further assurance, document, act or thing as is required to cause discontinuation of Licensee's use of the Budget Trademarks or any other related or similar name or use hereunder and to fulfil the other post-termination obligations of Licensee hereunder, including assignment of telephone numbers, facsimile/electronic communication lines and airport concession agreements.    The exercise by Budget of such power shall be conclusive evidence of its right to exercise the same. Licensee shall enter into and execute any other document which may be necessary to give effect to this provision.

13.5    **Indemnification of Budget by Licensee.**  Licensee agrees to protect, defend, indemnify and hold harmless Budget and the Related Entities and their stockholders, directors, officers, agents, employees, successors and assigns from and against any and all claims, demands, actions, liabilities, damages, losses, costs and expenses (including reasonable attorney's fees and court costs) incurred by any of the aforesaid parties arising directly or indirectly from Licensee's operation of its BRAC business and or from any breach of any of the terms of this Agreement.  Licensee agrees that the indemnified party may approve the attorney chosen by Licensee to represent the indemnified party's interest pursuant to Licensee's obligations hereunder, which approval will not be unreasonably withheld and that it will keep the indemnified party informed of the progress of the defense.  Licensee agrees an indemnified party will have the right, through counsel of its choice, to control and defend any matter and that, in

66

such event, Licensee will protect, indemnify and hold harmless the indemnified party in accordance with this paragraph.

13.6     *Gender and Number.*  All terms used in any one number or gender shall extend to mean and include any other number and gender as the facts, context, or sense of this Agreement or any paragraph or section hereof may require

13.7     **Acknowledgements As To Advice Given And Other Matters**

(a)     Licensee acknowledges that Budget in giving advice to and assisting Licensee in establishing the BRAC business (including recommending equipment and materials, site selection, and the assessment of the suitability of Licensee) bases its advice and recommendations on experience actually obtained in practice and is not making or giving any representations, guarantees or warranties except that its advice is based upon such previous experience.

(b)     Licensee acknowledges that it has been advised by Budget to discuss its intention to enter into this Agreement with other licensees of Budget and its business advisors and that it must decide on the basis of it own judgement and investigation whether or not to enter into this Agreement.

JA96

(c)     Licensee further acknowledges that it recognises that the business venture contemplated by this Agreement involves business risks and that its success will be dependent upon Licensee's ability and commitment as an independent business entity

(d)     Except where the context otherwise requires each of the restrictions contained in this Agreement and in each paragraph shall be construed as independent of every other restriction and of every other provision of this Agreement and the existence of any claim or course of action by Licensee against Budget whatsoever shall not constitute a defence to the enforcement by Budget of any of the said restrictions.

(e)     It is expressly agreed between the parties hereto that having regard to the recitals and other provisions of this Agreement each of the restrictive covenants contained in this Agreement and in each paragraph is reasonably necessary for the protection of BRACC's and Budget's intellectual property rights and of the Network and does not unreasonably interfere with the freedom of action of Licensee.

(f)     In order to enable Budget to ascertain whether Licensee is complying with the obligations imposed upon it under this Agreement and in order to enable Budget to enforce rights given to it by this Agreement, Budget may at any time enter the premises of Licensee's BRAC business without any other consent of Licensee save this consent which Licensee gives and agrees not to revoke

68

**JA97**

13.8    **Governing Law.**  Licensee agrees that this Agreement has been accepted by Budget in England and in order to effect uniform interpretation of all Network license agreements, it and all other related documents thereto will be governed and construed under and in accordance with the laws of England other than those relating to conflict of laws.

13.9    **Consent To Jurisdiction.**  Licensee agrees that Budget may institute any legal action or proceedings against it arising out of or relating to this Agreement, including the Standards in any court in England and Licensee irrevocably submits itself and its property to the jurisdiction of such courts in any action or proceeding and waives any objection or defenses it may have to either the jurisdiction or venue of such courts.  Nothing herein shall affect Budget's right to commence legal proceedings or otherwise proceed against Licensee in any other jurisdiction.

