

**jaeban**
*Self Drive, Contract Hire, Direct Auto Sales*

13th February 2003

FILED

2003 FEB 24  PM 12: 06

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

BRAC GROUP, INC (f/k/a Budget Group, Inc.) et al
Case No. 02-12152 (MFW)

This notice is an Objection as referred to in the document headed

"Debtors' motion for order pursuant to 11 U.S.C. Sections 105, 363, 365, 503 and 507"

this company being a counter-party in receipt of an Assumption and Assignment Notice containing notification of a purported "Cure Amount" to which we object.

It is also a response to a Licencee Confirmation Letter if the document we have received purporting to be such is held to be valid.

The basis of our objection is that the Debtors owe us sums in excess of the US $2,250,000.00 we have already claimed is due to us whereas the stated Cure Amount is "0", and the Debtors have even indicated that their records show that this company owes them monies, which is manifestly erroneous and incapable of substantiation.

Further, we maintain that they are, and some time ago indicated in writing that we considered them to be, in material breach of their obligations under our International Prime Licence Agreements ("IPLA's"), in relation to which breaches we have reserved our position in writing and continue to do so.

The basis of this assertion and the specific grounds therefor, are as follows:-
1. The Debtors have failed to undertake appropriate marketing activities to promote the Budget brand, as evidenced by their admission and waiver of marketing fund levy since April 2002, whereas in fact such failure has had a detrimental effect on and cost to this company in particular, but also to the body of Licencees as a whole, which far exceeds the waived levy. Our loss of revenue on national account customers amounts to over £300,000.00 pa.

   A list of some such lost customers is attached as Annexure A.

2. The Debtors have failed to provide integrated service cover across key territories, specifically the major London airports and certain central sites, which has adversely impacted our business and damaged the goodwill of the brand in respect of which royalty payments are claimed by the Debtors. To quote the Debtors Motion
   "maintenance of a comprehensive European network is essential to the preservation of franchise royalty....and the value of EMEA Operations".
   The damage caused by the Debtors includes (without limitation) the following:-


Car and Van Rental

**Head Office**
Jaeban (UK) Ltd, Welcome House, 999 Wolverhampton Road, Oldbury, West Midlands B69 4RJ
Branches throughout Central England, North of England, Scotland and associated airports
Tel: 0121 544 2719 (Administration)  Fax: 0121 544 8817 (Administration)
Tel: 0121 552 2200 (Reservation)



Registered Number 1984294 Wales   Registered Office: Welcome House, 999 Wolverhampton Road, Oldbury, West Midlands B69 4HJ

JA291

2.1 the loss of nation-wide and international account customers due to the non-availability of fleet at the so-called "Gateway" airports and other strategic locations operated by the Debtors corporately (as distinct from through franchised management).

2.2 the denial of the opportunity for us to undertake one-way bookings on an economic basis due to the closure of Debtor operating locations at the gateway airports, despite us being obligated for a period to continue taking one-way bookings. Instead of reserving a portion of the fleet at these airports for return to our territories in accordance with previous practice, the Debtors hired our vehicles for local use forcing us to retrieve them by transporter at additional cost of £50 per vehicle and loss of rental opportunity for up to three days at a time.

2.3 The loss on resale of vehicles we provided as a dedicated fleet to the Debtors to enable them to continue operating at the gateway airports when their own financial facilities were insufficient to sustain the size of fleet required. The losses incurred as a result of the Debtors being excluded from the airports for non-payment of rent to the British Airports Authority are £850,000.00. We believe such exclusion was as a result of negligent mismanagement by senior officers of Debtors, and that in the circumstances of our agreement to provide fleet constitutes breach of a duty of care. Full and accurate details per unit can be provided if required.

3. The Debtors have failed to provide certain administrative functions in accordance with their obligations under the IPLA's either to a reasonable standard of competence, or at all. Specifically, the provision of central billing services to franchisees and national account customers has been unreliable, inaccurate and misleading for a number of years. We accept that in March 2001 we waived our claims in respect of defaults prior thereto and seek recompense only in respect of damage suffered since then. The gross revenue booked through the BCI system (ie the networked business for which we paid the Debtors royalty and other payments) in respect of our territories fell from an annualised level of more than £6,000,000.00 pa in 2001 to less than £1,500,000.00 in year ended 31st December 2002. More recently, the withdrawal of the voucher system for international travellers has resulted in a downturn in the levels of inbound bookings which has caused us additional loss, full details of which are being prepared.

4. The failure by the debtors to secure adequate funding for their corporate fleet has resulted in the loss to us of bonus payments from vehicle manufacturers in respect of volume discounts. In accordance with established practice and their duties to act in the best interests of the community of franchises as a whole, the Debtors customarily procured vehicles at prices based on minimum volumes to be taken over the course of a financial year. The shortfall on bonus payments we should have received during year 2002 had the Debtors fulfilled their arrangements with motor manufacturers, together with our own inability to achieve targets due to the decline in the business volume,

occasioned by the default of the Debtors amounts to £1,700,000.00 in 2002 compared to 2001.

5. We have incurred professional and related costs associated with the Debtors breach of contract and its consequence on our business which we seek to recover from the Debtors in the sum of £50,000.00.

By way of this Objection we preserve to the fullest permissible extent our rights in respect of these matters.

Signed for and on behalf of Jacban (UK) Limited

..........................................

Director

Please confirm receipt.

ANNEXURE A

Pearl Assurance
Countrywide Vehicle Rentals
Nestle
Powergen
UTC
GKN
Emirates
Hardy Spicer
The Wolversey Group
LK Tools Ltd
Cleanaway
Carlson Wagon Business Travel
BTI Hogg Robinson Business Travel
Brush Electrical
Remploy
Scottish Power
Portman Travel Group
Albright and Wilson
IT Net Ltd