**9.14**    **Computer Systems and Other Standards.**  Licensee agrees to install and implement all accounting, inventory control, sales register and other computer hardware and software systems according to the Standards.  Licensee understands and acknowledges that any such systems (and any modifications or additions thereto) may require the purchase, lease and/or license of equipment, including computer hardware, and software programs and the payment of licensing or access fees to Budget or others for the use of such systems.  Licensee shall be required to install any new or modified systems within the time period specified by Budget.  All computer hardware and software used by Licensee shall be totally compatible with and shall strictly conform to the Standards.   Licensee shall at its own expense provide and maintain technology to allow Budget full access at all times to all of Licensee's computer data, equipment and systems and Licensee shall take all such steps as are necessary to ensure that Budget can obtain such access at all times including; ensuring compliance with any Data Protection laws which may be applicable; the ability of Licensee to provide the Customer List to Budget at any time; pursuant to **Paragraph 11.6(g)** hereof.  Licensee shall comply with Standards Budget may develop with regard to use of websites in connection with the operation and/or promotion of BRAC businesses.

**9.15**    **Inspection.**  Budget shall have the right, from time to time, upon reasonable notice and during normal office hours and, including but not limited to where Budget has reasonable cause to believe that Licensee is not keeping proper books of account or records in accordance with this Agreement or is otherwise concerned that the BRAC business is not being operated properly or otherwise in accordance with this Agreement without prior notice to Licensee, to send representatives to inspect the BRAC business, and to audit the books and

40

JA475

records thereof, to determine the quality thereof and the faithfulness of Licensee's compliance with the provisions of this Agreement and the Standards. Budget shall bear the cost of all such inspections, provided that if any such inspection discloses that Licensee has failed to comply with any provision of this Agreement or the Standards in a manner that would permit Budget to terminate this Agreement pursuant to **Paragraphs 11.3 and 11.4,** the cost of such inspection, including normal daily compensation, travelling expenses, room and board, shall be paid by Licensee.

9.16 **Authorised Products and Services.** Licensee agrees that it will offer all products and services that Budget from time to time authorises for a BRAC business and that it will not offer at a rental office location or otherwise any other products or services or engage in any other business activities without Budget's prior written consent and subject to any conditions which Budget may consider appropriate.

9.17 **Customer Surveys.** Licensee agrees to participate in and provide its full co-operation to facilitate all customer service surveys conducted by on or on behalf of Budget for the Licensed Territory. Licensee agrees to pay for the cost of up to two (2) such surveys in any calendar year.

9.18 **Customer List.** Licensee agrees at all times to maintain in trust for and for the benefit of Budget and BRACC a list (including names, addresses and telephone numbers of all customers and Prospective Customers) (the "Customer List"). In this Agreement **"Prospective**

41

JA476

Customers" are potential or prospective customers from whom Licensee has during relevant preceding year directly solicited custom.

9.19    **Foreign Corrupt Practices Act.**  Licensee agrees that it shall not use any payment or other benefit derived from Budget, BRACC or any Related Entity to offer, promise or pay any money, gift or other thing of value to any person for the purpose of influencing official actions or a decision affecting this Agreement while knowing or having reason to know that any portion of this money, gift or thing will, directly or indirectly, be given, offered or promised to an employee, officer or other person acting in an official capacity for any government or its instrumentalities, or any person acting in a judicial, quasi-judicial capacity, or as an arbitrator or as a witness providing evidence to any forum of any nature which is adjudicating any dispute or alleged commission of an offence, or any political party, party official, or candidate for political office.

## ARTICLE X

## LICENSEE ADVERTISING, PROMOTION, AND IDENTIFICATION

10.1    **Licensee Advertising and Promotion.**  Licensee may formulate and effect local advertising and promotion both within and outside the Licensed Territory, subject to such provisions with respect to format, representations and media as are prescribed in the Standards. Licensee shall at all times adhere to all rental prices advertised by it or by Budget upon Licensee's behalf and shall not advertise in any deceptive or misleading manner.

42

**10.2    Grand Opening Advertising.**  Licensee agrees to conduct at its expense grand opening advertising and promotional programs for each rental location opened in the Licensed Territory as prescribed in the Standards and to spend thereon not less than the sum specified in **Schedule 1.**

**10.3    Signs and Uniforms.**  Licensee agrees to prominently display at all times at the locations and premises in which it conducts its BRAC business such advertising signs, posters, uniforms and other materials required by Budget to be displayed at each BRAC rental location and premises as prescribed in the Standards.

**10.4    Licensee Identification.**  Licensee agrees that it will at all times identify itself only as a Budget Licensee; that it will not identify itself as being Budget, BRACC, a Related Entity, or a subsidiary, division, partner, joint venturer, agent or employee of any of them or as being associated with Budget, BRACC or a Related Entity in any manner other than as a Budget Licensee; and that it will in all advertising and promotional materials (including Licensee stationery, business cards, telephone listings, advertising, purchase orders and rentals agreements), use the word "Budget" and the Budget Trademarks only in obvious conjunction with the words "An Independent Budget System Licensee" or with such other words and with such other phrases as may be prescribed in the Standards.

43

# ARTICLE XI

# TERM, RENEWAL AND TERMINATION

**11.1    Term.** Licensee agrees that this Agreement will, unless sooner terminated as hereinafter provided, remain in force for a period of ten (10) years from the date hereof (the "Term").

**11.2    Renewal.** Budget agrees that the Licensee will have the right, without payment of any additional License Purchase Fee, to continue the operation of its BRAC business for three successive five (5) year renewal terms, subject to the following conditions for each five (5) year renewal term:

> (a)    Licensee has, as determined by Budget, conducted its BRAC business in accordance with the provisions of this Agreement and the Standards, and other requirements prescribed by Budget from time to time, including by the timely satisfaction of all monetary obligations owed by Licensee to Budget and the Related Entities throughout the then current term;

> (b)    Prior to the termination of the then current term, Licensee and its Beneficial Owners shall:

44

JA479

(1)       Execute and agree to be bound by Budget's then current standard license agreement, and ancillary documents thereto, including personal guarantees;

(2)       Pay for any additional products and/or services (including any new marketing, sales and computer services) provided by Budget thereunder which Budget is not obligated to provide pursuant to this Agreement; provided however, that during any renewal term, Licensee's Royalty Fees and Service Fees will be calculated in accordance with **Paragraph 7.3** of this Agreement;

(3)       Provide Budget with updated financial statements and other financial, customer and business information reasonably requested by Budget;

(4)       Sign any participation agreements if required by Budget for any then-current Budget programs;

(5)       Update the BRAC office rental locations, advertising and other materials to conform to the then current Standards;

(6)       Execute a general release, in a form prescribed by Budget, of any claims against Budget and the Related Entities and their respective officers, directors, employees, agents, successors, and assigns;

45

JA480

(7)        Agree to new office rental location, Market Penetration Quotas and minimum Royalty Fees, Service Fees and Marketing Fund Fees, pursuant to then current surveys or otherwise; and

(c)       Not less than three hundred and sixty five (365) days prior to expiration of this Agreement but not more than five hundred and forty (540) days, Licensee provides Budget with written notice of its intention to exercise its rights to continue the operation of its BRAC business in accordance with the above.

**11.3     Termination By Budget With Prior Notice.** Licensee agrees that Budget will have the right to terminate this Agreement for cause. In addition to the grounds described in **Paragraph 11.4,** Licensee agrees that cause for termination shall be Licensee's failure materially to adhere to any provision of this Agreement, including the Standards, and to cure any such failure within the notice period hereinafter prescribed. Budget agrees to notify Licensee in writing of any failure of Licensee to adhere to the provisions of this Agreement, including the Standards, provided, however, that Licensee agrees that Budget will not be limited to the reasons set forth in any such notice in any judicial proceeding in which the validity of the termination of this Agreement is at issue. This written notice will specify the time period within which such failure or failures must be cured by Licensee, which Licensee agrees will be fifteen (15) days from the date of delivery of notice to Licensee in the case of all other failures by Licensee to pay any sums owed to Budget and thirty (30) days or such other reasonable period being not less than thirty (30) days as Budget shall specify which is appropriate to the cure to be provided, from delivery in the case of all failures by Licensee materially to adhere to any other provision

46

of this Agreement including the Standards. If Licensee fails to cure any such failure within the prescribed time period, Licensee agrees that this Agreement will terminate without further notice or action by Budget upon expiration of the prescribed time period.

**11.4    Termination By Budget Without Prior Notice.** Licensee agrees that Budget will also, upon written notice to Licensee, have the right at any time to terminate this Agreement immediately and without other cause, or prior action or notice by Budget to Licensee in the event that:

(a)    Licensee makes an assignment for the benefit of creditors;

(b)    Licensee is unable to pay its debts or obligations as they become due;

(c)    Licensee or any person who enters into a personal guarantee with Budget files, or has filed against it, any petition in bankruptcy or other petition or pleading seeking any reorganisation, liquidation, dissolution or other similar relief;

(d)    Licensee seeks, consents to or acquiesces in the appointment of any trustee, receiver, or liquidator of Licensee, its BRAC business or all or a substantial part of its assets or fails to vacate the appointment of any trustee, receiver or liquidator for any such purposes within thirty (30) days of such appointment;

47

(e)        Licensee fails, within thirty (30) days of the entry of a final judgement against Licensee, to discharge, vacate or reverse such judgement or to stay execution thereon pending appeal or to discharge any such judgement which is not vacated or reversed within thirty (30) days after the expiration of such stay of execution;

(f)        Licensee fails to operate its BRAC business for a period of more than seven (7) consecutive days;

(g)        Licensee submits any report required hereunder which understates Gross Revenue or a monthly Vehicle average by more than five percent (5%) for a second time within a period of 12 months after notification from Budget that a previous report contravenes this provision;

(h)        Licensee fails to maintain the insurance coverage required by **Paragraph 9.3** hereof;

