IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) ) ) |
| | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | Case No. 02-12152 (Jointly Administered) |
| Debtors. | |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs and Counterclaim Defendants, | Adv. No. 03–54271(CGC) |
| v. | |
| JAEBAN (U.K.) LIMITED, | |
| Defendant and Counterclaim Plaintiff. | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S
COUNTERCLAIMS DUE TO DEFENDANT'S REFUSAL TO PARTICIPATE IN THIS
PROCEEDING (RE: D.I. 27 )

COMES NOW Ibrahiem Jaeban, assignee of Defendant Jaeban (U.K.) Limited

(sometimes referred to herein as "Jaeban Ltd.") (in Administrative Receivership), by and

through his undersigned counsel and hereby responds to *Plaintiff's Motion to Strike Defendant's*

*Counterclaims due to Defendant's Refusal to Participate in this Proceeding*. In support of his

response, Ibrahiem Jaeban ("Jaeban") respectfully states as follows:

1.      On July 9, 2003, Plaintiff BRAC Group, Inc. ("Debtor") filed an adversary

proceeding against Jaeban to recover monies allegedly owed by Jaeban to Budget Rent A Car

1

JA915

International, Inc. (the "Adversary Proceeding"). Prior to the appointment of John Whitfield and

Gerald Smith of RSM: Robson Rhodes as Joint Administrative Receivers (the "Administrative

Receivers") of Jaeban on October 20, 2003, Jaeban properly dealt with all the requirements of

this Honorable Court's procedure with respect to the Adversary Proceeding. The law firm of

Morris, Nichols, Arsht &Tunnel was retained as Delaware Counsel by letter of instruction dated

July 22, 2003 and Jaeban's Answer, Affirmative Defenses and Counterclaims were served and

filed with the Court on August 22, 2003. See Affidavit of Ibrahiem Jaeban, attached hereto as

"Exhibit A."

    2.    Paragraph 1 of the Court's Scheduling Order of September 8, 2003 required

information exchange to be completed by October 3, 2003. On the advice of counsel for Jaeban,

Wragge & Co LLP, the independent firm of Chartered Accountants, PriceWaterhouseCoopers,

were instructed by Jaeban to advise on the disclosure process. This was to ensure that the

lawyers did not miss any relevant accountancy documentation relevant to the dispute. This was

made even more pertinent by the service of the Joint First Request for Production of Documents

to Jaeban dated September 29, 2003 which requested detailed accounting evidence in support of

the Jaeban counterclaim. (Jaeban Affidavit ¶ 3).

    3.    Jaeban's Initial Disclosures were served on October 3, 2003 and listed

approximately 2,500 pages of documents (10 lever arch files). PriceWaterhouseCoopers also

advised Wragge & Co LLP of the specific disclosure documents that would be required from

BRAC. (Jaeban Affidavit ¶ 4).

    4.    On or about October 10, 2003 Wragge & Co were informed that Jaeban was facing

serious financial difficulties. The appointment of the Administrative Receivers was confirmed

on October 20, 2003 and all parties were informed of the appointment shortly thereafter. From

2

JA916

the date of the appointment of Receivers, what happened to Jaeban with regard to the Adversary Proceeding came within the ambit and control of the Administrative Receivers and not Jaeban. (Jaeban Affidavit ¶ 5).

5.    Under English Law, the Administrative Receivers owe a duty *only* to the charge holder responsible for their appointment and not to other potential creditors. While instructions were sought by Wragge & Company from the Administrative Receivers from the date of their appointment, it was apparent that they were not in a position to provide any firm instructions until such time as they were in a position to take a view on the assets available to them going forward. It was made clear to Wragge & Co that there were no monies available in the Administration to pay either the existing U.S. Lawyers for monies owed or PriceWaterhouseCoopers. In fact, Wragge & Co's outstanding fees were also in jeopardy due to the Administrative Receivership. (Jaeban Affidavit ¶ 6).

