SERVICE LIST
Budget Group, Inc.
6/8/2004

Elizabeth Bobenmoyer, Esq.
Ford Motor Company
One American Road
Dearborn, MI 48121
*First Class Mail*

Budget Group, Inc.
Attn: Bill Johnson, CFO
4225 Naperville Road
Lisle, IL 60532
(Debtor)
*First Class Mail*

Richardo I. Kilpatrick, Esq.
Kilpatrick & Associates
903 North Opdyke Road, Stuite C
Auburn Hills, MI 48326
(Counsel for Ford Motor Credit Co.)
*First Class Mail*

Larry J. Nyhan, Esq.
Matthew A. Clemente, Esq.
Sidley Austin Brown & Wood
10 South Dearborn Street, BankOne Plaza
Chicago, IL 60603
(Co-counsel for the Debtors)
*First Class Mail*

Larry P. Rochkind, Esq.
Jaffe Raitt Heuer & Weiss
One Woodward Avenue, Suite 2400
Detroit, MI 48226
(Co-counsel for Ford Motor Company)
*First Class Mail*

Brian A. Sullivan, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
P.O. Box 25046
Wilmington, DE 19899
(Co-counsel for Douglas Dragonetti;)
(James Minter; Jaeban (U.K.) Limited)
*Hand Delivery*

William P Bowden, Esq.
Christopher S. Sontchi, Esq.
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19801
Co-counsel for the Unsecured Creditors' Committee
*Hand Delivery*

Budget Group, Inc.
Attn: David Coonfield
125 Basin Street, Suite 210
Daytona Beach, FL 32114
(Debtor)
*First Class Mail*

Harold J. Marcus, Esq.
Peter J. Antoszyk, Esq.
Carol S. Ennis, Paralegal
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
(Co-counsel for the Unsecured Creditors' Committee)
*First Class Mail*

Office of the United States Trustee
Attn: Margaret Harrison, Esq.
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801
*Hand Delivery*

Leslie H. Scharf, Esq.
Martin Siegel, Esq.
Brown Rudnick Berlack Isreals LLP
120 West 45th Street
New York, NY 10019
(Co-counsel for the Unsecured Creditors' Committee)
*First Class Mail*

JA1085

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BRACII GROUP, INC. (f/k/a BRACII Group, Inc.), et al., | Case No. 02-12152 (Jointly Administered) |
| Debtors. | |
| BRACII GROUP, INC. (f/k/a BRACII Group, Inc.), et al., | |
| Plaintiffs and Counterclaim Defendants, | Adv. No. 03--54271 |
| v. | |
| JAEBAN (U.K.) LIMITED, | |
| Defendant and Counterclaim Plaintiff. | |

**JAEBAN'S OBJECTION TO (1) BRACII'S MOTION FOR PARTIAL RECONSIDERATION BASED ON CONTROLLING ENGLISH DECISIONS (RE: D.I. 33) AND (2) BRACII'S MOTION FOR A FOUR-DAY EXTENSION OF TIME TO FILE ITS MOTION FOR RECONSIDERATION (D.I. 34)**

COMES NOW Ibrahiem Jaeban, assignee of Defendant Jaeban (U.K.) Limited (in Administrative Receivership) by and through his undersigned counsel and hereby objects to *BRACII's Motion for Partial Reconsideration Based on Controlling English Decisions* and *BRACII's Motion for a Four-Day Extension of time to File its Motion for Reconsideration*. In support of his response, Ibrahiem Jaeban ("Jaeban") respectfully states as follows:

1. On May 25, 2004, this Court entered its Memorandum Opinion and Order resolving BRACII's Motion to Strike (the "Memorandum Opinion").

2. On June 8, 2004, 14 days after the Memorandum Opinion was entered Plaintiff Budget Rent-A-Car International, Inc. ("BRACII") filed its Motion for Partial Reconsideration Based on Controlling English Decisions (the "Motion for Reconsideration").

