IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:  BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 02-12152 (MFW) |
| IN RE:  BRAC GROUP, INC. (F/K/A BUDGET GROUP, INC., ET AL.), | ) ) ) | (Jointly Administered) |
| Plaintiffs and Counterclaim Defendants, | ) ) | |
| v. | ) ) | Adversary No. A-03-54271 |
| JAEBAN (U.K.) LIMITED, | ) ) | |
| and IBRAHIEM JAEBAN | ) ) ) | |
| Defendants and Counterclaimants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS OF IBRAHIEM JAEBAN**

Defendant, Ibrahiem Jaeban ("Mr. Jaeban"), individually and as Assignee of Jaeban (U.K.) Limited ("Jaeban U.K."), by and through his undersigned attorneys, hereby responds to the Amended Complaint of the Debtors and Debtors-in-possession BRAC Group, Inc. (f/k/a Budget Group, Inc.), et al. (collectively, "BRAC")[1], as follows:

      1.     Mr. Jaeban denies the allegations in paragraph 1 to the extent they assert that any amounts are due BRAC.

_____

[1] In the Amended Complaint, the Plaintiffs include all of the debtors and debtors-in-possession, include BRAC Rent-A-Car International, Inc. For the purposes of this pleading, Mr. Jaeban includes all Plaintiffs in the definition of BRAC.

**JA18**

2.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies same.

3.    Admitted.

4.    It is admitted that Mr. Jaeban is a citizen and resident of the United Kingdom. Mr. Jaeban is the assignee of all claims of Jaeban U.K. relating to BRAC.

5.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

6.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

7.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

8.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

9.    This paragraph states a legal conclusion as to which no responsive pleading is required. To the extent it asserts other than a legal conclusion, it is denied.

10.    It is admitted that an action to resolve a dispute relating to a cure amount objection is a core proceeding. It is denied that an action for collection of an account receivable is a core proceeding. It is denied that an action to collect on alleged guaranty is a core proceeding.

11.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies same.

12.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore denies same.

2

13.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies same.

14.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and therefore denies same.

15.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies same.

16.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies same.

17.    It is admitted that Mr. Jaeban and certain other parties signed an Umbrella Agreement, the terms of which speak for themselves.

18.    It is admitted that the terms of the IPLA speak for themselves.

## COUNT I

19.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning BRAC's efforts attempts to reconcile amounts under the ILPA.  The remaining allegations of paragraph 19 are denied, except it is admitted that BRAC and Jaeban U.K. have been unable to agree on a reconciliation of Jaeban U.K.'s account under the ILPA.

20.    Admitted.

21.    Denied, except it is admitted that the parties have been unable to agree on any set off amounts to which Jaeban U.K. is entitled.

22.    Denied.

23.    Denied.

JA20

24.    This paragraph states a legal conclusion as to which no responsive pleading is required.  To the extent it asserts other than a legal conclusion, it is denied.

## COUNT II

25.    Mr. Jaeban incorporates and realleges his responses set forth in paragraphs 1 through 24, as if fully set forth herein.

26.    Denied.

27.    It is admitted that the Umbrella Agreement speaks for itself.  The remaining allegations of paragraph 27 are denied.

28.    Denied.

29.    Mr. Jaeban is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore denies same.

30.    Denied.

31.    Denied.

### AFFIRMATIVE DEFENSES

#### First Affirmative Defense

32.    BRAC's claims are barred by waiver.

#### Second Affirmative Defense

33.    BRAC's claims are barred by estoppel.

#### Third Affirmative Defense

34.    BRAC's claims are barred by the applicable statute of limitations.

#### Fourth Affirmative Defense

35.    BRAC may not recover on the claims asserted in the Complaint to the extent that Mr. Jaeban, as assignee of Jaeban U.K, has a right of set off or off set against BRAC.

### Fifth Affirmative Defense

36.    BRAC may not recover on the claims asserted in the Complaint to the extent that Mr. Jaeban, as assignee of Jaeban U.K., has a right of recoupment against BRAC.

### Sixth Affirmative Defense

37.    BRAC may not recover on the claims asserted in the Complaint to the extent that the amount alleged to be owed to BRAC has been paid and/or satisfied by Jaeban U.K. or Mr. Jaeban.

### Seventh Affirmative Defense

38.    BRAC may not recover on the claims asserted in the Complaint to the extent that Jaeban U.K. was required to cover for BRAC's breaches.

### Eighth Affirmative Defense

39.    BRAC may not recover on the claims asserted in the Complaint to the extent that Jaeban U.K. has suffered, inter alia, consequential and incidental damages and lost profits resulting from BRAC's conduct.

### Ninth Affirmative Defense

40.    BRAC's claims are barred by laches.

### Tenth Affirmative Defense

41.    BRAC may not recover on the claims asserted in Count II of the Complaint because of the failure of a condition precedent.

## COUNTERCLAIMS

Counterclaim plaintiff Ibrahiem Jaeban ("Mr. Jaeban") in accordance with section 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7013 of the Federal Rules of Bankruptcy procedure, by and through its undersigned attorneys, hereby counterclaims

JA22

against counterclaim defendant BRAC for claims that arose after the entry of an order for relief as follows:

Parties

42.    Counterclaim plaintiff Mr. Jaeban is a resident of United Kingdom. Mr. Jaeban is the assignee of Jaeban U.K.

43.    Jaeban U.K. has or had a place of business for self-drive, contract hire and direct auto sales services located at Welcome House, 999 Wolverhampton Road, Oldbury, West Midlands, United Kingdom, B69 4RJ.

44.    On information and belief, counterclaim defendant BRAC is a Delaware corporation with a place of business at Hemel Hempstead, England.

Jurisdiction and Venue

45.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Background

46.    On or about March 5, 2001, BRAC and Jaeban U.K. entered into an International Prime License Agreement (the "ILPA") and an Umbrella Agreement. A true and correct copy of the ILPA is attached hereto as Exhibit A.

47.    Pursuant to the ILPA, BRAC licensed the Budget trademark to Jaeban U.K..

48.    Jaeban U.K. has performed or substantially performed its obligations under the ILPA and all conditions precedent to BRAC's obligations, if any, have been satisfied.

6

JA23

49.    BRAC has breached the ILPA by failing to adequately market the Budget brand pursuant to the ILPA, failing to adequately provide certain administrative functions required by the ILPA, and/or failing to provide integrated service across critical territories as required by the ILPA.

50.    In consideration of Jaeban U.K. entering into the ILPA, BRAC provided a written guaranty to Jaeban U.K., whereby BRAC guaranteed as the primary obligor the obligation of BRAC's subsidiary, BTI (UK) pk ("BTI") for the leasing of vehicles.

51.    Jaeban U.K. leased vehicles to BTI pursuant to various agreements between Jaeban U.K. and BTI.

52.    BTI owes Mr. Jaeban, as assignee of Jaeban U.K., an amount not less than £351,180.82 for various charges associated with the leasing of vehicles to BTI, including for charges related to damage to the vehicles and mileage.

53.    In August, 2002, Jaeban U.K. requested that BTI return certain vehicles in its possession that it had leased from Jaeban U.K.  To date, BTI has failed to return those vehicles.  As a result of BTI's failure to return those vehicles, Jaeban U.K. has been damaged in an amount not less than £70,000.

54.    Additionally, during the course of 2002, certain customers of Jaeban U.K. paid certain sums, owed by them to Jaeban U.K., to BRAC.  BRAC has failed to remit payment of those monies to Jaeban U.K.  As a result, Jaeban U.K. has been damaged in the amount of £49,724.47.

55.    Furthermore, BRAC is indebted and owes to Jaeban U.K. the sum of £1,231,678.66. This amount is the result of reconciling the Accounts Payable and the Accounts Receivable between the parties, including amounts customers paid to BRAC for services

7

JA24

provided by Jaeban U.K. BRAC has acknowledged in correspondence these sums are due and owing to Jaeban U.K., but has failed to remit those monies to Jaeban U.K. or to Mr. Jaeban. As a result, Jaeban U.K. has been damaged in an amount not less than £1,231,678.66.

**COUNT I**
**BREACH OF CONTRACT/DEBT**

56.    Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 55 as if fully set forth herein.

57.    BRAC has breached the ILPA by failing to adequately market the Budget brand as required by the ILPA, failing to adequately provide certain administrative functions required by the ILPA, and/or failing to provide integrated service across critical territories as required by the ILPA. Such failures constituted material breaches of the ILP and the Umbrella Agreement.