13.10    **Additional Remedies of Budget.**  In addition to all of the remedies granted to granted to Budget by this Agreement, Budget shall have the right to bring suit against Licensee, for actual damages sustained by Budget, caused by the breach of any one or more of any of the provisions of this Agreement or the Standards, and for such injunctive and other equitable relief as may be appropriate.  Further, Budget shall have the right to bring suit against Licensee's partners, shareholders, and officers, as applicable, for actual damages sustained by Budget and caused by the breach, by any one or more of them, of any provisions of this Agreement which they have personally undertaken by reason of any supplemental agreement or addenda hereto, and for such injunctive and other equitable relief as may be appropriate.  Budget shall be entitled to its costs and reasonable attorney's fees and expenses in any such proceeding or action.

69

JA98

**13.11**    Waiver of Punitive Damages.  Except with respect to Licensee's obligation to indemnify Budget pursuant to Paragraph 13.5 of this Agreement, the parties waive to the fullest extent permitted by law any right to or claim for any punitive or exemplary damages against the other and agree that, in the event of a dispute between them, the party making a claim shall be limited to recovery of any actual damages it sustains.

**13.12**    Set Off.  Where in this Agreement there is a requirement on the part of Licensee to make payment without right of deduction or set off Licensee shall be entitled to make a deduction or set off in respect of undisputed liquidated sums owing by Budget to Licensee including credits given or to which Licensee may be entitled in respect of defective goods supplied by Budget or under the terms of any written agreement between Budget and Licensee.  In particular Licensee acknowledges that the provisions of this Agreement relating to the limits on Licensee's right to make deductions or set offs (to which it may claim to be entitled) against payment of any sums due to Budget or the Related Entities including Royalty Fees, Service Fees and Marketing Fund Fees are fair and reasonable.  Licensee recognises that its failure or refusal to make payments of such fees because of its dissatisfaction with Budget's performance may result in its continued involvement in the BRAC business being subsidised by other licensees who make payment of such fees and contributions.  It also recognises that its failure to pay such fees and contributions may adversely and materially affect the provision of services to licensees who operate the BRAC businesses.  Licensee accepts that the remedies available to it which are not affected by the set off or deduction provisions of this Agreement are

70

JA99

sufficient for its purposes including as they do a right to sue for damages and if appropriate acceptance of any repudiatory conduct on the part of Budget

13.13    **Business to be Conducted in a Lawful Manner.**  Notwithstanding anything contained herein to the contrary, Licensee shall conduct its BRAC business and maintain and service its equipment in a lawful manner and so as not to cause BRACC or Budget to violate any law or regulation of the United States or the Licensed Territory or the state/provincial, city and/or other political subdivisions in which it conducts its BRAC business.

13.14    **Severability.**

(a)    If any term or provision or any part thereof (in this paragraph called the "**Offending Provision**") of this Agreement shall be declared or become unenforceable invalid or illegal for any reason whatsoever including a decision by any competent court, tribunal or other competent authority or by reason of any statute or other by-laws or regulations or any other requirements having the force of law, the other terms and provisions of this Agreement shall remain in full force and effect as if this Agreement had been entered into without the inclusion of the Offending Provision.

(b)    In the event that the exclusion of any Offending Provision shall adversely affect Budget's right to receive payment of the License Purchase Fee, Service Fees, Royalty Fees, Marketing Fund Fees or remuneration by whatever means payable to Budget (including Budget's right to supply or nominate or approve suppliers or materially and/or adversely affect the Budget Trademarks, Budget's trade secrets, know-how, methods, the Standards or the System), including

71

**JA100**

the services provided then Budget shall have the right to terminate this Agreement upon thirty (30) days written notice to Licensee.

13.15    "Licensee". The term "Licensee" as used in this Agreement shall mean each person executing this Agreement as Licensee and shall apply to each such person as if such person were the only named Licensee in this Agreement. If Licensee is a corporation, limited liability company, partnership, proprietorship or any other approved entity or if more than one person executes this Agreement as Licensee, each shareholder, partner, owner or person executing this Agreement shall be jointly and severally liable for all obligations and duties of Licensee hereunder. If Licensee is a trust, each trustee or beneficiary signing this Agreement shall be jointly and severally liable for all obligations and duties of License hereunder. Notice to or demand upon one Licensee shall be deemed notice to or demand upon all Licensees.