(i)        Licensee makes unauthorised use of the Budget Trademarks, including on a website or as part of an electronic address;

48

(j)       Licensee or any of its Beneficial Owners is convicted of or pleads no contest to a crime involving moral turpitude, a crime for which the penalty may be a term of imprisonment or a crime relating specifically to the operation of the BRAC business or to safety or motoring-related offences and that is likely to adversely affect the reputation of the Budget Trademarks, Licensee's BRAC business, the Network or the Goodwill;

(k)       Licensee operates its BRAC business in a manner which presents a safety hazard to its customers, employees or the public and permits the same to go uncorrected after notification thereof or if the breach occurs twice more in a period of 12 months after the first notification thereof;

(l)       Licensee commits any violation of any law, ordinance, rule or regulation of a governmental agency in connection with the operation of its BRAC business, and permits the violation to go uncorrected after notification thereof, unless there is a bona fide dispute as to the violation, constitutionality, or legality of such law, ordinance, rule or regulation, and Licensee promptly resorts to courts or forums of appropriate jurisdiction to contest such violation or legality;

49

JA484

(m)     Licensee defaults in the performance of any term or provision hereof after having received two (2) notices of default for the same or any other term or provision hereof within the previous twenty four (24) month period;

(n)     Licensee or any of its Beneficial Owners makes a purported unauthorised assignment or transfer of this Agreement, Licensee's BRAC business or an interest in Licensee;

(o)     Any other license agreement between Licensee and Budget or the Related Entities for the operation of a BRAC business or any other agreement between Licensee and Budget or the Related Entities is terminated or cancelled for any reason save where an agreement is terminated by mutual agreement or expires by effluxion of time.

(p)     Licensee contests, or assists someone else in contesting in any manner, the validity of BRACC's exclusive ownership of and rights to the Budget Trademarks or any element of the System, whether now existing or hereafter created or obtained or Licensee registers or attempts to register any of the Budget Trademarks anywhere in the world.

50

(q)     Licensee provides to any of its customers on more than one occasion in any period of 12 months after notification of a breach of this provision by Budget vehicles which are not in good mechanical order in accordance with legal requirements.

**11.5     Loss of Territorial Exclusivity.** In addition to Budget's other rights under this **Article 11**, upon Licensee's failure to: (a) open and continue operating the rental locations in accordance with **Schedule 5**; (b) meet the Market Penetration Quotas required in accordance with **Schedule 6**; (c) open the additional locations and achieve and maintain the minimum number of additional Vehicles required in accordance with Budget's Development Requirements; and/or (d) participate and comply with required Programs including, if Licensee is authorised to offer trucks or vans (for the purposes of this paragraph **"Truck"**) for rental and is requested by Budget to do so, failure to participate in and comply with the One-Way Truck Program as prescribed by Budget in the Operating Manual, Licensee agrees that Budget will have the option, upon thirty (30) days' prior written notice to Licensee, to: (i) terminate this Agreement to the extent of the affected market(s) and thus exclude from the Licensed Territory the territory determined by Budget to be undeveloped, such termination to be treated as a termination for cause; or (ii) convert Licensee's exclusive rights in the affected market(s) determined by Budget to be undeveloped to become non-exclusive in nature (for example and not as a limitation, if Licensee is authorised to offer trucks for rental and declines to participate in the One-Way Truck Program as requested, Budget or the Related Entities may provide or license other parties to provide one way truck rental services in the Licensed Territory. Upon such conversion, Licensee shall not add new locations in the converted territory or offer vehicle rental services in the

51

converted market(s), and Budget or the Related Entities may own and operate, or license others to establish new locations and/or offer such services, including through BRAC businesses in the converted territory or converted market.

**11.6     Obligation of Licensee on Termination.**  Upon termination of this Agreement and license (which for all purposes of this Agreement shall mean termination or non-renewal by either party for any reason), Licensee shall:  (a) pay to Budget, on or before noon on the effective date of termination, such monthly Service Fees, Royalty Fees, Marketing Fund Fees, the unpaid balance of the License Purchase Fee and all other fees or monies Licensee owes to Budget and the Related Entities whether or not then due for payment; (b) pay all fees or monies Licensee owes to other Network members or any other person or entity if non-payment will affect the ongoing operation of Licensee's terminated BRAC business, (e.g., phone bills, rent or airport concession fees), whether incurred under this Agreement or otherwise in the conduct of Licensee's BRAC business;  (c) not thereafter, directly or indirectly, identify itself in any manner as a Budget licensee or use the System, or any part thereof, the name "Budget" or any variation thereof, or any of the Budget Trademarks, forms, slogans, signs, symbols, devices, or materials constituting part of the System; (d) return to Budget all Operating Manuals, Standard Rental Agreements, advertising materials, and all other materials bearing the "Budget" name or containing the Standards; (e) take all steps necessary to transfer to Budget, or to such person as Budget may direct, the telephone, facsimile and electronic communication line(s) used by it in the conduct of its BRAC business and upon Budget's request, to advise the telephone company and other relevant companies serving the Licensed Territory that it has no further interest in such telephone, facsimile and electronic communication line(s) and to approve their transfer to

52

JA487

Budget or to such other person as Budget may direct; (f) take all steps necessary to effectuate the sale, transfer or assignment to Budget of the airport licenses, concession agreements and permits as specified in **Paragraph 8.2** and, at Budget's sole election, any other agreements pertaining to the use of real estate which was used in conjunction with Licensee's terminated BRAC business including all rental locations; (g) transfer to Budget all copies and records of the Customer List and provide Budget with a list (including names addresses and telephone numbers (so far as Licensee is aware) of all Prospective Customers; and (h) take such action as shall be necessary to cancel any assumed name, business name or equivalent registration which contains the "Budget" name, and Licensee will furnish Budget within thirty (30) days after termination of this Agreement evidence satisfactory to Budget of its compliance with all of these obligations.

**11.7    Budget's Right to Re-License.**    In addition to Budget's rights under **Paragraph 11.5** hereof, Licensee agrees that upon the service of a notice under **Paragraph 11.3** hereof or expiration of a cure period under **Paragraph 11.4**, Budget will be entitled to operate, or to enter into a new license with another person granting the person the right to operate a BRAC business in the Licensed Territory.

**11.8    Budget's Option to Purchase.**  Upon termination of this Agreement, Budget shall have the option (but not the obligation), to be exercised by written notice thereof to Licensee within thirty (30) days of termination, to purchase the assets of Licensee's BRAC business itself or through a nominee at fair market value.  If the parties cannot agree on fair market value or other terms within a reasonable period of time (not to exceed 15 business days), an independent appraiser shall be appointed by the President for the time being of the Institute of

53

Chartered Accountants in England and Wales and its determination on the price and other terms shall be as an expert and shall be binding. If Budget elects to exercise its option to purchase, Budget shall have the right to set-off all amounts due Budget and the Related Entities, and the cost of any appraisal, against payment of the purchase price.

11.9    **Post-term Non-competition.** In order to prevent the System from directly or indirectly benefiting competitors the Licensee, all Companies within the Group of which Licensee is a member and their Beneficial Owners and persons related to Licensee and its Beneficial Owners shall not, for a period of twelve (12) months after the termination of this Agreement for any reason whatsoever, either directly or indirectly be engaged concerned or interested in as an owner, financier, partner, director, officer, employer, consultant, agent or in any other capacity, in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others. Licensee acknowledges that its failure to adhere to this provision will constitute unfair competition to Budget and the Network. Licensee further acknowledges the impossibility of accurately determining the tangible and intangible damages which BRACC, Budget and the Network will suffer if Licensee fails or refuses to adhere to this provision or the provisions of **Paragraph 2.4** hereof and accordingly agrees to entry without prior notice, to the extent that applicable notice requirements may be waived, of temporary and permanent injunctions and other available governmental or administrative remedies against Licensee's breach of such provisions and Licensee further agrees to pay to Budget an amount equal to the aggregate of

54

JA489

Budget's costs of obtaining any such temporary and permanent injunctive relief or governmental or administrative remedies, including all costs of investigation and proof of facts, court costs and attorney's fees. If any proceeding either at law or in equity between the parties, Licensee hereby agrees that it has waived and shall not be entitled to raise as a defense either that: (1) the period of time or geographical area within which Licensee is prohibited from competition is unfair or unnecessary or unreasonable; or (2) that such provisions are an unlawful restraint of trade.

**11.10    Temporary Operation of Business.**  If, during any period in which Licensee is in material default of its obligation under this Agreement provided that Licensee shall have been given an opportunity to cure such default in accordance with **Paragraph 11.3** and shall have failed to cure such default within the period specified, Budget determines, in its sole discretion, that Licensee's BRAC business is being operated in a manner that threatens to impair the Goodwill or to jeopardise customer goodwill, Budget shall have the right, at its option, to assume management of Licensee's BRAC business and/or elect to service Budget customers including Key Accounts within the Licensed Territory from one or more locations determined by Budget.  Budget shall thereafter have the right to continue such management or service as agent for Licensee until it determines, in its sole discretion, that the circumstances under which Budget has assumed such management or service shall have been corrected by Licensee and Licensee is otherwise in good standing under this Agreement.   Licensee agrees to indemnify and hold Budget and its representatives harmless for any acts or omissions of Budget during any such period except those arising from the gross negligence or wilful misconduct of Budget or its representatives.

55

**JA490**

**11.11  Termination by Licensee with Prior Notice.** Licensee shall have the right to  terminate this Agreement if:

    (a)    Budget fails to pay any sums due to Licensee within thirty (30) days from the date of delivery to Budget of notice of such failure provided that such sums are undisputed and are not subject to Budget's right of set-off; or

    (b)    if Budget is in material breach of this Agreement and Budget fails to remedy the same within sixty (60) days from the date of delivery to Budget of notice of such failure or breach provided that such termination shall only take effect upon service of a further notice served at the end of the sixty day period specifying a termination date not less than thirty (30) days thereafter.