6.    The Joint Second Request for Production of Documents to Jaeban was not served until November 26, 2003. In the meantime, the 10 lever arch files of Jaeban disclosure documents identified by Jaeban on October 3, 2003 were forwarded to Plaintiff's U.S. lawyers on November 19, 2003. Morris Nichols Arsht & Tunnel responded on behalf of Jaeban to the Joint Second Request for Production of Documents with General Objections on December 30, 2003.(Jaeban Affidavit ¶ 7).

7. On December 8, 2003, Wragge & Co were informed by Thomas Briggs of Morris Nichols Arsht & Tunnell that Counsel for Plaintiff had informed him that a Motion to Extend Discovery had been filed and a request for a telephonic scheduling conference had also been sought in order that a definitive schedule could be put in place.(Jaeban Affidavit ¶ 8).

3

8.    Meanwhile, Plaintiff's lawyers had written to Thomas Briggs on December 12, 2003 seeking confirmation that the Jaeban witnesses would be available for depositions in London between January 12, 2004 and January 19, 2004. Opponents' lawyers taking depositions from the other party's witnesses is an alien concept to lawyers in England. It would never happen except under the most unusual circumstances and then, only after witness statements had been exchanged. Jaeban could not understand therefore why BRAC's lawyers were seeking these depositions before even Wragge & Co. as solicitors for the then Administrative Receivers had taken witness statements from Jaeban's witnesses. Wragge & Co instructed Thomas Briggs that Jaeban would be agreeable to an extension of time in relation to discovery but that it did not want to agree a timetable for depositions.(Jaeban Affidavit ¶ 9).

9.    On December 15, 2003 Jaeban requested an extension of time though Delaware Counsel to respond to BRAC's second set of discovery requests which were due the following day. Thomas Briggs requested an extension until Friday December 19, 2003. Plaintiff in fact agreed to an extension until December 30, 2003. In the meantime a status conference was fixed for December 17, 2003, which ordered, inter alia, that discovery was to be completed by January 30, 2004. In consequence the timetable as a whole had to be changed.(Jaeban Affidavit ¶ 10).

10.    On January 7, 2004, Morris Nichols Arsht & Tunnell lodged a motion to withdraw as counsel for Jaeban on the basis that they had fees unpaid returnable. There was nothing Jaeban could have done to prevent this situation given the fact that the Joint Administrators had indicated that they were not prepared to consider payment of fees due prior to their appointment. At the hearing on January 12, 2004, Judge Case granted the order to withdraw.(Jaeban Affidavit ¶ 11).

4

**JA918**

11.     On January 16, 2004, Plaintiff filed a Motion for Partial Summary Judgment. As part of the scheduling order on a Motion for Partial Summary Judgment, the Court set a deadline of January 30, 2004 for the Administrative Receivers to retain substitute Delaware Counsel and set a hearing date of February 4, 2004 for the Motion for Partial Summary Judgment. The Motion for Partial Summary Judgment related to approximately $325,000 that Plaintiffs claim Jaeban allegedly owed to Budget. The Administrative Receiver took the view that there was no point in opposing the Motion for Partial Summary Judgment and although Wragge & Co LLP were instructed to attend the February 4, 2004 hearing by telephone, they were not authorized to instruct substitute Delaware counsel on the grounds that there were no funds available to do so. (Jaeban Affidavit ¶ 12).

12.     On February 3, 2004, one day prior to the Court hearing scheduled for February 4, 2004, BRAC's US lawyers served their Motion to Strike the Defendant's Counterclaims. At the February 4th Hearing, Steven Allen of Wragge & Co appeared by telephone on behalf of Jaeban and explained why Delaware counsel had not been appointed. Mr. Allen explained that the issue of whether or not Delaware Counsel could be appointed was an issue for the Administrative Receiver. He also tried to point out the role of the Administrative Receiver in the UK and that there was a possibility that the action might be assigned to a third party and that the Administrative Receiver wanted more time to consider this option. Although the Court did grant partial Summary Judgment for BRAC, Judge Case did not hear the Motion to Strike Defendant's Counterclaims on that date but made it clear that Jaeban had to respond through Delaware Counsel to BRAC's Motion to Strike by February 23, 2004.(Jaeban Affidavit ¶ 13).