3. On June 10, 2004, 16 days after the Memorandum Opinion was entered, BRACII filed its Motion for a Four-Day Extension of Time to File its Motion for Reconsideration (the "Motion for Extension").

## ARGUMENT

### A. BRACII's Motion for Reconsideration was not timely filed

4. Delaware Bankruptcy Local Rule 1001-1(b) states that "these Rules and the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware shall be followed insofar as they are not inconsistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure....... The Federal Rules of Civil Procedure are applicable **only** to the extent provided **herein** or in the Federal Rules of Bankruptcy Procedure" (emphasis added).

5. General Chambers Procedures (Effective October 5, 2001), provide that District Court Local Rules 7.1.2 and 7.1.3 are to be followed for motions, briefs, and memoranda filed in all adversary proceedings. Under D.Del. Rule 7.1.5, a Motion for Re-argument must be filed within 10 days of entry of the Court's decision.

6. Motions for reargument are governed by Local Rule 7.1.5, which is made applicable to Bankruptcy proceedings by Local Rule of the United States Bankruptcy Court Order #9D, dated January 3, 1995. In re Memorex Telex Corp. 241 B.R. 841 (D.Del. 1999). District Court Local Rule 7.1.5 (Rearguments): states that "a motion for re-argument shall be served and filed within 10 days after the filing of the Court's opinion or decision. The motion shall briefly and

2

distinctly state the grounds therefore. Within 10 days after service of such motion, the opposing party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether re-argument will be granted."

7. **Federal Rule** of Bankruptcy Procedure 9006 (Computation of Time) provides that "in computing any period of time prescribed or allowed by these rules or by the Federal Rules of Civil Procedure made applicable by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included.. . . .when the period of time prescribed or allowed is less than 8 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

8. BRACII argues that Federal Rule of Civil Procedure 6 applies to its Motion for Reconsideration. F.R.C.P. 6 states that if "computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court or by an applicable statue . . .when the period of time prescribe or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." However, Bankruptcy Rule 9006(a) was amended in 1991 "to make clear that the Rule applied, not only to time computations under the Bankruptcy Rules, but also to 'the Federal Rules of Civil Procedure made applicable by these rules' and 'the local rules.'"

9. Since Local Bankruptcy Rule 1001-1(b) mandates that the District Court Local Rules shall be followed unless "inconsistent" with the Bankruptcy Rules of Procedure, Bankruptcy Rule 9006 and Local Rule 7.1.5 apply and not F.R.C.P. 6, which is "inconsistent with the Federal Rules of Bankruptcy Procedure." Therefore, BRACII"s Motion for Reconsideration was not timely filed and should be denied.

3

10. BRACII's Motion for Extension should also be denied under the "unique circumstances" doctrine. Kraus v. Consolidated Rail Corp., 899 F.2d 1360 (3d Cir. 1990). In Kraus the Third Circuit examined whether the unique circumstances doctrine applied in the context of a party's untimely motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e).[1] The Kraus court enumerated certain factors to be considered in applying the unique circumstances doctrine, stating that "it is appropriate to consider not only whether the party or attorney actually relied on a statement by the district court, as opposed to the party's own misreading of the applicable law, but also the reasonableness of the party's conduct in its totality." In re Memorex 241 B.R. 841 at 845.

11. "Where a party misreads or is unaware of time computations, the unique circumstances doctrine is inapplicable." Id. "The unique circumstances doctrine has never been extended to an attorney's miscalculation of the applicable time limits." Id. (citing Kraus 899 F.2d at 1365.) BRACII admits that the "reason for the delay was due to BRACII's counsel's interpretation of the relevant rules." BRACII's Motion for Extension ¶ 15. Therefore, the unique circumstances doctrine is inapplicable and the Motion for Extension should be denied.