58.    Jaeban U.K. has suffered consequential and incidental damages and lost profits resulting as a result of such breaches by BRAC in an amount to be determined at trial.

59.    Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such breaches by BRAC.

**COUNT II**
**CONVERSION OF MONIES OWED TO JAEBAN U.K. AND MR. JAEBAN**

60.    Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 59 as if fully set forth herein.

61.    Jaeban U.K. has a property interest in the monies mistakenly paid by Jaeban's customers to BRAC.

62.    Jaeban U.K. has a right to possession and use of these monies.

63.    BRAC has improperly and unlawfully exercised dominion and control over these monies, and has wrongly converted these monies to its own use, and has failed to remit payment of these monies to Jaeban U.K. or Mr. Jaeban.

64.    As a result of BRAC's wrongful conversion of these monies, Jaeban U.K. has suffered damages in the amount of £49,724.47.

65.    Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such conversion by BRAC.

## COUNT III
## BREACH OF CONTRACT/GUARANTY

66.    Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 65 as if fully set forth herein.

67.    There exists a valid and enforceable agreement between Jaeban U.K. and BRAC whereby BRAC, absolutely and unconditionally, guaranteed as the primary obligor the obligations of BTI to Jaeban U.K. for the leasing of vehicles.

68.    Jaeban U.K.has performed or substantially performed its obligations under the agreements with BTI and all conditions precedent to BTI's obligations and, hence, BRAC's obligations, have been satisfied.

69.    BTI owes Jaeban U.K. an amount of not less than £351,180.82 for various charges associated with its leasing of vehicles from Jaeban U.K.

70.    BTI owes Jaeban U.K. an amount of not less than £70,000 for its failure to return to Jaeban certain vehicles that it had leased from Jaeban U.K.

71.    As the primary obligor and/or guarantor of BTI's obligations to Jaeban U.K., BRAC is absolutely and unconditionally obligated to pay to Jaeban U.K. those sums owed to Jaeban U.K. by BTI.

JA26

72.    BRAC has breached its guaranty to Jaeban U.K. by failing to remit payment to Jaeban U.K. of amounts owed by BTI to Jaeban U.K.

73.    Jaeban U.K. has suffered damages as a result of such breaches in an amount of not less than £421,180.82.

74.    Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such breaches by BRAC.

**COUNT IV**
**BREACH OF CONTRACT/DEBT**

75.    Mr. Jaeban repeats and realleges the allegations contained in paragraphs 42 through 74 as if fully set forth herein.

76.    BRAC has breached the ILPA by failing to remit and pay to Jaeban U.K. all sums and amounts owed by BRAC to Jaeban U.K. pursuant to the provisions of the ILPA, including but not limited to amounts customers paid to BRAC for services actually provided by Jaeban U.K.

77.    Jaeban U.K. is owed an amount of not less than £1,231,678.66 as its Accounts Receivable from BRAC for amounts due Jaeban U.K. pursuant to the provisions of the ILPA.

78.    As a result of BRAC's breach in failing to pay to Jaeban the amounts owed, Jaeban U.K. has suffered damages in an amount of not less than £1,231,678.66.

79.    Mr. Jaeban, as assignee of Jaeban U.K., is entitled to recover the damages Jaeban U.K. suffered as a result of such breaches by BRAC.

WHEREFORE, Mr. Jaeban respectfully requests that this Court:

(a)    enter a full and final judgment in his favor and against BRAC for compensatory damages and for all amounts owed to Jaeban U.K.;

10

**JA27**

(b)    order the release of the escrowed funds to Mr. Jaeban in the amount of that

judgment;

(c)    award pre- and post-judgment interest at the maximum rate allowable;

(d)    award Mr. Jaeban his attorneys' fees and costs; and

(e)    award such other and further relief as the Court deems just and proper.


Dated: July 23, 2004

Respectfully submitted,

WERB & SULLIVAN

s/ Robert D. Wilcox
Brian A. Sullivan (#2098)
Robert D. Wilcox (#4321)
Amy D. Brown (#4077)
300 Delaware Ave., 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

Attorneys for Ibrahiem Jaeban

11

**JA28**

# EXHIBIT A

# BUDGET RENT A CAR SYSTEM

## INTERNATIONAL PRIME LICENSE AGREEMENT

This Agreement is made and entered into this __<sup>th</sup> day of _____ 2001, by and between Budget Rent a Car International, Inc., a Delaware USA Corporation ("Budget") and

_____    d/b/a  Budget  Rent  a  Car  of  _____

("Licensee")

## PREAMBLES

Budget Rent a Car Corporation (hereinafter referred to as "BRACC") has developed and franchises a system which utilises BRACC's confidential information trade secrets know-how and methods (the "Budget Rent a Car System" or "System") for conducting the business of renting automobiles, trucks and such other vehicles without drivers as may be approved by BRACC in writing from time to time (collectively, the "Vehicles"), which is commonly known as a Budget Rent a Car business (a "BRAC business"). BRAC businesses are conducted under certain trade names, trademarks and service marks and logos, including, "Budget", "Budget Rent a Car", "Budget Rent a Truck", "Budget Rent a Van", and their associated logos, colour schemes and other existing or future trademarks, service marks, logos and indicia as designated by Budget from time to time (collectively the "Budget Trademarks"). The System has been extensively promoted and has acquired substantial Goodwill and business value through the efforts of BRACC and its international network of mutually interdependent licensees and

affiliate owned operations (the "Network").  The System is a format for operating a business of renting vehicles through the use of standards prescribed by BRACC in its operating manual (the "Operating Manual") and otherwise from time to time in writing, which are designed to assure a high uniform quality of service to each customer and to maintain and enhance the value of the Budget Trademarks (collectively, the "Standards"). The System including the Standards may be improved, further developed or otherwise modified from time to time by BRACC.

Budget and BRACC have developed essential services which are provided as part of this Agreement and which are an integral part of the System.  These services may include pre-opening training; conventions, seminars and meetings at which licensees can learn about sales and marketing techniques and business techniques; updates of the Operating Manual and the Standards; advertising; reservation processing; charge card and voucher processing and access to purchasing programs.

. Budget has by way of an agreement with BRACC been authorised to operate and grant licenses to others to operate BRAC businesses.  Licensee has applied to be exclusively licensed by Budget to use the System and the Budget Trademarks to conduct a BRAC business using the services described above or others offered by Budget and BRACC from time to time offering for rental the types of Vehicles identified in Schedule 1 subject as herein provided.  In executing this Agreement, Licensee acknowledges the importance of Budget's high standards of quality and service and agrees to operate its BRAC business in conformity with the Standards, to strictly comply with the provisions of this Agreement and to conduct its BRAC business ethically, honestly and fairly.  Licensee shall not conduct its BRAC business in a manner which may

2

discredit or impair the value of the BRAC business, the System or the Budget Trademarks. As an inducement to Budget entering into this Agreement, Licensee represents and warrants to Budget that all information set forth in any and all applications, financial statements and submissions to Budget is true, complete and accurate in all respects and that there have been no misrepresentations or omissions in any application, statement or submission to Budget.

## AGREEMENT

## ARTICLE I

## EXCLUSIVE LICENSE

**1.1     Exclusive License.**

Subject to the provisions hereof and the continuing performance by Licensee of its obligations under this Agreement and the Standards, Budget hereby grants to Licensee the exclusive right and license to conduct a BRAC business under the Budget Trademarks and the System together with the benefit of the Goodwill (hereinafter defined) within the geographical territory and for the term hereinafter set forth. Licensee accepts such license, agrees to use its best efforts to develop and continuously operate its BRAC business in accordance with the provisions of this Agreement and the Standards.