13.16    Meaning of "Person"/"Affiliate". The term "person", as used in this Agreement and the Standards, shall mean all natural and legal persons, including without limitation, corporations, partnerships, sole proprietorships, joint ventures, and other business associations and trusts. The term "affiliate" as used in this Agreement and the Standards shall mean any entity controlled by or under common control of any such person.

13.17    Meaning of Term "Include" and "Including". The terms "include" and "including" as used in this Agreement or the Standards shall mean "including without limitation," unless the context requires otherwise.

72

13.18   Meaning of "Beneficial Owners".

(a)    The term "Beneficial Owners" as used in this Agreement and the Standards shall mean all persons owning a direct or indirect legal or beneficial ownership interest in any sole proprietorship, partnership, joint venture, shareholder or other ownership interests (including de facto control or as shadow directors) in the Licensee and shall include such persons who own any such interest in any parent company of the Licensee or any company which is a member of the same Group as that of which Licensee is a member.

(b)    In this Agreement the term **"Group"** in relation to a body corporate, means the body corporate, any other body corporate which is its ultimate holding company or subsidiary and any other body corporate which is a subsidiary of that holding company or a subsidiary of any subsidiary of that holding company.

13.19   Meaning of "Budget Trademarks" shall include all and any elements thereof in any form.

13.20  Meaning of Goodwill.  In this Agreement the term "Goodwill" includes:

(a)    The goodwill and all rights in and associated with or arising from BRACC's and Budget's copyright material, the System, the Operating Manual, the Standards, the Budget Trademarks and any other intellectual property rights of BRACC and Budget.

(b)    Any additional goodwill generated from their use and/or exploitation in the BRAC business by Licensee and/or the Network.

73

JA102

13.21    **Exhibits.** All exhibits to this Agreement and the Standards as modified from time to time are incorporated herein by their reference and are to be read as if they are a part of this Agreement.

13.22    **Notices.** All written notices permitted or required to be delivered by the provisions of this Agreement or the Standards shall be delivered by hand, by telecopy or other electronic system, by commercial courier service, or by Registered or Certified Mail, Return Receipt Requested, or such other similar service as may be available postage prepaid and addressed to Budget at 41 Marlowes, Hemel Hempstead, Hertfordshire HP1 1XJ, England or to such address as Budget made from time to time notified to _____, marked for the attention of the Managing Director and the Vice President of Franchising, with a copy, similarly served, to Mr R Aprati, Senior Vice President and Chief Counsel, Budget Group Inc. 4225 Naperville Road, Lisle, ILLINOIS 60532-3662, USA, or to such other address as Budget shall prescribe in the Standards, and addressed to Licensee at the latest current business address of which Budget has received at least fifteen (15) days prior written notice.

13.23    **Payment of Obligations.** Licensee shall pay when due all obligations to Budget and the Related Entities, other System members, and other creditors of Licensee incurred by Licensee in the operation of its BRAC business.

13.24    **Disclosure.** Where the law of the Licensed Territory requires that there be pre-contract disclosure to Licensee, Licensee acknowledge that such disclosure has been made in

74

**JA103**

accordance with applicable law and that it has taken appropriate legal and other advice thereon before signing this Agreement

13.25     **Parole Evidence Disclaimer.**   This Agreement may not be modified or amended except by written agreement signed by duly authorised representatives of the parties. The words "this Agreement" as used in this Agreement and the Standards shall mean any such future modifications unless otherwise indicated by the context.  No salesperson, representative or other person has the authority to bind or obligate Budget in any way, except by an instrument in writing duly executed by a Vice President or President of Budget.

13.26     **Governing Language.**   This Agreement and the Standards originally will be written and executed in the English language, and all questions of interpretation of this Agreement or the Standards shall be resolved by reference to the same as written in English. The Language of communication between the parties shall be English.

75

**JA104**

BUDGET RENT A CAR INTERNATIONAL INC.