**11.12  Consequences of Termination By Licensee.** If Licensee terminates this Agreement pursuant to **Paragraph 11.11** the provisions of **Paragraphs 8.2, 11.6(f) and 11.9** (Post-Term Non-competition) shall not apply.  The Licensee's obligations under **Paragraph 11.6(c)** shall be satisfied if the Licensee complies with that obligation within six (6) months of the date of termination.

# ARTICLE XII

## SALE, ASSIGNMENT, AND TRANSFER

    **12.1 **    **By Budget.**  Budget may assign (or otherwise deal with) the rights and obligations of this Agreement without any consent from Licensee.

56

**12.2     By Licensee.**

(a)     Licensee agrees that Budget would not have entered into this Agreement except on the basis that it is personal to Licensee and because, as Licensee hereby acknowledges, of the personal confidence Budget has in Licensee and/or the Beneficial Owners as defined and identified in **Paragraph 12.5.**  None of this Agreement, the Beneficial Ownership of Licensee or Licensee's BRAC business, or any company within the Group of which Licensee is a member, may be voluntarily, involuntarily, directly or indirectly sold, actually or contingently, assigned or otherwise transferred by Licensee (including by will, declaration of or transfer in trust or the laws of intestate succession or by operation of law through a divorce or other legal proceeding), without the prior written consent of Budget in accordance with this Agreement and the Transfer Requirements prescribed by Budget from time to time, including payment of a transfer fee in an amount equal to the amount then being charged to licensees generally for such transfers and which is currently not more than US$10,000, together with costs and expenses incurred by Budget in relation to the transfer, including but not limited to lawyers' fees.  Any such attempted or purported sale, assignment or transfer contrary to the terms and conditions of this Agreement or the Transfer Requirements shall constitute a breach hereof and be void.  For the avoidance of doubt, neither Licensee nor any company which is a member of the Group of which Licensee is a member shall during or after the term hereof, contingently or otherwise, assign or otherwise dispose of any interest in, or make available to third parties, licenses, concession agreements, Customer Lists and/or permits which are required by, or related to the conduct of its or their BRAC business.

Budget may require any authorised and approved assignee or transferee to

57

JA492

execute a new Budget Rent a Car System International Prime License Agreement with Budget in the then current form save that the Basic Terms shall be the same as set forth in Schedule 1.

(b)    Sale, assignment or transfer of Licensee, or the beneficial ownership of Licensee or any company which is a member of the Group of which Licensee is a member requiring the consent of Budget shall, except to the extent provided below, include but not be limited to: (i) a sale, assignment or transfer or cumulative sales, assignments or transfers, lifetime and testamentary, at any time during the term of this Agreement, of any interest in the equity ownership or voting control of Licensee or its BRAC business, or any company which is a member of the Group of which Licensee is a member, whether in the form of common or preferred stock or any security convertible thereto or partnership or proprietorship interest or otherwise; and (ii) any private offering of shares or other securities in Licensee or any Group Company regardless of the percentage of equity ownership or voting control being transferred thereunder, and in relation to such private offering of shares or other securities the provisions of **Schedule 10** shall apply. In the event that any such transaction consented to by Budget shall take place, an addendum recording the new persons or entity involved shall be signed by the parties and annexed to **Schedule 1.**   Such person or entity shall also enter into covenants with Budget in such form as is specified by Budget to agree to be bound by the provisions of this Agreement to the same extent and on the same basis as the persons or entities whom they are replacing.

(c)    Notwithstanding the foregoing, the disposal of interests in the equity of Licensee to its operating personnel aggregating in total not more than ten percent (10%) of the equity ownership of Licensee shall not require Budget's prior consent, provided:  (i)  prior to

58

JA493

such disposal(s) Licensee shall require such operating personnel to enter into such form of Confidentiality and Non-competition Agreement as Budget shall require, and (ii) Licensee shall provide Budget with such details and copies of the aforementioned arrangements as Budget shall request.

(d)    In no event shall any public stock offering be made of the securities of any nature of Licensee or any company which is a member of the Group of which Licensee is a member whatsoever nor shall a public company have any beneficial interest whatsoever in or right to influence the management or control of Licensee or any company in the Group of which Licensee is a member by purchase, merger or any other means whatsoever. The occurrence of any of the foregoing, or any attempt to do so, shall be a breach of this Agreement for which Budget shall be entitled to terminate this Agreement forthwith.

(e)    Notwithstanding the foregoing, Licensee shall provide to Budget prior written notice of any proposed sales, assignments or transfers intended to constitute any change in the Beneficial Owners' ownership or control of Licensee or any company in the Group of which Licensee is a member.

**12.3    Budget's Right of First Refusal.**  If Licensee or its Beneficial Owners or any company in the Group of which Licensee is a member propose to sell, assign or transfer (i) during the term of this Agreement, the Beneficial Ownership of Licensee or its BRAC business or any company in the Group of which Licensee is a member; or, (ii) during the term of this Agreement or for a period of six months after the termination or expiration of this Agreement,

59

JA494

any licenses, concession agreements, Customer Lists and/or permits which are required by, or related to, its BRAC business, then in either such event, a copy of the agreed heads of terms in the form prescribed by Budget from time to time shall be submitted to Budget along with any information concerning the proposed buyer. Budget shall, for a period of sixty (60) days from the date of its receipt thereof, have the option to purchase same for the price and on the terms and conditions contained in such heads of terms, provided that Budget may nominate a third party to whom the BRAC business shall be transferred in exercise of its option rights under this paragraph and substitute cash or, subject to agreement by the Licensee and the Beneficial Owners, publicly traded stock of Budget or a Related Entity for any other consideration proposed in such heads of terms and shall in all cases be entitled to customary representations, indemnities (including tax indemnities) and warranties in connection with any such purchase. If the proposed sale, assignment or transfer includes assets of Licensee (or any Group Company) not related to Licensee's BRAC business, Budget may purchase only the assets related to the operation of Licensee's BRAC business, or may also purchase all or some of the other assets, with an equitable purchase price to be allocated to each asset, which is not a part of Licensee's BRAC business. If Budget does not exercise this option, the Licensee and/or its Beneficial Owners or the Beneficial Owners of any company in the Group of which Licensee is a member, subject to approval by Budget as provided in **Paragraph 12.2(a)**, may proceed with the sale, assignment or transfer.

12.4     **Death or Incapacity of Licensee.** Upon the death or permanent incapacity of Licensee, or a beneficial owner of Licensee, the executor, administrator, conservator or other personal representative of such person shall transfer his or her interest to a third party approved

60

JA495

by Budget within six (6) months thereof. Such transfers, including transfers by devise or inheritance, shall be subject to the same conditions as any lifetime transfer. In respect of such devise or inheritance provided that this is made or left to the children or issue of the Beneficial Owners Budget's right of first refusal set out in **Paragraph 12.3** shall not apply. Failure to so dispose of such interest within said period of time shall constitute a breach of this Agreement. If after the death or permanent incapacity of Licensee or a Beneficial Owner of Licensee, Licensee's BRAC business is not being managed by a competent and trained General Manager (as determined by Budget in its sole discretion), Budget is authorised to immediately appoint a manager to maintain the operation of the BRAC business as agent for Licensee until an approved assignee shall be able to assume the management and operation of the BRAC business. All funds from the operation of the BRAC business during the period of management by Budget's appointed manager shall be kept in a separate fund and all expenses of the BRAC business, including compensation, other costs and travel and living expenses of Budget's appointed manager, shall be charged to such fund. As compensation for the management services provided, in addition to all other fees due hereunder, Budget shall have the right to charge such fund a reasonable management fee during the period of management by Budget's appointed manager. Licensee agrees to indemnify and hold Budget harmless and any representatives of Budget who may act hereunder harmless from any and all claims arising out of the acts or omissions to act of Budget and/or its representatives in connection with the management of Licensee's BRAC business except those involving gross negligence or wilful misconduct of Budget or its representative.

61

**12.5    Beneficial Owners of Licensee.**  Licensee represents and Budget enters into this Agreement in reliance upon the representation that the individuals identified in **Schedule 1** are the sole Beneficial Owners (in the stated proportions) of Licensee.

**12.6    Nondisclosure and Non-competition Agreement.**  Licensee shall ensure that all persons who are from time to time the Beneficial Owners, directors and principal officers of Licensee shall execute and comply with Budget's then current Standard Nondisclosure and Non-competition Agreement.  The current form of Nondisclosure and Non-competition Agreement is set forth in **Schedule 8** attached hereto.  Licensee agrees that if Budget so instructs, it shall at its own expense prosecute an action to enforce the terms of such Agreement and shall comply in all respects with Budget's instructions from time to time with regard to the prosecution of such action.

**12.7    Personal Guarantee.**  Licensee shall ensure that all persons who are from time to time the Beneficial Owners of Licensee (other than persons referred to in 12.2 (c) above) shall execute and comply with Budget's then current standard Personal Guarantee.  The current form of Personal Guarantee is set forth in **Schedule 9.**

62

**JA497**

# ARTICLE XIII

# GENERAL CONDITION AND PROVISIONS

**13.1**      **Titles and Preambles.**

(a)      **Titles.** Section and paragraph titles are used for convenience only and are not a part of the text hereof.

(b)      **Preambles.** The preamble recitals are incorporated in and made a part of this Agreement.

**13.2**      **Entire Agreement; Failure To Exercise Rights Not To Be A Waiver**

(a)      In this clause the expression "**Pre-Contractual Statements**" includes written or oral pre-contractual statements or agreements, financial statements, profit projections, representations, warranties, inducements or promises made innocently or negligently.

(b)      Licensee's waiver contained in this clause shall be irrevocable and unconditional but it is expressly provided that such waiver shall not exclude any liability of Budget for Pre-Contractual Statements made by it fraudulently.