13.     Following the February 4th hearing, the Administrative Receivers made the decision that they would assign the Jaeban counter claim to Ibraheim Jaeban for deferred

5

**JA919**

consideration. Wragge & Co were finally instructed to take all necessary steps to retain Delaware Counsel to protect the assignee's position pending the assignment being signed. At the same time, the assignee Ibrahiem Jaeban instructed Wragge & Co to continue the action on his behalf.(Jaeban Affidavit ¶ 14).

14.    With regard to the specific points raised in Plaintiff's Motion to Strike Defendant's Counterclaims under the heading "Failure to Retain US Counsel", if Wragge & Co did not appear at the hearing on January 12, 2004, it was because it was their understanding that the hearing was simply to deal with Morris Nichols Arsht & Tunnel's Motion to Withdraw as Counsel to Jaeban which of course it could do nothing about. Wragge & Co can find no record of being invited to participate by BRAC'scounsel. (Jaeban Affidavit ¶ 15).

15.    As BRAC's lawyers have themselves confirmed, prior to the appointment of the Administrative Receivers, Jaeban fully complied with all orders of the Court and did so again once it was under the control of the assignee Ibraheim Jaeban. It was only after the appointment of the Joint Administrative Receivers that orders were not complied with because of the different nature of Jaeban's duty to creditors under English Law. It should be noted that as soon as Mr. Jaeban once again obtained control of the litigation through the Assignment, Delaware Counsel were promptly appointed in accordance with the Court's directive that the Response to the Motion to Strike be filed by February 23, 2004[1]

---

[1] The Response deadline was extended by consent of the Plaintiff until March 1, 2004 in order to provide Jaeban's new Delaware Counsel time to become familiar with the case.

JA920

## ARGUMENT

"Dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984) citing *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342(3d Cir. 1982). "Dismissals with prejudice or defaults are drastic sanctions termed 'extreme' by the Supreme Court and are to be reserved for comparable cases." *Id.* quoting *National Hockey League v. Metropolitan Hockey Club, Inc.* 427 U.S. 639 (1976).

In *Poulis*, the Third Circuit stated that it was "concerned that the recent preoccupation with sanctions and the use of dismissal as a necessary 'weapon' in the trial Court's 'arsenal' may be contributing to or effecting an atmosphere in which the meritorious claims or defenses of innocent parties are no longer the central issue." *Id* at 867.

In determining whether it should dismiss a claim, the Court must balance the following "*Poulis* Factors" under the circumstances of the case:

> (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
> (3) a history of dilatoriness;
> (4) whether the conduct of the party or the attorney was willful or in bad faith;
> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
> (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d at 868.

The circumstances of this case do not warrant the drastic and extreme measures sought by Plaintiff in their Motion to Stike Defendant's Counterclaims under the *Poulis* factors, and in fact are a far cry from justifying any sanctions. Neither Defendant's conduct, nor the conduct of its

7

counsel, can be characterized as "contumacious" under the circumstances. Therefore, neither dismissal nor any other sanctions are appropriate.

1. The extent of the party's personal responsibility

The facts and circumstances as set forth above excuse Jaeban from personal responsibility during the approximate 45 day delay caused by the company being placed in receivership. In *National Hockey League,* "the Supreme Court upheld the 'extreme sanction of dismissal' only after noting there had been 'flagrant bad faith' on the part of the plaintiffs as well as 'callous disregard' by their counsel of their responsibilities." *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d at 868 citing *National Hockey League League v. Metropolitan Hockey Club, Inc.* 427 U.S. at 653. Neither of these are present here.

In the case at hand, prior to the appointment of the Administrative Receivers, Jaeban fully complied with all orders of the Court and did so again immediately after it was under the control of the Assignee, Ibraheim Jaeban. It was only after the appointment of the Joint Administrative Receivers that delays occurred, simply because the Administrative Receivers of the company were in control. Once Mr. Jaeban obtained control of the litigation through the Assignment, Delaware Counsel were promptly appointed. There is no evidence of "flagrant bad faith" on the part of Jaeban, nor was there "callous disregard" by their previous Delaware counsel, who promptly filed a motion to withdraw once it became apparent that their fees were not going to be paid due to the Receivership. Jaeban cooperated with all discovery requests up until the time their counsel withdrew and subsequently retained new counsel once the Action was assigned to Mr. Jaeban. There is no personal responsibility on the part of Jaeban in this matter. The appointment of a Administrative Receivership caused the 45-day delay. During the period of

8

JA922

delay, the Adversary Proceeding and any claims of Jaeban were under the control of the Receivers. As such, Jaeban requests deference from the Court with regard to the obligation faced by the Receivers, which caused a relatively short delay in the case.