12. To extend the time for BRACII to file its Motion for Reconsideration will only operate to prejudice the interests of Mr. Jaeban, as these motions further increase the complexity and cost of these proceedings at the expense of Mr. Jaeban, who is personally funding these proceedings.[2]

**B.    BRACII misinterprets the scope of the prohibition on assignment**

13. BRACII's counsel refers to two separate prohibitions on assignment: clause 4.3

---

[1] "Fed.R. Civ. P. 59(e) is the counterpart to Bankruptcy Rule 9023, which permits motions to alter or amend judgment. It should be further noted that the Third Circuit has repeatedly recognized that a motion for reargument is the functional equivalent of a motion to alter or amend." In re Memorex, 241 B.R. 841 845 (fn 1).

[2] The correct ruling here is all the more important because under Federal Rule of Bankruptcy Procedure Rule 8002(b), a timely filed Motion for Reargument stays the time to file a notice of appeal.

4

under the Umbrella Agreement and clause 12.2(a) under the International Prime License Agreement ("IPLA").[3]

### i. Clause 4.3 of the Umbrella Agreement

14.  Clause 4.3 of the Umbrella Agreement simply notes that "the parties to this Agreement other than BRACII shall not have the right to assign or otherwise dispose of this Agreement or their interest in this Agreement without the prior written consent of BRACII."

15.  The parties to the Umbrella Agreement were BRACII, Jaeban (UK) and Mr. Jaeban. As further explained below, it was the clear intention of the parties to the Umbrella Agreement that the restriction on assignment would operate to prevent any assignment to <u>third parties who were not parties to the Agreement</u>. The language of the rest of the Umbrella Agreement is consistent with the fact that BRACII treated Mr. Jaeban and Jaeban UK Limited as effectively one entity. BRACII was only concerned with preventing Jaeban UK or Mr. Jaeban from assigning their interest under the Agreement to any *third party*.

16.  With the assignment of Jaeban UK's interest to Mr. Jaeban, there has been no assignment to a third party and therefore no breach of the terms of clause 4.3. In addition, BRACII has not been prejudiced by such assignment. Jaeban UK remains a party to the proceedings whether the claim is ultimately brought by Jaeban UK or by Mr. Jaeban, and such assignment will not alter BRACII's ultimate liability.

### ii. Clause 12.2(a) of the IPLA

---

[3] These agreements are exhibits to the Plaintiff's Complaint and Plaintiff's Motion for Partial Summary Judgment.

5

17. Clause 12.2(a) of the IPLA provides further evidence of the intention of the parties with regard to the issue of assignment and further evidence of the treatment by BRACII of Mr. Jaeban (as Beneficial Owner under the IPLA) and Jaeban UK as one and the same entity. Clause 12.2(a) provides that the IPLA "is personal to the Licensee [i.e. Jaeban UK] and because, as Licensee hereby acknowledges, of the personal confidence BRACII [i.e. BRACII] has in Licensee and/or Beneficial Owner [i.e. Mr Jaeban] ...".

18. The operative section of clause 12.2 of the IPLA states "none of this Agreement, the Beneficial Ownership of Licensee or Licensee's BRACII's business, or any company within the Group of which Licensee is a member, may be voluntarily, involuntarily, directly or indirectly sold, actually or contingently, assigned or otherwise transferred by Licensee (including by will, declaration of or transfer in trust or the laws of intestate succession or by operation of law through divorce or other legal proceeding), without the prior written consent of BRACII in accordance with this Agreement ...".