**1.2     Reservation of Rights.** Licensee will not operate its BRAC business or any part thereof outside the Licensed Territory. In particular, and without derogating from the

3

foregoing, Licensee shall not establish any location outside the Licensed Territory. Licensee may serve any customer without regard to the customer's address from more than one location within the Licensed Territory, provided Licensee shall not pick up customers outside the Licensed Territory or deliver vehicles outside the Licensed Territory. Licensee agrees that the term "BRAC business" refers exclusively to the business of renting Vehicles, as identified in Schedule 1, without drivers under the Budget Trademarks and the System and does not include or refer to the rental of any other vehicle or product or to any other business or commercial activity, including any business engaged in the sale of new or used vehicles. Licensee agrees that Budget exclusively reserves all rights not expressly granted to Licensee in this Agreement, including, the rights to: (a) operate and grant others the right to operate a BRAC business outside the Licensed Territory, and under certain circumstances pursuant to Paragraph 11.5, inside the Licensed Territory, on such terms and conditions as Budget deems appropriate; (b) hire and/or appoint sales persons and general sales agents and negotiate and enter into local, regional, national and international sales and marketing agreements with persons or entities located within the Licensed Territory; (c) use the Budget Trademarks for any purpose within the Licensed Territory other than for operating a BRAC business offering for rental the types of Vehicles identified in Schedule 1 at a location within the Licensed Territory except as provided in Paragraph 8.6; and (d) operate and grant others the right to operate businesses, other than a BRAC business offering for rental the types of Vehicles identified in Schedule 1, outside and within the Licensed Territory, including without limitation, businesses that offer for rent or sale vehicles and other motorised and non-motorised equipment under trademarks other than the Budget Trademarks. Licensee acknowledges and agrees that nothing in this Agreement shall prohibit Budget or its parent company, subsidiaries or affiliates (the "Related Entities") from

4

operating, or granting others the right to operate a BRAC business in the Licensed Territory where such BRAC business offers for rental vehicles other than the Vehicles authorised to be rented by Licensee under Schedule 1. Licensee acknowledges and agrees that Budget gives no undertakings beyond those expressly given in this Agreement and no undertaking on the part of Budget or BRACC shall be implied for any reason including any practice or course of conduct embarked upon by Budget, BRACC and/or any of the parties hereto. Licensee further acknowledges and agrees that nothing in this Agreement shall prevent Budget or the Related Entities from selling their assets, engaging in a public offering or private placement, from merging with or acquiring other corporations or entities or from being acquired by another corporation or entity including corporations or entities which may own or operate systems or chains which may be competitive with or similar to the System.

1.3     **Prohibition Against Sublicensing/Agencies.** Licensee agrees that it has no right or authority to grant a sublicense to any person to perform any part of Licensee's rights or obligations licensed hereunder nor to grant any person the right to act as Licensee's agent to perform any part of the Licensee's rights or obligations licensed hereunder save with Budget's prior written consent and subject to such conditions as Budget may in its absolute discretion impose and provided always that the Licensee shall not have the right to sublicense any territory which can be utilised to service any airport concessions and shall remain the operator of all major locations including all airport locations within the Licensed Territory.

1.4     **Licensed Territory.** This license shall only grant the exclusive right only to establish locations throughout the territory which is set forth in the map and description in

5

Schedule 2 (hereinafter referred to as the "Licensed Territory"). It is expressly agreed that the map is for identification only and is not conclusive as to the extent of the Licensed Territory. If, in any circumstances, the Licensed Territory description, as understood in the future, defines a territory larger than that contemplated by the map and description in Schedule 1 attached to this Agreement or any amendment as of the date of execution of same, Licensee agrees that it has no right to operate its BRAC business in the additional territory and that, Budget shall have the right to operate, or to license, a third party the right to operate a BRAC business within that additional territory.

1.5     BRACC and the Related Entities (but no other parties not parties to this Agreement) shall have the right pursuant to the Contracts (Rights of Third Parties) Act 1999 to enforce the terms and conditions of this Agreement but shall not have any obligation to observe and perform any of the terms and conditions which Budget is required to observe and perform under this Agreement.

ARTICLE II

BUDGET TRADEMARKS AND SYSTEM

2.1     **BRACC's Exclusive Ownership.**  Licensee acknowledges and agrees that BRACC has exclusive ownership of and right to the Budget Trademarks, the System (including the proprietary method of conducting the BRAC business using the services referred to in the Preambles and all practices, procedures, methods, devices, manuals, slogans, and other materials

6

constituting an element of the System and that Licensee's use of the Budget Trademarks, or any variation thereof, and the Goodwill inures to the exclusive benefit of BRACC. To avoid any doubt Licensee acknowledges that the Goodwill shall at all times belong to and be vested in BRACC and that Licensee only has the right to benefit from the Goodwill to the extent and upon the terms provided by this Agreement. Licensee agrees not to register or attempt to register any of the Budget Trademarks anywhere in the world.

2.2      **Notification of Infringement/Claim.** Licensee agrees to notify Budget and BRACC immediately in writing of any apparent infringement of or challenge to Licensee's use of any Budget Trademark or claim by any person other than BRACC to any rights in any Budget Trademarks or any similar trade name, trademark or service mark or other proprietary right (collectively **"Budget Proprietary Rights"**) of which Licensee becomes aware. Licensee agrees to not communicate with any person other than BRACC, Budget and their counsel in connection with any such infringement, challenge or claim. Licensee agrees that BRACC shall have sole discretion to take such action as it deems appropriate and the right to control exclusively any litigation, or administrative proceeding arising out of any such infringement, challenge or claim or otherwise relating to any Budget Proprietary Rights. Licensee agrees to execute any and all documents, render such assistance and do such acts and things including providing or giving evidence as may, in the opinion of counsel for BRACC, be necessary or advisable to protect and maintain the interest of BRACC in any such litigation or proceeding or to otherwise protect and maintain the interest of BRACC in the Budget Proprietary Rights.

7

**JA36**

2.3      Limitation On Use.  Licensee acknowledges and agrees that the right to use the Budget Trademarks and the System is derived solely from this Agreement and is limited to the conduct of a BRAC business pursuant to and in compliance with this Agreement and the Standards.  Licensee agrees that it will not use the Budget Trademarks or the System or any variation thereof, other than in conformity with this Agreement, and that it will not use or incorporate any of the Budget Trademarks in or as part of its corporate name or with any prefix, suffix or symbols, or in any modified form (including any local or special adaptations or artistic variations of any of the Budget Trademarks), nor may Licensee use any of the Budget Trademarks in connection with the sale of any unauthorised product or service or in any other manner not expressly authorised in writing by BRACC.  Licensee further agrees that it will not use any existing or future Budget Trademark or any variation thereof as part of a domain name or electronic address of a website or internet or e-mail address, nor will it establish a website in connection with or relating to its conduct of the BRAC business except in accordance with the Operating Manual.  For purposes of this Agreement, a "website" is an electronic document contained in or available to a network of computers linked by communications software or successor or similar and/or alternative communications technology.  Licensee agrees to display the Budget Trademarks prominently and in the manner prescribed by BRACC on signs, forms, and other materials and articles.  Licensee agrees to give such notices of trademark, service mark, registration and copyright ownerships as Budget specifies and to obtain such fictitious, assumed name or business name registrations as may be required under applicable law.  If it becomes advisable or desirable at any time in the absolute judgement of BRACC for Licensee to modify or discontinue use of any Budget Trademark, and/or use one or more additional or substitute Budget Trademarks, Licensee agrees to do so promptly at its sole cost and expense.

8

—JA37

2.4    Nondisclosure.

2.4.1  Licensee acknowledges, warrants and agrees that save pursuant to an agreement with Budget entered into prior to the execution of this Agreement or as disclosed in writing and annexed to this Agreement and signed by the parties hereto it has no prior knowledge of, no part in the creation or development of, and no proprietary or other rights or claims in or to any element of the BRAC business, the System or the Budget Trademarks, and had no prior knowledge of the System or how to operate a business similar to the BRAC business or how to conduct the BRAC business and that all materials loaned or otherwise made available to Licensee and all disclosures made to Licensee by or at the direction of Budget, and not to the general public at any time before or during the term of this Agreement including the contents of the Operating Manual and the Standards, current and prior research, development test programs and any marketing, advertising and promotional programs, are communicated and made available confidentially and as trade secrets and that the copyright in the Operating Manual and all other documents and materials relating to the System vest solely in BRACC and/or Budget. The System results from experience and testing by Budget and/or BRACC, is not generally known or easily accessible and is important to Licensee, the Network, Budget and BRACC for the sale of goods and services to customers of BRAC businesses. Licensee shall make all reasonable efforts to maintain the confidentiality of the above described documents and information, including, during the term of this Agreement and thereafter, Licensee shall not reproduce, exhibit, remove from its place of business or disclose to any person (other than its partners, shareholders, officers and employees on a need to know basis and after ensuring their commitment to confidentiality), and shall not use or disclose for any purpose other than

9

operation of the BRAC business authorised hereunder, the Operating Manual, the System or any other confidential element of, or information relating to the System. Licensee acknowledges and agrees that the foregoing are trade secrets of significant commercial value to BRACC and Budget, in which BRACC and Budget have made a substantial investment and have a legitimate right to protect against unlawful disclosure.