By:_____

President and Chief Executive Officer

ATTEST:


By: _____

Its: Vice President of Franchising


LICENSEE:

By: _____

Print/Type Name:

Its:


ATTEST:


By: _____

76

JA105

## ACKNOWLEDGEMENT

Licensee on behalf of itself, the Group Companies and its and their Beneficial Owners acknowledges that it has been advised by Budget to, and has had the opportunity to, obtain independent legal and business advice before executing this Agreement and any other related agreements, that it is fully aware of their provisions, has carefully read and understood the contents of this Agreement and any related agreements, accepts that all their provisions are fair and reasonable in all the circumstances known to or in the contemplation of Budget and Licensee as at the date of this Agreement and that it intends to comply with and be bound by all their provisions.

LICENSEE:

By:_____

Print/Type Name:

Its:

77

## SCHEDULE 1

## BASIC TERMS

1.    Vehicles:  Licensee is authorised to offer for rental only the following types of Vehicles:

        Cars, Vans and Trucks (G.V.W. in excess of 3.5 tonnes)

2.    License Purchase Fee (Paragraph 7.1):

    £1

3.    Payment of License Purchase Fee:

    On completion.

JA107

4.     Marketing Fund Fees (Paragraph 7.2), Service Fees and Royalty Fees (Paragraph 7.3)

| Short Term Car Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

| Short Term Van Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

| Short Term Truck Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

| Long Term Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

Licensee:                          Licensee Signature: _____

5.     Date for Commencement of Operations:


6.     Grand Opening Advertising Expenditure


6.     General Manager:
       Address:

8.     Beneficial Owners of Licensee:
       Name:
       Address:

2

**JA108**

<u>SCHEDULE 2</u>

<u>LICENSED TERRITORY</u>

3

JA109

## SCHEDULE 3

### MARKETING/CUSTOMER SERVICE PROGRAMS

1. Go Budget

2. CorpRate

3. International Traveller

4. International Reservations Incentive Scheme (IRIS)

5. Budget Credit Card and Voucher Interfacing (CCI)

6. International Reservations System

7. Computer Reservations System (CRS)/Global Distribution Systems (GDS)

8. Travel Agent Reservation Program

9. One Way Rental Program

10. The Budget Approved Computerised Rental Transaction System

11. Tour Operator/Broker/Wholesaler Airline Programs

12. Fastbreak and Perfect Drive

**SCHEDULE 4**

**MINIMUM ANNUAL SERVICE FEES**

| Time Period | Aggregate Amount |
| --- | --- |
| 1st March 2001 to 28th February 2002 | £ |
| 1st March 2002 to 28th February 2003 | £ |
| 1st March 2003 to 28th February 2004 | £ |
| 1st March 2004 to 28th February 2005 | £ |
| 1st March 2005 to 28th February 2006 | £ |
| 1st March 2006 to 28th February 2007 | £ |
| 1st March 2007 to 28th February 2008 | £ |
| 1st March 2008 to 28th February 2009 | £ |
| 1st March 2009 to 28th February 2010 | £ |
| 1st March 2010 to 28th February 2011 | £ |

1

JA111

SCHEDULE 5

RENTAL OFFICE REQUIREMENTS

Local Market Descriptions

Date to be Opened

Not applicable

Airport Descriptions

Dates to be Opened

JA112

## SCHEDULE 6

## VEHICLE REQUIREMENTS

1.  Vehicles as of Date of Commencement of Operations:

    Number of Cars:

    Number of Trucks:

    Number of Vans:

2.  Market Penetration Quotas

    | Automobile Penetration | No. |
    |---|---|
    | From 1st March 2001 to 28th February 2002 | |
    | From 1st March 2002 to 28th February 2003 | |
    | From 1st March 2003 to 28th February 2004 | |
    | From 1st March 2004 to 28th February 2005 | |
    | From 1st March 2005 to 28th February 2006 | |
    | From 1st March 2006 to 28th February 2007 | |
    | From 1st March 2007 to 28th February 2008 | |
    | From 1st March 2008 to 28th February 2009 | |
    | From 1st March 2009 to 28th February 2010 | |
    | From 1st March 2010 to 28th February 2011 | |