(c)      Licensee acknowledges that it has been

(i)      Told that if there are any Pre-Contractual Statements which it considers have been made to it which would have induced it to enter into this

63

Agreement it is obliged to submit particulars thereof to Budget so that any misconceptions or misunderstandings can be resolved after which an agreed form of Pre-Contractual Statements on which Licensee has relied may be annexed to and form part of this Agreement

(ii)    Given the opportunity to provide to Budget particulars of such Pre-Contractual Statements which it considers have been made to it which would induce it to enter into this Agreement and agrees that it shall be deemed not to have relied upon any Pre-Contractual Statements made or given or purportedly made or given by Budget unless such a written statement is annexed hereto.

(d)    This Agreement and its schedules, the Umbrella Agreement of even date entered into between the parties the airport concession agreement annexed to this Agreement and any other correspondence relating to the subject matter of this Agreement executed by the parties, therefore contains the entire agreement between the parties and accordingly no Pre-Contractual Statements shall add to or vary this Agreement or be of any force or effect unless such Pre-Contractual Statements are either contained in this Agreement or in an annexure.  Licensee waives any right it may have to sue for damages and/or rescind this Agreement.

(e)    No failure of Budget to exercise any power given to it under this Agreement or to insist upon strict compliance by Licensee with any obligation and no custom or

64

practice of the parties at variance with the terms of this Agreement shall constitute waiver of any of Budget's rights under this Agreement. A waiver of Budget's rights hereunder will only be valid if expressly stated in a writing executed by a duly authorised representative of Budget.

(f)     Waiver by Budget of any particular default by Licensee shall not affect or impair Budget's rights in respect of any subsequent default of any kind by Licensee nor shall any delay or omission of Budget to exercise any rights arising from any default of Licensee affect or impair Budget's rights in respect of the said default or any other default of any kind

**13.3     Licensee an Independent Contractor; Budget Does Not Control Licensee**

(a)     Licensee an Independent Contractor. Licensee is an independent contractor and is not the agent, joint venturer, partner or employee of Budget and, except as expressly provided herein, Budget shall not be obligated by any agreements, representations or warranties made by Licensee to any person, nor with respect to any other action of Licensee, nor shall Budget be obligated for any damages to any person, whether caused by Licensee's action, failure to act, negligence, or wilful conduct.

(b)     Budget Does Not Control Licensee. Budget does not reserve control over Licensee or any of its owners, officers or employees, nor shall Budget have any control over the employment, discharge, compensation or working conditions of any owner, director or employee of Licensee.

65

JA500

**13.4     Power of Attorney.** In order to secure the performance of Licensee's obligations under this Agreement, Licensee hereby irrevocably appoints Budget as its attorney for the purposes of executing, signing, perfecting, doing and (if required) registering every such further assurance, document, act or thing as is required to cause discontinuation of Licensee's use of the Budget Trademarks or any other related or similar name or use hereunder and to fulfil the other post-termination obligations of Licensee hereunder, including assignment of telephone numbers, facsimile/electronic communication lines and airport concession agreements.   The exercise by Budget of such power shall be conclusive evidence of its right to exercise the same. Licensee shall enter into and execute any other document which may be necessary to give effect to this provision.

**13.5     Indemnification of Budget by Licensee.**  Licensee agrees to protect, defend, indemnify and hold harmless Budget and the Related Entities and their stockholders, directors, officers, agents, employees, successors and assigns from and against any and all claims, demands, actions, liabilities, damages, losses, costs and expenses (including reasonable attorney's fees and court costs) incurred by any of the aforesaid parties arising directly or indirectly from Licensee's operation of its BRAC business and or from any breach of any of the terms of this Agreement.  Licensee agrees that the indemnified party may approve the attorney chosen by Licensee to represent the indemnified party's interest pursuant to Licensee's obligations hereunder, which approval will not be unreasonably withheld and that it will keep the indemnified party informed of the progress of the defense.  Licensee agrees an indemnified party will have the right, through counsel of its choice, to control and defend any matter and that, in

66

**JA501**

such event, Licensee will protect, indemnify and hold harmless the indemnified party in accordance with this paragraph.

13.6    **Gender and Number.**    All terms used in any one number or gender shall extend to mean and include any other number and gender as the facts, context, or sense of this Agreement or any paragraph or section hereof may require

13.7    **Acknowledgements As To Advice Given And Other Matters**

(a)    Licensee acknowledges that Budget in giving advice to and assisting Licensee in establishing the BRAC business (including recommending equipment and materials, site selection, and the assessment of the suitability of Licensee) bases its advice and recommendations on experience actually obtained in practice and is not making or giving any representations, guarantees or warranties except that its advice is based upon such previous experience.

(b)    Licensee acknowledges that it has been advised by Budget to discuss its intention to enter into this Agreement with other licensees of Budget and its business advisors and that it must decide on the basis of it own judgement and investigation whether or not to enter into this Agreement.

67

JA502

(c)    Licensee further acknowledges that it recognises that the business venture contemplated by this Agreement involves business risks and that its success will be dependent upon Licensee's ability and commitment as an independent business entity

(d)    Except where the context otherwise requires each of the restrictions contained in this Agreement and in each paragraph shall be construed as independent of every other restriction and of every other provision of this Agreement and the existence of any claim or course of action by Licensee against Budget whatsoever shall not constitute a defence to the enforcement by Budget of any of the said restrictions.

(e)    It is expressly agreed between the parties hereto that having regard to the recitals and other provisions of this Agreement each of the restrictive covenants contained in this Agreement and in each paragraph is reasonably necessary for the protection of BRACC's and Budget's intellectual property rights and of the Network and does not unreasonably interfere with the freedom of action of Licensee.

(f)    In order to enable Budget to ascertain whether Licensee is complying with the obligations imposed upon it under this Agreement and in order to enable Budget to enforce rights given to it by this Agreement, Budget may at any time enter the premises of Licensee's BRAC business without any other consent of Licensee save this consent which Licensee gives and agrees not to revoke

68

**JA503**

**13.8     Governing Law.**  Licensee agrees that this Agreement has been accepted by Budget in England and in order to effect uniform interpretation of all Network license agreements, it and all other related documents thereto will be governed and construed under and in accordance with the laws of England other than those relating to conflict of laws.

**13.9     Consent To Jurisdiction.**  Licensee agrees that Budget may institute any legal action or proceedings against it arising out of or relating to this Agreement, including the Standards in any court in England and Licensee irrevocably submits itself and its property to the jurisdiction of such courts in any action or proceeding and waives any objection or defenses it may have to either the jurisdiction or venue of such courts.  Nothing herein shall affect Budget's right to commence legal proceedings or otherwise proceed against Licensee in any other jurisdiction.

**13.10     Additional Remedies of Budget.**  In addition to all of the remedies granted to granted to Budget by this Agreement, Budget shall have the right to bring suit against Licensee, for actual damages sustained by Budget, caused by the breach of any one or more of any of the provisions of this Agreement or the Standards, and for such injunctive and other equitable relief as may be appropriate.  Further, Budget shall have the right to bring suit against Licensee's partners, shareholders, and officers, as applicable, for actual damages sustained by Budget and caused by the breach, by any one or more of them, of any provisions of this Agreement which they have personally undertaken by reason of any supplemental agreement or addenda hereto, and for such injunctive and other equitable relief as may be appropriate.  Budget shall be entitled to its costs and reasonable attorney's fees and expenses in any such proceeding or action.

69

**13.11** **Waiver of Punitive Damages.** Except with respect to Licensee's obligation to indemnify Budget pursuant to **Paragraph 13.5** of this Agreement, the parties waive to the fullest extent permitted by law any right to or claim for any punitive or exemplary damages against the other and agree that, in the event of a dispute between them, the party making a claim shall be limited to recovery of any actual damages it sustains.

**13.12** **Set Off.** Where in this Agreement there is a requirement on the part of Licensee to make payment without right of deduction or set off Licensee shall be entitled to make a deduction or set off in respect of undisputed liquidated sums owing by Budget to Licensee including credits given or to which Licensee may be entitled in respect of defective goods supplied by Budget or under the terms of any written agreement between Budget and Licensee. In particular Licensee acknowledges that the provisions of this Agreement relating to the limits on Licensee's right to make deductions or set offs (to which it may claim to be entitled) against payment of any sums due to Budget or the Related Entities including Royalty Fees, Service Fees and Marketing Fund Fees are fair and reasonable. Licensee recognises that its failure or refusal to make payments of such fees because of its dissatisfaction with Budget's performance may result in its continued involvement in the BRAC business being subsidised by other licensees who make payment of such fees and contributions. It also recognises that its failure to pay such fees and contributions may adversely and materially affect the provision of services to licensees who operate the BRAC businesses. Licensee accepts that the remedies available to it which are not affected by the set off or deduction provisions of this Agreement are

70

sufficient for its purposes including as they do a right to sue for damages and if appropriate acceptance of any repudiatory conduct on the part of Budget

**13.13    Business to be Conducted in a Lawful Manner.**  Notwithstanding anything contained herein to the contrary, Licensee shall conduct its BRAC business and maintain and service its equipment in a lawful manner and so as not to cause BRACC or Budget to violate any law or regulation of the United States or the Licensed Territory or the state/provincial, city and/or other political subdivisions in which it conducts its BRAC business.

**13.14    Severability.**

(a)    If any term or provision or any part thereof (in this paragraph called the "Offending Provision") of this Agreement shall be declared or become unenforceable invalid or illegal for any reason whatsoever-including a decision by any competent court, tribunal or other competent authority or by reason of any statute or other by-laws or regulations or any other requirements having the force of law, the other terms and provisions of this Agreement shall remain in full force and effect as if this Agreement had been entered into without the inclusion of the Offending Provision.

(b)    In the event that the exclusion of any Offending Provision shall adversely affect Budget's right to receive payment of the License Purchase Fee, Service Fees, Royalty Fees, Marketing Fund Fees or remuneration by whatever means payable to Budget (including Budget's right to supply or nominate or approve suppliers or materially and/or adversely affect the Budget Trademarks, Budget's trade secrets, know-how, methods, the Standards or the System), including

71

the services provided then Budget shall have the right to terminate this Agreement upon thirty (30) days written notice to Licensee.