2.  The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery

As stated above, Jaeban complied with discovery to the best of its abilities under the circumstances. On October 3, 2003, Jaeban served Plaintiff with its *Initial Disclosures*. On December 30, 2003, Jaeban served Plaintiff with its *Limited Responses to Joint Second Request for Production of Documents*. Copies of the Notices of Service are attached hereto as Exhibit "B".  On November 19, 2003, 10 lever arch files were forwarded to Plaintiff's U.S. lawyers. Plaintiff asserts that Jaeban failed to schedule depositions. (Motion to Strike, P. 14). However, no depositions were ever noticed, nor were any subpoenas served by Plaintiff. Further, Jaeban sought extensions from Plaintiff to respond to discovery on December 15, 2003. Plaintiff in fact agreed to an extension until December 30, 2003. In the meantime a status conference was set for December 17, 2003, which ordered, inter alia, that discovery was to be completed by January 30, 2004.  Additionally, Plaintiff never filed a motion to compel discovery, and instead filed its Motion for Partial Summary Judgment and its Motion to Strike. Plaintiff has suffered little to no prejudice as a result in the delay caused by Jaeban being placed in Receivership.  In fact, Plaintiff received the "benefit" of the granting of the partial Motion for Summary Judgment in its favor and against Jaeban Ltd.

9

JA923

3. A history of dilatoriness

A history of dilatoriness cannot be found in the instant case. On the contrary and as set forth above, Jaeban complied with all discovery requests made by Plaintiff. Prior to the appointment of the Administrative Receivers, Jaeban fully complied with all orders of the Court and did so again once it was under the control of the Assignee, Ibraheim Jaeban. It was only after the appointment of the Joint Administrative Receivers and Jaeban was not in control of the company that the ability to employ Delaware Counsel was temporarily lost, through no fault of Jaeban. Once Mr. Jaeban obtained control of the litigation through the Assignment, Delaware Counsel was promptly appointed pursuant to this Court's Order. The facts recited above show anything but "dilatory" history by Jaeban or its Counsel. Jaeban consequently and actively participated in the case prior to the Receivership

4. Whether the conduct of the party or the attorney was willful or in bad faith

There is no evidence of willfulness of conduct or acting in bad faith on the part of Jaeban. As stated throughout this response, Jaeban's hands were temporarily tied once a Receiver was appointed. Once Mr. Jaeban regained control of the adversary proceeding through the assignment, Jaeban was and is able to fully cooperate and move forward with his claims (and so informed Plaintiff). There has been no wilful misconduct or bad faith in this case by Jaeban or its attorneys.

5. The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions

According to the Third Circuit, "dismissal must be a sanction of last, not first resort." *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d at 869. "Alternatives are particularly

10

appropriate when the plaintiff has not personally contributed to the delinquency." *Id* at 866.

Jaeban first submits that even alternative sanctions are not appropriate in this case. Moreover,

Jaeban does not anticipate that the Court will consider sanctions against the Receivers. The

Debtor can fully appreciate that some time was needed by the Receivers in order to determine

what course of action to take – not unlike the "breathing spell" afforded to Chapter 11 Debtors in

this jurisdiction under the United States Bankruptcy Code. Further, Plaintiff has already had its

Motion for Partial Summary Judgment granted and has been awarded £327,944.09 against Jaeban

Ltd. Since Jaeban fully participated in the case prior to the appointment of the Receivers, Jaeban

submits that the award of sanctions are inappropriate [2] - especially against Assignee, Mr. Jaeban.[3]


6. The meritoriousness of the claim or defense

"A claim or defense will be deemed meritorious when the allegations of the pleadings, if

established at trial, would support recovery by plaintiff or would constitute a complete defense."