19. Clause 12.2(a) contains inconsistencies and problems with its drafting. Under English law any ambiguity should be construed against the party who drafted the contract (i.e. in this case, BRACII). See <u>John Lee (Grantham) Limited v. Railway Executive</u> [1949] 2 All ER 581. However, it can only be concluded that the intention of the parties was that clause 12.2(a) would apply to prevent transfers by Jaeban UK and/or Mr. Jaeban to third parties.

a. **Intention of the Parties to the IPLA**

20. One of the restrictions is on the transfer of "the Beneficial Ownership of the Licensee". There is no definition of Beneficial Ownership, but from the definition of Beneficial Owner it must relate to Mr. Jaeban's shareholding in Jaeban UK. Jaeban UK could not transfer

shares in itself – this could only be relevant to Mr. Jaeban, the owner of the shares. Further, the clause seeks to restrict the transfer of any company within the group of which the Licensee is a member. Therefore, this restriction too must have been intended to apply to Mr. Jaeban as ultimate shareholder rather than to Jaeban UK.

21. Clause 12.2 of the IPLA notes "none of this Agreement, the Beneficial Ownership of Licensee or Licensee's BRACII business, or any company within the Group of which Licensee is a member, may be voluntarily, involuntarily, directly or indirectly sold, actually or contingently, assigned or otherwise transferred by Licensee (including by will, declaration of or transfer in trust or the laws of intestate succession or by operation of law through divorce or other legal proceeding), without the prior written consent of BRACII in accordance with this Agreement …". This language was intended to apply to Mr. Jaeban rather than Jaeban UK as Jaeban UK is a company and the references to "will", "intestate succession" and "operation of law through divorce …" are only relevant to individuals (i.e. Mr. Jaeban rather than Jaeban UK).

22. Clause 12.2(a) of the IPLA notes that BRACII only had personal confidence in Jaeban UK and/or Mr. Jaeban. The clause adds that BRACII would not have entered into the Agreement without its personal confidence in Jaeban UK and/or Mr. Jaeban and this was the justification for the restrictions contained in that clause. The Agreement was, therefore, personal to Jaeban UK and/or Mr. Jaeban. By definition, therefore, the clause could only ever have been intended to restrict transfers to third parties other than Jaeban UK and/or Mr. Jaeban.

21. With the assignment of Jaeban UK's interest to Mr Jaeban, there has been no assignment to a third party and therefore no breach of the terms of clause 12.2(a).

b. <u>Express provisions in the IPLA and Umbrella Agreement have not been breached.</u>

23. The Umbrella Agreement seeks to prevent the assignment, or disposal, of the Agreement or Jaeban UK's/Mr. Jaeban's interest in the Umbrella Agreement. The IPLA seeks to prevent the assignment, transfer or sale of the IPLA.

24. The Deed of Assignment of the BRACII claim simply seeks to assign such right, title and interest (if any) as Jaeban UK may have in the claim against BRACII. No reference is made to either the IPLA or the Umbrella Agreement and, therefore, even if the assignment restrictions in clauses 4.3 and 12.2(a) could be considered to apply to assignments between Jaeban UK and Mr. Jaeban, the provisions have not been breached as Jaeban UK has not sought to assign either of the Umbrella Agreement or the IPLA or its interest in the Umbrella Agreement.

C. **Distinguishing the Linden Gardens case**

25. BRACII argues that under Linden Gardens Trust Ltd. v. Lenesta Sludge Disposals, Ltd., [1994] 1 A.C. 85 (H.L. 1993), Mr. Jaeban's assignment is invalid. However, Linden Gardens can be distinguished from the current case for many different reasons

26. The first and most notable distinction between the Linden Gardens case and the current matter is the identity of the assignor and the assignee and the nature of the underlying agreements. In Linden Gardens, the assignor, Stock Conversion, assigned its interest in a breach of contract and negligence claim against Lenesta Sludge to Linden Gardens, the assignee. Linden Gardens was effectively an independent third party. In addition, the breach of contract and negligence claims which were assigned to Linden Gardens by Stock Conversion arose from personal contracts between Stock Conversion and Lenesta Sludge. Linden Gardens was not a party to the original contract between Stock Conversion and Lenesta.