2.4.2      Exclusive Relationship. Licensee agrees that BRACC and Budget would be unable to protect confidential information against unauthorised use or disclosure or use by a competitor of Budget, BRACC and any BRAC business and would be unable to encourage a free exchange of ideas and information among BRAC businesses and between Licensee and Budget if Licensee, its Beneficial Owners or persons related to Licensee or its Beneficial Owners were permitted to be engaged, concerned or interested (whether directly or indirectly) as an owner, partner, financier, director, officer, employee, consultant, agent or in other capacity in any other vehicle rental business or system in the Licensed Territory. Accordingly, unless Budget provides prior written consent to the contrary, Licensee agrees that it and that it will procure that each of the companies in the Group of which Licensee is a member and their Beneficial Owners, and the Licensee's principal officers and directors will not, during the term of this Agreement, be engaged, concerned or interested, (whether directly or indirectly), as an owner, partner, financier, director, officer, employee, consultant, agent or in any other capacity in any other vehicle rental business or system in the Licensed Territory or in any other location where it would compete with the System, Budget, BRACC any BRAC business, or any other entity including Budget which has a license to operate or to license others to operate a BRAC business whether or not it has commenced such operations or the licensing of others.

10

2.4.3        **Covenants on Termination.**  Licensee agrees as follows:

2.4.3.1        Licensee undertakes not directly or indirectly to solicit or tout for business from any person who was during the period of two years prior to termination of this Agreement a regular customer of or in the habit of dealing with the BRAC business of Licensee.

2.4.3.2        Licensee acknowledges that its failure to adhere to the provisions of this Paragraph 2 will constitute unfair competition to Budget, BRACC and the Network and Licensee further acknowledges the difficulty of accurately determining the tangible and intangible damages which Budget, BRACC and the Network will suffer if Licensee fails or refuses to adhere to the provisions of this Paragraph 2.4 and accordingly, Licensee and Budget agree:

2.4.3.3        To entry without prior notice, to the extent that applicable notice requirements may be waived, of temporary and permanent injunctions against Licensee's breach of such provisions.  Licensee agrees to pay to Budget an amount equal to the aggregate of Budget's costs of obtaining any such temporary and permanent injunctive relief, including all costs of investigation and proof of facts, court costs and attorney's fees.

2.4.3.4        In any proceeding either at law or in equity between the parties, Licensee hereby agrees that it has waived and shall not be entitled to raise as a defence either that: (1) the period of time or geographical area within which Licensee

11 .

**JA40**

is prohibited from competition is unfair, unnecessary or unreasonable; or (2) that such provisions are an unlawful restraint of trade.

2.5    **System Ideas.**  If Licensee develops any idea, method of operation, formula, design, invention, or marketing technique which could be useful to the operation of the System, then Licensee agrees to make available to Budget and the Related Entities, and their respective successors and assigns, and the Network, such idea, method of operation, formula, design, invention, or marketing technique free of charge for their use for so long as Budget shall wish them to be able to do so.  Licensee shall not introduce or use any such or any other idea, method of operation, formula, design, invention or marketing technique into its BRAC business without BRACC's and/or Budget's prior written approval.  Whether or not such approval is given shall be entirely at BRACC's and/or Budget's absolute discretion.

2.6    **Modifications to System.**  Licensee acknowledges that Budget may have to change the System including the Standards from time to time to preserve and enhance the image of the System or the Network, to accommodate consumer tastes and to maintain or enhance the efficiency and profitability of the Network.  Accordingly, Budget may change any of the elements of the System (including by introducing new Budget Trademarks, products, services, and Standards) and, on notice from Budget, Licensee shall promptly accept and implement all such changes at Licensee's expense.

12

JA41

## ARTICLE III

### OPERATING MANUAL

Budget agrees to loan to Licensee the Operating Manual, which may consist of several component parts and materials Budget may issue, including bulletins, handbooks, newsletters and computer-based and -transmitted information. Licensee agrees that Budget will have the right to modify the Operating Manual at any time and from time to time by the addition, deletion or other modification to the provisions thereof. Licensee agrees that modifications in the Operating Manual will become effective thirty (30) days after written notice thereof to Licensee unless a longer period is specified in such written notice. Licensee agrees that it will at all times conduct the BRAC business in accordance with the Operating Manual, as modified from time to time as hereinbefore provided, and reference made in this Agreement, or in any amendments, exhibits or schedules thereto, to the Operating Manual will be deemed to mean the Operating Manual as current from time to time. Licensee agrees to keep its copy of the Operating Manual current by immediately inserting all modified and additional pages furnished by Budget for the Operating Manual. In the event of a dispute relative to the contents of the Operating Manual, Licensee agrees that the master copy maintained by Budget at its principal office will be controlling.

If necessary, Licensee shall at its own expense cause the Operating Manual to be translated into one or more of the languages of the Licensed Territory. Licensee acknowledges and shall ensure that the Operating Manual and any translation and the copyrights therein shall be the property of and vested in Budget. Licensee agrees to execute any and all instruments and

13

documents, render such assistance and take such action as may, in the opinion of Budget's counsel, be necessary or advisable to establish, protect and maintain the interests of Budget in the Operating Manual, any translations thereof and the copyrights therein.    Budget will reimburse Licensee for the reasonable expenses incurred and paid by Licensee in complying with the foregoing sentence. Licensee agrees that it will not copy or disclose any part of the Operating Manual to any person other than its employees who have a need to know the contents of the Operating Manual after ensuring their commitment to confidentiality.

## ARTICLE IV

## INSTRUCTION AND OPERATING ASSISTANCE

4.1    Pre-opening Instruction.  Prior to the opening of Licensee's BRAC business, Budget shall furnish, and the General Manager and such other employees of Licensee as are approved by Budget shall attend and successfully complete, instruction on the operation of a BRAC business as Budget deems appropriate.  The instruction shall be furnished at such time and place as shall be designated by Budget.  In addition to monthly Royalty Fees and Service Fees, Licensee shall pay the then current instruction fee and all travel and living expenses incurred by the General Manager and any other employees receiving the instruction.  A person who has failed to satisfactorily complete the relevant instruction course shall not be employed as General Manager of the Licensee's BRAC business.

14

JA43

4.2     Post-opening Instruction.  Following the opening of Licensee's BRAC business, Budget will furnish a field representative to train and assist Licensee's General Manager and employees in the operation of Licensee's BRAC business to such extent (if at all) as in Budget's judgement is from time to time reasonably necessary.  If Licensee's designated General Manager fails to complete such instruction to Budget's satisfaction Licensee shall select another person as General Manager who shall be required to complete the instruction to Budget's satisfaction.

4.3     Operating Assistance and Training.  Budget shall furnish to Licensee such operating training and assistance on a continuing basis through field representatives or training programs requiring Licensee attendance, as in Budget's judgement is from time to time reasonably necessary.  Licensee shall co-operate with Budget and its representatives in connection with all training and assistance provided by Budget and will promptly undertake to correct any deficiencies brought to Licensee's attention in connection therewith.  Licensee will reimburse Budget for the reasonable costs and expenses it incurs in correcting, or causing the correction of, deficiencies that Licensee, after notice, fails to correct.

4.4     Attendance at Conventions/Seminars/Meetings.  Budget may hold periodic conventions, seminars or meetings for portions or all of the Network, which may include programs on sales and marketing techniques, Standards, advertising programs, and training suggestions.  Licensee's attendance at each convention, seminar or similar meeting is mandatory and Licensee shall bear all expenses of attending, including travel, lodging, meals and entertainment.

15

**JA44**

ARTICLE V

MARKETING AND IDENTIFICATION

5.1     Centralised Marketing Fund.  Budget agrees to expend the monies in the Fund (as defined in Paragraph 7.2) for sales and marketing efforts on behalf of the Network. Licensee agrees that these efforts may include national and international account business; public relations; marketing; marketing research; preparing and producing videos; audio and written advertising materials; administering advertising programs; purchasing direct mail and other media advertising, and employing advertising agencies to assist in these activities.  Licensee agrees that the Fund may also be used for salaries, administrative costs and overhead expenses Budget may incur in activities reasonably related to Budget's activities with respect to sales and marketing, including the costs of accounting for advertising and promotional expenditures and activities.