<u>Truck Penetration</u>                                    <u>No.</u>

From 1ˢᵗ March 2001 to 28ᵗʰ February 2002
From 1ˢᵗ March 2002 to 28ᵗʰ February 2003
From 1ˢᵗ March 2003 to 28ᵗʰ February 2004
From 1ˢᵗ March 2004 to 28ᵗʰ February 2005
From 1ˢᵗ March 2005 to 28ᵗʰ February 2006
From 1ˢᵗ March 2006 to 28ᵗʰ February 2007
From 1ˢᵗ March 2007 to 28ᵗʰ February 2008
From 1ˢᵗ March 2008 to 28ᵗʰ February 2009
From 1ˢᵗ March 2009 to 28ᵗʰ February 2010
From 1ˢᵗ March 2010 to 28ᵗʰ February 2011

<u>Van Penetration</u>                                      <u>No.</u>

From 1ˢᵗ March 2001 to 28ᵗʰ February 2002
From 1ˢᵗ March 2002 to 28ᵗʰ February 2003
From 1ˢᵗ March 2003 to 28ᵗʰ February 2004
From 1ˢᵗ March 2004 to 28ᵗʰ February 2005
From 1ˢᵗ March 2005 to 28ᵗʰ February 2006
From 1ˢᵗ March 2006 to 28ᵗʰ February 2007
From 1ˢᵗ March 2007 to 28ᵗʰ February 2008
From 1ˢᵗ March 2008 to 28ᵗʰ February 2009
From 1ˢᵗ March 2009 to 28ᵗʰ February 2010
From 1ˢᵗ March 2010 to 28ᵗʰ February 2011

## SCHEDULE 7

## CONTINGENT ASSIGNMENT OF AIRPORT CONCESSION AGREEMENT

This Contingent Assignment of Concession Agreement ("Agreement") is made this ___th

day of _____, 2001 by and among the following parties:


CONCESSIONAIRE:

LICENSEE:


BUDGET:                Budget Rent a Car International of 41 The Marlowes, Hemel

                       Hempstead, Hertfordshire, HP1  1XJ


RECITALS:


WHEREAS, Under the terms of the Concession Agreement (the "Concession") attached

hereto as Exhibit A, Concessionaire has agreed to lease to Licensee certain premises (the

"Premises") located at the following address:

1

WHEREAS, Licensee has accepted the Premises as a suitable location for Licensee's BRAC business, subject to the provisions of the License Agreement and further subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, including the acceptance by Licensee of the Premises as a location for a BRAC business, the parties hereby agree as follows:

1.    Use of Premises. Licensee shall use the Premises only for the operation of a BRAC business pursuant to its License Agreement with Budget, and for no other purposes whatsoever.

2.    Signage, Etc. Concessionaire hereby consents to Licensee's use and display on the Premises of such exterior and interior signs, posters, promotional materials, and equipment, furnishings, and decor as are currently required by Budget pursuant to the License Agreement. In the event that such requirements are changed in the future, Concessionaire agrees that it will not unreasonably withhold its consent to Licensee's compliance with such changes. In the event that local ordinances or zoning requirements prohibit the use of Budget's standard signage, Budget will not unreasonably withhold its consent to the modification of its standard signage to comply with such requirements.

3.    Notices. Concessionaire agrees to furnish Budget copies of any and all letters and notices to Licensee pertaining to any default by Licensee under the Concession at the same

2

JA116

time and in the same manner as any such notice is sent to Licensee. Licensee agrees to furnish Budget prompt written notice of any and all amendments, waivers, extensions, renewals or other modifications of the Concession. All notices hereunder shall be mailed or delivered to the addresses set forth above, unless changed from time to time by any party through written notice mailed or delivered to the other parties.

4.    *Assignment.* Concessionaire hereby acknowledges that Licensee has agreed under the License Agreement that, in the event of termination, for any reason, or Licensee's default under the Concession, Licensee shall, at Budget's option, assign to Budget any and all interest of Licensee in the Concession, including any rights to renew the Concession or to sublease the Premises; and Concessionaire hereby consents to such assignment, subject to the following conditions:

(a)        Budget shall notify Concessionaire in writing within thirty (30) days after termination or expiration of the License Agreement or Budget's receipt of any notice of default by Licensee under the Concession if Budget elects to accept assignment of the Concession; Budget's failure to accept assignment of the Concession upon any default of Licensee under the Concession shall not be deemed a waiver of Budget's future right to accept such assignment in the event of any future default of Licensee;

(b)        If Budget elects to accept assignment of the Concession, Budget shall execute and deliver to Concessionaire a concession containing the same terms and conditions (including concession fees) as the Concession; provided, however, that

3

Budget's concession interest shall not be subject to any defaults or claims that may exist between Concessionaire and Licensee.