13.15    "Licensee". The term "Licensee" as used in this Agreement shall mean each person executing this Agreement as Licensee and shall apply to each such person as if such person were the only named Licensee in this Agreement. If Licensee is a corporation, limited liability company, partnership, proprietorship or any other approved entity or if more than one person executes this Agreement as Licensee, each shareholder, partner, owner or person executing this Agreement shall be jointly and severally liable for all obligations and duties of Licensee hereunder. If Licensee is a trust, each trustee or beneficiary signing this Agreement shall be jointly and severally liable for all obligations and duties of License hereunder. Notice to or demand upon one Licensee shall be deemed notice to or demand upon all Licensees.

13.16    Meaning of "Person"/"Affiliate". The term "person", as used in this Agreement and the Standards, shall mean all natural and legal persons, including without limitation, corporations, partnerships, sole proprietorships, joint ventures, and other business associations and trusts. The term "affiliate" as used in this Agreement and the Standards shall mean any entity controlled by or under common control of any such person.

13.17    Meaning of Term "Include" and "Including". The terms "include" and "including" as used in this Agreement or the Standards shall mean "including without limitation," unless the context requires otherwise.

72

**13.18    Meaning of "Beneficial Owners".**

(a)    The term **"Beneficial Owners"** as used in this Agreement and the Standards shall mean all persons owning a direct or indirect legal or beneficial ownership interest in any sole proprietorship, partnership, joint venture, shareholder or other ownership interests (including de facto control or as shadow directors) in the Licensee and shall include such persons who own any such interest in any parent company of the Licensee or any company which is a member of the same Group as that of which Licensee is a member.

(b)    In this Agreement the term **"Group"** in relation to a body corporate, means the body corporate, any other body corporate which is its ultimate holding company or subsidiary and any other body corporate which is a subsidiary of that holding company or a subsidiary of any subsidiary of that holding company.

**13.19    Meaning of "Budget Trademarks"** shall include all and any elements thereof in any form.

**13.20  Meaning of Goodwill.**  In this Agreement the term "Goodwill" includes:

(a)    The goodwill and all rights in and associated with or arising from BRACC's and Budget's copyright material, the System, the Operating Manual, the Standards, the Budget Trademarks and any other intellectual property rights of BRACC and Budget.

(b)    Any additional goodwill generated from their use and/or exploitation in the BRAC business by Licensee and/or the Network.

73

13.21    **Exhibits.**  All exhibits to this Agreement and the Standards as modified from time to time are incorporated herein by their reference and are to be read as if they are a part of this Agreement.

13.22    **Notices.**  All written notices permitted or required to be delivered by the provisions of this Agreement or the Standards shall be delivered by hand, by telecopy or other electronic system, by commercial courier service, or by Registered or Certified Mail, Return Receipt Requested, or such other similar service as may be available postage prepaid and addressed to Budget at 41 Marlowes, Hemel Hempstead, Hertfordshire HP1 1XJ, England or to such address as Budget made from time to time notified to _____, marked for the attention of the Managing Director and the Vice President of Franchising, with a copy, similarly served, to Mr R Aprati, Senior Vice President and Chief Counsel, Budget Group Inc. 4225 Naperville Road, Lisle, ILLINOIS 60532-3662, USA, or to such other address as Budget shall prescribe in the Standards, and addressed to Licensee at the latest current business address of which Budget has received at least fifteen (15) days prior written notice.

13.23    **Payment of Obligations.**   Licensee shall pay when due all obligations to Budget and the Related Entities, other System members, and other creditors of Licensee incurred by Licensee in the operation of its BRAC business.

13.24    **Disclosure.**  Where the law of the Licensed Territory requires that there be pre-contract disclosure to Licensee, Licensee acknowledge that such disclosure has been made in

74

accordance with applicable law and that it has taken appropriate legal and other advice thereon before signing this Agreement

13.25    **Parole Evidence Disclaimer.**    This Agreement may not be modified or amended except by written agreement signed by duly authorised representatives of the parties. The words "this Agreement" as used in this Agreement and the Standards shall mean any such future modifications unless otherwise indicated by the context. No salesperson, representative or other person has the authority to bind or obligate Budget in any way, except by an instrument in writing duly executed by a Vice President or President of Budget.

13.26    **Governing Language.**    This Agreement and the Standards originally will be written and executed in the English language, and all questions of interpretation of this Agreement or the Standards shall be resolved by reference to the same as written in English. The Language of communication between the parties shall be English.

75

JA510

**BUDGET RENT A CAR INTERNATIONAL INC.**

By:_____

President and Chief Executive Officer

**ATTEST:**

By: _____

Its: Vice President of Franchising

**LICENSEE:**

By:    _____

**Print/Type Name:**

Its:

**ATTEST:**

____

By: _____

76

JA511

## ACKNOWLEDGEMENT

Licensee on behalf of itself, the Group Companies and its and their Beneficial Owners acknowledges that it has been advised by Budget to, and has had the opportunity to, obtain independent legal and business advice before executing this Agreement and any other related agreements, that it is fully aware of their provisions, has carefully read and understood the contents of this Agreement and any related agreements, accepts that all their provisions are fair and reasonable in all the circumstances known to or in the contemplation of Budget and Licensee as at the date of this Agreement and that it intends to comply with and be bound by all their provisions.

**LICENSEE:**

By:_____

**Print/Type Name:**

Its:

77

**JA512**

## SCHEDULE 1

## BASIC TERMS

1.  Vehicles:  Licensee is authorised to offer for rental only the following types of Vehicles:

    Cars, Vans and Trucks (G.V.W. in excess of 3.5 tonnes)

2.  License Purchase Fee (Paragraph 7.1):

    £1

3.  Payment of License Purchase Fee:

    On completion.

JA513

4.    Marketing Fund Fees (Paragraph 7.2), Service Fees and Royalty Fees (Paragraph 7.3)

| Short Term Car Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

| Short Term Van Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

| Short Term Truck Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

| Long Term Rental | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 & thereafter |
|---|---|---|---|---|---|
| Licensee "Required Local Expenditure" Marketing | | | | | |
| Service/Royalty Fee | | | | | |
| Marketing Fund Fee | | | | | |

**Licensee:**                    **Licensee Signature:** _____

5.    Date for Commencement of Operations:

6.    Grand Opening Advertising Expenditure

6.    General Manager:
       Address:

8.    Beneficial Owners of Licensee:
       **Name:**
       Address:

2

**JA514**

## SCHEDULE 2

## LICENSED TERRITORY

3

JA515

## SCHEDULE 3

## MARKETING/CUSTOMER SERVICE PROGRAMS

1. Go Budget

2. CorpRate

3. International Traveller

4. International Reservations Incentive Scheme (IRIS)

5. Budget Credit Card and Voucher Interfacing (CCI)

6. International Reservations System

7. Computer Reservations System (CRS)/Global Distribution Systems (GDS)

8. Travel Agent Reservation Program

9. One Way Rental Program

10. The Budget Approved Computerised Rental Transaction System

11. Tour Operator/Broker/Wholesaler Airline Programs

12. Fastbreak and Perfect Drive

JA516

**SCHEDULE 4**

**MINIMUM ANNUAL SERVICE FEES**

| Time Period | Aggregate Amount |
|---|---|
| 1st March 2001 to 28th February 2002 | £ |
| 1st March 2002 to 28th February 2003 | £ |
| 1st March 2003 to 28th February 2004 | £ |
| 1st March 2004 to 28th February 2005 | £ |
| 1st March 2005 to 28th February 2006 | £ |
| 1st March 2006 to 28th February 2007 | £ |
| 1st March 2007 to 28th February 2008 | £ |
| 1st March 2008 to 28th February 2009 | £ |
| 1st March 2009 to 28th February 2010 | £ |
| 1st March 2010 to 28th February 2011 | £ |

1

JA517

### SCHEDULE  5

### RENTAL OFFICE REQUIREMENTS

<u>Local Market Descriptions</u>                                <u>Date to be Opened</u>

                                                                      Not applicable

<u>Airport Descriptions</u>                                    <u>Dates to be Opened</u>

1

JA518

## SCHEDULE 6

## VEHICLE REQUIREMENTS

1.    Vehicles as of Date of Commencement of Operations:

Number of Cars:

Number of Trucks:

Number of Vans:

2.    Market Penetration Quotas

| Automobile Penetration | No. |
|---|---|
| From 1st March 2001 to 28th February 2002 | |
| From 1st March 2002 to 28th February 2003 | |
| From 1st March 2003 to 28th February 2004 | |
| From 1st March 2004 to 28th February 2005 | |
| From 1st March 2005 to 28th February 2006 | |
| From 1st March 2006 to 28th February 2007 | |
| From 1st March 2007 to 28th February 2008 | |
| From 1st March 2008 to 28th February 2009 | |
| From 1st March 2009 to 28th February 2010 | |
| From 1st March 2010 to 28th February 2011 | |

**Truck Penetration**                                           <u>No.</u>

From 1st March 2001 to 28th February 2002

From 1st March 2002 to 28th February 2003

From 1st March 2003 to 28th February 2004

From 1st March 2004 to 28th February 2005

From 1st March 2005 to 28th February 2006

From 1st March 2006 to 28th February 2007

From 1st March 2007 to 28th February 2008

From 1st March 2008 to 28th February 2009

From 1st March 2009 to 28th February 2010

From 1st March 2010 to 28th February 2011

**Van Penetration**                                            <u>No.</u>

From 1st March 2001 to 28th February 2002

From 1st March 2002 to 28th February 2003

From 1st March 2003 to 28th February 2004

From 1st March 2004 to 28th February 2005

From 1st March 2005 to 28th February 2006

From 1st March 2006 to 28th February 2007

From 1st March 2007 to 28th February 2008

From 1st March 2008 to 28th February 2009

From 1st March 2009 to 28th February 2010

From 1st March 2010 to 28th February 2011

2

JA520

## SCHEDULE 7

## CONTINGENT ASSIGNMENT OF AIRPORT CONCESSION AGREEMENT

This Contingent Assignment of Concession Agreement ("Agreement") is made this ____th

day of _____, 2001 by and among the following parties:

**CONCESSIONAIRE:**

**LICENSEE:**

**BUDGET:**          Budget Rent a Car International of 41 The Marlowes, Hemel

Hempstead, Hertfordshire, HP1 1XJ

**RECITALS:**

**WHEREAS,** Under the terms of the Concession Agreement (the **"Concession"**) attached

hereto as **Exhibit A,** Concessionaire has agreed to lease to Licensee certain premises (the

**"Premises"**) located at the following address:

1

WHEREAS, Licensee has accepted the Premises as a suitable location for Licensee's BRAC business, subject to the provisions of the License Agreement and further subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, including the acceptance by Licensee of the Premises as a location for a BRAC business, the parties hereby agree as follows:

1.    Use of Premises.  Licensee shall use the Premises only for the operation of a BRAC business pursuant to its License Agreement with Budget, and for no other purposes whatsoever.