*Id* at 870; See also *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653 (3d Cir. 1982), *Farnese v.*

*Bagnosco*, 687 F.2d 761 (3d Cir. 1982). "The meritoriousness of a clam or defense must be

determined from the face of the pleadings." *Subar v. Precision Plastics* 1997 U.S. Dist. LEXIS

12352. Jaeban's defenses and counterclaims are prima facie meritorious claims that should not be

dismissed based upon the unfortunate circumstances in which it was placed. The use of

---

[2] There is no evidence in the record that the Plaintiff, with all of its resources, (including its Counsel's sister office in England) contacted the Receivers directly concerning the matter. Plaintiff should have sought to advance its cause against Jaeban Ltd. in the Receivership, instead of looking for the easy way out before this Court.

[3] In the event that the Court denies Plaintiff's Motion, Jaeban requests that the Scheduling Order be extended and modified. Further, the distinction between the claims against Jaeban Ltd. (which is probably headed from Receivership to Insolvency) and the claims of Assignee, Mr. Jaeban, will have to be made.

JA925

dismissal in the instant case should not be permitted if the Court is to avoid "effecting an atmosphere in which the meritorious claims or defenses of innocent parties are no longer the central issue." 747 F.2d at 867.

Further, the circumstances in this case are unlike those in *Subar*, where there was "persistent failure" to meet discovery objections and the defendants "completely ignored the Court's instruction." See *Subar v. Precision Plastics* 1997 U.S. Dist. LEXIS 12352 (E.D. Pa) *6. Even in *Subar*, the Court was "very patient" and provided defendants with "one last opportunity to appear." *Id* at *7.

WHEREFORE, Jaeban respectfully requests that this Honorable Court deny the *Plaintiff's Motion to Strike Defendant's Counterclaims due to Defendant's Refusal to Participate in this Proceeding,* award Jaeban his reasonable attorney fees in defending this action and direct the parties to enter into an amended scheduling order.

Dated: March 1, 2004

Respectfully submitted,

WERB & SULLIVAN

/s/ Brian A. Sullivan
Brian A. Sullivan (#2098)
Amy D. Brown (#4077)
300 Delaware Ave., 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

Attorneys for Ibrahiem Jaeban, Assingee of

12

JA926

of Defendant Jaeban (U.K.) Limited

JA927

# EXHIBIT A

JA928

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc), et al., | Case No. 02-12152 (MFW) |
| Debtors. | (Jointly Administered) |
| BRAC GROUP, INC. (f/k/a Budget Group, Inc.), et al., | |
| Plaintiffs and Counterclaim Defendants, | 03-A-54271 |
| v. | |
| Jaeban (U.K.) Limited, | |
| Defendant and Counterclaim Plaintiff. | |

### AFFIDAVIT OF IBRAHIEM JAEBAN

IBRAHIEM JAEBAN, being duly sworn, deposes and says:

1.    I am the former Managing Director and principal shareholder in Jaeban (UK) Limited (in administrative receivership) ("Jaeban") and my address is Forth House Farm, Isel, Near Cockermouth, Cumbria, United Kingdom, CA13 9SA. I make this affidavit in opposition to the Plaintiff's Motion to Strike the Defendant's counterclaims due to the Defendant's alleged refusal to participate in this proceedings.

2.    On July 9, 2003, Plaintiff BRAC Group, Inc. ("Debtor") filed an adversary proceeding against Jaeban to recover monies allegedly owed by Jaeban to Budget Rent A Car International, Inc. (the "Adversary Proceeding"). Prior to the appointment of John Whitfield and Gerald Smith of RSM: Robson Rhodes as Joint Administrative Receivers (the "Administrative Receivers") of Jaeban on October 20, 2003, Jaeban properly dealt with all the requirements of this Honorable Court's procedure with respect to the Adversary Proceeding. The law firm of Morris, Nichols, Arsht &Tunnel was retained as Delaware Counsel by letter of instruction dated July 22, 2003 and Jaeban's Answer, Affirmative Defenses and Counterclaims were served and filed with the Court on August 22, 2003.