27.  In Linden Gardens, the first crucial point raised by Lord Browne-Wilkinson at paragraph 100 was that "Stock Conversion [the assignor, i.e. equivalent of Jaeban UK] which was the only party in a direct contractual relationship with each of the defendants [i.e. equivalent of BRACII] is not a party to the action". This is not the case in this instance as Jaeban UK remains a party to the action. In addition, Mr. Jaeban, the assignee, was also a party to the original contractual relationship. Lord Browne-Wilkinson at paragraph 105 of his judgment noted that "the reason for including the contractual prohibition viewed from the contractor's point of view must be that the contractor wishes to ensure that he deals, and deals only, with the particular employer with whom he has chosen to enter into a contract."

28.  In the current case, BRACII considered that it was contracting with Jaeban UK *and* Mr. Jaeban. In fact, BRACII expressly acknowledges in the IPLA the importance of it contracting with both Mr. Jaeban and Jaeban UK, as set forth above. Further, one of Lord Browne-Wilkinson's main justifications for his judgment in Linden Gardens at paragraph 108 was that "if the law was otherwise, it would defeat the legitimate commercial reason for inserting the contractual prohibition, viz., to ensure that the original parties to the contract are not brought into direct contractual relations with third parties."

29.  This is clearly not the case in this instance, as Mr. Jaeban is not a third party. Therefore to the extent that the court considers that such assignments are not effective to transfer the causes of actions to third party assignees, in the current case it should allow the assignment to stand as it was not to a third party assignee and on a true construction of the prohibitions in the agreements there has been no breach.

9

30. Further, this case can be distinguished by considering the status of BRACII at the time of the assignment. BRACII was in repudiatory breach of the contract prior to the assignment and had also assigned/transferred any interest it had in the agreements to Avis prior to the assignment.

31. In Linden Gardens, attempts were made to assign the underlying contracts without consent. In the current case, no reference was made to the underlying Umbrella or IPLA agreements in the assignment. The assignment was simply limited to the benefit of the action. The BRACII claim is clearly not as closely linked to the underlying Umbrella and IPLA agreements as the basis of the claim in the Linden Gardens case was to the original contract.

32. In Linden Gardens, the defendants had good reason to argue that the assignments were invalid as their validity would have increased their liability. In the present case, Jaeban UK remains a party to the proceedings and whether the claim is ultimately brought by Jaeban UK or Mr. Jaeban with the benefit of the assigned Jaeban UK claim, it will not alter BRACII's ultimate liability. Therefore, BRACII's grounds for pursuing their Motion for Reconsideration are not valid and are unnecessarily increasing costs and delay.

### D. This Honorable Court has already ruled on the issue of assignment

33. The House of Lords judgment in the Linden Gardens case is not new law having been delivered in 1993. Since there has been no change of law or new evidence, the only basis for a motion to reconsider would be where there has been "a clear error of law or fact or to prevent manifest injustice." Proxim, Inc. v. 3com Corp., 2003 U. S. Dist. LEXIS 2556 at *3 (D. Del. Feb 21, 2003). Given that no error of law or fact is alleged, the only reason to allow the would be to prevent manifest injustice. However, the reason why this Motion to Reconsider has now been

10

made is because of BRACII's counsel's neglect to raise and consider this issue fully at an earlier stage. This failure on their part should not constitute sufficient grounds to justify agreement to a motion for reconsideration.

### E.   BRACII has no standing to raise these points

34.   BRACII has sold, transferred and/or assigned its interest in both the Umbrella Agreement and the IPLA to Avis. BRACII, therefore, no longer has standing and can no longer seek to enforce the terms of either of those agreements (i.e. for failure to seek consent (from either BRACII or Avis) to any assignment) against either Jaeban UK or Mr. Jaeban, or in anyway seek to obtain benefit from the agreements.

35.   In addition, BRACII was in repudiatory breach of both the Umbrella Agreement and the IPLA prior to the date of the assignment. Having been in repudiatory breach the relevant clauses in the Umbrella Agreement and the IPLA fail to have effect and/or BRACII cannot rely upon them.