5.2     Budget Direction of Funds.  Licensee agrees that it has no right, claim or interest of any kind in or to the monies paid by Licensee under Paragraph 7.2 and that Budget will have sole discretion over the Fund and the related sales and marketing activities including over the creative concepts, materials and endorsements used and the geographic, market and media placement and allocation of the programs.  Licensee agrees that Budget's expenditures will be devoted to promoting the recognition of the Budget Trademarks and patronage of the Network.  Budget undertakes no obligation to ensure that its expenditures in or affecting any

16

JA45

geographic area will be proportionate or equivalent to Service Fees, Marketing Fund Fees or other fees paid by BRAC businesses operating in that geographic area, or that any BRAC business will benefit directly from Budget's sales and marketing expenditures.

5.3      Local Advertising and Promotion.  Licensee may formulate and effect local sales and marketing activities both within and outside the Licensed Territory, subject to such requirements with respect to format, representations and media as are prescribed by Budget in the Operating Manual or otherwise from time to time.  Licensee agrees to at all times adhere to all rental charges which it advertises or which Budget advertises on Licensee's behalf and at Licensee's request, and Licensee will not advertise (i.e., make any oral, written, graphic or pictorial statement in the course of soliciting business) in any deceptive or misleading manner.  Licensee understands and agrees that Budget or the Related Entities may hire and/or appoint sales persons and general sales agents to act on their behalf in the Licensed Territory.  In such event, Licensee agrees to fully co-operate with the sales persons and general sales agents in their efforts to promote the Network and any specific destination locations.

5.4      Required Local Expenditures.  Licensee agrees to advertise its BRAC business in each of the primary general and business telephone directories distributed within its Licensed Territory and shall expend annually for sales and marketing within the Licensed Territory, exclusive of its classified telephone directory listing and advertising, the amount not less than that set forth in Schedule 1 ("the Required Local Expenditure") for the year (in addition to the centralised Marketing Fund Fees referred to in Paragraph 7.2).  Licensee agrees that all sales and marketing materials and all other materials (including, Licensee's stationery,

17

business cards, telephone listings, and advertising) will be in accordance with the image,

standards prescribed by Budget in the Operating Manual or otherwise from time to time.

Licensee agrees to furnish Budget within ninety (90) days after the close of its fiscal year a

statement certified by Licensee containing the computation of the amount that it was required to

expend hereunder for advertising and promotion and the amount actually expended.  Licensee

agrees that excess expenditures in any calendar year will not reduce the amount required to be

expended in any subsequent year.  Budget agrees that the Licensee will satisfy its obligations in

relation to the Required Local Expenditure if it expends such sums on activities reasonably

related to the Licensee's activities with respect to sales and marketing including the costs of

accounting for advertising and promotional expenditure and activities.


### ARTICLE VI


### PROGRAMS


6.1      Key Account Programs.  Budget and BRACC shall have the right as agent for

Licensee to enter into service contracts throughout the term of this Agreement with agencies and

departments of the national, state/provincial, local and other governmental subdivisions; national

and international industries and institutions; and other local, regional, national and international

accounts (herein collectively referred to as "Key Accounts").  Licensee agrees to maintain the

availability of Vehicles for rent to such Key Accounts and to accept all such rentals and

otherwise service such Key Accounts in the same manner as is required in this Agreement for

other customers of Licensee or to provide such higher level of service for the Key Account

18

**JA47**

customers as required by the Standards, including by maintaining and sharing with Budget and the Network information about the Key Account and Key Account customers. Licensee agrees to comply with all of the terms and conditions of all Key Account programs. Licensee must provide service to the Key Accounts in accordance with Budget's requirements. If Licensee fails to do so, in addition to other remedies available to Budget under this Agreement, Budget shall have the right, without notice to Licensee, to provide  (or license a third party, including a Related Entity, to provide) service to Key Accounts in the Licensed Territory.

6.2     International Reservation System. Licensee agrees to participate exclusively in the Budget International Reservation System (the "Reservation System") which is now in effect and as it may be modified by Budget from time to time or which may hereafter be instituted by Budget; to comply with all of the terms and conditions of the Reservation System including to accept and service all reservations received through the Reservation System; to participate and pay fees and commissions due under the centralised Travel Agent Reservation Program and other travel agent programs and to pay Budget, the Related Entities, BRACC, airlines, and other sources of reservations, the fees and other charges due for the reservations generated on behalf of Licensee through the Reservation System or otherwise on the respective dates for payment or if no such dates are fixed, upon demand. In addition, Licensee agrees to accept and service all reservations received from the Network and to transmit all reservations which it is requested to place by any customer exclusively to the appropriate BRAC business, without charge to the customer, and without fee to the receiving operator other than as required by the Standards. Licensee agrees to adhere to the rental prices which it places in, or has another place in, any reservation system or program on its behalf. Budget and any assignee agrees not to

19

divert from the Licensee to a third party any reservations which require servicing in the Licensed Territory or in any way to seek to diminish such reservations except in accordance with any Key Account program and provided that Licensee is capable and willing to service such reservations.

6.3     **Customer Complaint Programs.**  Licensee agrees at all times to comply with all of the terms and conditions of all customer complaint programs as required by the Standards. Budget shall have the sole and exclusive right to resolve all customer complaints and Licensee agrees to abide by all decisions rendered by Budget in connection with any such complaints.

6.4     **Payment Programs.**  Licensee agrees to accept such credit cards, vouchers, and other forms of payment from its customers, and otherwise to participate in and comply with all of the terms and conditions of payment programs as required by the Standards.

6.5     **Marketing/Customer Service Programs.**  Licensee acknowledges that it is essential to maintain a strong positive public image of the identity and reputation of the Budget Trademarks and a uniform and high level of service to each customer and therefore, agrees to participate in and comply with, in addition to the programs mentioned above, and the programs listed on Schedule 3 attached hereto and incorporated herein by reference, any other sales, reservation, computer, marketing, Key Account, test, advertising, operating, customer service or other similar program (hereinafter collectively referred to for convenience as "Marketing/Customer Service Programs") which are now in effect and as they be modified or hereinafter instituted by Budget through the Operating Manual or otherwise from time to time. Licensee agrees to contribute to the expense of these Marketing/Customer Service Programs on

20

JA49

the same basis as other similarly situated System licensees. Licensee understands and agrees that it may be required to enter into participation or other agreements to evidence its participation in such programs.

ARTICLE VII

FEES AND OTHER PAYMENTS

7.1     License Purchase Fee. Licensee shall pay to Budget as a License Purchase Fee for the right to become the System licensee in the Licensed Territory the amount set forth in Schedule 1. The License Purchase Fee shall be payable to Budget in the manner set forth in Schedule 1, fully earned by Budget at the time of execution of this Agreement and not refundable, in whole or in part, under any circumstances.

7.2     Centralised Marketing Fund Fees. Licensee agrees to pay to Budget monthly at the same time the Royalty Fees and Service Fees are to be paid the amount set forth in Schedule 1 ("Marketing Fund Fees") for a centralised marketing fund ("Fund").

7.3     Service Fees and Royalty Fees .

(a) Service Fees. Licensee agrees to pay to Budget monthly Service Fees, within fifteen (15) days of the end of the month to which they relate, in an amount equal to the amounts set forth in Schedule 1 for each of (a) Short Term Car Rental; (b) Short Term Van Rental; (c) Short Term Truck Rental; and (d) Long Term Rental. Licensee agrees that it will pay the Service Fee

21

JA50

for the Long Term Rentals if at the time it submits its payment it reports all Long Term Rentals on a separate Long Term Rental monthly vehicle report and otherwise satisfies Budget's requirements for Long Term Rentals as prescribed in the Operating Manual or otherwise from time to time. All costs and charges, including bank charges, incurred in the payment of Service Fees or other fees or charges under this Agreement will be borne by Licensee.

For the purposes of this Paragraph 7.3:

"Short Term Car Rental" means the rental of a car, which at the start of the rental is not contracted for less than ninety (90) days closed during the immediately preceding calendar month;

"Short Term Van Rental " means the rental of a van which at the start of the rental is not contracted for less than ninety (90) days closed during the immediately preceding calendar month;

"Short Term Truck Rental" means the rental of a truck which at the start of the rental is not contracted for less than ninety (90) days closed during the immediately preceding calendar month;

"Long Term Rental" means the rental of a car, van, or truck which at the start of the rental is contracted for ninety (90) days or more closed during the immediately preceding calendar month.