(c)        If Budget elects to accept assignment of the Concession, Budget shall take possession of the Premises within thirty (30) days after notice of such election to Concessionaire;

(d)        Nothing herein shall affect Concessionaire's right to recover from Licensee any and all amounts due under the Concession or to exercise any rights of Concessionaire against Licensee as provided under the Concession nor shall Budget be responsible for Licensee's default under the Concession.

5.        **Assignment To Third Party.** At any time after giving notice of its election to accept assignment of the Concession, Budget may request to assign its concession, or sublease the Premises, to a third party. Concessionaire agrees not to unreasonably withhold its consent to any such assignment or sublease on the same terms as the Concession; provided, however, that if Concessionaire refuses to consent to such assignment or sublease by Budget, Budget shall have the right to revoke its acceptance of assignment of the Concession and shall have no further obligations thereunder.

6.        **Entry By Budget.** Concessionaire and Licensee hereby acknowledge that Licensee has agreed under the License Agreement that Budget and its employees or agent shall have the right to enter the Concession operated by Licensee at the Premises at any reasonable

4

time for the purpose of conducting inspections, protecting Budget's trademarks, trade names, logos and similar proprietary interests, and correcting deficiencies of Licensee. Concessionaire and Licensee hereby agree not to interfere with or prevent such entry by Budget, its employees or agents.

7.     De-Identification. Concessionaire and Licensee hereby acknowledge that in the event the License Agreement expires or is terminated, Licensee is obligated under the License Agreement to take certain steps to de-identify the location as a "Budget" business operated by Licensee. Concessionaire agrees to co-operate fully with Budget in enforcing such provisions of the License Agreement against Licensee, including allowing Budget, its employees and agents to enter the Premises and remove signs, decor and materials bearing or displaying any marks, designs or logos of Budget; provided, however, that Concessionaire shall not be required to bear any expense thereof. Licensee agrees that if it fails to de-identify the Premises promptly upon termination or expiration as required under the License Agreement, Budget may cause all required de-identification to be completed at Licensee's expense.

8.     General Provisions.

(a)     This Agreement shall be binding upon the parties hereto and their successors, assigns, heirs, executors, and administrators.

(b)     Any party hereto may seek equitable relief, including without limitation, injunctive relief or specific performance, for actual or threatened violation or

5

non-performance of this Agreement by any other party. Such remedies shall be in addition to all other rights provided for under law or other agreements between any of the parties. The prevailing party in any action shall be entitled to recover its legal fees together with court costs and expenses of litigation.

(c)        Nothing contained in this agreement shall affect any term or condition in the License Agreement between Licensee and Budget. Nothing herein shall be deemed to constitute a guaranty or endorsement by Budget of the terms and conditions of the Concession between Concessionaire and Licensee. In the event that Budget, in its sole discretion, determines not to accept assignment of the Concession as permitted hereunder, neither Concessionaire nor Licensee shall have any claims against Budget. No terms or conditions contained in the Concession shall be binding on Budget unless it elects to accept assignment of the Concession hereunder.

6

JA120

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 02-12152 (MFW) |
| IN RE: BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | (Jointly Administered) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | Adversary No. A-03-54271 |
| JAEBAN (U.K.) LIMITED, | ) ) | |
| and IBRAHIEM JAEBAN | ) ) ) | |
| Defendants and Counterclaimants. | ) ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel represents and affirms that he has caused the Answer and Affirmative Defenses to Amended Complaint and Amended Counterclaims of Ibrahiem Jaeban to be served via electronic mail and facsimile this 23d day of July, 2004 upon the following:

Ken Wile, Esquire
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
Fax 312.853.7036

Edmon Morton, Esquire
Young Conaway Stargatt and Taylor
PO Box 391
Wilmington, DE 19899-0391
Fax: (302) 571-1253

  s/ Robert D. Wilcox
Robert D. Wilcox (#4321)
Telephone: (302) 652-1100

**JA121**