2.    Signage, Etc.  Concessionaire hereby consents to Licensee's use and display on the Premises of such exterior and interior signs, posters, promotional materials, and equipment, furnishings, and decor as are currently required by Budget pursuant to the License Agreement. In the event that such requirements are changed in the future, Concessionaire agrees that it will not unreasonably withhold its consent to Licensee's compliance with such changes.  In the event that local ordinances or zoning requirements prohibit the use of Budget's standard signage, Budget will not unreasonably withhold its consent to the modification of its standard signage to comply with such requirements.

3.    Notices.  Concessionaire agrees to furnish Budget copies of any and all letters and notices to Licensee pertaining to any default by Licensee under the Concession at the same

2

time and in the same manner as any such notice is sent to Licensee. Licensee agrees to furnish Budget prompt written notice of any and all amendments, waivers, extensions, renewals or other modifications of the Concession. All notices hereunder shall be mailed or delivered to the addresses set forth above, unless changed from time to time by any party through written notice mailed or delivered to the other parties.

4.    **Assignment.** Concessionaire hereby acknowledges that Licensee has agreed under the License Agreement that, in the event of termination, for any reason, or Licensee's default under the Concession, Licensee shall, at Budget's option, assign to Budget any and all interest of Licensee in the Concession, including any rights to renew the Concession or to sublease the Premises; and Concessionaire hereby consents to such assignment, subject to the following conditions:

(a)    Budget shall notify Concessionaire in writing within thirty (30) days after termination or expiration of the License Agreement or Budget's receipt of any notice of default by Licensee under the Concession if Budget elects to accept assignment of the Concession; Budget's failure to accept assignment of the Concession upon any default of Licensee under the Concession shall not be deemed a waiver of Budget's future right to accept such assignment in the event of any future default of Licensee;

(b)    If Budget elects to accept assignment of the Concession, Budget shall execute and deliver to Concessionaire a concession containing the same terms and conditions (including concession fees) as the Concession; provided, however, that

3

Budget's concession interest shall not be subject to any defaults or claims that may exist between Concessionaire and Licensee.

(c)    If Budget elects to accept assignment of the Concession, Budget shall take possession of the Premises within thirty (30) days after notice of such election to Concessionaire;

(d)    Nothing herein shall affect Concessionaire's right to recover from Licensee any and all amounts due under the Concession or to exercise any rights of Concessionaire against Licensee as provided under the Concession nor shall Budget be responsible for Licensee's default under the Concession.

5.    **Assignment To Third Party.**  At any time after giving notice of its election to accept assignment of the Concession, Budget may request to assign its concession, or sublease the Premises, to a third party.  Concessionaire agrees not to unreasonably withhold its consent to any such assignment or sublease on the same terms as the Concession; provided, however, that if Concessionaire refuses to consent to such assignment or sublease by Budget, Budget shall have the right to revoke its acceptance of assignment of the Concession and shall have no further obligations thereunder.

6.    **Entry By Budget.**  Concessionaire and Licensee hereby acknowledge that Licensee has agreed under the License Agreement that Budget and its employees or agent shall have the right to enter the Concession operated by Licensee at the Premises at any reasonable

4

JA524

time for the purpose of conducting inspections, protecting Budget's trademarks, trade names, logos and similar proprietary interests, and correcting deficiencies of Licensee. Concessionaire and Licensee hereby agree not to interfere with or prevent such entry by Budget, its employees or agents.

7.     De-Identification.  Concessionaire and Licensee hereby acknowledge that in the event the License Agreement expires or is terminated, Licensee is obligated under the License Agreement to take certain steps to de-identify the location as a "Budget" business operated by Licensee.  Concessionaire agrees to co-operate fully with Budget in enforcing such provisions of the License Agreement against Licensee, including allowing Budget, its employees and agents to enter the Premises and remove signs, decor and materials bearing or displaying any marks, designs or logos of Budget; provided, however, that Concessionaire shall not be required to bear any expense thereof.  Licensee agrees that if it fails to de-identify the Premises promptly upon termination or expiration as required under the License Agreement, Budget may cause all required de-identification to be completed at Licensee's expense.

8.     General Provisions.

(a)     This Agreement shall be binding upon the parties hereto and their successors, assigns, heirs, executors, and administrators.

(b)     Any party hereto may seek equitable relief, including without limitation, injunctive relief or specific performance, for actual or threatened violation or

5

non-performance of this Agreement by any other party. Such remedies shall be in addition to all other rights provided for under law or other agreements between any of the parties. The prevailing party in any action shall be entitled to recover its legal fees together with court costs and expenses of litigation.

(c)    Nothing contained in this agreement shall affect any term or condition in the License Agreement between Licensee and Budget. Nothing herein shall be deemed to constitute a guaranty or endorsement by Budget of the terms and conditions of the Concession between Concessionaire and Licensee. In the event that Budget, in its sole discretion, determines not to accept assignment of the Concession as permitted hereunder, neither Concessionaire nor Licensee shall have any claims against Budget. No terms or conditions contained in the Concession shall be binding on Budget unless it elects to accept assignment of the Concession hereunder.

6

JA526

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


**BUDGET:**          Budget Rent a Car International

41 The Marlowes, Hemel Hempstead, Hertfordshire HP1 1XJ


By:_____

Its:_____

Date:_____


**CONCESSIONAIRE:**


By:_____

Its:_____

Date:_____


**LICENSEE:**


By:_____

Its:_____

Date:_____


7

JA527

**SCHEDULE 8**

**NONDISCLOSURE AND NONCOMPETITION AGREEMENT**

**(Prime Licensee)**

In consideration of the execution by Budget Rent a Car International, Inc. of a Prime License Agreement or a Consent Agreement for the Assignment of a therein identified Prime License Agreement ("**Prime License Agreement**"), and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned, being the ultimate Beneficial Owners, Directors and Principal Officers of _____d/b/a Budget Rent a Car _____ (the Licensee) do hereby agree with Budget Rent a Car International Inc. and the Licensee to individually and jointly comply with and be bound by as their personal obligations all provisions mutatis mutandis (ie. after making the necessary changes) of the Prime License Agreement in any way related to non-disclosure and non-competition, including without limitation, to **Paragraphs 2.4 and 11.9**, which for the sake of convenience are set forth below.

This Nondisclosure and Non-competition Agreement shall be executed by all persons and other legal entities who are now and who shall from time to time be such ultimate Beneficial Owners, Directors and Principal Officers of the Licensee and relevant Group Companies (as defined in the Prime License Agreement, and the execution hereof by all such persons and legal entities shall be the responsibility of the undersigned.

JA528

### 2.4    Nondisclosure.

2.4.1    Licensee acknowledges, warrants and agrees that save pursuant to an agreement with Budget entered into prior to the execution of this Agreement or as disclosed in writing and annexed to this Agreement and signed by the parties hereto it has no prior knowledge of, no part in the creation or development of, and no proprietary or other rights or claims in or to any element of the BRAC business, the System or the Budget Trademarks, and had no prior knowledge of the System or how to operate a business similar to the BRAC business or how to conduct the BRAC business and that all materials loaned or otherwise made available to Licensee and all disclosures made to Licensee by or at the direction of Budget, and not to the general public at any time before or during the term of this Agreement including the contents of the Operating Manual and the Standards, current and prior research, development test programs and any marketing, advertising and promotional programs, are communicated and made available confidentially and as trade secrets and that the copyright in the Operating Manual and all other documents and materials relating to the System vest solely in BRACC and/or Budget. The System results from experience and testing by Budget and/or BRACC, is not generally known or easily accessible and is important to Licensee, the Network, Budget and BRACC for the sale of goods and services to customers of BRAC businesses.    Licensee shall make all reasonable efforts to maintain the confidentiality of the above described documents and information, including, during the term of this Agreement and thereafter, Licensee shall not reproduce, exhibit, remove from its place of business or disclose to any person (other than its partners, shareholders, officers and employees on a need to know basis and after ensuring their commitment to confidentiality), and shall not use or disclose for any purpose other than operation of the BRAC business authorised hereunder, the Operating Manual, the System or any

2

JA529

other confidential element of, or information relating to the System. Licensee acknowledges and agrees that the foregoing are trade secrets of significant commercial value to BRACC and Budget, in which BRACC and Budget have made a substantial investment and have a legitimate right to protect against unlawful disclosure.