Page 1 of 5

JA929

Jaeban to the Joint Second Request for Production of Documents with General Objections on December 30, 2003.

8      On December 8, 2003, Wragge & Co LLP were informed by Thomas Briggs of Morris Nichols Arsht & Tunnell that Counsel for Plaintiff had informed him that a Motion to Extend Discovery had been filed and a request for a telephonic scheduling conference had also been sought in order that a definitive schedule could be put in place.

9      Meanwhile, Plaintiff's lawyers had written to Thomas Briggs on December 12, 2003 seeking confirmation that the Jaeban witnesses would be available for depositions in London between January 12, 2004 and January 19, 2004. Opponents' lawyers taking depositions from the other party's witnesses is an alien concept to lawyers in England. It would never happen except under the most unusual circumstances and then, only after witness statements had been exchanged. Jaeban could not understand therefore why BRAC's lawyers were seeking these depositions before even Wragge & Co LLP as solicitors for the then Administrative Receivers had taken witness statements from Jaeban's witnesses. Wragge & Co LLP instructed Thomas Briggs that Jaeban would be agreeable to an extension of time in relation to discovery but that it did not want to agree a timetable for depositions.

10     On December 15, 2003 Jaeban requested an extension of time though Delaware Counsel to respond to BRAC's second set of discovery requests which were due the following day. Thomas Briggs requested an extension until Friday December 19, 2003. Plaintiff in fact agreed to an extension until December 30, 2003. In the meantime a status conference was fixed for December 17, 2003, which ordered, inter alia, that discovery was to be completed by January 30, 2004. In consequence the timetable as a whole had to be changed.

11     On January 7, 2004, Morris Nichols Arsht & Tunnell lodged a motion to withdraw as counsel for Jaeban on the basis that they had fees unpaid returnable. There was nothing Jaeban could have done to prevent this situation given the fact that the Joint Administrators had indicated that they were not prepared to consider payment of fees due prior to their appointment. At the hearing on January 12, 2004, Judge Case granted the order to withdraw.

12     On January 16, 2004, Plaintiff filed a Motion for Partial Summary Judgment. As part of the scheduling order on a Motion for Partial Summary Judgment, the Court set a

deadline of January 30, 2004 for the Administrative Receivers to retain substitute Delaware Counsel and set a hearing date of February 4, 2004 for the Motion for Partial Summary Judgment. The Motion for Partial Summary Judgment related to approximately $325,000 that Plaintiffs claim Jaeban allegedly owed to Budget. The Administrative Receiver took the view that there was no point in opposing the Motion for Partial Summary Judgment and although Wragge & Co LLP were instructed to attend the February 4, 2004 hearing by telephone, they were not authorized to instruct substitute Delaware counsel on the grounds that there were no funds available to do so.

13    One day prior to the Court hearing on February 4, 2004 BRAC's US lawyers served on February 3, 2004, their Motion to Strike the Defendant's Counterclaims. At the Court hearing on February 4, 2004, Steven Allen of Wragge & Co LLP appeared by telephone on behalf of Jaeban and explained why Delaware Counsel had not been appointed. Mr. Allen explained that the issue of whether or not Delaware Counsel could be appointed was an issue for the Administrative Receiver. He also tried to point out the role of the Administrative Receiver in the UK and that there was a possibility that the action might be assigned to a third party and that the Administrative Receiver wanted more time to consider this option. Although the Court did grant partial Summary Judgment for BRAC, Judge Case did not hear the Motion to Strike Defendant's Counterclaims on that date but made it clear that Jaeban had to respond through Delaware Counsel to BRAC's Motion to Strike by February 23, 2004.

14    Following the February 4 hearing, the Administrative Receivers made the decision that they would assign the Jaeban counter claim to Ibraheim Jaeban for deferred consideration. Wragge & Co LLP were finally instructed to take all necessary steps to retain Delaware Counsel to protect the assignee's position pending the assignment being signed. At the same time, the assignee Ibrahiem Jaeban instructed Wragge & Co LLP to continue the action on his behalf.