WHEREFORE, Mr. Jaeban respectfully requests that this Honorable Court deny *BRACII's Motion for Partial Reconsideration Based on Controlling English Decisions* and *BRACII's Motion for a Four-Day Extension of time to File its Motion for Reconsideration.*

Dated: June 25, 2004

Respectfully submitted,

WERB & SULLIVAN

/s/ Brian A. Sullivan
Brian A. Sullivan (#2098)
Amy D. Brown (#4077)
300 Delaware Ave., 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facimile: (302) 652-1111

Attorneys for Ibrahiem Jaeban,
Assignee of Defendant Jaeban (U.K.) Limited

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2004, I caused one copy of the foregoing document to be served upon the persons listed below in the manner indicated:

**VIA FACSIMILE AND E-MAIL**

Larry J. Nyhan, Esq.
Kenneth E. Wile, Esq.
Sidley, Austin, Brown, &
  Wood, LLP
10 South Dearborn Street
Chicago, IL 60603
Facsimile: (312) 853-7036

**VIA HAND DELIVERY**

Robert S. Brady, Esq.
Edmon L. Morton, Esq.
Joseph A. Malfitano, Esq.
Matthew B. Lunn, Esq.
Young, Conaway, Stargatt & Taylor, LLP
The Brandwyine Building, 17th Floor
1000 West Street, P. O. Box 391
Wilmington, DE 19899-0391

/s/ Brian A. Sullivan
Brian A. Sullivan

**File an answer to a motion:**
03-54271-MFW BRAC Group, Inc. (f/k/a Budget Group, Inc.) et al v. Jaeban (U.K.) Limited et al

U.S. Bankruptcy Court

District of Delaware

Notice of Electronic Filing

The following transaction was received from Sullivan, Brian A. entered on 6/25/2004 at 12:59 PM EDT and filed on 6/25/2004
**Case Name:**        BRAC Group, Inc. (f/k/a Budget Group, Inc.) et al v. Jaeban (U.K.) Limited et al
**Case Number:**      03-54271-MFW
**Document Number:** 35

**Docket Text:**
Objection to *(1) BRACII's Motion for Partial Reconsideration Based on Controlling English Decisions (RE: D.I 33) and (2) BRACII's Motion for a Four-Day Extension of Tim to File its Motion for Reconsideration (D.I. 34)* (related document(s)[34], [33] ) Filed by Jaeban (U.K.) Limited (Attachments: # (1) Certificate of Service) (Sullivan, Brian)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** E:\BAS\BAS BK\Open BK\Budget Group\Jaeban (U.K.) Limited\Response to Reconsideration Motion\objection.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/25/2004] [FileNumber=2743587-0]
[0f62a75ef9d53c2c6c34ca216848265f9664f4a2f603a65ce521ed9edc6303f8deb7
21d25e4550f5d0034c8dee7a99aec6805a64d2d91c6851b1b3ada17de8ca]]
**Document description:** Certificate of Service
**Original filename:** E:\BAS\BAS BK\Open BK\Budget Group\Jaeban (U.K.) Limited\Response to Reconsideration Motion\cert.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/25/2004] [FileNumber=2743587-1]
[0674a34457fb31b6f020a584fd3bf5529f5129b6662ac5e98851ea91f5406575bbe9
2a3bf1867062f506931d30bb8de0b7459c9ba55194bd6c6022503463c73f]]

**03-54271-MFW Notice will be electronically mailed to:**

William Pierce Bowden    wbowden@ashby-geddes.com

Thomas W. Briggs    tbriggs@mnat.com,

Matthew Barry Lunn    bankruptcy@ycst.com

Edmon L. Morton    bankruptcy@ycst.com,

JA1099

Ricardo Palacio    rpalacio@ashby-geddes.com

Brian A. Sullivan    bsullivan@werbsullivan.com

**03-54271-MFW Notice will not be electronically mailed to:**

Jaeban (U.K.) Limited
,