(b) Royalty Fees.  Licensee agrees to pay to Budget monthly Royalty Fees within fifteen (15) days of the end of the month to which they relate, in an amount equal to the amounts set forth in Schedule 1 for each of (a) Short Term Car Rental; (b) Short Term Van Rental; (c) Short

22

JA51

Term Truck Rental; and (d) Long Term Rental. Licensee agrees that it will pay the Royalty Fee for the Long Term Rentals if at the time it submits its payment it reports all Long Term Rentals on a separate Long Term Rental monthly vehicle report and otherwise satisfies Budget's requirements for Long Term Rentals as prescribed in the Operating Manual or otherwise from time to time. All costs and charges, including bank charges, incurred in the payment of Service Fees or other fees or charges under this Agreement will be borne by Licensee.

7.4     Minimum Service Fees and Royalty Fees . Licensee agrees to pay to Budget not less than a certain minimum amount of Service Fees and Royalty Fees each year of this Agreement which in each of the first five years of this Agreement will be the amounts referred to in Schedule 4. After the fifth anniversary of the date of this Agreement, the minimum Service Fees and Royalty Fees amounts will be determined by Budget in its discretion based on then current market surveys conducted by Budget, but Licensee agrees that the minimum annual Service Fees and Royalty Fees after the first five (5) years of this Agreement, will not be less than the immediately preceding year's minimum plus a percentage increase based on the potential growth in vehicle rental industry revenue in the Licensed Territory as determined by Budget. Licensee agrees to pay to Budget each month the greater of one-twelfth (1/12) of the annual minimum Service Fees and Royalty Fees or Licensee's actual monthly Service Fees and Royalty Fees.

7.5     Withholding Taxes. In the event that payments by Licensee to Budget hereunder are subject to withholding or other taxes that Licensee is required to deduct from such

23

payments, Licensee agrees to obtain any consents from the appropriate governmental authority to give effect to any double taxation treaty which may exist between the country in which the Licensed Territory is situated and the United States and to promptly deliver to Budget evidence issued by the applicable governmental authorities in a form satisfactory to Budget, that all such taxes withheld have been paid. Licensee shall be responsible for and shall indemnify and hold Budget and the Related Entities harmless against any penalties, interest and expenses incurred by or assessed against Budget or the Related Entities as a result of Licensee's failure to withhold such taxes or to timely remit them to the appropriate taxing authority. Licensee agrees to fully and promptly co-operate with Budget to provide such information and records as Budget may request in connection with any application by Budget to any taxing authority with respect to tax credits, exemptions or refunds available for any withholding or other taxes paid or payable by Licensee. In the event Budget is required to refund to Licensee any amounts paid hereunder pursuant to the terms and conditions of this Agreement, Budget shall not be required to refund that portion of those amounts which were withheld by Licensee in order to comply with any applicable tax law unless and until Budget receives a refund of such amounts from the applicable government and/or agency thereof or utilises a foreign tax credit which is directly attributable to such amounts on its United States federal income tax return which is accepted by the United States Treasury or with respect to which the period within which such credit may be reduced or disallowed has expired.

    7.6    **Definition of "Gross Revenue".** Licensee agrees that the term "Gross Revenue" will, for purposes of this Agreement, mean any and all sums of every nature and character payable, for cash or credit, under closed rental agreements or otherwise in Licensee's

24

**JA53**

operation of its BRAC business, including time, mileage, damage or loss waiver, and any other charges for any ancillary goods or services provided directly or indirectly in connection with Licensee's BRAC business including baby seats, ski racks, moving supplies and tow dollies, and specifically excluding only the following: (a) any national, state/province or local sales or other similar taxes separately stated, collected from customers and paid by Licensee to the applicable governmental authority; (b) any amounts received as insurance proceeds or otherwise for damage to vehicles or other property of Licensee, or for loss, conversion or abandonment of such vehicles; (c) revenue derived from the sale of fuel furnished at the time of rental or at the end of rental; and (d) revenue derived from the appropriate driver costs in relation to the delivery of vehicles.

      7.7      **Electronic Funds Transfer.** Budget shall have the right to require Licensee to participate in an electronic funds transfer program under which Services Fees, Royalty Fees, Marketing Fund Fees and any other payments due Budget or the Related Entities under this Agreement or any other agreement between the parties are transferred electronically from Licensee's bank account to the bank or other financial institution specified by Budget, all of which shall be in accordance with the Standards. Licensee agrees to make the funds available in its bank account for withdrawal by electronic transfer no later than each due date for payment.

      7.8      **Currency of Payment and Rate Of Exchange.** All payments by Licensee to Budget under this Agreement shall be made in Pounds Sterling unless otherwise specified by Budget. All payments hereunder to be calculated in the currency of the Licensed Territory and converted into Pounds Sterling for payment to Budget shall be converted at the rate most

25

favourable to Budget offered in London by National Westminster Bank or such other bank as may be specified by Budget from time to time on the business day immediately preceding the date payment is transmitted provided, however, that, in the event a payment is transmitted after the date payment is due, the currency exchange rate used shall be the rate as of the date payment was due or the rate as of the date the payment is transmitted, whichever rate produces the larger amount in Pounds sterling or such other currency of payment as may be designated by Budget. All payments made hereunder shall be made in full net of any bank charges or other fees incurred by Licensee to a bank of Budget's choosing located in the United Kingdom or elsewhere.

    7.9    **Exchange Controls.** Licensee shall use its best efforts to obtain any consents or authorisations which may be necessary in order to permit timely payments in Pounds Sterling of all amounts payable hereunder. If at any time, any legal restriction is imposed upon the purchase of Pounds Sterling or the transfer to or credit of a non-resident party with payments in Pounds Sterling, Licensee shall notify Budget immediately. While such restrictions are in effect, Budget may require payment in any currency designated by Budget that is available to Licensee or, at Budget's option, may require Licensee to deposit all amounts due but unpaid as a result of such a restriction, in any bank or institution in the Licensed Territory designated by Budget, or to provide payment in the form of products or services available to Licensee or its affiliate at the actual bona fide arms length cost of such products or services to Licensee or its affiliate. Budget shall be entitled to all interest earned on such deposits. If payment is made in products or services, Licensee agrees to deliver such products or services to Budget or its designated agent or shipper within the Licensed Territory. In the event that such currency exchange restrictions

26

JA55

remain in effect for longer than ninety (90) days, Budget shall have the option to terminate this Agreement.

7.10    **Interest on Monies Past Due.** If any sum payable under this Agreement is not paid when due then the defaulting party shall pay interest to the other in the manner set out in this Paragraph 7.10.  Licensee shall in addition pay to the Related Entities (unless any such entity has a separate agreement for the payment of interest on amounts owed) interest on any monies which in any manner relate to Licensee's BRAC business not received by the Related Entities when due.  Such interest shall accrue, commencing with the day after any monies are due, at five percent (5%) over the highest of the United Kingdom's clearing banks' base rates as published in The Financial Times in London (or if lower the highest rate permitted by law in the Licensed Territory) and will be calculated on a daily basis at such rate until the total amounts due, including interest, are received.  Any monies received by Budget or the Related Entities shall first be applied against any outstanding interest balance and then against any other monies due from Licensee to Budget or the Related Entities.  Interest shall not become payable under this Paragraph 7.10 until it exceeds £1,000.

7.11    **Prohibition Against Using License as Security.**  Licensee agrees that it will not, at any time, pledge this Agreement, or any of its rights hereunder, to any person as security for any purpose, or otherwise allow or grant any charge, lien or encumbrance to be placed by any person on this Agreement or any rights granted hereunder for any purpose, or permit this Agreement, or any rights hereunder, to become subject to an actual or contingent transfer, sale or assignment to any person.

27

**JA56**

7.12    Application of Payments. Subject to Paragraph 7.10 Budget and the Related Entities shall have the sole discretion to apply any payments made by Licensee to any past due indebtedness of Licensee. Licensee acknowledges and agrees that Budget and the Related Entities shall have the right to set off any and all amounts Licensee owes Budget or the Related Entities against any undisputed and liquidated amounts owed to Licensee by Budget, the Related Entities or any third party for which Budget acts as an intermediary or performs services whether due under this Agreement or otherwise or to establish a protocol or procedure for the deduction from payments owed Licensee any amounts which Licensee owes Budget, the Related Entities, or any third party for which Budget acts as an intermediary or has performed services.