2.4.2    **Exclusive Relationship.** Licensee agrees that BRACC and Budget would be unable to protect confidential information against unauthorised use or disclosure or use by a competitor of Budget, BRACC and any BRAC business and would be unable to encourage a free exchange of ideas and information among BRAC businesses and between Licensee and Budget if Licensee, its Beneficial Owners or persons related to Licensee or its Beneficial Owners were permitted to be engaged, concerned or interested (whether directly or indirectly) as an owner, partner, financier, director, officer, employee, consultant, agent or in other capacity in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others. Accordingly, unless Budget provides prior written consent to the contrary, Licensee agrees that it and that it will procure that each of the companies in the Group of which Licensee is a member and their Beneficial Owners, and the Licensee's principal officers and directors will not, during the term of this Agreement, be engaged, concerned or interested, (whether directly or indirectly), as an owner, partner, financier, director, officer, employee, consultant, agent or in any other capacity in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other

3

JA530

entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others.

2.4.3.1    Licensee undertakes not directly or indirectly to solicit or tout for business from any person who was during the period of two years prior to termination of this Agreement a regular customer of or in the habit of dealing with the BRAC business of Licensee.

2.4.3.2    Licensee acknowledges that its failure to adhere to the provisions of this **Paragraph 2** will constitute unfair competition to Budget, BRACC and the Network and Licensee further acknowledges the difficulty of accurately determining the tangible and intangible damages which Budget, BRACC and the Network will suffer if Licensee fails or refuses to adhere to the provisions of this **Paragraph 2.4** and accordingly, Licensee and Budget agree:

2.4.3.3    To entry without prior notice, to the extent that applicable notice requirements may be waived, of temporary and permanent injunctions against Licensee's breach of such provisions. Licensee agrees to pay to Budget an amount equal to the aggregate of Budget's costs of obtaining any such temporary and permanent injunctive relief, including all costs of investigation and proof of facts, court costs and attorney's fees.

4

2.4.3.4    In any proceeding either at law or in equity between the parties, Licensee hereby agrees that it has waived and shall not be entitled to raise as a defence either that: (1) the period of time or geographical area within which Licensee is prohibited from competition is unfair, unnecessary or unreasonable; or (2) that such provisions are an unlawful restraint of trade.

**11.9    Post-term Non-competition.** In order to prevent the System from directly or indirectly benefiting competitors the Licensee, all Companies within the Group of which Licensee is a member and their Beneficial Owners and persons related to Licensee and its Beneficial Owners shall not, for a period of twelve (12) months after the termination of this Agreement for any reason whatsoever, either directly or indirectly be engaged concerned or interested in as an owner, financier, partner, director, officer, employer, consultant, agent or in any other capacity, in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others. Licensee acknowledges that its failure to adhere to this provision will constitute unfair competition to Budget and the Network. Licensee further acknowledges the impossibility of accurately determining the tangible and intangible damages which BRACC, Budget and the Network will suffer if Licensee fails or refuses to adhere to this provision or the provisions of **Paragraph 2.4** hereof and accordingly agrees to entry without prior notice, to the extent that applicable notice requirements may be waived, of temporary and permanent injunctions and

5

**JA532**

other available governmental or administrative remedies against Licensee's breach of such

provisions and Licensee further agrees to pay to Budget an amount equal to the aggregate of

Budget's costs of obtaining any such temporary and permanent injunctive relief or governmental

or administrative remedies, including all costs of investigation and proof of facts, court costs and

attorney's fees.  If any proceeding either at law or in equity between the parties, Licensee hereby

agrees that it has waived and shall not be entitled to raise as a defence either that: (1) the period

of time or geographical area within which Licensee is prohibited from competition is unfair or

unnecessary or unreasonable; or (2) that such provisions are an unlawful restraint of trade.

3

**SIGNATURE OF BENEFICIAL OWNERS**          **SIGNATURES    OF    PRINCIPAL OFFICERS**

_____ %          _____

_____          _____

_____          _____


**SIGNATURE OF DIRECTORS**


_____

**SIGNATURE OF OTHER RELEVANT PARTIES**

6

## SCHEDULE 10

## REQUIREMENTS FOR OFFERINGS OF SHARES OR OTHER SECURITIES

1.1     The following constitute Budget's requirements in principle in order to approve an offering of shares or other securities in Licensee or any Group Company, subject to the provisions of applicable company and securities laws.

1.2     Licensee agrees for itself and for any Group Company to procure that its officers, directors, agents and representatives and those of any Group Company will enter into any agreement, sign any undertaking or document and take any actions including amendment of the articles of association and shareholders' resolutions and to take the management decisions as are necessary or desirable in order to accomplish and give effect, in all material respects, to Budget's requirements under this Schedule 10 before any proposed offering of any shares or other securities in the Licensee or any Group Company may proceed.

1.3     Prior to such offering of shares or other securities, Licensee shall submit to Budget all of the following:

1.3.1     all locally required prospectuses and other documentation as required by applicable law, regulation and procedure and other documents connected with the offering of shares or other securities, along with an English translation of such documents, if appropriate, including but not limited to all documents which refer to the relationship of Licensee and any Group Company with Budget and its

1

Related Entities, to its or their right to use the "Budget" name and to the ownership of the Budget Trade Marks ("Offering Documentation") and other similar information in order that Budget can consider approving the terms of the references therein to such matters;

1.3.2   a statement identifying the complete Licensee ownership and capitalisation structure of Licensee and Group Companies prior to, and as proposed under the offering of shares or other securities;

1.3.3   the then most recent financial statements of Licensee and Licensee's Group Companies certified by their Chief Financial Officer as being accurate, correct and complete in all material respects;

1.3.4   payment of all outstanding amounts due to Budget and its Related Entities arising from the operation of Licensee's BRAC businesses as at the end of the month prior to the proposed date of the offering of shares or other securities; and

1.3.5   copies of Licensee's articles of association (statutes) and other corporate documents (including but not limited to shareholders' agreements and voting agreements) which conform in all material respects with the description thereof in the Offering Documentation.

1.4   Notwithstanding the offering of shares or other securities the Beneficial Owners at any time after the offering of such shares or other securities shall retain the ability both to control the operation of Licensee's BRAC business and to determine (without consent of the other shareholders of Licensee or any Group Company) the outcome of any corporate

2

JA535

transaction or other matter submitted to the Board of Directors or shareholders of Licensee or any Group Company for approval, including without limitation, mergers, consolidations, and sales of all or substantially all of the assets of Licensee or any Group Company, and to prevent or cause a change in control of Licensee or any Group Company, all of which may require that the articles of association of Licensee or any Group Company are amended to contain adequate provisions to the satisfaction of Budget which are designed to ensure the above.

1.5   None of the license agreements of Licensee or any Group Company ("**License Agreements**") will be pledged as security for any purpose or otherwise be subject to transfer, sale or assignment to a creditor of Licensee or any Group Company.

1.6   Licensee will incorporate any changes reasonably requested by Budget in the Offering Documentation and otherwise provide satisfactory answers to questions Budget may have regarding the information provided by Licensee or otherwise contained in the Offering Documentation.   In this regard, the Offering Documentation shall, as reasonably determined by Budget, fairly and accurately reflect:

(a)   the corporate position of Licensee as part of the structure of the Group Companies;

(b)   the Licensee's status as an independently owned and operated licensee of the Budget System

3

(c) any and all other facts and circumstances referred to in the Offering Documentation; and

(d) indeed the requirements of this Schedule, to the extent relevant for any third party becoming a shareholder of Licensee or any Group Company as a consequence of the offering of shares or other securities.

1.7 Budget's review and approval of the proposed Offering Documentation shall not in any way be viewed as Budget's participation in or approval of the issuance or offer of shares or other securities in Licensee or any Group Company; as a confirmation, approval or verification by Budget that the documents or their representations and warranties are complete or correct in any respect; that the terms thereof are fair or reasonable; that the purchase of shares or other securities in Licensee or any Group Company is a good investment; or, that purchasers of shares or other securities in Licensee or any Group Company will earn a profit on their investment. Further, Licensee shall ensure that all of the aforesaid is clearly and conspicuously set forth in the Offering Documentation and communicated to all relevant third parties during the preparation and dissemination of the Offering Documentation.

1.8 Licensee will indemnify, defend and hold Budget and its Related Entities, their successors, assigns, officers, directors, employees, agents and representatives ("Related Parties") harmless from and against any claim, action, cost or liability, including but not limited to, costs and lawyers' fees made against or incurred by Budget, its Related Entities, or its Related Parties, for or on account of any alleged violation of law or regulation or damage or liability to any third party caused by the action, inaction,

4

negligence or wilful misconduct of Licensee or any Group Company, the Beneficial Owners or the officers, directors, agents, representatives or employees of Licensee or any Group Company in connection with the offering of shares or other securities or the Offering Documentation, including but not limited to the information contained in the Offering Documentation.

5

JA538

# SCHEDULE 6

### Personal Guarantee

JA539

## PERSONAL GUARANTEE

This Guarantee is made this **5** day of **MARCH**, 2001, by and between Budget Rent a Car International, Inc. ("**Budget**"), and the person whose name and address are set out below (the "Guarantor").

**NOW IT IS HEREBY AGREED** as follows: -

1.    Any words and expressions which are defined in the Licence Agreements shall have the same meaning in this Guarantee save where the context otherwise requires.   In addition, the following words shall have the following meanings: -

"**Audited Annual Account**" means the annual audited account of the Licensee prepared in accordance with accounting principles and practices which are generally accepted within the United Kingdom.

"**Director's Loan**" means any director's loan provided by the Guarantor to the Licensee.

"**Licence Agreements**" has the meaning ascribed to it under the Business Sale Agreement of even date between BTI (UK) Plc. and the Licensee.

2.    In consideration of Budget entering into the Licence Agreements for the territories described in the Licence Agreements, the Guarantor hereby unconditionally, irrevocably guarantees to Budget, BRACC, the Related Entities and their successors and

**JA540**

assigns full and prompt performance by the Licensee of all its obligations under the Licence Agreements, or otherwise arising in connection with the Licensee's operation of its BRAC business licensed under the Licence Agreements, and the due and punctual payment of all sums payable at any time or times under the Licence Agreements or otherwise in connection with the Licensee's operation of its BRAC business licensed under the Licence Agreements, when and as the same shall become due and undertakes with Budget that if and each time that the Licensee shall be in default of the payment of any sum whatsoever under any of the Licence Agreements, including related to any indemnification obligation, after demand is made on the Licensee and has not been satisfied (subject to any applicable grace period under the Licence Agreements), the Guarantor will on written demand from Budget, make good the default and perform all obligations and pay all sums which may become payable under the Licence Agreements as if the Guarantor instead of the Licensee were herein expressed to assume the primary obligation therefor, together with interest thereon at the rate per annum from time to time payable by the Licensee thereunder until payment of such sums in full. The Guarantor's liability shall not be contingent or conditional upon pursuit by Budget of any remedies against the Licensee or any other person.