15    With regard to the specific points raised in Plaintiff's Motion to Strike Defendant's Counterclaims under the heading "Failure to Retain US Counsel", if Wragge & Co LLP did not appear at the hearing on January 12, 2004, it was because it was their understanding that the hearing was simply to deal with Morris Nichols Arsht & Tunnell's Motion to Withdraw as Counsel to Jaeban which of course it could do nothing about.

Page 4 of 5

27-FEB-2004 16:20   FROM:OGLETHORPE & BROATCH 017687 74678        TO:901212141099        P:5/6

16      As BRAC's lawyers have themselves confirmed, prior to the appointment of
the Administrative Receivers, Jaeban fully complied with all orders of the Court. It was only
after the appointment of the Joint Administrative Receivers that orders were not complied
with because of the different nature of its duty to creditors under English Law. It should be
noted that as soon as I obtained control of the litigation through the Assignment, Delaware
Counsel were promptly appointed.

                                                          Ibrahiem Jaeban

Sworn to before me this
27th day of February, 2004

                Notary Public

            M. W. DUNN
               Public
               ale East
            Cumbria

My commission is not limited by time.

Page 5 of 5

JA932

# EXHIBIT B

JA933

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 02-12152 (MFW) |
| IN RE: BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | (Jointly Administered) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Adversary No. A-03-54271 |
| JAEBAN (U.K.) LIMITED, | ) ) | |
| Defendant. | ) ) ) | |

## NOTICE OF SERVICE

I, Thomas W. Briggs, Jr., Esquire, hereby certify that copies of

DEFENDANT/COUNTERCLAIM PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO

RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE were served on

October 3, 2003 upon the following counsel in the manner indicated:

### BY HAND

Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391

William P. Bowden, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899

JA934

**BY FACSIMILE**

Melville W. Washburn, Esquire
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Thomas W. Briggs, Jr.
R. Judson Scaggs, Jr. (#2676)
Thomas W. Briggs, Jr. (#4076)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
(302) 658-9200
     Attorneys for Jaeban (U.K.) Limited

October 3, 2003

- 2 -

JA935

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 02-12152 (MFW) |
| IN RE: BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) ) | (Jointly Administered) |
| Plaintiffs, | ) ) | |
| v. | ) ) | Adversary No. A-03-54271 |
| JAEBAN (U.K.) LIMITED, | ) ) ) | |
| Defendant. | ) ) ) | |

## NOTICE OF SERVICE

I, Thomas W. Briggs, Jr., Esquire, hereby certify that copies of JAEBAN (U.K.)

LIMITED'S RESPONSES TO JOINT SECOND REQUEST FOR PRODUCTION OF

DOCUMENTS were served on December 30, 2003 upon the following counsel in the manner

indicated:

### BY HAND

Edmon Morton, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391

William P. Bowden, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899

**JA936**

**BY FACSIMILE AND FIRST-CLASS MAIL**

Kenneth E. Wile, Esquire
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

MORRIS, NICHOLS, ARSHT & TUNNELL

R. Judson Scaggs, Jr. (#2676)
Thomas W. Briggs, Jr. (#4076)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Attorneys for Jaeban (U.K.) Limited

December 30, 2003
386159

- 2 -

JA937

## CERTIFICATE OF SERVICE

I hereby certify that on  March 1, 2004, I caused one copy of the foregoing

document to be served upon the persons listed below in the manner indicated:

**VIA FACSIMILE AND E-MAIL**

Larry J. Nyhan, Esq.
Kenneth E. Wile, Esq.
Sidley, Austin, Brown, &
   Wood,  LLP
10 South Dearborn Street
Chicago,  IL  60603
Facsimile:  (312) 853-7036

**VIA HAND DELIVERY**

Robert S. Brady, Esq.
Edmon L. Morton, Esq.
Joseph A. Malfitano, Esq.
Matthew B. Lunn, Esq.
Young, Conaway, Stargatt & Taylor,  LLP
The Brandwyine Building, 17th Floor
1000 West Street, P. O. Box 391
Wilmington,  DE  19899-0391

/s/ Brian A. Sullivan
Brian A. Sullivan

JA938