7.13    Security Interest. Licensee agrees that upon Budget's request it will enter into a perfected security interest with Budget in Licensee's franchise, its accounts receivable and other receivables and all of Licensee's assets (excluding Vehicles). Licensee shall charge by way of fixed or floating charge or other appropriate form of security and/or assign all accounts receivable and other receivables to which it may be entitled to Budget as security for Licensee's performance of all of its obligations pursuant to this Agreement and all related agreements. Licensee shall execute a separate security agreement with Budget in the form prescribed by Budget and shall do all acts reasonably required by Budget to perfect Budget's security interest in all such assets.

28

JA57

ARTICLE VIII

DEVELOPMENT OF LICENSED TERRITORY

8.1     Minimum Number of Locations and Vehicles.  Licensee agrees to develop the Licensed Territory to achieve and maintain the maximum possible market penetration for its BRAC business within the Licensed Territory by opening rental office locations by the dates and in the local markets and commercial airports listed on Schedule 5, and to actively and continuously operate the BRAC business at all of those locations throughout the term of this Agreement; provided, however, that Licensee agrees to not commence any such operations unless its General Manager has satisfactorily completed the required instruction as provided in Paragraph 4.1 hereof.   To further achieve and maintain the maximum possible market penetration within the Licensed Territory, Licensee agrees to maintain at least the number of Vehicles available for rent within the Licensed Territory by the dates listed in Schedule 6 ("Market Penetration Quotas").  For purposes of determining the Market Penetration Quotas, the yearly average of Vehicles actually maintained available for rental by Licensee for each twelve (12) month period shall be computed by adding the monthly average of Vehicles reported as available for rental in the Monthly Vehicle Report and Invoice which Licensee is required to submit pursuant to Paragraph 9.7 for the applicable twelve (12) month period and dividing the total obtained by twelve (12), provided any such computations shall be subject to adjustment in accordance with the result of any audit by Budget of the records of Licensee.  The location and Vehicle requirements identified in Schedules 5 and 6 reflect the minimum market penetration acceptable to Budget.  Notwithstanding Schedule 5, Licensee agrees to use best efforts to

29

JA58

actively and continuously operate at a minimum, one rental location at each commercial airport and in all city centres and other centres of business activity within the Licensed Territory.

     8.2     **Licenses, Concession Agreements, Leases, Permits.** Licensee shall use its best efforts to obtain provisions in its licenses, concession agreements, leases and permits providing that: (i) Budget shall receive written notice of any default by Licensee under such license, concession agreement, lease or permit and an opportunity to cure such default for a period of (30) days after receipt of such notice; (ii) upon termination of this Agreement for any reason, such licenses, concession agreements and permits shall where permitted by law be deemed assigned or otherwise shall be assigned to Budget or its nominee subject to acceptance of said assignment by Budget. Licensee shall execute any document required by Budget which may be necessary to give effect in law to any such assignment; (iii) the lessor or other party to such license, concession agreement, lease or permit is authorised to deliver to Budget information regarding Licensee's BRAC business; and (iv) Budget shall be authorised to enter the premises upon termination of this Agreement to remove materials and signage containing the Budget Trademarks. At Budget's option, Licensee agrees that whenever it seeks to operate from an airport, it will obtain the entry by the applicable airport authority into the Contingent Assignment of Airport Concession Agreement attached as **Schedule 7** or such other similar agreement previously approved by Budget in writing. Budget reserves the right to negotiate with the airport authorities directly to obtain its own airport concession agreements which it will sublease to Licensee. Licensee agrees to co-operate fully with Budget in its efforts, and to honour all of Budget's and its obligations under said Airport Concession Agreement.

30

8.3     **Prior Approval of Rental Offices.**  Each rental office operated by Licensee shall be subject to the prior written approval of Budget and shall be managed by an employee of Licensee who has completed the instruction specified in **Paragraph 4.1.**  Licensee agrees that such approval will not constitute a representation by Budget regarding the profitability or the potential for profit of a particular rental location.

8.4     **Commencement of Operations.**  Licensee agrees to commence the operation of its BRAC business not later than the date specified in **Schedule 1** attached hereto.  Licensee shall be deemed to have commenced operations hereunder upon the opening of its first BRAC business office in the Licensed Territory.

8.5     **Additional Licensed Territory Development.**  Budget reserves the right to conduct or to cause to be conducted market surveys of the Licensed Territory at any time during the term of this Agreement.  If such survey indicates, in Budget's determination, that the Licensed Territory could support an additional rental office location with a certain minimum number of Vehicles, or that an existing rental office location could support more Vehicles, Budget will so notify Licensee in writing setting forth the bounds of the portion of the Licensed Territory to be developed and/or the number and type of Vehicles to be added ("**Development Requirement**").  Licensee agrees that it will have one hundred and eighty (180) days from the date of the receipt of Budget's notice to open the additional rental office location with the minimum number and type of Vehicles, or to increase the number or modify the type of Vehicles at the designated existing office rental location in accordance with Budget's Development Requirements.

31

JA60

8.6    Development of the BRAC Business Premises.

(a)    Location of BRAC Business.  Licensee's BRAC business may be operated only from the location within the Licensed Territory pre-approved by Budget in writing. Such location may be used only for a BRAC business and no other purpose without Budget's prior written consent.

(b)    Layout and Appearance of BRAC Business.  Licensee shall submit to Budget for Budget's written approval plans and specifications for the layout of Licensee's BRAC business.  Upon Budget's approval, Licensee shall promptly proceed to develop Licensee's BRAC business premises in accordance with the Standards and approved layout.  No material changes shall be made to the layout of Licensee's BRAC business during the term of this Agreement without Budget's prior written approval.

(c)    Appearance of BRAC Business.  The premises of Licensee's BRAC business shall be kept and maintained at all times in a clean condition, in good order and repair and in accordance with the Standards.

(d)    Refurbishing and Upgrading.  Licensee agrees to refurbish and upgrade the condition of its BRAC business premises from time to time as shall be reasonably required by Budget to maintain or improve the appearance, identity and reputation of the

32

JA61

Licensee's BRAC business, to increase its sales potential and/or to comply with the Standards.

### 8.7    Governmental Approvals

Licensee agrees to execute any and all instruments and documents, render such assistance, and otherwise co-operate with Budget, in order to obtain all governmental and other approvals necessary at any time during the Agreement, in the opinion of Budget's counsel, to comply with the applicable legal requirements. Licensee shall bear all costs and expenses (including translation costs and attorneys fees of Licensee, Budget and Related Entities) in obtaining any and all such registrations and approvals and shall reimburse Budget and or the Related Entities on demand for all such costs and expenses which Budget and the Related Entities may incur. At its option, Budget shall have the right to submit, or to require Licensee to submit, this Agreement to any governmental entity or agency (the "Agency") for registration or approval in the event Budget determines such registrations or approvals are necessary in order to comply with such legal requirements. If the Agency requires that any amendments be made to this Agreement as a condition of such approval or registration and such amendments are acceptable to Budget, Budget will deliver to Licensee for execution and Licensee shall execute an addendum to this Agreement or other appropriate documents, to reflect such amendments. If Budget determines in good faith that the effect of any amendment required by the Agency as a condition to registration or approval will be materially detrimental to its interests, Budget may forthwith terminate this Agreement by delivering written notice thereof to Licensee. If any governmental registration or approval is required before the parties may implement this Agreement, and if the Agency has not

33

JA62

registered or approved this Agreement within ninety (90) days of the date of its submission to the Agency for such approval or registration, Budget may forthwith terminate this Agreement by delivering written notice thereof to Licensee. In such event Budget terminates this Agreement for any of the reasons set forth in the immediately preceding sentence, and provided that Licensee has theretofore fully co-operated with Budget in the registration or approval process and Licensee and its Owners have executed general releases, in a form acceptable to Budget, releasing Budget and the Related Entities and their respective officers, directors, shareholders, employees, agents, successors and assigns from any and all liability, Budget shall refund any License Purchase Fee paid by Licensee hereunder, less any expenses incurred by Budget in connection with the execution of this Agreement and the attempts to obtain governmental approval thereof.

## ARTICLE IX

## OPERATIONAL REQUIREMENTS

9.1     *General Manager.*   Licensee shall, at all times during the term of this Agreement, employ on a full-time basis at least one (1) General Manager who has satisfactorily completed the instruction furnished by Budget and who has been previously approved in writing by Budget and who shall devote his or her entire time during normal business hours to the management, operation and development of Licensee's BRAC business. The person designated by Licensee as General Manager at the date of execution of this Agreement is set forth in Schedule 1. Licensee shall notify Budget of any proposed change in its General Manager.