3.     The Guarantor hereby agrees that for so long as any sums payable by the Licensee under any of the Licence Agreements are outstanding: -

(a)     the Guarantor shall not, without the written consent of Budget, ask, demand, sue, claim, take or receive from the Licensee any sums, by cash receipt, set-off or in any other manner whatsoever which reduces the Director's Loan below £100,000;

C:\TEMP\@H_X031_.doc

JA541

(b)    if the Guarantor acts in breach of paragraph (a), any sums received by the Guarantor from the Licensee shall be held on trust for Budget;

(c)    the Guarantor shall not petition or apply for or vote in favour of any resolution or take any other steps for the winding-up, dissolution or administration of the Licensee including the service of a statutory demand or the presentation of a petition or the exercise by the Guarantor of its rights as the legal or beneficial holders of shares in the Licensee to call for or to vote in favour of the winding-up of the Licensee provided always that nothing in this paragraph (c) shall prevent the Guarantor acting in accordance with his legal obligations as a director of the Licensee;

4.    If while any sums payable by the Licensee under any of the Licence Agreements are outstanding:

(a)    there occurs any distribution, division or application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of the assets of the Licensee or the proceeds thereof, to creditors of the Licensee, by reason of the liquidation, dissolution or other winding-up of the Licensee or its businesses or any sale, receivership or insolvency proceeding or assignment for the benefit of creditors; or

(b)    the Licensee goes into liquidation or becomes subject to any insolvency or rehabilitation proceeding, administration or voluntary arrangement or any proceeding similar to any of the foregoing;

then and in any such event, any payment or distribution of any kind or character and all and any rights in respect thereof, whether in cash, securities or other property which is payable or deliverable upon or with respect to the Director's Loan or any part thereof by a liquidator, administrator or receiver (or the equivalent thereof) of the Licensee or its estate made to or paid to, or received by the Guarantor or to which the Guarantor is entitled up to the extent of £100,000 or such amount owing to Budget from the Licensee, whichever is the lesser, shall be held on trust by the Guarantor for Budget.

5.      Subject to Paragraph 6 below, the maximum aggregate amount payable by the Guarantor under this Guarantee shall be limited to the sum of £500,000 (the "Guarantee Limit").

6.      If compared with the Audited Annual Account of the previous year, the latest Audited Annual Account of the Licensee shows that there has been an increase in the value of the balance sheet of the Licensee, Budget shall, on written application by the Guarantor, reduce the Guarantee Limit according to the formula set out in Part A of the Schedule hereto unless there has been a default under any of the Licence Agreements.

7.      If compared with the Audited Annual Account of the previous year, the latest Audited Annual Account of the Licensee shows that there has been a decrease in the value of the balance sheet of the Licensee, Budget may at any time by notice to the Guarantor increase the Guarantee Limit according to the formula set out in Part B of the Schedule hereto.

C:\TEMP\@H_X031_.doc

8. This Guarantee is a continuing obligation and shall remain in force until all (not partial) sums payable by and obligations of the Licensee referred to in Paragraph 2 have been irrevocably paid and discharged in full.

9. The obligations of the Guarantor hereunder shall not be affected by any act, omission or circumstances which but for this Guarantee might operate to release or otherwise exonerate the Guarantor from his obligations hereunder or affect such obligations including without limitation, and whether or not known to the Guarantor, Budget or the Licensee:

(a) Any time, indulgence or concession granted to or with the Licensee or any other person; or

(b) The taking, variation, compromise, renewal or refusal or neglect to perfect or enforce, any rights, remedies or securities against or granted by the Licensee or any other person; or

(c) Any variation or extension of the due date for performance of any obligation of the Licensee referred to herein, to the extent that the Guarantor's obligations hereunder shall apply to such term as varied or in respect of the extended due date; or

(d) Any irregularity, unenforceability or invalidity of any obligation of the Licensee referred to in Paragraph 1 or any present or future law or order of any government or authority purporting to reduce or otherwise affect any such obligation; or

C:\TEMP\@H_X03!_.doc

JA544

(e)     The insolvency of the Licensee; or

(f)     Any security held or taken at any time by Budget being void, defective, or informal;

(g)     Budget entering into any deed of priority or postponement in relation to any security held or taken at any time by Budget; or

(h)     Any modification or addition to, or termination of the obligation of the Licensee referred to in Paragraph 2.

10.     The Guarantor shall be entitled to assert and raise as a defence against Budget any right or claim which the Licensee has against Budget under the terms of the Licence Agreements.

11.     If Budget holds any other security for or right in respect of all or any of the moneys hereby guaranteed Budget need not resort to that other security or right before enforcing its rights against the Guarantor under this Guarantee, and the liability of the Guarantor under this Guarantee is not affected by reason that such other security or right is or may be wholly or partly void, voidable or unenforceable.

12.     The Guarantor acknowledges that he was not induced to execute this Guarantee by any promise, representation, statement or information of any kind or nature whatsoever given or offered to the Guarantor by or on behalf of Budget whether in answer to

C:\TEMP\@H_X031_.doc

JA545

an inquiry by or on behalf of the Guarantor or not, and that Budget is not, has never been and will not be under any duty or obligation to disclose to the Guarantor any matter or thing relating to the affairs of the Licensee or its transactions with Budget.  The Guarantor confirms that he has been advised to obtain legal advice and have done so prior to entering into this Guarantee.

13.    This Guarantee shall be governed by and construed in accordance with the laws of England and Wales and each of the parties hereto irrevocably submits to the non-exclusive jurisdiction of the English courts.

## Schedule

### Part A

Where Y2 Bal. is greater than Y1 Bal.,

Guarantee Limit = EGL – [20% x (Y2 Bal. – Y1 Bal.)]

### Part B

Where Y1 Bal. is greater than Y2 Bal.,

Guarantee Limit = EGL + [20% x (Y1 Bal. – Y2 Bal.)]

| | |
|---|---|
| EGL: | existing Guarantee Limit under this Guarantee |
| Y1 Bal.: | the value of the balance sheet in the Audited Annual Account of the year before the latest Audited Annual Account |
| Y2 Bal.: | the value of the balance sheet in the latest Audited Annual Account |

C:\TEMP\@H_X031_.doc

IN WITNESS WHEREOF this Guarantee has been entered into the day and year, first

before written.

**PERSONAL GUARANTOR**
**Ibraheim Jaeban**

_____

HOME ADDRESS

_____
_____
_____
_____

TELEPHONE NO.:_____

C:\TEMP\@H_X03!_.doc

# EXHIBIT C

JA549

## SUMMARY OF GROSS AMOUNTS OWED BY JAEBAN TO BRACII

| Description | Figure per BRACII - 2001 | Figure per BRACII - 2002 | Figure per BRACII - 2003 | Totals |
|---|---|---|---|---|
| US Reservation Charges | £41,954.46 | £77,519.60 | £4,870.59 | £124,344.65 |
| Travel Agents Referral Programme | £62,267.59 | £98,886.45 | £23,798.37 | £184,952.41 |
| Customer Relations Refunds | | £4,703.37 | £65.76 | £4,769.13 |
| Frequent Flyer & International Programmes etc | | £10,568.00 | £1,030.13 | £11,598.13 |
| Inter Office Charges General | £190,876.53 | £57,805.06 | | £248,681.59 |
| Inter Office Charges Oldbury / Corporate | See above | See above | See above | £0.00 |
| RAC - Subscriptions | £35,272.26 | £56,437.32 | | £91,709.58 |
| RAC - Other | | | | £0.00 |
| BMS - Reservations | £67,779.88 | £101,426.98 | £9,366.35 | £178,573.21 |
| BMS - Charges | | £76,793.62 | | £76,793.62 |
| Money paid to Jaeban | | £12,631.61 | | £12,631.61 |
| 2001 concessions | | | | £0.00 |
| Manchester Airport Concessions | £80,633.19 | £93,658.61 | | £174,291.80 |
| Birmingham Airport Concessions | | £108,198.77 | | £108,198.77 |
| Edinburgh Airport Concessions | | £80,613.56 | | £80,613.56 |
| Glasgow Airport Concessions | | £152,552.62 | | £152,552.62 |
| East Midlands Airport Concessions | | £7,196.85 | | £7,196.85 |
| Other Location Rent Charges | £72,080.78 | £141,254.54 | | £213,335.32 |
| Miscellaneous Utilities Charges | | £19,914.72 | | £19,914.72 |
| Telephone Charges | | £134,052.88 | | £134,052.88 |
| Royalty Fees (2003 estimated) | £210,640.22 | £638,301.48 | £94,007.00 | £942,948.70 |
| Yellow Pages 2001 | £22,224.07 | | | £22,224.07 |
| Yellow Pages 2002/3 | | £128,059.47 | £25,900.54 | £153,960.01 |
| Dun & Bradstreet Reports | | | | £0.00 |
| Miscellaneous Charges | £28,755.93 | £28,560.04 | £111.64 | £57,427.61 |
| Miscellaneous Adjustments | | | | £0.00 |
| 1st Quarter Fleet/Ford Bonus | | | | £0.00 |
| Insurance | | £1,267.16 | | £1,267.16 |
| Cont Cover and low value refunds | | £4,052.10 | | £4,052.10 |
| **Totals** | **£812,484.91** | **£2,034,454.81** | **£159,150.38** | **£3,006,090.10** |

JA550