34

9.2     **Telephone Number.**  Licensee agrees to maintain separately not less than one

(1) telephone, facsimile and electronic communication line for each BRAC business location

which will be listed as, and identified exclusively with the BRAC business separate and distinct

from all other telephone numbers maintained by Licensee, in all primary general and business

telephone directories distributed within the Licensed Territory, in such other telephone

directories and in all advertising in which such number or numbers appear as shall be prescribed

by Budget in the Standards.  Licensee agrees that all telephone, facsimile and electronic

communication lines and other commercial numbers, whether installed by or at the cost of

Licensee or not, which are from time to time advertised in connection with the BRAC business

(including listings in the white and yellow pages and any other telephone or business directory)

are held by Licensee solely for the purpose of performing under this Agreement and that Budget

may suffer losses and damages if Licensee diverts or transfers such telephone numbers or any

facsimile/electronic communication line service (or permits their diversion or transfer) or uses

them or permits their use for, or in connection with, any business other than the BRAC business.

Licensee agrees that its commitment not to divert or misuse the telephone numbers or any

facsimile service/electronic communication line will survive termination of this Agreement for

any reason, for the enduring benefit of the Network as a whole.  Licensee acknowledges that the

public association of such telephone, facsimile and electronic communications lines with the

BRAC business is part of the Goodwill.

9.3     **Insurance.**  Licensee shall maintain such insurance, in such minimum

amounts, and with such approved carriers, as are prescribed in the Standards.  Licensee shall

35

JA64

each year provide a then current certificate of insurance to Budget naming Budget and such others as additional insureds as are prescribed by Budget in the Standards and shall procure that the insurer shall waive any subrogation rights it may have against Budget. Each insurance policy shall provide for thirty (30) days' prior written notice to Budget of any material modification, cancellation or expiration of such policy. Licensee acknowledges that Budget may increase the amounts of insurance to be carried by Licensee and require different or additional kinds of insurance to reflect inflation, changes in standards of liability, high damages awards or other relevant circumstances.

9.4     **Collision Damage Waiver.** Licensee shall make readily available to each customer the option to effect the waiver of any claim against such customer for collision damage to the rented vehicle, notwithstanding any collision insurance deductible amount, subject to such conditions and limitations as are prescribed in the Standards and contained in the Standard Rental Agreement and the requirements of applicable law. Licensee may charge a reasonable, additional fee for such waiver.

9.5     **Standard Rental Agreement.** Licensee shall use Budget's standard rental agreement in connection with all rental of vehicles, or such other rental agreement which has been previously approved in writing by Budget.

9.6     **Standard Chart of Accounts.** Licensee shall establish bookkeeping and financial reporting system using Budget's standard chart of accounts as prescribed in the Standards or as previously approved in writing by Budget. All such bookkeeping and

36

JA65

accounting records and all financial statements shall be retained by Licensee for a period of not less than five (5) years or longer if required by law.

9.7    **Control Reports and Financial Information.**    Licensee shall submit to Budget monthly, on forms specified and/or supplied without charge, on or before the tenth (10th) day of each month during the term hereof, the Monthly Vehicle Report and Invoice and such other control reports and financial and other business information as prescribed by Budget from time to time, including reports and information relating to the Programs listed in Schedule 3.

9.8    **Certification by Licensee.**    All reports and financial information to be submitted by Licensee in accordance with the provisions of this Agreement and the Standards shall be certified and warranted to be true and correct by Licensee with respect to all data contained therein.

9.9    **Annual Financial Statements.**  Licensee shall submit to Budget on or before the one-hundred twentieth (120th) day following the end of Licensee's fiscal year, annual financial statements for Licensee conforming to Budget's current standard chart of accounts and certified and warranted as accurate by: (1) an independent certified public accountant if said statements are prepared by an independent chartered accountant or registered auditor in the normal course of Licensee's business; or (2) an officer of the Licensee if said statements are not prepared by an independent chartered accountant or registered auditor as aforesaid. If Budget suspects that any report, financial statement or other information provided to Budget understates

37

**JA66**

the Gross Revenue of Licensee's BRAC business or is unclear or is misleading, Budget shall have the right to require Licensee to furnish audited financials statements thereafter.

9.10    Standards of Performance.  Licensee acknowledges its responsibilities as one of an international system of Budget licensees and operators, the interrelationship and interdependence of the Network and operators and the importance of maintaining a uniformly high standard of performance to protect the Budget Trademarks and maintain the identity and reputation of the Network, the Budget Trademarks and the System (including the services provided thereunder).  Accordingly, Licensee agrees that it will operate its BRAC business in conformance with the provisions of this Agreement and the Standards of Performance prescribed in the Standards.  The Standards of Performance may govern various aspects of the operations of Licensee's BRAC business including:  (a) general appearance and maintenance of Licensee's rental locations and Vehicles; (b) standardisation of signs, letterheads, business cards and other similar promotional materials; (c) use of the Budget Trademarks and protection of confidential information; (d) types, models and brands of authorised Vehicles, equipment, supplies, and approved suppliers; (e) use of required or standardised forms; (f) use of computer hardware and software; (g) adoption of technological developments or advancements; and (h) the addition of new services and products and modification to existing services and products.

9.11    Quality Standards.  In order to maintain the identity and reputation of the BRAC businesses, the Budget Trademarks and the System, Licensee agrees that its BRAC business will purchase only types, brands and/or models of vehicles, equipment, signs, materials and supplies and certain complementary products and accessories that meet the Standards.

38

**JA67**

Budget reserves the right to require Licensee to purchase any of the above products from suppliers designated by Budget. Such suppliers may include Budget or the Related Entities if they elect to supply such products to BRAC businesses.

9.12    **Acceptance of Vehicles.**  Licensee must accept and process all disabled Vehicles and other vehicles originating with other Licensees and dropped off to Licensee as prescribed in the Standards or otherwise from time to time in writing.

9.13    **Rental Charges.**  Budget may, from time to time, advertise rental prices, include rental prices as part of the sales, promotion or other programs which it sponsors or otherwise suggest rental prices; provided, however, Licensee shall not, by the execution of this Agreement or the acceptance of the license granted hereby, be obligated to comply with, or adhere to, any such rental prices unless Budget is permitted to require Licensee to adhere to such rental prices under applicable law, including requiring Licensee to abide by maximum prices established by Budget. Notwithstanding the foregoing, Licensee agrees that if Licensee communicates to Budget or others by execution of a voluntary participation agreement or otherwise in writing, that it has decided in its own discretion to comply with the suggested rental prices of any Key Account or any Budget program, Licensee agrees to honour the agreed-to rental prices, for the period to which they relate in addition to the other terms of such programs, and acknowledges that Budget and others (including customers) will rely on such communications.

39

**JA68**

9.14    Computer Systems and Other Standards.  Licensee agrees to install and
implement all accounting, inventory control, sales register and other computer hardware and
software systems according to the Standards.  Licensee understands and acknowledges that any
such systems (and any modifications or additions thereto) may require the purchase, lease and/or
license of equipment, including computer hardware, and software programs and the payment of
licensing or access fees to Budget or others for the use of such systems.  Licensee shall be
required to install any new or modified systems within the time period specified by Budget.  All
computer hardware and software used by Licensee shall be totally compatible with and shall
strictly conform to the Standards.   Licensee shall at its own expense provide and maintain
technology to allow Budget full access at all times to all of Licensee's computer data, equipment
and systems and Licensee shall take all such steps as are necessary to ensure that Budget can
obtain such access at all times including; ensuring compliance with any Data Protection laws
which may be applicable; the ability of Licensee to provide the Customer List to Budget at any
time; pursuant to Paragraph 11.6(g) hereof.  Licensee shall comply with Standards Budget may
develop with regard to use of websites in connection with the operation and/or promotion of
BRAC businesses.

9.15    Inspection.  Budget shall have the right, from time to time, upon reasonable
notice and during normal office hours and, including but not limited to where Budget has
reasonable cause to believe that Licensee is not keeping proper books of account or records in
accordance with this Agreement or is otherwise concerned that the BRAC business is not being
operated properly or otherwise in accordance with this Agreement without prior notice to
Licensee, to send representatives to inspect the BRAC business, and to audit the books and

40